UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

BEAZLEY INSURANCE COMPANY, INC.,

    Plaintiff,

v.

BENJAMIN GORDON,

    Defendant.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, BEAZLEY INSURANCE COMPANY, INC. (hereinafter, "Beazley"), by and through undersigned counsel, sues Defendant, BENJAMIN GORDON (hereinafter "Gordon") for declaratory relief, and states as follows:

## JURISDICTION AND VENUE

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based upon the diversity of citizenship of the parties and the provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under certain policies of insurance.

3. The amount in controversy is in excess of this Court's minimum jurisdictional amount of $75,000.00, exclusive of interest, costs, and attorneys' fees. Gordon demands reimbursement of all defense fees and costs incurred since the Policy was exhausted, which totals $721,041.00 plus work in progress; Gordon further demands defense fees and costs allegedly paid from the Policy on behalf of individuals or entities who were not insured; and Gordon also demands at least $1,000,000.00 for Gordon's exposure in one of the underlying lawsuits.

4. The Court has personal jurisdiction over Defendant, Gordon because he is and was, upon information and belief, a resident of and domiciled in this state and district at all relevant times.

5. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(a) and (c), because the present claim for declaratory relief arose in this district. Additionally, Defendant, Gordon resides and is domiciled in Palm Beach County, Florida. Furthermore, two of the four underlying actions giving rise to the present declaratory judgment action were filed and are pending in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida.

6. All conditions precedent to the filing of this action have occurred or have been complied with, or otherwise have been excused and/or waived.

7. Pursuant to the requirements of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

## PARTIES

8. At all times material to this action, Plaintiff, Beazley is and was a corporation organized and existing under the laws of Connecticut, with its principal place of business at 30 Batterson Park Road, Farmington, Connecticut 06032. Therefore, at all relevant times, Beazley is and was a citizen of Connecticut.

9. At all times material to this action, Defendant, Gordon is and was a natural person, and resident of and domiciled in Palm Beach County, Florida. Therefore, Defendant, Gordon is and was a citizen of the state of Florida.

10. Therefore, there is complete diversity of citizenship as Plaintiff is and was a Connecticut citizen, and Defendant is and was a Florida citizen.

11. Therefore, because there is complete diversity between Plaintiff and Defendant, and the amount in controversy requirement has been met, this Court has jurisdiction. 28 U.S.C. § 1332(a)(1).

## **FACTUAL ALLEGATIONS**

12. On March 24, 2015, Brian Levy filed a complaint in a class action and derivative action in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida, in the matter styled *Brian Levy, on behalf of Himself and All Other Similar Situated v. Benjamin Gordon, Mitchell I. Gordon, Michael Durham, Nathan Gantcher, Scott Laurans, and Parakou tankers, Inc., Defendants, and Cambridge Capital Acquisition Corp., Nominal Defendant*, Case No. 2015CA003339 (the "Levy Action"), challenging a proposed merger between Cambridge Capital Acquisition Corp. ("Cambridge") and Parakou Tankers, Inc. ("Parakou").

13. After failure of the proposed merger between Cambridge and Parakou, on October 15, 2015, Brian Levy filed a first amended complaint in a class action and derivative action in the Circuit court for the 15th Judicial Circuit in and for Palm Beach County, Florida, in the matter styled *Brian Levy, on behalf of himself and All Others Similarly Situated v. Benjamin Gordon, Mitchell I. Gordon, Michael Durham, Nathan Gantcher, Scott Laurans, Cambridge Holdco Corp., and Ability Computer & Software Industries Ltd., Defendants, and Cambridge Capital Acquisition Corp., Nominal Defendant,* Case No. 2015CA003339 (the "First Amended Complaint"), challenging a proposed merger between Cambridge and Ability Computer & Software Industries Ltd. ("Ability").

- 3 -

14. After the Cambridge-Ability merger was completed, on October 22, 2016, a Second Amended Complaint was filed in the Levy Action, and on April 12, 2018, a Third Amended Complaint was filed in the Levy Action. These complaints assert allegations akin to those set forth in the First Amended Complaint, with additional detail concerning the finalization of the merger entered into by Cambridge and Ability. *A copy of the Third Amended Complaint in the Levy Action is attached herein as **Exhibit "A"** and is fully incorporated herein.*

15. Gordon is named a Defendant in the Levy Action in his capacity as "chief executive officer and director of Cambridge…" *Levy Comp.* ¶14.

