**IN THE CIRCUIT COURT OF THE 15TH**
**JUDICIAL CIRCUIT, IN AND FOR**
**PALM BEACH COUNTY, FLORIDA**

BRIAN LEVY, on Behalf of Himself and All ⠀)
Others Similarly Situated, ⠀)
⠀)⠀Case No. 2015CA003339
⠀⠀⠀⠀⠀Plaintiff, ⠀)
⠀)
⠀⠀vs. ⠀)⠀**Jury Trial Demanded**
⠀)
BENJAMIN GORDON, MITCHELL I. ⠀)
GORDON, MICHAEL DURHAM, NATHAN ⠀)⠀**CLASS REPRESENTATION**
GANTCHER, SCOTT LAURANS, AND ⠀)
CAMBRIDGE HOLDCO CORP., ⠀)
⠀)
⠀⠀⠀⠀⠀Defendants, ⠀)
⠀)
⠀⠀⠀and ⠀)
⠀)
CAMBRIDGE CAPITAL ACQUISITION CORP. )
AND ABILITY, INC., ⠀)
⠀)
⠀⠀⠀Nominal Defendants. )

## VERIFIED THIRD AMENDED CLASS ACTION AND DERIVATIVE COMPLAINT

⠀⠀⠀Plaintiff, by his attorneys, alleges as and for his third amended class action and derivative

complaint, upon personal knowledge as to himself and his own acts, and as to all other matters

upon information and belief:

### NATURE OF THE ACTION

⠀⠀⠀1.⠀⠀This is a shareholder class action brought by Plaintiff on behalf of himself and the

other former public holders of Cambridge Capital Acquisition Corp. ("Cambridge" or the

"Company") common stock against the members of Cambridge's board of directors Benjamin

Gordon, Mitchell I. Gordon, Michael Durham, Nathan Gantcher, and Scott Laurans (collectively

the "Board" or the "Individual Defendants"), Cambridge's wholly-owned subsidiary, and

1

Exhibit A

Cambridge Holdco Corp., which has since been renamed "Ability, Inc." ("Holdco" or "Ability").

It is also a derivative action brought on behalf of Cambridge and/or Ability (the "Action").

2.       The Action arises from Defendants' conduct in causing Cambridge, a publicly held Delaware company with a $100 million market capitalization, to agree to an *ultra vires* business combination with Ability Computer & Software Industries, Ltd. ("ACSI"), a small company with only two shareholders (Anatoly Hurgin and Alexander Aurovsky) and to transfer majority control of the surviving company, Ability, an off-shore Cayman Islands company, to Hurgin and Aurovsky.[1]  As alleged herein, the Merger enriches the Individual Defendants, who would have personally lost over $20 million had it not been consummated, but is not in the best interests of Cambridge shareholders because it grossly overvalues ACSI and was consummated after June 23, 2015, in violation of Cambridge's Certificate of Incorporation (the "Certificate" or "Charter"), which required Cambridge to complete the merger by June 23, 2015 (the "Merger Deadline"), or liquidate.[2]  As further alleged herein, the merger is detrimental to Cambridge shareholders because:

- the public shareholders of Cambridge now own less than 25 percent of the surviving company (Ability), while ACSI's shareholders own 66% and have majority control, despite the fact that prior to the Merger Cambridge

---

[1] The *ultra vires* transaction was structured in two steps.  In step one, Cambridge was merged with and into Holdco, a company organized under the laws of the Cayman Islands, which survived the merger and was renamed "Ability, Inc."  As part of step one, Cambridge shareholders received one share of Ability, Inc. for each of their Cambridge shares.  In step two, Ability, Inc., acquired all of the outstanding stock of ACSI in exchange for $18,150,000 in cash and 17,173,267 shares of Ability, Inc., plus the obligation to issue an additional 8,450,000 shares of Ability, Inc. to Hurgin and Aurovsky should Ability, Inc. meet certain future performance targets.  These transactions are referred to herein collectively as "the Merger."

[2] Under the terms of Cambridge's Certificate, a copy of which is annexed hereto as Exhibit 1, and as described in the Registration Statement that Cambridge filed in connection with its Initial Public Offering (the pertinent portion of which is annexed hereto as Exhibit 2), Cambridge was required to, with one exception that is not applicable here, either (1) *consummate* a business combination *by June 23, 2015* or (2) *liquidate* and distribute the remaining proceeds of the IPO to shareholders *pro rata* per share.

had a market capitalization of $100 million, or over seven times the amount of ACSI's purported shareholders' equity of $13.5 million;

- the surviving company (Ability) was organized under the laws of the Cayman Islands, which provides only limited protections for shareholders, in order to insulate the directors of Ability, including Defendants Benjamin Gordon and Mitchell Gordon, from liability to shareholders;

- the Individual Defendants caused Cambridge to grossly overpay for ACSI --- agreeing to give its two shareholders approximately *$191 million* in cash and stock for a company with only 12 full-time employees, that *lost money* in 2013 and that earned only a tiny profit ($3.1 million) in 2014, the year before the Merger;

- the Individual Defendants caused Cambridge to agree to pay a further $900,000 to associates of ACSI's two shareholders in connection with the Merger;

- the Individual Defendants permitted the shareholders of ACSI, after the execution of the Merger Agreement, to "dividend out" to themselves $11 million in cash comprising virtually all of ACSI's cash on hand (as of December 31, 2014), thereby further reducing the value of ACSI to Cambridge shareholders;

- the Individual Defendants induced Cambridge shareholders to vote for the Merger by misrepresenting ACSI's historical financial results, by materially overstating its revenues and net income, by misrepresenting the deadline for completing the Merger, and by concealing the conflicts of interest of those promoting the Merger;

- the price of the stock of the surviving Cayman Island company (Ability) has plummeted since the Merger from $10.10 per share to as low as $2.70 per share (at a time when the stock market has reached an all-time high) resulting in shareholder losses of over $40 million.

3.     The ACSI shareholders were able to extract such a lucrative, one-sided deal for themselves (and to the detriment of Cambridge's public shareholders) because each of the Individual Defendants put their personal financial interest in consummating a merger --- to prevent, among other things, their investment in Cambridge (of over $1.4 million) and their stock in Cambridge, valued at over $20 million,[3] from becoming worthless --- ahead of their fiduciary

---

[3] According to the Defendants, the Individual Defendants' shares had an aggregate market

duty to the public shareholders.  Unlike the stock held by the public, the stock held by the Individual Defendants would have become worthless if Cambridge had liquidated on June 23, 2015, as required by its Charter, because the Individual Defendants' stock (the "Insider Shares") lacked redemption rights.  In addition, $350,000.00 worth of personal loans made by Defendant Benjamin Gordon to Cambridge would have become uncollectible and expenses incurred by Benjamin Gordon and his affiliates in the amount of $298,169 would not have been reimbursed if Cambridge had liquidated.  If that were not personal incentive enough to approve a deal with ACSI --- even a deal that harmed Cambridge shareholders --- the ACSI shareholders also promised Benjamin Gordon and Mitchell Gordon directorships (and director's fees) in the surviving company, despite their lack of experience in ACSI's industry, the "hacking industry."  Thus, each of Cambridge's directors had a very substantial and material pecuniary self-interest in causing Cambridge to enter into a business combination with ACSI – one that grossly overvalued ACSI (and undervalued Cambridge) and that is not authorized by Cambridge's Certificate – rather than liquidate.

4.     Further compounding their breaches of fiduciary duty, each of the Individual Defendants misrepresented or concealed material information regarding the financial condition of ACSI, the deadline for completing the Merger and the conflicts of interest of those promoting the Merger in the proxy statement (the "Definitive Proxy Statement") that they caused to be filed with the SEC on or about December 2, 2015, and distributed to shareholders with their recommendation that shareholders vote in favor of the Merger.[4]

---

value of $20,286,000 based upon the closing price of $10.08 per share on Nasdaq on November 24, 2015.

[4]Pursuant to Rule 1.130(a), Plaintiff incorporates the Proxy Statement herein by reference for the limited purpose of Plaintiff's nondisclosure claims, Counts 3 and 7.  Plaintiff otherwise disputes the truth and admissibility of the statements contained in the Proxy Statement, which are

5.      This Action seeks to hold the Individual Defendants accountable for their breaches of fiduciary duty and Cambridge's *ultra vires* actions and seeks, among other relief, the disgorgement of over $20 million of ill-gotten gains that have unjustly accrued to the Individual Defendants and/or their affiliates.

## JURISDICTION

6.      This Court has jurisdiction over this action because, at all relevant times, Cambridge was a publicly traded corporation headquartered in this State and because the improper conduct alleged in this Complaint occurred in and/or was directed at Florida.  Additionally, the Court has jurisdiction over each of the Defendants because, as alleged herein, their wrongful conduct challenged in this Complaint was directed at, and intended to have its primary effect in, this State.

7.      Venue is proper in this Court pursuant to Florida Statutes §§ 47.011 and 47.051 since, at all relevant times, Cambridge's principal place of business was located in Palm Beach County, and the Defendants' wrongful acts were principally performed in or directed at Palm Beach County.

8.      This action challenges the internal affairs or governance of Cambridge and hence is not removable to Federal Court under the Class Action Fairness Act of 2005 or the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f).  Plaintiff expressly disclaims and does not assert any claims that are removable to the federal courts under either act.

---

unsworn, self-serving hearsay to the extent that Plaintiff does not submit them as admissions against the Defendants.

## PARTIES

9.      Plaintiff Brian Levy owned shares of Cambridge common stock at all relevant times, including at the time of the transactions complained of and at the time of the filing of this Action, and owned such shares continuously until such shares were exchanged for a like number of shares of Ability in connection with the Merger (the "Share Exchange"), and has owned such shares of Ability continuously since the Share Exchange.

10.     At all relevant times, Nominal Defendant Cambridge was a corporation incorporated under the laws of the State of Delaware and headquartered at 525 South Flagler Drive, Suite 201, West Palm Beach, Florida.

11.     At all relevant times, the stock of Cambridge was publicly traded.

12.     At all relevant times, 8,050,000 shares of Cambridge common stock were owned by the public, including by one or more residents of this State and members of the Class.

13.     This Court has jurisdiction over Cambridge because, at all relevant times, it was headquartered in this state and because the wrongful actions challenged in this Complaint were directed at and/or intended to have their primary effect in this state.

14.     Defendant Benjamin Gordon has served as chief executive officer and a director of Cambridge at all relevant times.

15.     At all relevant times, Benjamin Gordon is and was a director of Ability.

16.     Prior to the Share Exchange, Benjamin Gordon was the beneficial owner of 60,483 shares of Cambridge common stock most of which Cambridge issued in October 2013, for approximately *one cent* per share. In addition, The Gordon Family 2007 Trust (the "Gordon Trust"), a trust established for the benefit of Benjamin Gordon's family, owned 1,582,413 shares

of Cambridge common stock most of which Cambridge issued to the Gordon Trust in October 2013, for approximately one cent per share.

