

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**LOS ANGELES REGIONAL OFFICE**
9TH FLOOR
444 SOUTH FLOWER STREET
LOS ANGELES, CALIFORNIA 90071

DIRECT DIAL: (323) 965-4552

February 9, 2017

**VIA OVERNIGHT MAIL**

J. Christian Word
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004

Re: *In the Matter of Ability Inc. (LA-4673)* – Benjamin H. Gordon

Dear Mr. Word:

The staff of the Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to your client, Benjamin H. Gordon, as part of this investigation. The subpoena requires your client to give us documents and provide sworn testimony.

Please read the subpoena and this letter carefully. This letter answers some questions you may have about the subpoena. You should also read the enclosed SEC Form 1662. Your client must comply with the subpoena. Your client may be subject to a fine and/or imprisonment if he does not.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires you to give us the documents described in the attachment to the subpoena, including electronic documents. The attachment to the subpoena defines some terms (such as "document") before listing what you must provide. **You must provide these documents to the staff by February 23, 2017.**

Please note that if copies of a document differ in any way, they are considered separate documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

If you prefer, you may send us photocopies of the originals. The Commission cannot reimburse you for the copying costs. The copies must be identical to the originals, including even faint marks or print. If you choose to send copies, you <u>must</u> keep the originals in a safe place. The staff will accept the copies for now, but may require you to produce the originals later.

Exhibit D

J. Christian Word
Latham & Watkins LLP
February 9, 2017
Page 2

If you <u>do</u> send us photocopies, please put an identifying notation on each page of each document to indicate that it was produced by you, and number the pages of all the documents submitted.  (For example, if Jane Doe sends documents to the staff, she may number the pages JD-1, JD-2, JD-3, etc., in a blank corner of the documents.)  Please make sure the notation and number do not conceal any writing or marking on the document.  If you send us originals, please <u>do not</u> add any identifying notations.

**Please produce all documents in accordance with the SEC Data Delivery Standards.  The Standards are attached to this letter.**

*Do I need to send anything else?*

**You should enclose a list briefly describing each item you send.  The list should state which paragraph(s) in the subpoena attachment each item responds to.**

**Please include a cover letter stating whether your client believes he has met his obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.**

**A copy of the subpoena should be included with the documents that are produced.**

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to <u>ENF-CPU@sec.gov</u>, or in a separate cover letter mailed separately from the data.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires you to send <u>all</u> the materials described in it.  If, for any reason -- including a claim of attorney-client privilege -- you do not produce something called for by the subpoena, you should submit a list of what you are not producing.  The list should describe each item separately, noting:

- its author(s);
- its date;
- its subject matter;
- the name of the person who has the item now, or the last person known to have it;
- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and
- the reason you did not produce the item.

If you withhold anything on the basis of a claim of attorney-client privilege or attorney work product protection, you should also identify the attorney and client involved.

J. Christian Word
Latham & Watkins LLP
February 9, 2017
Page 3

*Where should I send the materials?*

Please send the materials to:

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

**Please also email or mail a copy of your cover letter to:**

Jennifer Purpero
Attorney, C.P.A., Enforcement Division
U.S. Securities and Exchange Commission
444 South Flower Street, Suite 900
Los Angeles, CA  90036
purperoj@sec.gov

## Testifying

*Where and when do I testify?*

The subpoena requires your client to come to the Commission's offices at 444 South Flower Street, Suite 900, Los Angeles, CA 90071 at a date and time to be determined, to testify under oath in the matter identified on the subpoena.  Your client's testimony will be recorded by a stenographer.

## Other Important Information

*What will the Commission do with the materials I send and/or the testimony provided?*

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission.  This form has other important information for you.  Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry.  We are trying to determine whether there have been any violations of the federal securities laws.  The investigation and the subpoena do not mean that we have concluded that you or anyone else has broken the law.  Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

J. Christian Word
Latham & Watkins LLP
February 9, 2017
Page 4

*Important Policy Concerning Settlements*

      Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

      If you have any other questions, you can call me at (323) 965-4552 or email me at purperoj@sec.gov.

Sincerely,

Jennifer Purpero

Enclosures:    Subpoena with attachment
               SEC Form 1662
               SEC Data Delivery Standards



## SUBPOENA
# UNITED STATES OF AMERICA
### SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Ability Inc. (LA-4673)

To:    Benjamin H. Gordon
c/o Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004

---

☑   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission by February 23, 2017.

☑   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission at a date and time to be determined.

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA**.
Failure to comply may subject you to a fine and/or imprisonment.