16. On December 13, 2016, Carter Pottash filed a complaint in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida, styled *Carter A. Pottash v. Benjamin Gordon, Cambridge Capital LLC, BG Strategic Advisors LLC, Jonathan Morris, in his capacity as trustee of the Gordon Family 2007 Trust, and Ability, Inc.,* Case No. 2016CA013823 ("Pottash Action"). A First Amended Complaint was filed in the Pottash Action on January 23, 2017, and a Second Amended Complaint was filed on November 27, 2017 styled *Carter A. Pottash v. Ability, Inc.; Benjaming Gordon and Jonathan Morris, in his capacity as trustee of the Gordon Family 2007 Trust*, Case No. 2016CA013823. *A copy of the Second Amended Complaint in the Pottash Action is attached herein as **Exhibit "B"** and is fully incorporated herein.*

17. Pottash alleges that he was induced through a series of misrepresentations and omissions to invest in the stock of a publicly traded company, first known as Cambridge Capital Acquisition Corp., then known as Cambridge Holdco Corp., and finally known as Ability, Inc. Pottash alleges he lost more than $1.1 million due to his reliance on the defendants' misrepresentations and omissions.

18. Gordon is named a Defendant in the Pottash action in his capacity as "Chief Executive Officer of Cambridge Capital Acquisition Corporation…" *Pottash Comp.* ¶8.

19. On June 15, 2017, a Second Amended Complaint was filed in the United District Court for the Southern District of New York by Lead Plaintiffs, Ametren L.P. and Theodore Zwicker against Ability Inc., Anatoly Hurgin, Avi Levin, Benjamin Gordon and BDO Ziv Haft, in the matter styled *In re Ability Inc. Securities Litigation* ("Ability Action"). The original complaints in the Ability Action did not include Gordon, but Gordon was added as a defendant to the operated Second Amended Complaint . *A copy of the Second Amended Complaint in the Ability Action is attached herein as **Exhibit "C"** and is fully incorporated herein.*

20. The Ability Action is a federal securities class action brought on behalf of individuals who purchased or otherwise acquired Ability, Inc. common stock between September 8, 2015, and May 2, 2016, and allegedly were damaged thereby.

21. Gordon is named as a Defendant in the Ability Action in his capacity as "a director of Ability" and "CEO of Cambridge." *Ability Comp.* ¶19.

22. On February 9, 2017, the Securities and Exchange Commission ("SEC") issued a subpoena to Gordon in connection with an SEC investigation into Ability, styled *In the Matter of Ability Inc. (LA-4673)* ("Gordon Subpoena"). The Gordon Subpoena mandated that Gordon produce certain documentation and testimony related to Cambridge's acquisition of Ability. *A copy of the Gordon Subpoena is attached herein as **Exhibit "D"** and is fully incorporated herein.*

23. Gordon tendered each of the actions above (Levy Action, Pottash Action, Ability Action, and Gordon Subpoena, collectively the "Cambridge Matter") to Beazley for coverage under the Directors & Officers Policy issued by Beazley to Cambridge, which is detailed below.

24. Beazley agreed to provide coverage for the Cambridge Matter, under reservation of rights, pursuant to Insuring Clause B. of the Policy, which states:

> The Insurer shall pay on behalf of the **Company** all **Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Directors and Officers** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for a **Wrongful Act**…

25. Accordingly, Beazley agreed to provide coverage to the Insured Company, Cambridge, for Loss which Cambridge was required or permitted to pay as indemnification to Gordon and other Directors and Officers resulting from the aforementioned Cambridge Matters.

26. Specifically, Beazley acknowledged coverage for Benjamin Gordon for the Pottash Action, the Ability Action, and the Gordon Subpoena, and for Benjamin Gordon, Mitchell Gordon, Michael Durham, Nathan Gantcher, and Scott Laurans for the Levy Action. Any other defendants named in any of the Cambridge Matter were not afforded coverage under the Policy.

27. Pursuant to the terms and conditions of the Policy, it is the duty of the Insureds, and not the duty of Beazley, to defend Claims. In that regard, the Insureds undertook the defense of the aforementioned Cambridge Matters.