17.     On June 23, 2015, the Merger Deadline, Benjamin Gordon's shares of Cambridge were worth over $600,000 and the shares owned by the Gordon Trust were worth over $15.8 million based on the NASDAQ closing price of Cambridge stock on that date.

18.     Benjamin Gordon's shares and the shares owned by the Gordon Trust are Insider Shares that would have become worthless if Cambridge had ceased operations and liquidated on June 23, 2015, as required by its Certificate.

19.     If Cambridge had ceased operations and liquidated on June 23, 2015, certain unsecured loans from Benjamin Gordon to Cambridge in the aggregate amount of $350,000 would have become worthless.

20.     If Cambridge had ceased operations and liquidated on June 23, 2015, certain expenses incurred by Benjamin Gordon and/or his affiliates in the amount of $298,169 would not have been reimbursed.

21.     If Cambridge had ceased operations and liquidated on June 23, 2015, Benjamin Gordon would not have gained a position on the board of directors of Ability (and would not have been entitled to receive annual director's fees of over $60,000).

22.     If Cambridge had liquidated on June 23, 2015, and if there were insufficient funds to pay the costs associated with the liquidation, Benjamin Gordon would have been personally liable to advance Cambridge the funds necessary to complete the liquidation.

23.     Benjamin Gordon had a material financial interest in the Merger that was not shared by the public shareholders of Cambridge because failure to consummate the Merger would have resulted in (a) his Insider Shares (valued at over $600,000.00) and the Gordon Trust's Insider

Shares (valued at over $15.8 million) becoming worthless; (b) his loans to Cambridge (in the amount of $350,000) becoming worthless; (c) his expenses and/or the expenses of his affiliates in the amount of $298,169 would not have been reimbursed; (d) his loss of director's fees (of at least $60,000 per annum); and (e) his potential personal liability for the costs of liquidating Cambridge. These financial consequences are material to Benjamin Gordon given his economic circumstances.

24.     This Court has jurisdiction over Benjamin Gordon because he is a Florida resident, Cambridge was headquartered in Florida at all relevant times, and many of Benjamin Gordon's actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, Florida.

25.     Defendant Mitchell I. Gordon has served as President, Chief Financial Officer ("CFO") and as a director of the Cambridge at all relevant times.

26.     At all relevant times, Mitchell Gordon is and was a director of Ability.

27.     Prior to the Share Exchange, Mitchell Gordon was the beneficial owner of 87,716 shares of Cambridge common stock.

28.     Mitchell Gordon acquired 60,000 shares of Cambridge common stock from affiliates of Benjamin Gordon in October 2013, for approximately *one cent* per share, or $600 in total.

29.     Mitchell Gordon acquired 27,716 shares of Cambridge common stock in December 2013 for $10 per share, or $277,160 in total.

30.     On June 23, 2015, the Merger Deadline, Mitchell Gordon's shares of Cambridge were worth over $870,000 based on the NASDAQ closing price of Cambridge stock on that date.

31.     Mitchell Gordon's shares are Insider Shares that would have become worthless if Cambridge had ceased operations and liquidated on June 23, 2015, as required by its Certificate.

32.     If Cambridge had ceased operations and liquidated on June 23, 2015, Mitchell Gordon would not have gained a position on the board of directors of the surviving company (and would not have been entitled to receive annual director's fees of over $60,000).

33.     If Cambridge had liquidated on June 23, 2015, and if there were insufficient funds to pay the costs associated with the liquidation, Mitchell Gordon would have been personally liable to advance Cambridge the funds necessary to complete the liquidation.

34.     Mitchell Gordon had a material financial interest in the Merger that was not shared by the public shareholders of Cambridge because failure to consummate the Merger would have resulted in (a) the loss of his investment in Cambridge (at least $277,160); (b) his Insider Shares (valued at over $877,000.00) becoming worthless; (c) the loss of director's fees (of at least $60,000 per annum); and (d) his potential personal liability for the costs of liquidating Cambridge.  These financial consequences are material to Mitchell Gordon given his economic circumstances.

35.     This Court has jurisdiction over Mitchell Gordon because Cambridge was headquartered in Florida at all relevant times and many of Mitchell Gordon's actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, Florida.

36.     Defendant Michael Durham ("Durham") served as a director of Cambridge at all relevant times.

37.     Prior to the Share Exchange, Durham was the beneficial owner of 62,173 shares of Cambridge common stock.

38.     Durham acquired 40,000 shares of Cambridge common stock from affiliates of Benjamin Gordon in October 2013, for approximately *one cent* per share, or $400 in total.

9

39.     Durham acquired 22,173 shares of Cambridge common stock in December 2013 for $10 per share, or $221,730 in total.

40.     On June 23, 2015, the Merger Deadline, Durham's shares of Cambridge were worth over $620,000 based on the NASDAQ closing price of Cambridge stock on that date.

41.     Durham's shares are Insider Shares that would have become worthless if Cambridge had ceased operations and liquidated on June 23, 2015, as required by its Certificate.

42.     Durham had a material financial interest in the Merger that was not shared by the public shareholders of Cambridge because failure to consummate the Merger would have resulted in: (a) the loss of his investment in Cambridge (at least $221,730); and (b) his Insider Shares (valued at over $621,000.00) becoming worthless.  These losses are material to Durham given his economic circumstances.

43.     This Court has jurisdiction over Mr. Durham because Cambridge was headquartered in Florida at all relevant times and many of Mr. Durham's actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, Florida.

44.     Defendant Nathan Gantcher ("Gantcher") served as a director of Cambridge at all relevant times.

45.     Prior to the Share Exchange, Gantcher was the beneficial owner of 104,346 shares of Cambridge common stock.

46.     Gantcher acquired 60,000 shares of Cambridge common stock from affiliates of Benjamin Gordon in October 2013, for approximately *one cent* per share, or $600 in total.

47.     Gantcher acquired 44,346 shares of Cambridge common stock in December 2013 for $10 per share, or $443,460 in total.

48.     On June 23, 2015, the Merger Deadline, Gantcher's shares of Cambridge were worth over $1 million based on the NASDAQ closing price of Cambridge stock on that date.

49.     Gantcher's shares are Insider Shares that would have become worthless if Cambridge had ceased operations and liquidated on June 23, 2015, as required by its Certificate.

50.     Gantcher had a material financial interest in the Merger that was not shared by the public shareholders of Cambridge because failure to consummate the Merger would have resulted in: (a) the loss of his investment in Cambridge (at least $443,460); and (b) his Insider Shares (valued at over $1 million) becoming worthless.  These financial consequences are material to Gantcher given his economic circumstances.

51.     This Court has jurisdiction over Mr. Gantcher because he is a Florida resident, Cambridge was headquartered in Florida at all relevant times and many of Mr. Gantcher's actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, Florida.

52.     Defendant Scott Laurans ("Mr. Laurans") served as a director of Cambridge at all relevant times.

53.     Prior to the Share Exchange, Laurans was the beneficial owner of 104,346 shares of Cambridge common stock.

54.     Laurans acquired 60,000 shares of Cambridge common stock from affiliates of Benjamin Gordon in October 2013, for approximately one cent per share, or $600 in total.

55.     Laurans acquired 44,346 shares of Cambridge common stock in December 2013 for $10 per share, or $443,460 in total.

56.     On June 23, 2015, the Merger Deadline, the shares were worth over $1 million based on the NASDAQ closing price of Cambridge stock on that date.

57.     Laurans' shares are Insider Shares that would have become worthless if Cambridge had ceased operations and liquidated on June 23, 2015, as required by its Certificate.

58.     Laurans had a material financial interest in the Merger that was not shared by the public shareholders of Cambridge because failure to consummate the Merger would have resulted in: (a) the loss of his investment in Cambridge (at least $443,460); and (b) his Insider Shares (valued at over $1 million) becoming worthless.  These losses are material to Laurans given his economic circumstances.

59.     This Court has jurisdiction over Mr. Laurans because Cambridge was headquartered in Florida at all relevant times and many of Mr. Laurans' actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, Florida.

60.     Prior to December 23, 2015, Non-party ASCI was a privately owned company.

61.     At all relevant times prior to December 23, 2015, all of the stock of Non-party ACSI was owned by Anatoly Hurgin and Alexander Aurovsky.

62.     At all relevant times, Defendant Holdco was a wholly-owned subsidiary of Cambridge.  Holdco was incorporated under the laws of the Cayman Islands on September 1, 2015. At all relevant times, Holdco's principal executive office was located at 525 South Flagler Drive, Suite 201, West Palm Beach, FL 33401.

63.     Holdco has been renamed Ability, Inc.

64.     Holdco and Ability are one and the same entity.

65.     This Court has jurisdiction over Holdco, now known as Ability, Inc., because, at all relevant times, its principal executive office was located in Florida and many of its actions

12

challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in, Florida.

66.     Each Defendant herein is sued individually.  The Individual Defendants are also sued in their capacity as directors of Cambridge.  The liability of each Defendant arises from the fact that they have engaged in, or aided and abetted, all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

67.     Under applicable statutory and common law, the directors of a publicly held company such as Cambridge have fiduciary duties of care, good faith and loyalty, and are liable to Cambridge and its shareholders for breaches thereof.  Each Individual Defendant owed and owes Cambridge and its shareholders fiduciary obligations and were and are required to: (a) act in the best interests of Cambridge and its shareholders, instead of in their own personal financial interests; (b) use their ability to control and manage Cambridge in a fair, just and equitable manner; (c) refrain from abusing their positions of control; and (d) not favor their own personal interests at the expense of Cambridge and its public shareholders.  Further, where it appears that a director has obtained personal benefits from a transaction involving the Company, and the transaction is drawn into question as between him and the shareholders of the Company, the burden is upon the director or officer to show that the transaction has been fair, open and in the utmost good faith.

68.     Here, the Individual Defendants breached their fiduciary duties to Cambridge and its public shareholders by acting to cause or facilitate the Merger.  The Merger with ACSI is not in the best interest of Cambridge or its public shareholders but is in the best interests of the Individual Defendants.

69.     Because the Individual Defendants are not disinterested and have personally benefitted from the Merger, the burden of proving the inherent or entire fairness of the Merger, including the process by which the Merger was reached and the fairness of each of its terms is borne by them as a matter of law.

## CLASS REPRESENTATION ALLEGATIONS

70.     Plaintiff brings this action as a class action pursuant to Rule 1.220(a) and (b)(3) of the Florida Rules of Civil Procedure on behalf of himself and a Class (the "Class") consisting of all shareholders who owned, of record or beneficially, common stock of Cambridge Capital Acquisition Corporation on June 23, 2015, or on September 8, 2015, or on or after December 2, 2015, and whose stock was exchanged for ordinary shares of Cambridge Holdco Corp. (renamed Ability, Inc.), upon closing of the merger of Cambridge Capital Acquisition Corp. into Cambridge Holdco Corp. (renamed Ability, Inc.).  Excluded from the Class are (a) Defendants, (b) Anatoly Hurgin and Alexander Aurovsky, (c) EarlyBirdCapital Inc., (d) The Gordon Family 2007 Trust, Gantcher Family Limited Partnership, Sidney Brown, David Brodsky, Herb Shear, Bob Hammel, Jonathan Morris, Elliott Brodsky, Alex 2012 Trust, Ramon Suazo, Raymond Avon Ventures, LLC and Jonathan Meeks, (e) Dr. Carter Pottash, (f) the immediate families, heirs and assigns of the foregoing and (g) all class members. who file a timely request to opt out of the Class.