By: _____      Date:   February 9, 2017

Jennifer T. Purpero
Attorney, C.P.A., Division of Enforcement
U.S. Securities and Exchange Commission
444 South Flower Street, Suite 900
Los Angeles, CA 90071

---

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

**ATTACHMENT TO SUBPOENA ISSUED TO**
**BENJAMIN H. GORDON**
**FEBRUARY 9, 2017**

## I. Instructions and Definitions

This subpoena requires the production of certain documents as specified in Part II of this attachment.  The required documents are to be produced in accordance with the following general requirements.

1.   The term "**documents**" means all written or graphic matter, however produced or reproduced onto any other tangible record, including, but not limited to, all writings or recordings, whether handwritten, typewritten, printed, photographed, recorded magnetically, mechanically or electronically, and all originals, copies, facsimiles, drafts, versions and revisions thereof, whether or not conforming, annotated, used or circulated, however created, produced, stored or maintained, and by whomever prepared, produced, sent, dated, received or used.  Specifically, the term "**documents**" includes, but is not limited to, e-mail transmissions (to/from/copy/bcc), Internet social network transmissions (such as Facebook postings, updates and messages), instant messages, text messages, tweets, websites and website comments, blogs, Internet archives or logs, faxes, books, papers, files, notes, desk files, contracts, agreements, invoices, bills, records of billings, checks (front and back), account statements, bank statements, drafts for money, records of payment, budgets, ledger sheets, financial information or analyses, confirmations, reports, worksheets, summaries, tables, charts, spreadsheets, lists, logs, memoranda, correspondence, telegrams, telexes, telephone bills, messages, archives or logs, Skype or other VoIP (Voice over Internet Protocol) or peer-to-peer messaging system bills, messages, archives or logs, other audio, video or audio and video transmission bills, messages, archives or logs, notes or minutes of conversations, meetings and discussions, transcriptions, calendars, rolodexes, address books, date books, diaries, schedules, itineraries, travel logs, wire messages, wire transfers, audio recordings, video recordings, audio and video recordings, electronic data compilations, computer disks, diskettes and disk packs (or hard copy of the data contained on such disks, diskettes and disk packs), and other electronic media, microfilm, microfiche and storage devices.

2.   The term "**communications**" means and includes, without limitation, any transmittal or receipt of information, whether by chance or prearranged, formal or informal, whether verbal, pictorial or symbolic, written, oral or electronic.  Specifically, the term "**communications**" includes, but is not limited to, conversations, presentations, meetings and discussions in person, by telephone, and through electronic media (such as Skype or other VoIP or peer-to-peer messaging systems, audio, video, and audio and video transmissions, e-mail transmissions (to/from/copy/bcc), Internet social network transmissions, instant messages, text messages, tweets, websites and blogs), and written correspondence

Attachment to Subpoena
Benjamin H. Gordon

through the use of the mails, courier services, telephone lines and wires, fax machines, and electronic media.

3. Documents or communications "**regarding**," "**relating to**," "**concerning**," or "**evidencing**" a given subject matter means and includes, without limitation, any document or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, refers to, bears upon, discusses, describes, analyzes, or is in any way pertinent to that subject, in the broadest possible sense.

4. The terms "**you**," "**your**," and "**Benjamin Gordon**" mean and include, without limitation, the individual by the name of Benjamin H. Gordon, or any other names which he is using or has formerly used, his successors, heirs, assigns, and trustees, and any entities over which Benjamin Gordon has or has had direct or indirect control and any and all related entities or affiliates.

5. The term "**Ability**" means and includes, without limitation, Ability Inc., its subsidiaries, parents, affiliates, divisions, segments, predecessors, successors, owners, shareholders, principals, officers, directors, managers, trustees, employees, agents, representatives, independent contractors, accountants, attorneys, consultants, and/or other persons or entities acting on its behalf, general partners, limited partners, partnerships, limited partnerships, operating partnerships, and any and all entities in which it has or has had a controlling or other interest, direct or indirect, and any aliases, code names, trade names, business names or any other names used by, or formerly used by, any of the foregoing, including but not limited to Ability Computer & Software Industries, Ltd. and Ability Security Systems Ltd.

6. The term "**Auditors**" means and includes, without limitation, BDO Ziv Haft, and any other auditor, person, or entity performing audit work for Ability.

7. You must produce all documents, communications and other materials described below that are in your actual or constructive possession or custody, or subject to your control.

8. You must produce the entirety of each and every document, communication and other materials described below, without alteration, deletion or obliteration of any information contained therein, including metadata, even though such information is not specifically requested.

9. You may provide original documents or copies of original documents, at your expense, with the understanding that the Staff has the right to compel production of the original documents at a later date.