28. The Policy was exhausted, pursuant to the Policy's 60-Day Advancement Endorsement, by payment of covered Loss incurred with respect to the defense of Gordon and other Insureds by multiple law firms.

29. Specifically, the Policy limits were exhausted by defense payments for the benefit of Gordon and in furtherance of Gordon's defense as follows:

   A. $140,053.17 for covered Costs, Charges and Expenses incurred by the law firm of DLA Piper in its defense of Benjamin Gordon and other Insureds in the Levy Action;

B. $56,175.00 for covered Costs, Charges and Expenses incurred by the law firm of Stroock Stroock & Lavan in the defense of Benjamin Gordon in the Pottash Action;

C. $118,134.63 for covered Costs, Charges and Expenses incurred by the law firm of McDermott Will & Emery in the defense of Benjamin Gordon and other Insureds in the Levy Action;

D. $1,675,981.44 for covered Costs, Charges and Expenses incurred by the law firm of Latham & Watkins in the defense of Benjamin Gordon in the Pottash Action, in the Ability Action, and for the Gordon Subpoena; and

E. $9,655.76 for covered Costs, Charges and Expenses incurred by Discovia, a vendor retained by Latham & Watkins in its defense of Benjamin Gordon.

30. Therefore, all of the expenses paid for by the Policy limits were incurred in the defense of Benjamin Gordon, for the benefit of Benjamin Gordon in the Cambridge Matters, and partly in the defense of other Insureds under the Policy.

31. As such, it is Beazley's position that all proceeds of the Policy properly were paid pursuant to the Policy's 60 Day Advancement Endorsement toward covered Costs, Charges and Expenses incurred for the defense of Benjamin Gordon and other Insureds.

32. Gordon contends that certain parties inappropriately benefitted from the Policy limits. However, Gordon has been unable to identify any party that inappropriately benefitted from the Policy because, as stated above, the Policy limits were exhausted pursuant to the 60 Day Advancement Endorsement almost entirely for the defense of Gordon, and partly for the defense of the other Insured individuals named as defendants in the Levy Action.

33. Gordon reaped the benefits of the $2 million Policy limits, which were exhausted in his defense for the Cambridge Matters described above. Gordon would be responsible

personally for such defense payments had the Policy not made such defense payments for Gordon's benefit.

34. Therefore, the Policy limits went toward paying defense invoices that Gordon was legally responsible for and would have had to pay anyway had the Policy not covered such Loss.

35. There is no evidence that any of the proceeds of the Policy were paid without diligence by Beazley. In fact, Beazley allocated certain defense fees incurred by DLA Piper on behalf of non-insured parties to non-covered loss, and requested that Latham & Watkins send red-lined versions of its original invoices so as to omit any time entries for work performed with respect to non-covered matters or on behalf of non-covered parties.

36. Moreover, Gordon never raised any issues regarding defense payments with his lawyers or with Cambridge or Ability, until the Policy was appropriately exhausted and Gordon became responsible for his own remaining defense payments and potential awards resulting from the Cambridge Matters.

37. Gordon further asserts that exhausting the Policy limits was in Beazley's best interest and to the detriment of Gordon. However, Beazley spent the entire $2 million Policy limits, the totality of its exposure under the Policy, for the defense of its Insureds. Therefore, how Beazley benefitted from exhausting the Policy when it spent the entirety of its limits, remains a mystery.

38. Beazley accepted coverage for the defense of Gordon specifically so that Gordon would be provided with a defense for the Claims made against him and so that Gordon's defense counsel could pursue all avenues of potential resolution, including settlement. Therefore, the contention that Beazley should have withheld payment to the defense law firms tasked with defending Gordon in the Cambridge Matters, apparently to use that money for hypothetical settlements, is also unfounded.

39. The Policy benefits expended to defend the Claims were expenses that Gordon had incurred and was continuing to incur, and would thus have been responsible for had the limits been exhausted in a settlement. In short, the Policy limits directly benefitted Gordon regardless of the fact that they were spent on his defense as opposed to a potential, hypothetical settlement.