71.     The members of the Class are so numerous that separate joinder of each member would be impracticable.  While the exact number of Class members is unknown to Plaintiff, and can be ascertained only through appropriate discovery, Plaintiff believes there are many hundreds, if not thousands, of Class members.  As of June, September, November and December, 2015 (prior to the Share Exchange), Cambridge had over 10 million shares of common stock outstanding, of which approximately 8,050,000 shares were held by members of the public and approximately 5.9

14

million shares were held by members of the Class.  Between June 23, 2015 and December 2, 2015, fewer than 1.1 million publicly held shares of Cambridge (out of over 8 million) were traded.  As of November 25, 2015, Cambridge had in excess of 300 shareholders and in excess of 300 members of the Class.  Record owners and other members of the Class may be identified from records maintained by Ability or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in similar class actions, using the same process that Defendants used to mail the Definitive Proxy Statement to Cambridge shareholders.

72.     Plaintiff's claims or defenses raise questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class.  The predominant questions of law and fact include, among others, whether:

(a)     the Individual Defendants have breached their fiduciary duties to Cambridge's shareholders;

(b)     the Individual Defendants breached their fiduciary duties to Cambridge's shareholders by not liquidating Cambridge as required by its Charter;

(c)     the Individual Defendants breached their fiduciary duties to Cambridge's shareholders by agreeing to a grossly unfair (to Cambridge shareholders) merger with ACSI that was the product of director self-interest;

(d)     the Individual Defendants breached their fiduciary duties to Cambridge's shareholders by disseminating a false and misleading Definitive Proxy Statement that, inter alia, misrepresented the earnings of ACSI and omitted material information regarding the promoters of the Merger.

(e)     the Definitive Proxy Statement contained untrue statements of material fact or omitted material facts required to be stated therein or necessary to make the statements therein not misleading.

(f)     the Individual Defendants put their personal financial interests in the Merger of over $20 million (as alleged herein) ahead of the best interests of the shareholders;

(g)      the Individual Defendants overvalued ACSI and undervalued Cambridge;

(h)     the Merger was consummated in violation of the Certificate and is *ultra vires* and void;

(i)     the Individual Defendants misrepresented ACSI's historical financial results and the Merger Deadline in the Definitive Proxy Statement;

(j)     the Definitive Proxy Statement omits or misrepresents material information regarding the Merger;

(k)     the economic interests or voting rights of Plaintiff and the Class have been impaired by the acts and omissions of the Individual Defendants;

(l)     the Individual Defendants are required to disgorge their ill-gotten gains from the Merger and the amount that each is required to disgorge;

(m)     the Class has been damaged and the extent to which members of the Class have sustained damages, and what is the proper measure of those damages.

73.     Plaintiff's claims or defenses are typical of the claims or defenses of each member of the Class.  Like every other member of the Class, Plaintiff was a shareholder of Cambridge whose Cambridge shares were exchanged for shares of Ability in connection with the combination of Cambridge and ACSI.  Plaintiff and each of the other members of the Class had no duty to sell, convert or otherwise dispose of their Cambridge shares prior to the Share Exchange.  Plaintiff's

claims and the claims of each member of the Class arise out of the same course of conduct (i.e., the events leading to the Merger and the Share Exchange) and are based on the same legal theories: breach of fiduciary duty by the Individual Defendants.  The Individual Defendants owe the same fiduciary duties of care and loyalty to each shareholder.  The Individual Defendants also have an absolute duty to provide Plaintiff and each of the other members of the Class with a Definitive Proxy Statement that was not false, misleading or incomplete.  A breach of any of these fiduciary duties as to Plaintiff is a breach of fiduciary duty as to all of the members of the Class.  Reliance is not an element of Plaintiff's claim or the claim of any other member of the Class.  All members of the Class have been damaged by Defendants' actions and/or are entitled to share in any monies that the Defendants are required to disgorge, regardless of whether they voted "For" or "Against" the Merger.

74.     Plaintiff has and can fairly and adequately protect and represent the interests of each member of the Class.  Plaintiff has prior experience with class action litigation, has taken an active role in the case and has appeared for his deposition.  Plaintiff is committed to the vigorous prosecution of this action, has acknowledged his fiduciary duty to the Class, and has retained counsel competent and experienced in this type of litigation.  Neither Plaintiff nor his counsel have any interests that are antagonistic to the interests of the Class at large.

75.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  The questions of law or fact common to the claims or defenses of Plaintiff and the claims or defenses of each member of the Class predominate over any question of law or fact affecting only individual members of the Class.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members

of the Class to individually redress the wrongs done to them. No member of the Class has expressed any objection to concentrating the litigation in this Court. No other member of the Class has expressed any interest in controlling this action. Plaintiff anticipates that there will be no difficulty in the management of this litigation as a class action. Plaintiff is aware of no other pending class action litigation against all of the Individual Defendants or that seeks the adjudication of the state-law breach of fiduciary duty claims alleged herein.

## DERIVATIVE ALLEGATIONS

76.     Plaintiff also brings this action as a derivative action on behalf of, and for the benefit of, Cambridge and/or Ability.

77.     Plaintiff has been a shareholder of Cambridge at all relevant times, including at the time of the transactions complained of and at the time of the filing of this Action.

78.     Plaintiff will (and is able to) fairly and adequately represent Cambridge's interests in enforcing and prosecuting its rights, and has retained competent counsel experienced in this type of litigation to prosecute this action.

79.     On or about December 23, 2015, Cambridge purported to merge into Holdco (since renamed Ability).

80.     As alleged herein, the Merger is illegal and invalid because it violates Cambridge's Certificate.

81.     Because the Merger is illegal and invalid, Cambridge's assets and liabilities, including Plaintiff's derivative claims on behalf of Cambridge, did not pass to, and become vested in Ability, and Plaintiff was not legally divested of his shares of Cambridge.

82.    Alternatively, if the Merger was legal and valid (which is denied), Cambridge's assets and liabilities, including Plaintiff's derivative claims on behalf of Cambridge, passed to, and became vested in Ability.

83.    As a continuous shareholder of Ability at all relevant times, Plaintiff is entitled to maintain the derivative claims against the Individual Defendants on behalf of Ability.

84.    As a continuous shareholder of Ability whose shares devolved upon Plaintiff by operation of law, Plaintiff is entitled to maintain the derivative claims against the Individual Defendants on behalf of Ability.

85.    Plaintiff will (and is able to) fairly and adequately represent Ability's interests in enforcing and prosecuting its rights, and has retained competent counsel experienced in this type of litigation to prosecute this action.

**DEMAND FUTILITY**

86.    Plaintiff has not made a demand on Cambridge's board to prosecute this Action (and each of its counts) because none of the directors is disinterested with respect to the Merger and the conduct challenged herein.  As alleged, each of the Individual Defendants has a material financial interest in the Merger that is not shared by the public shareholders.  Because the Insider Shares owned by the Individual Defendants lack redemption rights (unlike the shares owned by the public which do have redemption rights on liquidation), the Individual Defendants each stood to lose *at least* $600,000, and collectively stood to lose *over $20 million,* if the Merger were not consummated and Cambridge were required to liquidate.

87.    As alleged herein, Benjamin Gordon and his affiliate, the Gordon Trust, would have lost over $16 million of Cambridge's securities beneficially owned by them if Cambridge had liquidated as required by its Charter.  In addition, Benjamin Gordon's $350,000 loan to Cambridge

would not have been repaid and the expenses incurred by Benjamin Gordon and his affiliates, in the amount of $298,169, would not have been reimbursed.  These losses of over $20 million of securities, loans and expenses are material to Benjamin Gordon.

88.     Further, each of the other Individual Defendants owned between approximately 60,000 and 100,000 shares of Cambridge common stock, worth between approximately $600,000 and $1 million that also lacked redemption rights on liquidation.  Thus, if a merger were not consummated, these shares would have been rendered worthless and the Individual Defendants would have forfeited their investments in these shares (ranging from approximately $277,000 to $443,000 as alleged herein).

89.     The loss of their investments in Cambridge and of securities worth at least $600,000 would have been material to Messrs. Mitchell Gordon, Durham, Gantcher and Laurans given the economic circumstances of each.

90.     Defendants have publicly admitted that each of the Individual Defendants has a material financial interest in the Merger.  The Proxy Statement states:

> Cambridge's current directors and executive officers own shares of common stock and warrants that will be worthless and have made loans and incurred reimbursable expenses that may not be reimbursed or repaid if the business combination is not approved.  *Such interests may have influenced their decision to approve the business combination with Ability*.

(emphasis in original).

91.     Demand on the board is, therefore, excused because all five directors of Cambridge --- Benjamin Gordon, Mitchell I. Gordon, Michael Durham, Nathan Gantcher and Scott Laurans --- are not disinterested.

92.     Demand is also excused because the Merger is *ultra vires* and cannot be ratified by the Board.

93.     Further, to the extent that Cambridge presently maintains or previously maintained officers' and directors' liability insurance coverage, that insurance would be the primary or principal source of any recovery against the Defendants, and would be rendered void if Cambridge commenced proceedings against the Individual Defendants, as these policies uniformly contain provisions which void coverage if the company brings suit in its own name.

94.     Plaintiff has not made a demand on Ability's board to prosecute this Action (and each of its counts) because a majority of the directors of Ability are not disinterested with respect to the Merger and the conduct challenged herein.

95.     On or about December 23, 2015 and at all relevant times, the board of directors of Ability consisted of Benjamin Gordon, Mitchell I. Gordon, Anatoly Hurgin, Alexander Aurovsky, Efraim Halevy and Derek Zissman.

96.     As alleged herein, each of Benjamin Gordon and Mitchell I. Gordon has a material financial interest in the Merger that is not shared by the public shareholders of Cambridge or Ability.

97.     As alleged herein, each of Anatoly Hurgin and Alexander Aurovsky has a material financial interest in the Merger, having personally received approximately $191 million in cash and stock and control of Ability that is not shared by the public shareholders of Cambridge or Ability.

98.     Demand on the Ability board (if required, which is denied) is, therefore, excused because four of the six directors of Ability --- Benjamin Gordon, Mitchell I. Gordon, Anatoly Hurgin and Alexander Aurovsky --- are not disinterested.

## SUBSTANTIVE ALLEGATIONS

A.   **The Organization and Financing of Cambridge**

99.   Cambridge was incorporated under the laws of Delaware on October 1, 2013.

100.   Cambridge was formed for the purpose of effecting a merger, capital stock exchange, asset acquisition or other similar business combination with one or more businesses or entities in accordance with, and under the terms of, its governing articles of incorporation and prospectus.