10. All documents produced must be legible.

Attachment to Subpoena
Benjamin H. Gordon

11. If any of the documents, communications, or other materials called for are not produced, for whatever reason, you must submit a list of the documents, communications or other materials not produced and state for each:

    a. The author(s);

    b. The date of its creation;

    c. Its present or last known custodian;

    d. Its subject matter;

    e. All persons or entities known to have been furnished with the original or a copy or copies of the document, communication or other material or informed of its substance;

    f. The reason the document, communication or other material was not produced; and

    g. If the document, communication or other material is no longer in existence:

        i. The actual or approximate date the document, communication, or other material ceased to exist;

        ii. The circumstances under which the document, communication, or other material ceased to exist; and

        iii. The identity of all persons having knowledge of the circumstances under which the document, communication, or other material ceased to exist or having knowledge of the contents thereof.

12. If you claim attorney-client privilege as to any of the documents, communications, or other materials called for, you must provide a list of the of the documents, communications, or other materials claimed as privileged, indicating for each the date prepared, author, recipient(s), and subject matter, sufficiently identifying the documents, communications, or other materials to which you claim the privilege attaches in order that the Staff may determine whether to request in camera inspection by a federal district court judge.

13. The following rules of construction apply to this attachment:

    a. "**And**" and "**or**" are to be construed in the broadest possible sense, i.e., in the conjunctive or in the disjunctive as necessary to bring within the scope of the request all documents, communications, or other materials that might otherwise be construed to be outside its scope.

Attachment to Subpoena
Benjamin H. Gordon

    b.   "**Any**" and "**all**" mean "each and every."

    c.   "**Including**" and "**includes**" mean "without limitation."

    d.   The use of the singular form of any word includes the plural, and vice versa.

    e.   The past tense includes the present tense, and vice versa.

14.    The documents, communications, and other materials provided in response to this subpoena must be produced in the manner in which they were maintained, identifying the source of the document, communication or other material at the time of production.  For example, if documents are maintained loose in a file folder, the documents are to be produced in that same manner and not reorganized and/or put into a binder.

15.    All documents, communications or other materials provided in response to this subpoena must be identified by the number of the individual demand in Paragraph II to which they are responsive.

16.    All documents provided in electronic form must be provided in accordance with the SEC's Data Delivery Standards.

17.    Unless otherwise stated, you must produce the documents, communications, or other materials requested for the time period from **June 1, 2015 to the present**.

## II. <u>Documents to be Produced</u>

1.    All daily calendar(s) and any and all other documents evidencing daily appointments, activities, meetings, communications, and whereabouts, including, but not limited to, daytimers, appointment books, and electronic organizer devices maintained by or on behalf of Benjamin Gordon.  If any calendars or other responsive documents are in electronic format, printouts of those documents will be sufficient provided that the printouts are clear, legible and accurately reflect the content of the electronic format documents.  If you utilized printouts or any other paper copies of electronic format documents, please provide those copies, as well as any copies that have been annotated.

2.    All communications sent by and/or received by Benjamin Gordon regarding Ability, including but not limited to communications with Anatoly Hurgin, Alexander Aurovsky, Avi Levin, Evyatar Cohen, Itzik Malka, Avi Oz, Hagai Yedid, Eyal Tzur, EarlyBirdCapital, Inc., Migdal Underwriting & Business Initiatives Ltd., Ability's Board of Director members, audit committee members, or Auditors.

3.    All documents and communications related to Cambridge Capital Acquisition Corporation's acquisition of Ability or possible acquisition of Ability.

Attachment to Subpoena
Benjamin H. Gordon

4. All documents and communications related to due diligence on Cambridge Capital Acquisition Corporation's acquisition of Ability or possible acquisition of Ability.

5. All documents and communications regarding any monies, stock, reimbursement, or anything of value received by Benjamin Gordon as a result of Cambridge Capital Acquisition Corporation's acquisition of Ability.

6. All documents and communications related to Ability's and Cambridge Capital Acquisition Corporation's road show.

7. All documents provided to, presented to, or shared with investors/potential investors related to Cambridge Capital Acquisition Corporation's acquisition of Ability or possible acquisition of Ability.

8. All communications with investors/potential investors related to Cambridge Capital Acquisition Corporation's acquisition of Ability or possible acquisition of Ability.

9. All documents and communications related to Ability's financial statements for FY 2013, FY 2014, FY 2015, and FY 2016 (FY includes months and quarters).

10. All documents and communications related to Ability's projected financial information for FY 2015 and FY 2016 (FY includes months and quarters).

11. All documents and communications related to Ability's backlog for FY 2015 and FY 2016 (FY includes months and quarters).