40. Furthermore, the Policy benefits were expended in accord with Beazley's obligations under the terms and conditions of the Policy, including the 60 Day Advancement Endorsement and the Order of Payments Provision

41. Beazley also kept Gordon and all of the Insureds apprised at all times of the coverage positions and coverage issues as they arose in connection with the Cambridge Matters, through communications and correspondence, including, but not limited to, letters dated May 27, 2015, November 20, 2015, June 19, 2017, July 17, 2017, and November 13, 2017.

## THE POLICY

42. Beazley issued Directors, Officers and Company Liability Policy, Policy No. V14969130101 to Cambridge Capital Acquisition Corporation, for the Policy Period of December 18, 2013 to December 28, 2015 (the "Policy"). The Policy provides coverage for Claims made during the Policy Period and timely reported, and reflected a $2 million aggregate Limit of Liability subject to a $350,000 per Claim Retention. The Insured, and not Beazley, had the duty to defend all Claims. *A copy of the Policy is attached herein as **Exhibit "E"** and is fully incorporated herein.*

43. The Policy provides in pertinent part as follows:

### 60 Day Advancement

This endorsement modifies insurance provided under the following:

**DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause IV.B.4 is deleted and replaced with the following:

4. With respect to Insuring Clause I.B., if the **Company** is permitted or required by law or pursuant to the by-laws or other organizational documents of the **Company** to indemnify the **Directors and Officers** for any **Loss**, or to advance **Costs, Charges and Expenses** becoming due and payable other than for reasons of Financial Impairment, the Insurer shall pay **Loss** or advance **Costs, Charges and Expenses**, on behalf of the **Directors and Officers** without regard to the Retention, but the **Company** shall reimburse the Insurer for such amounts up to the Retention applicable to Insuring Clause I.B. as set forth in Item 4. of the Declarations.

****

**I. INSURING CLAUSES**

****

B. The Insurer shall pay on behalf of the **Company** all loss which the **Company** is required or permitted to pay as indemnification to any of the **Directors and Officers** resulting from any Claim first made against **Directors and Officers** during the **Policy Period** for a **Wrongful Act** provided such **Claim** is reported in writing to the Insurer as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

****

**II. DEFINITIONS**

****

**E. "Costs, Charges and Expenses"** means reasonable and necessary legal fees and expenses to which the Insurer consents and which are incurred by or on behalf of the Insured in defending, settling, appealing or investigating any **Claim** and the cost of appeal, attachment or similar bonds, but shall not include:

   1. salaries, regular or overtime wages, fees or benefit expenses associated with directors, officers, or employees of the **Company** of the **Company's** overhead expenses; or

2. any amounts incurred in defense of any **Claim** for which any other insurer has a duty to defend.

\*\*\*\*

**K. "Loss"** means the amounts which the **Insureds** become legally obligated to pay on account of a **Claim**, including:

1. damages, judgments, including pre and post-judgment interest, settlements, and **Costs, Charges and Expenses**, punitive, exemplary and multiplied damages where the applicable law allows coverage for punitive, exemplary or multiplied damages, incurred by any of the **Insureds**…

\*\*\*\*

**V. SETTLEMENT AND DEFENSE**

A. It shall be the duty of the Insureds and not the duty of the Insurer to defend **Claims**, including the investigation and evaluation of any **Shareholder Derivative Demand**. The Insurer shall have the right and shall be given the opportunity to effectively associate with the Insureds in the investigation, defense and settlement of any **Claim** that appears reasonably likely to be covered in whole or in part hereunder.

B. The **Insureds** shall not settle any **Claim**, select any defense counsel, incur any **Costs, Charges and Expenses**, admit or assume any liability, stipulate to any judgment or otherwise assume any contractual obligation without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for settlement, **Costs, Charges and Expenses**, assumed obligation, admission or stipulated judgment to which it has not consented or for which the **Insureds** are not legally obligated. The **Insureds** shall not knowingly take any action which increases the Insurer's exposure for **Loss** under this Policy. Notwithstanding any of the foregoing, if all **Insureds** are able to fully and finally dispose, with prejudice, all **Claims** that are subject to one Retention for an amount not exceeding any applicable Retention, including **Costs, Charges and Expenses**, then the Insurer's consent shall not be required for such disposition.