101.   By the terms of Cambridge's Certificate, Cambridge was, with one exception, required to complete a business combination by June 23, 2015, or liquidate.  The sole exception provided that, in the event that Cambridge entered into a definitive agreement for a business combination before June 23, 2015, but had "not yet" completed that business combination by June 23, 2015, Cambridge was allowed an additional six months, or until December 23, 2015, to close that business combination.

102.   The Prospectus that Cambridge distributed to investors in connection with its initial public offering states:

> If we are unable to consummate a business combination within 18 months from the closing of this offering [i.e., June 23, 2015], or 24 months from the closing of this offering [i.e., December 23, 2015] if we have entered into a definitive a definitive agreement with a target business for a business combination within 18 months from the closing of this offering and ***such business combination has not yet been consummated*** within such 18-month period, we will redeem 100% of the public shares using the funds in the trust account described below.

(emphasis added).

103.   Cambridge completed its initial public offering on December 23, 2013 and an over-allotment subscription on December 30, 2013, at which times it sold 8,050,000 units at $10 per unit, generating total gross proceeds of $80,500,000.

104.   EarlyBirdCapital, Inc. acted as the lead managing underwriter for the IPO.

105.     EarlyBirdCapital, Inc.'s fee of 3% of the gross IPO proceeds, or approximately $2.4 million, was contingent upon the consummation of a business combination.

106.     Simultaneously with the initial public offering, Cambridge consummated the private sale of 472,125 units to Early Bird Capital and the Individual Defendants, among others, at $10.00 per unit for an aggregate purchase price of $4,721,250.

107.     The net proceeds from the IPO, together with the net proceeds from the private sale of units, or a total of $81,305,000, was deposited into a trust fund (the "Trust Fund").

**B.     The Failed Parakou Tankers Business Combination**

108.     On or about December 1, 2014, the Individual Defendants caused Cambridge to execute a merger agreement with Parakou Tankers, Inc. ("Parakou").

109.     On March 30, 2015, Cambridge filed its Definitive Proxy Statement (the "Parakou Proxy) with the SEC and scheduled a meeting of Cambridge shareholders and a vote on the proposed Parakou merger for April 22, 2015.

110.     On April 9, 2015, Plaintiff filed this action alleging that the Parakou Proxy omitted material information regarding the proposed Parakou merger that it should have disclosed to Cambridge shareholders to enable shareholders to cast a fully informed vote on the proposed Parakou merger.

111.     On April 16, 2015, Plaintiff and the Individual Defendants executed a memorandum of understanding (the "MOU") whereby Cambridge agreed, *inter alia*, to file a Supplemental Proxy Statement (the "Supplemental Proxy") with the SEC disclosing the information that Plaintiff alleged the Individual Defendants had omitted from the Parakou Proxy.

112.     Cambridge filed the Supplemental Proxy pursuant to the MOU on April 16, 2015.

23

113.    The Supplemental Proxy contained negative information regarding the proposed Parakou merger.

114.    After the filing of the Supplemental Proxy, Cambridge lacked sufficient shareholder support for the consummation of the proposed Parakou merger.

115.    Following the filing of the Supplemental Proxy, the Cambridge shareholder meeting, which had been scheduled for April 22, 2015, was adjourned by Cambridge to April 24, then to April 27, then to April 30 and then to May 8, 2015.

116.    The Cambridge shareholder meeting was adjourned by Cambridge to April 24, then to April 27, then to April 30 and then to May 8, 2015 because Cambridge lacked sufficient shareholder support for the consummation of the proposed Parakou merger.

117.    On May 6, 2015, Cambridge and Parakou abandoned the proposed Parakou merger.

118.    Cambridge abandoned the proposed Parakou merger due to the lack of sufficient shareholder support for the merger following the filing of the Supplemental Proxy that Cambridge filed only as a result of this lawsuit.

119.    The lack of sufficient shareholder support for the Parakou merger was a result of the disclosure of the negative information contained in the Supplemental Proxy that Cambridge filed only as a result of this lawsuit.

120.    The filing of the Supplemental Proxy that Cambridge filed only as a result of this lawsuit conferred a benefit on the shareholders of Cambridge.

**C.    The Individual Defendants Agree To An *Ultra Vires* Transaction To Avoid Liquidation and To Prevent Their $20 Million In Stock From Becoming Worthless**

121.    Cambridge abandoned the proposed Parakou merger less than seven weeks before the June 23, 2015 deadline for completing a business combination.

24

122.    In an attempt to avoid the liquidation of Cambridge and to prevent the loss of their investments in Cambridge (of over $1.3 million) and to prevent their Cambridge stock (valued at over $20 million) and personal loans (of $350,000) from becoming worthless, the Individual Defendants pursued a business combination with ACSI, a small privately owned Israeli company with only 12 full-time employees (as of December 31, 2014) that *lost* money in 2013 and made only a small profit --- $3.1 million --- in 2014.

123.    On September 6, 2015, after the June 23, 2015 Merger Deadline, each of the Individual Defendants caused Cambridge to execute a definitive merger agreement with ACSI (the Merger Agreement") in violation of the Cambridge Charter out of personal self-interest in preventing the loss of their investments in Cambridge and their Cambridge stock from becoming worthless.

**D.    The Merger Is Not in the Best Interests of Cambridge and Its Public Shareholders**

124.    ACSI's two shareholders, Anatoly Hurgin and Alexander Aurovsky, received over $191 million in cash and stock as a result of the Merger.

125.    Hurgin and Aurovsky received over 17 million shares of Ability, Inc., or over 66% of Ability's outstanding shares, valued at over $173 million (as of December 23, 2015), and over $18.15 million in cash.

126.    Hurgin and Aurovsky were also granted the right to sell 1,173,267 shares of Ability, Inc. back to Ability at the price of $10.10 per share (or $11.85 million in the aggregate) exercisable at Hurgin and Aurovsky's option before February 28, 2017. The so-called "Put Option" was secured by a cash escrow ensuring that Hurgin and Aurovsky would receive at least $30 million in cash for ACSI.

127.    Hurgin and Aurovsky were also permitted, after the execution of the Merger Agreement, to pay themselves an $11 million cash dividend, equal to approximately all of ACSI's cash on hand as of December 31, 2014.

128.    Hurgin and Aurovsky were also granted lucrative compensation agreements.  As officers of Ability, they will each be paid an annual base salary of $369,600, a cash bonus of $92,400, and pension and other benefits.

129.    Prior to the Merger, Hurgin and Aurovsky, the President and Chief Technology Officer of ACSI, respectively, were paid $60,030 and $53,077 in total annual compensation, respectively.

130.    By contrast, the public shareholders of Cambridge, who paid approximately $60 million in the IPO (after share redemptions) now own less than 25 percent of an off-shore Cayman Islands company controlled by Hurgin and Aurovsky, that had a purported shareholder's equity of only $13.5 million, that lost money in 2013 and that made only a tiny profit in 2014.

131.    Hurgin and Aurovsky obtained such a favorable result by exploiting the Individual Defendants' divided loyalties and self-interest in consummating a merger to avoid the liquidation of Cambridge and the loss of their personal investment in Cambridge and Cambridge stock.

132.    Since December 23, 2015, Ability's stock price has plummeted from $10.10 per share to as low as $2.70 per share, resulting in shareholder losses of over $40 million.

**E.**    **The Individual Defendants Organized Ability Under The Laws Of The Cayman Islands To Limit Their Liability To Shareholders**

133.    Corporations organized under the laws of the Cayman Islands afford shareholders fewer rights and protections than corporations organized in the United States.  The following chart highlights certain of the key differences between the rights that Cambridge shareholders had before the merger and the rights they currently have:

| Right | Current | Following Consummation of Transactions |
|---|---|---|
| **Inspection of Books and Records** | Any stockholder may inspect the corporation's books and records for a proper purpose during the usual hours for business. | Shareholders generally do not have any rights to inspect or obtain copies of the register of shareholders or other corporate records of a company. |
| **Stockholder/Shareholder Lawsuits** | A stockholder may bring a derivative suit subject to procedural requirements. | The decision to institute proceedings on behalf of a company is generally taken by the company's board of directors. A shareholder may be entitled to bring a derivative action on behalf of the company only in **certain limited circumstances.** |
| **Fiduciary Duties of Directors** | Directors must exercise a duty of care and duty of loyalty and good faith to the company and its stockholders. | A director owes a fiduciary duty to exercise loyalty, honesty and good faith to the company as a whole. Such duties are owed to the company but may be owed directly to creditors or shareholders in **certain limited circumstances.** |
| **Limited Liability of Directors** | Permits the limiting or eliminating of the monetary liability of a director to a corporation or its stockholders, except with regard to breaches of duty of loyalty, intentional misconduct, unlawful repurchases or dividends, or improper personal benefit. | *Liability of directors may be limited*, except with regard to their own fraud or willful default. |

134.   The Individual Defendants have acknowledged that certain of the directors and officers of the surviving company are nationals or residents of jurisdictions other than the United States and all or a substantial portion of their assets are located outside the United States. As a result, it may be difficult for investors to effect service of process within the United States on these individuals, or enforce judgments obtained in the United States courts against them. Among other limitations, Cayman Islands companies may not have standing to initiate a shareholders derivative

action in a Federal court of the United States.  Further, the Individual Defendants have admitted that they have been advised by their Cayman Islands legal counsel that the courts of the Cayman Islands are unlikely (i) to recognize or enforce judgments of courts of the United States predicated upon the civil liability provisions of the federal securities laws of the United States or any state; and (ii) in original actions brought in the Cayman Islands, to impose liabilities against them predicated upon the civil liability provisions of the federal securities laws of the United States or any state, insofar as the liabilities imposed by those provisions are penal in nature.

135.     Indeed, the defendants have admitted that they have adopted provisions which may frustrate or prevent any attempts by the Company's shareholders to replace or remove the Company's current management members by making it more difficult for shareholders to replace members of the Board, which is responsible for appointing the members of our management. These provisions include, among other things, provisions that (a) authorize the Company's Board to issue preferred shares and to determine the price and other terms, including preferences and voting rights, of those shares without shareholder approval, (b) establish advance notice procedures for nominating directors or presenting matters at shareholder meetings; and (c) limit the persons who may call special meetings of shareholders.

**F.      ACSI's Financial Condition and Prospects Were Misrepresented To Cambridge Shareholders by the Individual Defendants in the Proxy Statement**

136.     At all relevant times, the Individual Defendants had full access to all of ACSI's books and records, financial information and results of operations.

137.     The Proxy Statement that the Individual Defendants disseminated to shareholders on December 2, 2015 falsely stated that ACSI's revenues and net income for the nine months ended September 30, 2015 were $51.7 and $17.3 million.

**G.**   **The Shareholder Vote Was Not Held On Full Information**

138.    The Individual Defendants, aided and abetted by ACSI, induced Cambridge shareholders to vote to approve the Merger with a Proxy Statement that contained materially inaccurate or incomplete disclosures.   As alleged in detail herein, the Proxy Statement disseminated to shareholders in advance of the shareholder vote materially misrepresented, *inter alia*, the financial condition of ACSI, the deadline by which Cambridge was required to complete the Merger or liquidate and the compensation paid to those involved in promoting the merger.