12. All documents and communications related to Ability's restatement of its June 30, 2015 financial information.

13. All documents and communications related to Ability's restatement that occurred in May 2016.

14. All documents and communications related to MS Magnet Solutions Limited / CS Circles / CT Circles, NK Business Ventures Ltd., and Mildo Networks LLP.

15. All documents and communications related to Gustavo Cardenas Moreno.

16. All documents and communications related to ULIN.

17. All communications with investors related to investor concerns about Ability.

Attachment to Subpoena
Benjamin H. Gordon

18.　　All documents and communications regarding Ability's internal controls and/or internal control environment, including but not limited to any problems/issues with internal controls and any remediation measures taken.

19.　　All documents and communications concerning the loss of Ability customers, loss of contracts or business with customers, and/or decreased demand from customers.

20.　　All documents and communications concerning decreases in Ability's revenue, gross profit, and/or net income, higher costs, and change in product mix.

21.　　All documents related to Ability's trading policies and procedures, including but not limited to, insider trading policies, trading plan policies, and policies regarding seeking approval before trading Ability securities.

22.　　All documents and communications regarding black out or restricted trading periods in Ability securities.

23.　　All documents and communications concerning the receipt, acknowledgement or understanding of Ability's trading policies and procedures by Benjamin Gordon.

24.　　All documents and communications concerning purchases and/or sales in Ability securities and/or the exercise of Ability stock options by Benjamin Gordon.

25.　　A list, table, chart, or other documents sufficient to identify each and every receipt of, purchase, and/or sale of Ability securities in brokerage accounts that are or have been maintained by you, or by persons or entities controlled by you, or for which you are or have been a signatory, or in which you have or had a beneficiary interest, or over which you have or had discretionary control, or have or had trading authority for others, or over which you have or had other control, authority, or power of attorney, at any point in time.  Include the name of the brokerage firm, brokerage account name, and brokerage account number.

26.　　All 10b5-1 plans for Benjamin Gordon related to Ability.

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

## Supplemental Information for Persons Requested to Supply
## Information Voluntarily or Directed to Supply Information
## Pursuant to a Commission Subpoena

### A. False Statements and Documents

Section 1001 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

Section 1519 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . ., or in relation to or contemplation of any such matter.

### B. Testimony

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides that fines and terms of imprisonment may be imposed upon:

> Whoever--
>
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify

truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true.

5.   *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, Section 21(c) of the Securities Exchange Act of 1934, Section 42(c) of the Investment Company Act of 1940, and Section 209(c) of the Investment Advisers Act of 1940 provide that fines and terms of imprisonment may be imposed upon any person who shall, without just cause, fail or refuse to attend and testify or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6.  In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7.  To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8.  To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9.  To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10.  To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11.  To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12.  To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13.  To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14.  In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15.  To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16.  To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21.  To a trustee in bankruptcy.

22.  To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.



**U.S. Securities and Exchange Commission**

**Data Delivery Standards**

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   ***Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.***

General Instructions................................................................................................................1

Delivery Formats....................................................................................................................2

    I.   *Concordance*® Imaged Productions....................................................................2

       1.  Images.............................................................................................2

       2.  *Concordance Image*® or Opticon Cross-Reference File.................2

       3.  *Concordance*® Data File...............................................................3

       4.  Text................................................................................................3

       5.  Linked Native Files.......................................................................3

    II.  Native File Productions without Load Files.........................................3

    III.  Adobe PDF File Productions..............................................................3

    IV.  Audio Files..........................................................................................4

    V.  Video Files...........................................................................................4

    VI.  Electronic Trade and Bank Records ...................................................4

    VII. Electronic Phone Records ..................................................................4

    VIII. Audit Workpapers ...........................................................................5

**General Instructions**

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is __not__ considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR) during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF). If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production to the SEC.

Rev 07/2016

U.S. Securities and Exchange Commission
Data Delivery Standards

General requirements for **ALL** document productions are:

1. A cover letter should be included with each production and include the following:
   a. A list of each piece of media included in the production with its unique production volume number
   b. A list of custodians, identifying the Bates range for each custodian.
   c. The time zone in which the emails were standardized during conversion.
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
   a. Case number
   b. Production date
   c. Producing party
   d. Bates range
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate text files.
7. All load-ready collections should account for custodians in the custodian field.
8. Audio files should be separated from data files if both are included in the production.
9. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
10. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
11. Electronic productions may be submitted via Secure File Transfer. The SEC **cannot** accept productions made using file sharing sites.
12. Productions containing BSA or SARs material must be delivered on encrypted physical media. The SEC **cannot** accept electronic transmission of BSA or SARs material. Any BSA or SARs material produced should be segregated and appropriately marked as BSA or SARs material, or should be produced separately from other case related material.
13. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a separate cover letter from the media.
14. All electronic productions should be produced free of computer viruses.
15. Additional technical descriptions can be found in the addendum to this document.