44. The Policy provides that the Insureds are responsible for the defense of Claims and the Insurer is responsible for covered Loss, which includes Costs, Charges and Expenses.

Therefore, Beazley did not undertake the defense of the of the Insureds. The Policy merely obligated Beazley to indemnify the Insured, Cambridge, for Loss, including Costs, Charges and Expenses, which are defined in the pertinent part as "reasonable and necessary legal fees and expenses to which the Insurer consents and which are incurred by or on behalf of the Insureds in defending, settling, appealing or investigating any Claim." This is exactly what the Policy limits paid for in this matter.

45. The Policy does not give the Insureds the right to choose where the payments under the Policy are directed. Moreover, at no time did Gordon object to Beazley paying the invoices for his defense, direct Beazley as to which invoices to pay, or assert that any of the invoices were inappropriately billed.

46. At no point did Gordon ever assert that he was not reaping the benefits of the payments for his defense for which his defense law firms continually made demands on Beazley, until he was faced with paying defense invoices himself following exhaustion of the Policy.

47. Moreover, the Policy's Order of Payments provision required Beazley to pay Loss in the order in which Loss is incurred, which is exactly what Beazley did for the Cambridge Matters.

48. Gordon has sent Beazley two letters dated April 17, 2018 and June 14, 2018, respectively, asserting that Beazley acted in bad faith. Beazley denies any and all allegations of bad faith and asserts that it acted in the utmost good faith in the handling of the Cambridge Matters. Therefore, a case or controversy exists and has existed between the parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

**COUNT I – DECLARATORY RELIEF**

49. Beazley incorporates by reference and restates paragraphs 1-48 as if fully stated herein.

50. It is Beazley's position that it acted in good faith in the handling of the Claims against Gordon.

51. It is Beazley's position that it kept Gordon advised in all fundamental respects in the handling of these Claims.

52. It is Beazley's position that Policy limits were properly expended pursuant to the Policy's 60 Day Advancement Endorsement for the payment of covered Costs, Charges and Expenses incurred in the defense of Gordon and other Insureds under the Policy.

53. It is Beazley's position that the Policy limits benefitted Gordon because they were expended for the defense of Gordon in the Cambridge Matters brought against him as a Director and Officer of Cambridge.

54. It is Beazley's position that Gordon would be legally responsible for the defense payments made on his behalf by Beazley had Beazley withheld such payments.

55. It is Beazley's position that Cambridge was responsible for the defense of Gordon and that Beazley properly advanced payment pursuant to the Policy's 60 Day Advancement Endorsement for the covered Costs, Charges and Expenses on behalf of Gordon.

56. Beazley seeks a declaration from the Court that Beazley properly and fully discharged its obligations of good faith in the handling of the subject Claims, and that Beazley is without liability for any amount over and above the Policy limits, which have been exhausted.

57. There is a bona fide, present, practical need for the declaration.

58. The declaration pertains to a present, ascertainable set of facts and controversy amongst the parties.

59. Beazley's rights under the Policy are dependent upon the present, ascertainable facts and law and the Court's application thereof to the Policy and such facts.

60. Gordon has a present, antagonistic interest to Beazley under the Policy and subject matter of this action, either in fact or law.

61. The relief sought by Beazley is not merely for the purpose of obtaining legal advice from the Court or the answers to questions propounded out of curiosity.

WHEREFORE, BEAZLEY INSURANCE COMPANY, INC. requests final declaratory judgment in its favor:

    A. Declaring Beazley discharged its obligations under its Policy of insurance and applicable law in good faith with due regard for its Insured's best interests with respect to the Claims made against Cambridge Capital Acquisition Corp. and Benjamin Gordon.

    B. Declaring Beazley to be without liability to Benjamin Gordon for any amount over and above the limits of the Policy, which have been exhausted.

    C. Declaring Benjamin Gordon takes nothing by this action;

    D. For costs; and

    E. Further and additional relief as this Honorable Court deems just and proper.

Dated: July 2, 2018

Respectfully submitted,

/s/Rory Eric Jurman
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Steven S. Cula
Fla. Bar No. 1002949
Email: scula@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone:    (954) 377-8100
Facsimile:     (954) 377-8101
***Attorneys for Plaintiff, Beazley Insurance Company, Inc.***