139.    The Individual Defendants, aided and abetted by ACSI, disseminated a materially misleading Proxy Statement out of personal self-interest: to induce shareholder approval of the Merger to prevent the liquidation of Cambridge and their Insider Shares from becoming worthless.

140.    Because the shareholder vote was not fully informed, it is ineffective to ratify the *ultra vires* merger or the Defendants' breaches of fiduciary.

**H.**   **The Shareholder Vote Was Coerced**

141.    The Individual Defendants coerced the shareholder vote.  Shareholders who did not support the merger and who wished to redeem their shares for cash were informed by the Individual Defendants that they would receive the return all of their investment --- $10.10 per share --- *only if* the Ability merger was *approved* by the shareholders.

142.    The Proxy Statement states:

> Unlike other blank check companies which require public stockholders to vote against a business combination in order to exercise their conversion rights, Cambridge's public stockholders may vote in favor of the business combination and exercise their conversion rights.

> \*\*\*

> Any holder of public shares voting for or against the merger proposal will be entitled to demand that his shares be converted for a full pro rata portion of the amount then in the trust account (which was $81,311,892.63, or

$10.10 per share, as of November 24, 2015, the record date). Such amount, … will be paid promptly *upon consummation of the business combination*.

(emphasis added).

143.    By contrast, if the Ability merger were not approved and Cambridge was liquidated, shareholders were informed by the Defendants that there was no "assurance" that they would receive the return of their full investment.  The Proxy states:

Liquidation If No Business Combination

\*\*\*

[T]he actual per-share redemption price could be less than approximately $10.10, plus interest ….  Cambridge cannot assure you it will be able to return to the public stockholders at least approximately $10.10 per share.

\*\*\*

Your vote on any proposal *other than the merger proposal* will have no impact on the amount you will receive upon exercise of your conversion rights.

144.    By these statements, the Individual Defendants sought to coerce and did coerce shareholders who did not support the Merger and who sought the return of their investment to perversely vote "FOR," not "AGAINST," the Merger.

145.    The Individual Defendants coerced the shareholder vote out of personal self-interest: to prevent the liquidation of Cambridge and their Insider Shares from becoming worthless.

146.    Because the Individual Defendants coerced the shareholder vote, it is ineffective to ratify the *ultra vires* merger or the Defendants' breaches of their fiduciary duties.

I.    **The Individual Defendants Have Admitted That They Have Conflicting Interests in Connection with the Merger**

147.    Cambridge's directors have publicly admitted that they have conflicting interests in connection with the Merger and have even admitted that these interests may have influenced

their decision to approve the transaction with ACSI.  These conflicting interests include the following:

- If the business combination with ACSI is not consummated, Cambridge will cease all operations, redeeming 100% of the outstanding public shares for cash and, dissolving and liquidating. *In such event, the 2,012,500 initial shares held by Cambridge's initial stockholders, including its directors and officers, which were acquired for an aggregate purchase price of $25,000 prior to Cambridge's initial public offering, would be worthless because Cambridge's initial stockholders are not entitled to participate in any redemption or distribution with respect to such shares.*

- Cambridge's initial stockholders, including its directors and officers, and EarlyBirdCapital purchased an aggregate of 472,125 private units [include Gordon Family Trust] from Cambridge for an aggregate purchase price of $4,721,250 (or $10.00 per unit). …   The purchasers of the private units waived the right to participate in any redemption or liquidation distribution with respect to such private units. *Accordingly, the Cambridge shares and warrants underlying the private units will become worthless if Cambridge does not consummate a business combination by December 23, 2015 (as will the Cambridge warrants held by public stockholders).*

- The transactions contemplated by the merger agreement provide that Benjamin Gordon and Mitchell Gordon will be directors of Holdco after the closing of the business combination. As such, in the future each will receive any cash fees, stock options or stock awards that the Holdco board of directors determines to pay to its non-executive directors.

- Currently, it is anticipated that non-employee directors, such as Messrs. Benjamin Gordon and Mitchell Gordon, of Holdco following the business combination will receive an annual retainer fee and annual awards under Holdco's 2015 Long-Term Incentive Plan ….   In addition, nonemployee directors of Holdco may be eligible to receive a fee for each board meeting attended in person ….   Finally, as it is anticipated that either or both of Messrs. Gordon and Gordon will become members of one or more committees of the Holdco board of directors following the business combination, and would receive an additional annual fee in an amount to be determined by Holdco's board of directors for serving in such role.

- If Holdco is unable to complete a business combination within the required time period, Cambridge's executive officers will be personally liable to ensure that the proceeds in the trust account are not reduced by the claims of target businesses or claims of vendors or other entities that are owed money by Cambridge for services rendered or contracted for or products

> sold to Cambridge, but only if such a vendor or target business has not executed such a waiver.

- Cambridge's initial stockholders, including its officers and directors, and their affiliates are entitled to reimbursement of out-of-pocket expenses incurred by them in connection with certain activities on Cambridge's behalf, such as identifying and investigating possible business targets and business combinations. However, if Cambridge fails to consummate a business combination within the required period, they will not have any claim against the trust account for reimbursement. Accordingly, Cambridge may not be able to reimburse these expenses if the business combination with ACSI or another business combination, is not completed by December 23, 2015.

- Since its inception, Benjamin Gordon, Cambridge's chief executive officer, has made loans from time to time to Cambridge to fund certain capital requirements. As of the date of this proxy statement/prospectus, an aggregate of $350,000 principal amount of these loans is outstanding. These loans are evidenced by non-interest bearing notes that are convertible at Mr. Gordon's election upon the consummation of an initial business combination into units of Cambridge, at a price of $10.00 per unit. …. If the business combination is not consummated, the notes will not be repaid or converted and will be forgiven.

- If Cambridge is required to be liquidated and there are no funds remaining to pay the costs associated with the implementation and completion of such liquidation, Cambridge's executive officers have agreed to advance Cambridge the funds necessary to pay such costs and complete such liquidation (currently anticipated to be no more than approximately $15,000) and not to seek repayment for such expenses.

## J.     The Materially Misleading and/or Incomplete Proxy Statements

148.    The Individual Defendants have breached their fiduciary duty of full disclosure to

Plaintiff and Cambridge's other public shareholders in connection with the Merger.

149.    On September 18, 2015, the Individual Defendants filed a Preliminary Proxy

Statement (which is attached as Exhibit 3 and incorporated herein by reference solely for purposes

of providing the basis for the nondisclosure counts) with the SEC and made the same available to

Plaintiff and Cambridge's other public shareholders via the internet.  The Preliminary Proxy

Statement is deficient in that it misrepresents and/or omits, *inter alia*, material information as alleged below:

a)   According to the Preliminary Proxy Statement, the Company's amended and restated Certificate of Incorporation provides that the Company will continue in existence only until June 23, 2015 (or December 23, 2015 if the Company has executed a definitive agreement for an initial Business Combination by June 23, 2015, but has not completed the initial Business Combination by June 23, 2015). The ACSI Merger Agreement was signed on September 6, 2015. Therefore, the ACSI Merger Agreement is an *ultra vires* act and the Defendants have failed to disclose this fact.

Violations of a corporation's articles of incorporation are material and must be disclosed.

b)   According to the Preliminary Proxy Statement, Shai Greenwald, an employee of BGSA, which was founded by CEO Gordon, had several meetings with ACSI which ultimately led to the signing of the term sheet. The Preliminary Proxy Statement is deficient because it fails to disclose the compensation paid to Mr. Greenwald or BGSA in connection with Mr. Greenwald's participation in those meetings.

The conflicts of interest of each of Cambridge's directors is material and must be disclosed.

c)   According to the Preliminary Proxy Statement, subsequent to the termination of the Parakou Merger Agreement, Cambridge was introduced to ACSI through EarlyBirdCapital and Migdal Underwriting and Business Initiatives Ltd. ("Migdal"). At that point, a non-disclosure agreement was executed and written information was provided to Cambridge on June 3, 2015. A conference call was then held on June 9, 2015 and it was decided on that call that representatives of Cambridge and ACSI should meet in person to discuss a potential transaction between the parties. The Preliminary Proxy Statement is deficient because it fails to disclose (i) the relationship, if any, between EarlyBirdCapital and ACSI, (ii) the relationship, if any, between Migdal and ACSI, (iii) the identity of the participants of the June 9, 2015 conference call, and (iv) the substance of the discussion had on the June 9, 2015 conference call.

This information is material for Cambridge's shareholders to determine the extent to which the Individual Defendants complied with their fiduciary duties to them.

d)      According to the Preliminary Proxy Statement, on June 12, 2015, Shai Greenwald met with Anatoly Hurgin, co-founder and CEO of ACSI, Hagai Yedid and Eyal Tzur, a consultant to ACSI and Chief Executive Officer and sole shareholder of ACSI Security Systems Ltd. ("ASM"). At this meeting, the parties discussed the company, its products, market position and future prospects. On June 16, 2015, Mr. Greenwald had a second meeting with Hagai Yedid and Eyal Tzur, at ACSI's offices in Tel Aviv. Thereafter, further conversations and market due diligence took place and a term sheet was signed on June 29, 2015 which included financial terms of the proposed transaction. The Preliminary Proxy Statement is deficient because it fails to disclose (i) the rationale for Shai Greenwald, instead of a member of Cambridge's Management or Board, engaging in these discussions, (ii) the substance of the discussion had at the June 12, 2015 meeting regarding the company, its products, market position and future prospects, (iii) the substance of the discussions had at the June 16, 2015 meeting, (iv) the terms, and substance thereof, contained in the term sheet, (v) the identity of the individual(s) who negotiated the term sheet on behalf of Cambridge, and (vi) the dates of meetings of Cambridge's Board, and the substance of discussions had, regarding a transaction with ACSI, or any alternative thereto, prior to the signing of the term sheet.

This information is material for Cambridge's shareholders to determine the extent to which the Individual Defendants complied with their fiduciary duties to them.

e)      According to the Preliminary Proxy Statement, on July 2, 2015, Mr. Greenwald and Mitchell Gordon met with representatives of ACSI in Tel Aviv. There were further discussions about the market in which ACSI competes, internal systems, financial projections, products and product development, research and development, competition and process. The Preliminary Proxy Statement is deficient because it fails to disclose the substance of these discussions.

This information is material for Cambridge's shareholders to determine the extent to which the Individual Defendants complied with their fiduciary duties to them.

f)      According to the Preliminary Proxy Statement, Migdal has effectively served on both sides of the transaction. In this regard, the Proxy Statement describes Migdal as ACSI's investment banking advisor and indicates that

it is entitled to receive a certain portion of Holdco shares otherwise issuable to ACSI. However, Cambridge also paid Migdal a fee of $1,062,000 in cash, ostensibly for introducing ACSI to Cambridge and or assistance in the negotiating process. The Preliminary Proxy Statement is deficient because it fails to disclose (i) the rationale for Cambridge to a pay a fee to ACSI's investment banking advisor, (ii) the substance of the assistance that Migdal provided in the negotiating process and (iii) any steps taken to address the above conflicts of interest.