*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.*

**Delivery Formats**

I. *Concordance*® Imaged Productions

The SEC prefers that all documents and data be produced in a structured format prepared for Concordance. All scanned paper and electronic file collections should be converted to TIFF files, Bates numbered, and include fully searchable text files.

1. **Images**
   a. Black and white images must be 300 DPI Group IV single-page TIFF files.
   b. Color images must be produced in JPEG format.
   c. File names cannot contain embedded spaces or special characters (including the comma).
   d. Folder names cannot contain embedded spaces or special characters (including the comma).
   e. All TIFF image files must have a unique file name, i.e. Bates number.
   f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.
   g. The number of TIFF files per folder should not exceed 500 files.
   h. Excel spreadsheets should have a placeholder image named by the Bates number of the file.
   i. AUTOCAD/photograph files should be produced as a single page JPEG file.

Rev 07/2016

U.S. Securities and Exchange Commission
Data Delivery Standards

2. *Concordance Image®* OR Opticon Cross-Reference File

The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

3. *Concordance®* Data File

The data file (.DAT) contains all of the fielded information that will be loaded into the *Concordance®* database.

a. The first line of the .DAT file must be a header row identifying the field names.
b. The .DAT file must use the following *Concordance®* default delimiters:
   Comma ¶ ASCII character (020)
   Quote þ ASCII character (254)
c. Date fields should be provided in the format: mm/dd/yyyy
d. Date and time fields must be two separate fields.
e. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.
f. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
g. For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
h. BEGATTACH and ENDATTACH fields must be two separate fields.
i. A complete list of metadata fields is available in **Addendum A** to this document.

4. Text

Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. We require document level ANSI text files, named per the FIRSTBATES/Image Key. Please note in the cover letter if any non-ANSI text files are included in the production. Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names). For redacted documents, provide the full text for the redacted version.

5. Linked Native Files

Copies of original email and native file documents/attachments must be included for all electronic productions.
a. Native file documents must be named per the FIRSTBATES number.
b. The full path of the native file must be provided in the .DAT file for the LINK field.
c. The number of native files per folder should not exceed 1,000 files.

II. **Native File Production without Load Files**

With prior approval, native files may be produced without load files. The native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. When approved, Outlook (.PST) and Lotus Notes (.NSF) email files may be produced in native file format. A separate folder should be provided for each custodian.

III. **Adobe PDF File Production**

With prior approval, Adobe PDF files may be produced in native file format.
1. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
2. All PDFs must be unitized at the document level, i.e., each PDF must represent a discrete document.
3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

Rev 07/2016

## IV. Audio Files

Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

    1) Caller Name:        Caller's name or account/identification number
    2) Originating Number:  Caller's phone number
    3) Called Party Name:   Called party's name
    4) Terminating Number: Called party's phone number
    5) Date:              Date of call
    6) Time:              Time of call
    7) Filename:         Filename of audio file

## V. Video Files

Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

## VI. Electronic Trade and Bank Records

When producing electronic trade and bank records, provide the files in one of the following formats:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details.

## VII. Electronic Phone Records

When producing electronic phone records, provide the files in the following format:

1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
    a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

## VIII. Audit Workpapers

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format or if proprietary software was used, on a standalone laptop with the appropriate software loaded so that the workpapers may be reviewed as they would have been maintained in the ordinary course of business. When possible, the laptop should be configured to enable a Virtual Machine (VM) environment.

U.S. Securities and Exchange Commission
Data Delivery Standards

## ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

Rev 07/2016

U.S. Securities and Exchange Commission
Data Delivery Standards

| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
|---|---|---|
| MIME_TYPE | MSG | The content type of an Email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the Email or native file document; will vary depending on the email format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty) Native: Date the document was created |
| TIME_CREATED | 10:25 AM | Email: (empty) Native: Time the document was created **This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty) Native: Date the document was last modified |
| TIME_MOD | 07:00 PM | Email: (empty) Native: Time the document was last modified **This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty) Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty) Native: Time the document was last accessed **This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) Native: Path where native file document was stored including original file name |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name. Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a069 8aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

Sample Image Cross-Reference File:

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

Rev 07/2016

## **ADDENDUM B**

For Electronic Phone Records, include the following fields in separate columns:

For Calls:

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable

For Text messages:

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

For Mobile Data Usage:

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

Rev 07/2016