This information is material for Cambridge's shareholders to determine the extent to which the Individual Defendants complied with their fiduciary duties to them.

g)      According to the Preliminary Proxy Statement, on July 16, 2015, Cambridge retained the services of Integra BD and International Marketing LTD. ("Integra"), an industry expert, to assist in due diligence on ACSI. The Preliminary Proxy Statement is deficient because it fails to disclose (a) who recommended Integra to Cambridge and (b) the compensation paid to Integra for its services.

This information is material for Cambridge's shareholders to determine the extent to which the Individual Defendants complied with their fiduciary duties to them.

h)      On July 27, 2015, Benjamin Gordon, Shai Greenwald and Mitchell Gordon again met with representatives of ACSI at their headquarters in Tel Aviv. This team spent a week in Israel, working with the company, meeting with consultants and lawyers and discussing corporate strategy and prospects for growth. The Preliminary Proxy Statement is deficient because it fails to disclose the substance of the discussions had regarding corporate strategy and prospects for growth.

This information is material for Cambridge's shareholders to determine the extent to which the Individual Defendants complied with their fiduciary duties to them.

i)      According to the Preliminary Proxy Statement, on July 29, 2015 Cambridge retained Consulting Ltd., an affiliate of Economic Partners LLC, to conduct a Quality of Earnings review of ACSI. The Preliminary Proxy Statement is deficient because it fails to disclose who recommended Consulting Ltd. to Cambridge.

This information is material for Cambridge's shareholders to determine

the extent to which the Individual Defendants complied with their fiduciary duties to them.

j)     According to the Preliminary Proxy Statement, on July 30, 2015 Cambridge retained Intelligo Group to conduct background checks on ACSI's executives. The Preliminary Proxy Statement is deficient because it fails to disclose (i) who recommended Intelligo Group to Cambridge and (ii) the compensation payable to Intelligo Group for its services.

This information is material for Cambridge's shareholders to determine the extent to which the Individual Defendants complied with their fiduciary duties to them.

k)     According to the Preliminary Proxy Statement, Cambridge interviewed potential board members that would be interested in serving following the consummation of the business combination. The Preliminary Proxy Statement is deficient because it fails to disclose (i) how many potential board members were interviewed, (ii) the criteria used to evaluate these potential board members, (iii) the identity of the potential board members who were interviewed, and (iv) who conducted these interviews.

This information is material for Cambridge's shareholders to determine the extent to which the Individual Defendants complied with their fiduciary duties to them.

150.   On December 2, 2015, the Individual Defendants filed the Definitive Proxy Statement with the SEC and mailed the same to Plaintiff and the Company's other public shareholders. The Definitive Proxy Statement (which is attached as Exhibit 4 and incorporated by reference solely for purposes of providing the basis for the nondisclosure counts and the admissions alleged herein) is deficient in that it misrepresents and/or omits, *inter alia*, material information as alleged below:

a)     According to the Definitive Proxy Statement, the Company's amended and restated Certificate of Incorporation provides that the Company will continue in existence only until June 23, 2015 (or December 23, 2015 if the Company has executed a definitive agreement for an initial Business Combination by June 23, 2015, but has not completed the initial Business Combination by June 23, 2015). The ACSI Merger Agreement was signed

36

on September 6, 2015. Therefore, the ACSI Merger Agreement is an *ultra vires* act and the Defendants have failed to disclose this fact.

Violations of a corporation's articles of incorporation are material and must be disclosed.

b) According to the Definitive Proxy Statement, Cambridge was required to complete a business combination by December 23, 2015, or liquidate. That statement is false and misleading because Cambridge's Certificate of Incorporation required it to complete a business combination by June 23, 2015, or liquidate.

Violations of a corporation's articles of incorporation are material and must be disclosed.

c) According to the Definitive Proxy Statement, Shai Greenwald, an employee of BGSA, which was founded by CEO Gordon, had several meetings with ACSI which ultimately led to the signing of the term sheet. The Definitive Proxy Statement is deficient because it fails to disclose the compensation paid to Mr. Greenwald or BGSA in connection with Mr. Greenwald's participation in those meetings.

The conflicts of interest of each of Cambridge's directors is material and must be disclosed.

d) According to the Definitive Proxy Statement, Migdal has effectively served on both sides of the transaction. In this regard, the Definitive Proxy Statement describes Migdal as ACSI's investment banking advisor and indicates that it is entitled to receive a certain portion of Holdco shares otherwise issuable to ACSI. However, Cambridge also paid Migdal a fee of $1,062,000 in cash, ostensibly for introducing ACSI to Cambridge and or assistance in the negotiating process. The Definitive Proxy Statement is deficient because it fails to disclose (i) the rationale for Cambridge to a pay a fee to ACSI's investment banking advisor, (ii) the substance of the assistance that Migdal provided in the negotiating process and (iii) any steps taken to address the above conflicts of interest.

This information is material for Cambridge's shareholders to determine the extent to which the Individual Defendants complied with their fiduciary duties to them.

e) According to the Definitive Proxy Statement, on July 27, 2015, representatives of Cambridge and representatives of ACSI discussed

37

ACSI's financial controls and, in late July and early August 2015, Cambridge had "extensive and daily discussions" with ACSI regarding ACSI's "internal controls." The Definitive Proxy Statement is deficient and misleading because it does not disclose that material weaknesses existed in ACSI's financial controls and that the financial controls were inadequate and ineffective.

Information regarding a target company's financial results, and financial reporting and disclosures is material to a shareholder in determining the valuation of the target and whether to approve a business combination with that target.

f) According to the Definitive Proxy Statement, in November 2015, "it became apparent" that certain revenues that ACSI expected to receive in 2015 would "be delayed and received in early 2016." The Definitive Proxy Statement is deficient and misleading because it does not disclose that ACSI had historically overstated its revenues.

Information regarding a target company's financial results, and financial reporting and disclosures is material to a shareholder in determining the valuation of the target and whether to approve a business combination with that target.

g) According to the Definitive Proxy Statement, ACSI's revenues for the 12 months ended December 31, 2013 were $5.6 million. The Definitive Proxy Statement is deficient and misleading because that statement is false and ACSI's revenues for the 12 months ended December 31, 2013 were materially less than $5.6 million.

Information regarding a target company's financial results, and financial reporting and disclosures is material to a shareholder in determining the valuation of the target and whether to approve a business combination with that target.

h) According to the Definitive Proxy Statement, ACSI's revenues for the 12 months ended December 31, 2014 were $22.1 million. The Definitive Proxy Statement is deficient and misleading because that statement is false and ACSI's revenues for the 12 months ended December 31, 2014 were materially less than $22.1 million.

Information regarding a target company's financial results, and financial reporting and disclosures is material to a shareholder in determining the

valuation of the target and whether to approve a business combination with that target.

i) According to the Definitive Proxy Statement, ACSI's revenues for the 9 months ended September 30, 2015 were $51.689 million. The Definitive Proxy Statement is deficient and misleading because that statement is false and ACSI's revenues for the 9 months ended September 30, 2015 were materially less than $51.689 million.

Information regarding a target company's financial results, and financial reporting and disclosures is material to a shareholder in determining the valuation of the target and whether to approve a business combination with that target.

j) According to the Definitive Proxy Statement, ACSI's net loss for the 12 months ended December 31, 2013 was $269,000. The Definitive Proxy Statement is deficient and misleading because that statement is false and ACSI's net loss for the 12 months ended December 31, 2013 was materially greater than $269,000.

Information regarding a target company's financial results, and financial reporting and disclosures is material to a shareholder in determining the valuation of the target and whether to approve a business combination with that target.

k) According to the Definitive Proxy Statement, ACSI's net income for the 12 months ended December 31, 2014 was $3,976,000. The Definitive Proxy Statement is deficient and misleading because that statement is false and ACSI's net income for the 12 months ended December 31, 2014 was materially less than $3,976,000.

Information regarding a target company's financial results, and financial reporting and disclosures is material to a shareholder in determining the valuation of the target and whether to approve a business combination with that target.

l) According to the Definitive Proxy Statement, ACSI's net income for the 9 months ended September 30, 2015 was $17,283,000. The Definitive Proxy Statement is deficient and misleading because that statement is false and ACSI's net income for the 9 months ended September 30, 2015 was materially less than $17,283,000.

39

Information regarding a target company's financial results, and financial reporting and disclosures is material to a shareholder in determining the valuation of the target and whether to approve a business combination with that target.

**K.    This Lawsuit Has Already Conferred a Benefit on Cambridge's Shareholders by Causing Cambridge to Correct Material Omissions in The Preliminary Proxy Statement**

151.    Following the filing of the First Amended Complaint on October 15, 2015 and as a result of the filing of the First Amended Complaint, the Individual Defendants caused the Company to disclose information that addressed some, but not all, of the disclosure deficiencies in the Preliminary Proxy alleged in Paragraph 149 above.

152.    This lawsuit has, therefore, already conferred a benefit on Cambridge's shareholders.

**L.    This Lawsuit Has Already Conferred a Benefit on Cambridge's Shareholders by Causing Cambridge to Correct Material Omissions in Its Registration Statement**

153.    Defendants have publicly admitted that as a result of the lawsuit, and in connection with seeking Cambridge's shareholders' votes for the adoption of the Parakou Merger Agreement and transactions contemplated thereby, the Individual Defendants caused Cambridge to issue additional proxy soliciting materials on a Form DEFA14A (the "Additional Proxy Information") with the SEC on April 17, 2015, which disclosed information, sought by Plaintiff, regarding, among other things, the conflicts of interest of the Individual Defendants and their advisors, as follows (the "Parakou Supplemental Disclosures"):

(a)    That the market value of each of the Cambridge directors' equity ownership in Cambridge common stock and units was as follows:

| Directors | Common Stock | Units | Aggregate Value ($) |
|---|---|---|---|
| Benjamin Gordon | 5,000 | 55,483 | 629,547 |
| Mitchell I. Gordon | 60,000 | 27,716 | 886,632 |

40

| Michael J. Durham | 40,000 | 22,173 | 629,708 |
| Nathan Gantcher | 60,000 | 44,346 | 1,060,416 |
| Scott B. Laurans | 60,000 | 44,346 | 1,060,416 |

(b)    The compensation that Mr. Benjamin Gordon was expected to receive as special advisor to the board of directors of Holdco following the Parakou Merger.

(c)    The compensation that Mr. Mitchell Gordon was expected to receive for serving as a director of Holdco following the Parakou Merger.

(d)    That EarlyBirdCapital, in its role as investment banker to Cambridge, has provided Cambridge with advice and assistance in reviewing potential targets with which to consummate a business combination and arranging meetings with and preparing materials for investors in connection with the consummation of the mergers, as well as providing general advice with respect to special acquisition corporation transactions.

(e)    That each member of Cambridge's Board was asked to join the Board by Mr. Benjamin Gordon.

(g)    Mr. Mitchell I. Gordon recommended Derek Zissman to serve on the board of directors of Holdco. Mr. Gordon and Mr. Zissman had a business and personal relationship prior to Mr. Gordon's recommendation.

(i)    That Ramon Suazo, a partner at BG Strategic Advisors, founded by Benjamin Gordon and an affiliate of Benjamin Gordon and Mitchell I. Gordon, had prior business dealings with SC&H Capital ("SC&H") and recommended SC&H to Cambridge's board of directors.

(j)    That Cambridge and Parakou were introduced by Mr. Geoffrey Martin, an investment banker who is currently with Morpheus Securities LLC. Mr. Mitchell I. Gordon, Cambridge's President and Chief Financial Officer, was the President of Morpheus Securities LLC prior to joining Cambridge and had maintained relationships with members of such firm. Cambridge and Parakou met for the first time on February 24, 2014, when Benjamin Gordon, Cambridge's Chief Executive Officer, Mr. Gordon, and Ramon Suazo, a partner at BGSA, an affiliate of Benjamin Gordon and Mitchell I. Gordon, held a conference call with Por Liu, Parakou's Chairman and Chief Executive Officer, and Peter S. Bell, Parakou's Chief Commercial Officer, at Parakou's New York offices.

(k)    Benjamin Gordon negotiated the terms of Mitchell Gordon's employment with BGSA and Cambridge substantially concurrently.

(l)     That, in connection with the Parakou Merger Agreement, Cambridge agreed to pay to Morpheus Securities LLC a fee of $500,000 (which was entirely contingent on the consummation of the Parakou Merger Agreement) and a fee of $53,000 (which was not contingent upon the consummation of the Parakou Merger Agreement) for introducing Cambridge to Parakou and for assistance in the negotiating process.

154.    As a result of this information, a sufficient number of Cambridge shareholders declined to support the transaction with Parakou resulting in the termination of the Parakou Merger Agreement.

## FIRST CAUSE OF ACTION

## DIRECT CLASS CLAIM FOR BREACH OF FIDUCIARY DUTY OF LOYALTY

### (*Against the Individual Defendants*)

155.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 154 as if set forth in full herein.

156.    Under applicable Delaware law, the Individual Defendants have a fiduciary duty of loyalty, including a duty of good faith, to Plaintiff and the other shareholders of Cambridge.

157.    By reason of the foregoing, each of the Individual Defendants has breached his fiduciary duty of loyalty, including his duty of good faith, to Plaintiff and the Class by, *inter alia*:

a)     not causing Cambridge to dissolve and liquidate on or about June 23, 2015, as required by the Certificate;

b)     causing Cambridge to execute the Merger Agreement after June 23, 2015, in violation of the Certificate;

c)     causing Cambridge to enter into an *ultra vires* transaction;

d)     placing the interest of each in preventing the loss of his financial investment in Cambridge ahead of the interests of the public stockholders;

e)     placing the interest of each in preventing his Insider Shares from becoming worthless ahead of the interests of the public shareholders of Cambridge;

f)     attempting to prevent his Insider Shares from becoming worthless at the expense of Cambridge's shareholders;

g) placing the interest of Defendant Benjamin Gordon in preventing his loans to Cambridge from becoming uncollectible ahead of the interests of the public shareholders of Cambridge;

h) placing the interests of Defendants Benjamin Gordon and Mitchell Gordon in becoming directors in the surviving corporation (and receiving over \$60,000 annually in director's fees) ahead of the interests of Cambridge's shareholders;

i) placing the interests of Defendant Benjamin Gordon and his affiliates in obtaining reimbursement of expenses in the amount of \$298,169 ahead of the interests of the public shareholders of Cambridge;

j) unjustly enriching themselves at the expense of Cambridge's shareholders;

k) causing Cambridge to execute a merger agreement that overvalues ACSI;

l) causing Cambridge to execute a merger agreement that overvalues ACSI and does not maximize value for Cambridge shareholders;

m) misrepresenting the historical financial results of ACSI to Cambridge shareholders in the Proxy Statement;

n) understating ACSI's loss for the year ended December 31, 2013 in the Proxy Statement;

o) overstating ACSI's profit for the year ended December 31, 2014 in the Proxy Statement;

p) misrepresenting ACSI's revenues and net income for the years ended December 31, 2013 and 2014 in the Proxy Statement;

q) misrepresenting ACSI's revenues and net income for the six months ended June 30, 2015 in the Proxy Statement;

r) misrepresenting ACSI's revenues and net income for the nine months ended September 30, 2015 in the Proxy Statement;

s) overstating ACSI's revenues for 2013, 2014 and 2015 in the Proxy Statements disseminated to the public shareholders of Cambridge;

t) understating ACSI's expenses for 2013, 2014 and 2015 in the Proxy Statements disseminated to the public shareholders of Cambridge;

u) not disclosing all material information regarding the Merger Agreement, the Merger and the background to the merger to shareholders in the Proxy Statement;

v) disclosing misleading information regarding the Merger Agreement, the Merger and the background to the merger in the Proxy Statement;

w) incorporating Ability in the Cayman Islands to limit director liability to shareholders for breaches of fiduciary duty;

x) permitting ACSI to limit its liability for breaches of its representations and warranties;

y) excusing ACSI from establishing a cash escrow to cover damages for breaches of ACSI's representations and warranties;

w) favoring their own personal interests;

x) favoring their own personal financial interests;

y) favoring their own personal financial interests at the expense of shareholders;

z) abusing their positions of control;

aa) Causing Cambridge to execute the Merger Agreement with ACSI that is to the detriment of Cambridge shareholders;

bb) Abdicating their directorial duties.

158.    As a result of the foregoing, Plaintiff and the Class have been damaged and/or the Individual Defendants have been unjustly enriched.

**SECOND CAUSE OF ACTION**

**DIRECT CLASS CLAIM FOR BREACH OF FIDUCIARY DUTY OF DUE CARE**

(*Against the Individual Defendants*)

159.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 154 as if set forth in full herein.

160.    Under applicable Delaware law, the Individual Defendants have a fiduciary duty of due care to Plaintiff and the other shareholders of Cambridge.

161.    By reason of the foregoing, each of the Individual Defendants has breached his fiduciary duty of due care to Plaintiff and the Class by, *inter alia*:

a) not causing Cambridge to dissolve and liquidate on or about June 23, 2015, as required by the Certificate;

b) causing Cambridge to execute the Merger Agreement after June 23, 2015, in violation of the Certificate;

c) causing Cambridge to enter into an *ultra vires* transaction;

d) placing the interest of each in preventing the loss of his investment in Cambridge ahead of the interests of the public stockholders;

e) placing the interest of each in preventing his Insider Shares from becoming worthless ahead of the interests of the public shareholders of Cambridge;

f) attempting to prevent his Insider Shares from becoming worthless at the expense of Cambridge's shareholders;

g) placing the interest of Defendant Benjamin Gordon in preventing his loans to Cambridge from becoming uncollectible ahead of the interests of the public shareholders of Cambridge;

h) placing the interests of Defendants Benjamin Gordon and Mitchell Gordon in becoming directors in the surviving corporation (and receiving over $60,000 annually in director's fees) ahead of the interests of Cambridge's shareholders;

i) placing the interests of Defendant Benjamin Gordon and his affiliates in obtaining reimbursement of expenses in the amount of $298,169 ahead of the interests of the public shareholders of Cambridge;

j) unjustly enriching themselves at the expense of Cambridge's shareholders;

k) causing Cambridge to execute a merger agreement that overvalues ACSI;

l) causing Cambridge to execute a merger agreement that overvalues ACSI and does not maximize value for Cambridge shareholders;

m) misrepresenting the historical financial results of ACSI to Cambridge shareholders in the Proxy Statement;

n) understating ACSI's loss for the year ended December 31, 2013 in the Proxy Statement;

o) overstating ACSI's profit for the year ended December 31, 2014 in the Proxy Statement;

p) misrepresenting ACSI's revenues and net income for the years ended December 31, 2013 and 2014 in the Proxy Statement;

q) misrepresenting ACSI's revenues and net income for the six months ended June 30, 2015 in the Proxy Statement;

r) misrepresenting ACSI's revenues and net income for the nine months ended September 30, 2015 in the Proxy Statement'

s) overstating ACSI's revenues for 2013, 2014 and 2015 in the Proxy Statements disseminated to the public shareholders of Cambridge;

t) understating ACSI's expenses for 2013, 2014 and 2015 in the Proxy Statements disseminated to the public shareholders of Cambridge;

u) not disclosing all material information regarding the Merger Agreement, the Merger and the background to the merger to shareholders in the Proxy Statement;

v) disclosing misleading information regarding the Merger Agreement, the Merger and the background to the merger in the Proxy Statement;

w) incorporating Ability in the Cayman Islands to limit director liability to shareholders for breaches of fiduciary duty;

x) permitting ACSI to limit its liability for breaches of its representations and warranties;

y) excusing ACSI from establishing a cash escrow to cover damages for breaches of ACSI's representations and warranties;

z) favoring their own personal interests;

aa) favoring their own personal financial interests

bb) favoring their own personal financial interests at the expense of shareholders;

cc) abusing their positions of control.

162.    As a result of the foregoing, Plaintiff and the Class have been damaged and/or the Individual Defendants have been unjustly enriched.

## **THIRD CAUSE OF ACTION**

## **DIRECT CLASS CLAIM FOR FAILURE TO DISCLOSE**

### (*Against the Individual Defendants*)

163.    Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 154 as if set forth in full herein.

164.    Under applicable Delaware law, the Individual Defendants have a fiduciary obligation to cause Cambridge to completely disclose all material facts in the Proxy Statement so that Cambridge's shareholders can make an informed decision as to whether to vote their shares in favor of the Merger.  As alleged in detail above, including in Paragraph 149 and 150, the Individual Defendants have breached their fiduciary duty through material misrepresentations, inadequate disclosures and omissions.

165.    As a result of these failures to disclose, Plaintiff and the Class have been damaged and/or the Individual Defendants have been unjustly enriched.

## FOURTH CAUSE OF ACTION

## DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY OF LOYALTY

### (*Against the Individual Defendants*)

166.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 154 as if set forth in full herein.

167.    Under applicable law, the Individual Defendants have a fiduciary duty of loyalty, including a duty of good faith, to Plaintiff and the other shareholders of Cambridge.

168.    By reason of the foregoing, each of the Individual Defendants has breached his fiduciary duty of loyalty, including his duty of good faith, to Plaintiff and the Class by, inter alia:

a)  not causing Cambridge to dissolve and liquidate on or about June 23, 2015, as required by the Certificate;

b)  causing Cambridge to execute the Merger Agreement after June 23, 2015, in violation of the Certificate;

c)  causing Cambridge to enter into an *ultra vires* transaction;

d)  placing the interest of each in preventing the loss of his investment in Cambridge ahead of the interests of the public stockholders;

e)  placing the interest of each in preventing his Insider Shares from becoming worthless ahead of the interests of the public shareholders of Cambridge;

47

f)   attempting to prevent his Insider Shares from becoming worthless at the expense of Cambridge's shareholders;

g)   placing the interest of Defendant Benjamin Gordon in preventing his loans to Cambridge from becoming uncollectible ahead of the interests of the public shareholders of Cambridge;

h)   placing the interests of Defendants Benjamin Gordon and Mitchell Gordon in becoming directors in the surviving corporation (and receiving over $60,000 annually in director's fees) ahead of the interests of Cambridge's shareholders;

i)   placing the interests of Defendant Benjamin Gordon and his affiliates in obtaining reimbursement of expenses in the amount of $298,169 ahead of the interests of the public shareholders of Cambridge;

j)   unjustly enriching themselves at the expense of Cambridge's shareholders;

k)   causing Cambridge to execute a merger agreement that overvalues ACSI;

l)   causing Cambridge to execute a merger agreement that overvalues ACSI and does not maximize value for Cambridge shareholders;

m)   misrepresenting the historical financial results of ACSI to Cambridge shareholders in the Proxy Statement;

n)   understating ACSI's loss for the year ended December 31, 2013 in the Proxy Statement;

o)   overstating ACSI's profit for the year ended December 31, 2014 in the Proxy Statement;

p)   misrepresenting ACSI's revenues and net income for the years ended December 31, 2013 and 2014 in the Proxy Statement;

q)   misrepresenting ACSI's revenues and net income for the six months ended June 30, 2015 in the Proxy Statement;

r)   misrepresenting ACSI's revenues and net income for the nine months ended September 30, 2015 in the Proxy Statement;

s)   overstating ACSI's revenues for 2013, 2014 and 2015 in the Proxy Statements disseminated to the public shareholders of Cambridge;

t)   understating ACSI's expenses for 2013, 2014 and 2015 in the Proxy Statements disseminated to the public shareholders of Cambridge;

u) not disclosing all material information regarding the Merger Agreement, the Merger and the background to the merger to shareholders in the Proxy Statement;

v) disclosing misleading information regarding the Merger Agreement, the Merger and the background to the merger in the Proxy Statement;

w) incorporating Ability in the Cayman Islands to limit director liability to shareholders for breaches of fiduciary duty;

x) permitting ACSI to limit its liability for breaches of its representations and warranties;

y) excusing ACSI from establishing a cash escrow to cover damages for breaches of ACSI's representations and warranties;

w) favoring their own personal interests;

x) favoring their own personal financial interests;

y) favoring their own personal financial interests at the expense of shareholders;

z) abusing their positions of control;

aa) Causing Cambridge to execute the Merger Agreement with ACSI that is to the detriment of Cambridge shareholders;

bb) Abdicating their directorial duties.

169.    As a result of the foregoing, Cambridge and/or Ability have been damaged and/or the Individual Defendants have been unjustly enriched.

## FIFTH CAUSE OF ACTION

## DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY OF DUE CARE

### (*Against the Individual Defendants*)

170.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 154 as if set forth in full herein.

171.    Under applicable law, the Individual Defendants have a fiduciary duty of due care to Plaintiff and the other shareholders of Cambridge.

172.    By reason of the foregoing, each of the Individual Defendants has breached his

fiduciary duty of due care to Plaintiff and the Class by, *inter alia*:

    a)  not causing Cambridge to dissolve and liquidate on or about June 23, 2015, as required by the Certificate;

    b)  causing Cambridge to execute the Merger Agreement after June 23, 2015, in violation of the Certificate;

    c)  causing Cambridge to enter into an *ultra vires* transaction;

    d)  placing the interest of each in preventing the loss of his investment in Cambridge ahead of the interests of the public stockholders;

    e)  placing the interest of each in preventing his Insider Shares from becoming worthless ahead of the interests of the public shareholders of Cambridge;

    f)  attempting to prevent his Insider Shares from becoming worthless at the expense of Cambridge's shareholders;

    g)  placing the interest of Defendant Benjamin Gordon in preventing his loans to Cambridge from becoming uncollectible ahead of the interests of the public shareholders of Cambridge;

    h)  placing the interests of Defendants Benjamin Gordon and Mitchell Gordon in becoming directors in the surviving corporation (and receiving over $60,000 annually in director's fees) ahead of the interests of Cambridge's shareholders;

    i)  placing the interests of Defendant Benjamin Gordon and his affiliates in obtaining reimbursement of expenses in the amount of $298,169 ahead of the interests of the public shareholders of Cambridge;

    j)  unjustly enriching themselves at the expense of Cambridge's shareholders;

    k)  causing Cambridge to execute a merger agreement that overvalues ACSI;

    l)  causing Cambridge to execute a merger agreement that overvalues ACSI and does not maximize value for Cambridge shareholders;

    m)  misrepresenting the historical financial results of ACSI to Cambridge shareholders in the Proxy Statement;

    n)  understating ACSI's loss for the year ended December 31, 2013 in the Proxy Statement;

o) overstating ACSI's profit for the year ended December 31, 2014 in the Proxy Statement;

p) misrepresenting ACSI's revenues and net income for the years ended December 31, 2013 and 2014 in the Proxy Statement;

q) misrepresenting ACSI's revenues and net income for the six months ended June 30, 2015 in the Proxy Statements;

r) misrepresenting ACSI's revenues and net income for the nine months ended September 30, 2015 in the Proxy Statement;

s) overstating ACSI's revenues for 2013, 2014 and 2015 in the Proxy Statement disseminated to the public shareholders of Cambridge;

t) understating ACSI's expenses for 2013, 2014 and 2015 in the Proxy Statement disseminated to the public shareholders of Cambridge;

u) not disclosing all material information regarding the Merger Agreement, the Merger and the background to the merger to shareholders in the Proxy Statement;

v) disclosing misleading information regarding the Merger Agreement, the Merger and the background to the merger in the Proxy Statement;

w) incorporating Ability in the Cayman Islands to limit director liability to shareholders for breaches of fiduciary duty;

x) permitting ACSI to limit its liability for breaches of its representations and warranties;

y) excusing ACSI from establishing a cash escrow to cover damages for breaches of ACSI's representations and warranties;

z) favoring their own personal interests;

aa) favoring their own personal financial interests

bb) favoring their own personal financial interests at the expense of shareholders;

cc) abusing their positions of control.

173.    As a result of the foregoing, Cambridge and/or Ability have been damaged and/or the Individual Defendants have been unjustly enriched.

## SIXTH CAUSE OF ACTION

## DERIVATIVE CLAIM FOR FAILURE TO DISCLOSE

### (*Against the Individual Defendants*)

174.    Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 154 as if set forth in full herein.

175.    Under applicable law, the Individual Defendants have a fiduciary obligation to cause Cambridge to completely disclose all material facts in the Proxy Statement so that Cambridge's shareholders can make an informed decision as to whether to vote their shares in favor of the Merger.  As alleged in detail above, including in Paragraphs 149 and 150, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material omissions in the Proxy Statement.

176.    As a result of these failures to disclose, Cambridge and/or Ability have been damaged and/or the Individual Defendants have been unjustly enriched.

## SEVENTH CAUSE OF ACTION

### DIRECT CLAIM FOR *ULTRA VIRES* ACTS IN VIOLATION OF CAMBRIDGE'S CERTIFICATE OF INCORPORATION

#### (Against the Individual Defendants)

177.    Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 154 as if set forth in full herein.

178.    As alleged *supra*, Cambridge's amended and restated Certificate of Incorporation provides that Cambridge will continue in existence only until June 23, 2015 (or December 23, 2015 if the Company had executed a definitive agreement to complete a business combination by June 23, 2015, but had not consummated the business combination by June 23, 2015).  As also alleged *supra*, the Parakou Merger Agreement was terminated in May, 2015 and the ACSI Merger

Agreement was not entered into until September 2015. Therefore, pursuant to its amended and restated certificate of incorporation, Cambridge was required to liquidate as of June 23, 2015 and redeem 100% of the outstanding public shares, at a per-share price, payable in cash, equal to an amount then held in the trust account (except for the initial shares and units held by the Individual Defendants (and other initial shareholders) which have no redemption rights). Defendants' efforts to violate Cambridge's amended and restated certificate of incorporation are *ultra vires* acts and therefore void.

179. By reason of the foregoing, Plaintiff and the Class have been damaged and/or are entitled to disgorgement of the Individual Defendants unjust gains.

## EIGHTH CAUSE OF ACTION

### DERIVATIVE CLAIM FOR *ULTRA VIRES* ACTS IN VIOLATION OF CAMBRIDGE'S CERTIFICATE OF INCORPORATION

#### (Against the Individual Defendants)

180. Plaintiff repeats and realleges all of the allegations of paragraphs 1 through 154 as if set forth in full herein.

181. As alleged *supra*, Cambridge's amended and restated Certificate of Incorporation provides that Cambridge will continue in existence only until June 23, 2015 (or December 23, 2015 if the Company had executed a definitive agreement to complete a business combination by June 23, 2015, but had not consummated the business combination by June 23, 2015). As also alleged *supra*, the Parakou Merger Agreement was terminated in May, 2015 and the ACSI Merger Agreement was not entered into until September 2015. Therefore, pursuant to its amended and restated certificate of incorporation, Cambridge was required to liquidate as of June 23, 2015 and redeem 100% of the outstanding public shares, at a per-share price, payable in cash, equal to an amount then held in the trust account (except for the initial shares and units held by the Individual

Defendants (and other initial shareholders) which have no redemption rights).  Defendants' efforts to violate Cambridge's amended and restated certificate of incorporation are *ultra vires* acts and therefore void.

182.    By reason of the foregoing, Cambridge and/or Ability has been damaged and/or the Individual Defendants have been unjustly enriched and Cambridge and/or Ability are entitled to disgorgement of the Individual Defendants unjust gains.

**WHEREFORE,** Plaintiff demands judgment as follows:

1.    determining that this action is a proper class action, and that Plaintiff is a proper Class representative;

2.    determining that this action is a proper derivative action;

3.    declaring that the Individual Defendants have breached their fiduciary duties to Plaintiff, the Class and Cambridge and/or Ability and that ACSI has aided and abetted such breaches;

4.    declaring that the Merger Agreement and the Merger are *ultra vires* and void;

5.    rescinding the Merger;

6.    ordering Benjamin Gordon, Mitchell I. Gordon, Michael Durham, Nathan Gantcher, and Scott Laurans to disgorge, with prejudgment interest, the amount by which each was unjustly enriched as a result of his and/or its participation in the conduct described above;

7.    awarding Plaintiff, the class and Cambridge and/or Ability compensatory and/or rescissory damages as allowed by law;

8.    awarding interest, attorney's fees, expert fees and other costs, in an amount to be determined; and

9.    granting such other relief as the Court may find just and proper.

Dated: April 12, 2018

**VIANALE & VIANALE LLP**

By: s/ Julie Prag Vianale
Julie Prag Vianale (Fla. Bar No. 184977)
Service email: jvianale@vianalelaw.com
Vianale & Vianale LLP
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Telephone: (561) 392-4750
Facsimile:  (561) 961-5191

*Counsel for Plaintiff*

**THE BRUALDI LAW FIRM, P.C.**
Richard B. Brualdi (Fla. PHV No. 24304)
John F. Keating, Jr. (Fla. Bar No. 533998)
29 Broadway, 24th Floor
New York, NY 10006
*Of Counsel*

NOT A CERTIFIED COPY