

## DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY DECLARATIONS

**THIS IS A CLAIMS MADE AND REPORTED POLICY. SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE OPTIONAL EXTENSION PERIOD, IF APPLICABLE, PROVIDED SUCH CLAIM IS REPORTED IN WRITING TO THE INSURER AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN 60 DAYS AFTER THE END OF THE POLICY PERIOD. AMOUNTS INCURRED AS COSTS, CHARGES AND EXPENSES SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. THE INSURER SHALL NOT BE LIABLE FOR ANY COSTS, CHARGES AND EXPENSES AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND ANY OF THE INSUREDS. PLEASE READ THIS POLICY CAREFULLY.**

These Declarations along with the completed and signed **Application** and the Policy with endorsements shall constitute the contract between the **Insureds** and the Insurer.

Insurer: Beazley Insurance Company, Inc.

Policy No: V14969130101

Item 1.     **Parent Company:** Cambridge Capital Acquisition Corporation

**Principal Address:** 525 South Flagler Drive, Suite 201
West Palm Beach, FL 33401

Item 2.     **Policy Period:**

From:     18-Dec-2013

To:         18-Dec-2015

Both dates at 12:01 a.m. Local Time at the Principal Address stated in Item 1.

Item 3.     Limit of Liability:

a.     $2,000,000 in the aggregate for the **Policy Period.**

b.     $200,000 for all **Costs of Investigation** under Insuring Clause I.D.

Item 4.     Retentions:

| | |
|---|---|
| $75,000 | each **Claim** other than a **Securities Claim** under Insuring Clause I.B. |
| $200,000 | each **Securities Claim** under Insuring Clauses I.B. and I.C. |
| $0 | each **Claim** under Insuring Clause I.D. |
| $0 | each **Claim** under Insuring Clause I.E. |

Exhibit E

Item 5.   **Optional Extension Period:**

a. Premium for **Optional Extension Period:**   125% of the total premium as for the Policy

b. Length of **Optional Extension Period:**   12 months

Item 6.   Notification under this Policy:

a. Notification pursuant to Clause VI. shall be given to:

Beazley Insurance Company, Inc.
30 Batterson Park Road
Farmington, CT 06032
Attn: Claims
Or by email: claims@beazley.com

b. All other notices under this Policy shall be given to:

Beazley Insurance Company, Inc.
30 Batterson Park Road
Farmington, Connecticut 06032
Tel: (860) 677-3700
Fax: (860) 679-0247

Item 7.   Pending or Prior Litigation Date:

Insuring Clause I.A: 18-Dec-2013

Insuring Clause I.B: 18-Dec-2013

Insuring Clause I.C: 18-Dec-2013

Insuring Clause I.D: 18-Dec-2013

Insuring Clause I.E: 18-Dec-2013

Item 8.   Coinsurance Percentage For **Securities Claims:** 0%

Item 9.   **Outside Entities:**          None Noted

Item 10.   Premium:                                              $40,073

0.90% FL Insurance Guaranty Association Recoupment:          $360.66

1.3% FL Catastrophe Fund:                                    $520.95

Total Premium:                                               $40,954.61

Item 11.   Terrorism Coverage: Included at no additional premium

Endorsements Effective at Inception:

| | |
|---|---|
| 1. BICDO05010905 | Amend Insured Person to Include General Counsel |
| 2. BICDO05061205 | Amend Definition of Application |
| 3. BICDO05490307 | Optional Extension Period Options |
| 4. BICDO05800507 | Amended "Non-Profit Entity" |
| 5. BICDO05930707 | Extradition Coverage |

| 6. E00112102007 | Fully Non-Rescindable Endorsement |
| 7. E00301022008 | Amend Severability Of Application |
| 8. E01031032009 | Affirm Severability Of Application |
| 9. E01651122009 | Amend Notice Of Claim To Include E-Mail |
| 10. E01655122009 | Securities Claim Carveback to Exclusion A. |
| 11. E01661122009 | Amend Acquisition of Subsidiary to 35% of Assets |
| 12. E01798022010 | Amend Prior Notice Exclusion - "Any Directors And Officers Liability Or Employment Practices Liability Insurance Coverage Liability Policy" |
| 13. E01843022010 | Amend Other Insurance Exclusion - "Valid And Collectible Directors And Officers Liability Or Employment Practices Liability Insurance" |
| 14. E02348102010 | Amend Severability of Exclusions to Control Group |
| 15. E03123082011 | Recognize Erosion of Retention |
| 16. E03445122011 | 60 Day Advancement |
| 17. E04516032013 | Amended Claim, And Costs, Charges And Expenses Definitions |
| 18. E04517032013 | Amend Subrogation Clause |
| 19. E04710052013 | Blanket For-Profit Outside Directorship Liability Triple Excess |
| 20. E04711052013 | Amend Definition of Loss - Sarbanes-Oxley Act Section 308 |
| 21. E04712052013 | Amend Definition of Loss, Add Non-Entity Employment Wrongful Act Cover, Amend Exclusions D.,E.,F., G and H., Amend Notification |
| 22. E04728052013 | Merger and Acquisition Increased Retention Endorsement |
| 23. E05115102013 | Conversion to Run-Off or Cancellation Following Acquisition |
| 24. BICDO00170108FL | Florida Amendatory Endorsement |
| 25. BICMU00080405 | Countersignature Endorsement |
| 26. E02804AFL092011 | Sanction Limitation and Exclusion Clause - Florida |
| 27. BICMU05070406 | War and Civil War Exclusion |

The Insurer has caused this Policy to be signed and attested by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the Insurer.

Authorized Representative

Christinep Oldridge

Secretary

26-Feb-2014

Date

President

BICDO00011206                    **Beazley Insurance Company, Inc.**                    Page 3 of 3

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## AMEND INSURED PERSON TO INCLUDE GENERAL COUNSEL

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II.
Definitions G. **Directors and Officers** is amended to include the General Counsel of the **Company**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

BICDO05010905                                                                          Page 1 of 1

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND DEFINITION OF APPLICATION

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that the definition of **Application** set forth in Clause II. Definitions A. shall not include applications or other materials created more than 12 months prior to **18-Dec-2013.**

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## OPTIONAL EXTENSION PERIOD OPTIONS

This endorsement modifies insurance provided under the following:

### DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Item 5. of the Declarations is deleted and replaced with the following:

Item 5. **Optional Extension Period**:

a.     Premium for **Optional Extension Period**:       b.       **Length of Optional Extension Period:**

| **125%** of the total premium for the policy | **72 Months** |
| **N/A** of the total premium for the policy | **N/A** |
| **N/A** of the total premium for the policy | **N/A** |

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMENDED "NON-PROFIT ENTITY"

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause II. Definitions M. is deleted and replaced with:

M.     **"Non-Profit Entity"** means any non-profit organization which is not included in the definition of the **Company**.

All other terms and conditions of this Policy remain unchanged.

_Authorized Representative_

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## EXTRADITION COVERAGE

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that solely for the purposes of this endorsement and where permitted by law:

1. Clause II. Definitions B. "**Claim**" is amended to include any:

   a. official request for **Extradition** of any **Directors and Officers**; or

   b. the execution of a warrant for the arrest of any **Directors and Officers** where such execution is an element of **Extradition**.

2. Clause II. Definitions E. "**Costs, Charges and Expenses**" is amended to include:

   reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the Insurer resulting from any **Directors and Officers** lawfully:

   a. opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of any **Directors and Officers**; or

   b. appealing any order or other grant of **Extradition** of any **Directors and Officers**.

3. For the purposes of this endorsement the term "**Extradition**" means any formal process by which any **Directors and Officers** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

4. Clause I. Insuring Clauses C. does not apply to **Costs, Charges and Expenses** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim.**

All other terms and conditions of this Policy remain unchanged.

_Authorized Representative_

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## FULLY NON-RESCINDABLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause VII. General Conditions A. is deleted and replaced with the following:

VII.    GENERAL CONDITIONS

A.    Representation Clause

By acceptance of this Policy, the **Insureds** agree:

1.    that the statements in the **Application** are their representations, and that this Policy is issued in reliance upon the truth of such representations;

2.    that in the event that the **Application** contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Insurer under this Policy, this Policy shall not afford any coverage with respect to those **Insureds** who made or had knowledge of such misrepresentations;

3.    that this Policy shall not afford any coverage under Insuring Clause I.B. to the extent the **Company** indemnifies any of the **Insureds** who made or had knowledge of the misrepresentations set forth in Clause VII.A.2.; and

4.    that this Policy shall not afford any coverage under Insuring Clause I.C. if the chief chairman of the board, president, chief executive officer, chief operating officer or chief financial officer of the **Company** made or had knowledge of the misrepresentations set forth in Clause VII.A.2.

The provisions of A.2., A.3. and A.4. above apply whether or not such **Insureds** knew such misrepresentations were disclosed in the **Application**.

The Insurer shall not be entitled under any circumstances to rescind this Policy, but such coverage will be subject to all other terms, conditions and exclusions of the Policy.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

E00112                                                                                                  Page 1 of 1
102007 ed.

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## AMEND SEVERABILITY OF APPLICATION

This endorsement modifies insurance provided under the following:

### DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause
**VII. GENERAL CONDITIONS** A.5. is deleted and replaced with the following:

5.      that this Policy shall not afford any coverage under Insuring Clause I.C. if the **Chief Executive
        Officer & Chief Financial Officer** of the **Company** made or had knowledge of the
        misrepresentations set forth in Clause **VII.** A.2.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E00301                                                                                          Page 1 of 1
022008 ed.

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AFFIRM SEVERABILITY OF APPLICATION

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that for purposes of determining the applicability of Clause VII. General Conditions A., no knowledge of misrepresentations possessed by any **Directors and Officers** shall be imputed to any other **Directors and Officers**.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND NOTICE OF CLAIM TO INCLUDE E-MAIL

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause VI. Notification C. of the Policy is deleted and replaced with the following:

C.      Notice to the Insurer provided in Clause VI.A. and B. shall be given to the firm shown in Item 6.a. of the Declarations. All other notices to the Insurer under this Policy shall be given to the firm shown in Item 6.b. of the Declarations. Except with respect to notices provided for in Clause VII.D., all notices under any provision of this Policy must be made in writing and delivered by electronic mail, prepaid express courier, certified mail or fax. Notices given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E01651                                                                                                                      Page 1 of 1
122009 ed.

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## SECURITIES CLAIM CARVEBACK TO EXCLUSION A.

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause III.
Exclusions A. shall not apply to any **Securities Claim**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

<u>**AMEND ACQUISITION OF SUBSIDIARY TO 35% OF ASSETS**</u>

This endorsement modifies insurance provided under the following:

**DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.    Clause II. Definitions W.3. and W.4. are deleted and replaced with the following:

    3.    becomes so owned or controlled after the inception date of this Policy provided the assets of the entity do not exceed 35% of the consolidated assets of the **Company** as set forth in the **Company's** most recent audited financial statement; or

    4.    becomes so owned or controlled after the inception date of this Policy provided that if the assets of the entity exceed 35% of the consolidated assets of the **Company** as set forth in the **Company's**  most recent audited financial statement, the provisions of Clause VII.B. must be fulfilled.

2.    Clause VII. General Conditions B.1. is deleted and replaced with the following:

    1.    This Policy is issued and the premium computed on the basis of the information submitted to the Insurer as part of the **Application**.  In the event the **Parent Company**, after the inception of this Policy, acquires any other entity or acquires substantially all of the assets of another entity, or merges with another entity such that the **Parent Company** is the surviving entity, or creates or acquires a **Subsidiary** whose assets exceed 35% of the consolidated assets of the **Company** as set forth in the **Company's** most recent audited financial statement, coverage shall be afforded for a period of ninety (90) days for any **Loss** in any way involving the assets acquired or the assets, liabilities, directors, officers or employees of the entity acquired or merged with, or such **Subsidiary**.  Coverage beyond such ninety (90) day period shall only be available if:

       (a)    written notice of such transaction or event is given to the Insurer by the **Parent Company**;

       (b)    the **Parent Company** provides the Insurer with such information in connection therewith as the Insurer may deem necessary;

       (c)    the **Insureds** accept any special terms, conditions, exclusions or additional premium charge as may be required by the Insurer; and

       (d)    the Insurer, at its sole discretion, agrees to provide such coverage.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

E01661                                                                                                                                     Page 1 of 1
122009 ed.

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND PRIOR NOTICE EXCLUSION – "ANY DIRECTORS AND OFFICERS LIABILITY OR EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE LIABILITY POLICY"

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause III. Exclusions B.1. is deleted and replaced with the following:

1.    any **Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given prior to the **Policy Period** under any other directors and officers liability or employment practices liability policy, or

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMEND OTHER INSURANCE EXCLUSION – "VALID AND COLLECTIBLE DIRECTORS AND OFFICERS LIABILITY OR EMPLOYMENT PRACTICES LIABILITY INSURANCE"

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause III. Exclusions C. is deleted and replaced with the following:

C.     to the extent it is insured under any other existing valid and collectible policy for directors and officers or employment practices liability policy, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise; provided, however, this exclusion shall not apply to the amount of **Loss** which is in excess of the amount of any deductible and the Limit of Liability of such other policy where such **Claim** is otherwise covered by this Policy;

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

E01843                                                                                                    Page 1 of 1
022010 ed.

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## AMEND SEVERABILITY OF EXCLUSIONS TO CONTROL GROUP

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that final paragraph of Clause III. Exclusions is deleted in its entirety and replaced with the following:

No **Wrongful Acts** shall be imputed to any other natural person for the purpose of determining the applicability of exclusions G. and H. above. The **Wrongful Acts** by any of the Chief Executive Officer & Chief Financial Officer of the **Parent Company** shall be imputed to the **Company** for the purpose of determining the applicability or Exclusions G. and H. above.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## RECOGNIZE EROSION OF RETENTION

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding anything in Section IV. B. to the contrary, if and to the extent any covered **Loss** which is within any applicable Retention under this Policy is paid on behalf of the **Directors and Officers** by any other insurer pursuant to the terms and conditions of any Excess Difference in Conditions Side A policy which is specifically excess of this Policy, then such applicable Retention under this Policy shall be eroded by the amount of such payment.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

E03123                                                                                                                    Page 1 of 1
082011 ed.

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## 60 DAY ADVANCEMENT

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause IV.B.4. is deleted and replaced with the following:

4.      With respect to Insuring Clause I.B., if the **Company** is permitted or required by law or pursuant to the by-laws or other organizational documents of the **Company** to indemnify the **Directors and Officers** for any **Loss**, or to advance **Costs, Charges and Expenses** on their behalf, and does not in fact do so within 60 days of **Loss** or **Costs, Charges and Expenses** becoming due and payable other than for reasons of **Financial Impairment**, the Insurer shall pay **Loss**, or advance **Costs, Charges and Expenses**, on behalf of the **Directors and Officers** without regard to the Retention, but the **Company** shall reimburse the Insurer for such amounts up to the Retention applicable to Insuring Clause I.B. as set forth in Item 4. of the Declarations.

All other terms and conditions of this Policy remain unchanged.

_Authorized Representative_

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## AMENDED CLAIM AND COSTS, CHARGES AND EXPENSES DEFINITIONS

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of the premium charged for the Policy, it is hereby understand and agreed that:

1.  Clause II. **DEFINITIONS** B. "Claim" is deleted in its entirety and replaced with the following:

    B.  "**Claim**" means:

        1.  any written demand for damages or other relief against any of the **Insureds**, or any civil, criminal, administrative, regulatory, arbitration, mediation or other alternative dispute resolution proceeding initiated against any of the **Insureds,** including:

            (a)  any appeal therefrom;

            (b)  any proceeding before the Equal Employment Opportunity Commission or any similar federal, state, local or foreign governmental body with jurisdiction over any employment-related **Wrongful Act**;

            (c)  any formal investigatory proceeding before the Securities and Exchange Commission, the Department of Justice or any similar federal, state, local or foreign governmental body with jurisdiction over any **Securities Claim;**

        2.  any civil, criminal, administrative or regulatory investigation of any of the **Directors and Officers**, including an investigation by a **Regulatory Authority**:

            (a)  once any such **Directors and Officers** are identified in writing by such investigating authority as a person against whom a proceeding described in 1. above may be brought, including without limitation receipt of a target letter, or

            (b)  after the service of a subpoena, or other similar written request compelling witness testimony or document production upon any such **Directors and Officers**, or

            (c)  after such **Directors and Officers** has been identified in a Wells Notice or target letter, describing actual or alleged violations of securities laws or other laws by any such **Directors and Officers**;

        3.  any extradition proceeding initiated against any **Directors and Officers**, or the arrest and detainment or incarceration for more than 24 hours of any **Directors and Officers** solely with respect to their status as **Directors and Officers** of the **Company**, by any law enforcement authority in a foreign jurisdiction in conjunction with any proceeding described in 1. or 2. above;

        4.  a request by the **Company** or a **Regulatory Authority** for any of the **Directors and Officers** to appear for an interview or meeting or to produce documents in connection with:

            (a)  an inquiry or investigation by a **Regulatory Authority**, or

            (b)  a securityholder derivative demand,regarding such **Directors and Officers** capacity as such or the business of the **Company**, but shall not include any routine or regularly scheduled regulatory or internal supervision, inspection,

        compliance, review, examination, production or audit, including any request for
        mandatory information from a regulated entity;

    5. solely for the purpose of coverage afforded under Insuring Clause I.D., a
       **Shareholder Derivative Demand**; or

    6. a written request received by any of the **Insureds** to toll or waive a statute of
       limitations.

2.    Clause II. **DEFINITIONS** E. is amended by the addition of the following:

    **Costs, Charges and Expenses** shall include in respect of coverages afforded under Clause
    II.B.3., reasonable costs (other than collateral) consented to by Underwriters for a bond or other
    financial instrument to guarantee the contingent obligation of the **Directors and Officers** for
    bail or equivalent required by a court in any foreign jurisdiction,

3.    Clause II. **DEFINITIONS** is amended by the addition of the following:

    Y.    "**Regulatory Authority**" means any federal, state, local or foreign law enforcement or
        governmental authority (including the Department of Justice, the Securities and
        Exchange Commission and any attorney general) or the enforcement unit of any
        securities exchange or similar self-regulating body.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

### AMEND SUBROGATION CLAUSE

This endorsement modifies insurance provided under the following:

### DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding Clause IX. Assistance, Cooperation and Subrogation, in the event of payment under the Policy, the Underwriters will not be subrogated to any **Insured's** potential or actual rights of recovery in connection therewith against any other **Insured** unless it is established, by final, nonappealable, adjudication in the underlying **Claim**, that such **Insured** committed any deliberately dishonest, fraudulent or criminal act or omission, obtained any personal profit or advantage to which such **Insured** was not legally entitled or received remuneration without the previous approval of the appropriate governing body of the **Company**.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### BLANKET FOR-PROFIT OUTSIDE DIRECTORSHIP LIABILITY TRIPLE EXCESS

This endorsement modifies insurance provided under the following:

### DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1. Clause **II. DEFINITIONS** O. "**Outside Entity**" is deleted in its entirety and replaced with the following:

    O. "**Outside Entity**" means:

    1. any **Non-Profit Entity**;

    2. any other entity, if specified in Item 9. of the Declarations; or

    3. any **For-Profit Outside Entity**.

2. Clause **II. DEFINITIONS** is amended by the addition of:

    "**For-Profit Outside Entity**" means any entity, other than the **Company** and any **Non-Profit Entity**.

3. Insuring Clause I.E. is deleted in its entirety and replaced with the following:

    E. The Insurer shall pay on behalf of the **Directors and Officers** all **Loss** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for a **Wrongful Act** committed while serving in an **Outside Executive Position** provided such **Claim** is reported in writing to the Insurer as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period,** if purchased. The coverage afforded by this Insuring Clause shall be specifically excess of any indemnification and insurance available to such **Directors and Officers** from the **Outside Entity**, and solely with respect to any **For-Profit Outside Entity**, any indemnification available from the **Company**.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E04710
052013 ed.

Page 1 of 1

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## AMEND DEFINITION OF LOSS – SARBANES-OXLEY ACT SECTION 308

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause **II.
DEFINITIONS** K. "**Loss**" is amended by the addition of:

any civil fines and penalties consented to by the Underwriters and incurred by the **Parent Company**
pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

E04711                                                                                                      Page 1 of 1
052013 ed.

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## AMEND DEFINITION OF LOSS, ADD NON-ENTITY EMPLOYMENT WRONGFUL ACT COVER, AMEND EXCUSIONS D., E., F., G. AND H., AMEND NOTIFICATION

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.  Clause **II. DEFINITIONS** K. is deleted in its entirety and replaced with the following:

    K.    "**Loss**" means the amounts which the **Insureds** become legally obligated to pay on account of a **Claim**, including:

    1.  damages, judgments, including pre and post-judgment interest, settlements and **Costs, Charges and Expenses**, punitive, exemplary and multiplied damages where the applicable law allows coverage for punitive, exemplary or multiplied damages, incurred by any of the **Insureds**, but **Loss** (other than **Costs, Charges and Expenses**) shall not include:

        (a)   taxes or the loss of tax benefits except with respect to that portion of any tax assessment, imposed on any of the **Directors and Officers** by a foreign jurisdiction based on the Underwriters' payment of such damages, judgments or settlements as a foreign or non-admitted carrier; or

        (b)   criminal or civil fines or penalties imposed by law, except civil penalties assessed against any **Directors and Officers** pursuant to Section 78dd 2(g)(2)(B) or Section 78ff (c)2(B) of the Foreign Corrupt Practices Act, 15 U.S.C.;

        (c)   matters deemed uninsurable under the law pursuant to which this Policy shall be construed;

        (d)   any wages, salary or benefits owed pursuant to the terms of any employment contract;

        (e)   any amount representing the increase in price or consideration where the **Claim** involves allegations that the price or consideration paid or offered to be paid for a merger, consolidation or acquisition of all or a majority of stock issued by or assets owned by any person or entity is inadequate or unfair

    2.  reasonable and necessary fees, costs and expenses consented to by the Underwriters (including the premium or origination fee for a loan or bond) and incurred by:

        (a)   the CEO and/or CFO of the **Parent Company** solely to facilitate the return of amounts required to be repaid pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002; or

        (b)   the **Directors and Officers** of the **Parent Company** solely to facilitate the return of amounts required to be repaid pursuant to Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act;

provided, that such fees, costs or expenses do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act.

Notwithstanding the foregoing, the Underwriters shall not assert that the portion of any judgment, settlement or **Costs, Charges and Expenses** incurred in connection with any **Claim** for a **Securities Claim** alleging violations of Section 11 or 12 of the Securities Act of 1933 as amended, including without limitation such **Loss** of any **Directors and Officers** deemed to be a controlling person within the meaning of Section 15 of the Securities Act of 1933, as amended are uninsurable.

With respect to the coverage for punitive, exemplary or multiplied damages, and the insurability of matters under exception (c) above, where the **Insureds** are able to demonstrate in good faith that such damages or matters are insurable under any applicable law, the Underwriters shall not challenge that interpretation of insurability. For purposes of this provision, "any applicable law" shall include, but not be limited to: a) where the **Claim** seeking such damages was brought, b) where the **Wrongful Acts** giving rise to the **Claim** seeking such damages took place, c) where the **Insureds** are incorporated, have their principal place of business or reside, and d) where the Underwriters are incorporated or have their principal place of business.

2.  Clause **II. DEFINITIONS** is amended by adding the following:

    "**Employment Wrongful Act**" means any of the following by any of the **Directors and Officers** against an employee or applicant for employment of the **Company**: discrimination, sexual or other harassment, retaliation, actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful, actual or alleged wrongful demotion, evaluation, deprivation of a career opportunity, or discipline, actual or alleged breach of an implied employment agreement, actual or alleged misrepresentation in connection with an employment decision, actual or alleged violation of the Family and Medical Leave Act, actual or alleged false imprisonment, detention or malicious prosecution in connection with an employment decision, actual or alleged libel, slander, defamation of character or any invasion of right of privacy in connection with an employment decision, or actual or alleged failure to employ or promote, train, create or enforce adequate workplace or employment policies and procedures, or grant tenure or seniority, or negligent hiring, training and supervision.

    In addition, solely with respect to any natural person customer or client, **Employment Wrongful Act** shall mean only actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether committed directly, indirectly, intentionally or unintentionally.

3.  Solely with respect to any **Claim** for an **Employment Wrongful Act**, Clause **II. DEFINITIONS** G. "**Directors and Officers**" is amended to include any employee of the **Company**.

4.  Clause **II. DEFINITIONS** X. "**Wrongful Act**" is amended to include any **Employment Wrongful Act** by any of the **Directors and Officers**.

5.  Clause **III. EXCLUSIONS** A. shall not apply to that portion of a **Claim** for an **Employment Wrongful Act** alleging libel, slander, defamation, mental anguish, emotional distress, false imprisonment or invasion of privacy.

6.  The Underwriters shall not be liable to make any payment for **Loss** in connection with or resulting from any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any **Employment Wrongful Act** by the **Company**.

7.  Clause **III. EXCLUSIONS** D., E., F., G. and H. are deleted in their entirety and replaced with the
    following:

    D.   for any actual or alleged seepage, pollution or contamination of any kind; provided, however,
         this exclusion shall not apply to:

         1.   the coverage afforded under Clause **I.**A., or

         2.   the coverage afforded under Clause **I.**B. or **I.**C. for a **Securities Claim** provided such
              **Claim** is instigated and continued totally independent of, and totally without the
              solicitation of, or assistance of, or active participation of, or intervention of the
              **Company** (other than as provided for in Clause **III.**F.5.), or

         3.   **Claims** brought by any of the **Directors and Officers** alleging violation of any federal,
              state or local "whistleblower" statute;

    E.   for any actual or alleged violations of any of the responsibilities, obligations or duties
         imposed by the Employee Retirement Income Security Act, the Fair Labor Standards Act
         (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and
         Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the
         Occupational Safety and Health Act, or any violation of any federal, state, local or foreign
         statutory law or common law that governs the same topic or subject and any rules,
         regulations and amendments thereto; provided, however, this exclusion shall not apply to:

         1.   any **Directors and Officers** alleging violation of any federal, state or local
              "whistleblower" statute;

    F.   by, on behalf of, or at the direction of the **Company**, except and to the extent that such
         **Claim**:

         1.   is brought derivatively by a security holder of the **Company**; or

         2.   is brought in the event of the appointment of a trustee, examiner, receiver, liquidator,
              rehabilitator or similar official; or

         3.   is brought by a creditors committee pursuant to 2. above; or

         4.   is brought against any former **Directors and Officers;** or

         5.   is:

              (a)  brought by the Supervisory Board of the **Company** against any **Directors and
                   Officers** in their capacity as a member of such **Company's** Management Board,
                   if the Supervisory Board is legally required to bring and maintain the **Claim**; or

              (b)  brought by the **Company** against any **Directors and Officers** of such
                   **Company**, if the **Company** brings the **Claim**:

                   i.    to implement a shareholder resolution adopted at the **Company's** Annual
                         General Meeting; or

                   ii.   to implement a judicial or arbitration decision concluding that information
                         required to be presented at the **Company's** Annual General Meeting
                         would, had it been so presented, have led to the adoption of a
                         shareholder resolution demanding that the **Claim** be made

provided, that such **Claim** is brought solely and entirely outside the United States of America, Canada, Australia or any other common law jurisdiction and is instigated without the assistance of any **Insured** and is:

a. a civil proceeding commenced by the service of a complaint or similar pleading;

b. a criminal proceeding commenced by the return of an indictment;

c. a formal civil administrative or civil regulatory proceeding commenced by the filing of a notice of charges or similar document or by the entry of a formal order of investigation or similar document; or

d. an appeal from a proceeding described in a., b. or c. above;

G. brought about or contributed to by:

1. any deliberately dishonest, fraudulent or criminal act or omission by any of the **Insureds**, or

2. any personal profit or advantage gained by any of the **Directors and Officers** to which they were not legally entitled

as determined by a final non-appealable adjudication in any action or proceeding.

H. for the return by any of the **Directors and Officers** of any remuneration paid to them without the previous approval of the appropriate governing body of the **Company**, which payment without such previous approval shall be determined by a final non-appealable adjudication in any action or proceeding to be in violation of the law.

Notwithstanding the foregoing, Exclusions G.2 and H. shall not apply to that portion of any **Claim** for a **Securities Law Violation** alleging violations of Section 11 or 12 of the Securities Act of 1933 as amended including without limitation such **Loss** of any **Insured Persons** deemed to be a controlling person within the meaning of Section 15 of the Securities Act of 1933, or any similar securities laws or common laws or regulations of any foreign jurisdiction, as amended.

With respect to Exclusion G.1. for acts or omissions which are treated as a criminal violation in a jurisdiction outside the United States of America that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such jurisdiction will not, by itself, be conclusive proof that a deliberately dishonest, fraudulent or criminal act or omission occurred.

It is further agreed that the **Company** shall not seek repayment from the **Directors and Officers** of advanced **Defense Costs** that are uninsured pursuant to Exclusions G.2 and H. unless the applicable determination standard (i.e. final non-appealable adjudication; or other) has been met and all other provisions of this policy applicable to Exclusions G.2 and H. have been applied.

8. If this Policy is a renewal of a Directors, Officers and Company Liability Insurance Policy issued by Beazley Insurance Company, Inc. Clause **VI. NOTIFICATION** A. is deleted in its entirety and replaced with the following:

The **Insureds** shall, as a condition precedent to their rights to payment under this Policy, give to Underwriters notice in writing of any **Claim** as soon as practicable after the Chief Executive Officer & Chief Financial Officer of the **Parent Company** first becomes aware of such **Claim,** but in no event later than: 1. 60 days after the end of the **Policy Period**, or 2. in the event this Policy is renewed with the Underwriters, 180 days after the end of the **Policy Period**.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the "Underwriters"**

### MERGER AND ACQUISITION INCREASED RETENTION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1. Item 4. of the Declarations is deleted in its entirety and replaced with the following:

   Item 4.     Retentions:

   | | |
   |---|---|
   | \$350,000 | each **Claim** under Insuring Clause I.B., other than a i) **Securities Claim** or ii) a **Merger or Acquisition Claim** |
   | \$350,000 | each **Securities Claim** under Insuring Clauses I.B. and I.C., other than a **Merger or Acquisition Claim** |
   | \$350,000 | each **Merger or Acquisition Claim** under Insuring Clauses I.B. and I.C |
   | \$0 | each **Claim** under Insuring Clause I.D. |
   | \$0 | each **Claim** under Insuring Clause I.E. |

2. Clause **II. DEFINITIONS** is amended by the addition of the following:

   **"Merger or Acquisition Claim"** means any **Claim** in whole or in part based upon, arising out of, or in consequence of any proposed or actual merger, acquisition or consolidation of the **Company**.

All other terms and conditions of this Policy remain unchanged.

_Jim Cole_
Authorized Representative

E04728                                                                                              Page 1 of 1
052013 ed.

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## CONVERSION TO RUN-OFF OR CANCELLATION FOLLOWING ACQUISITION

This endorsement modifies insurance provided under the following:

**DIRECTORS, OFFICERS AND COMPANY LIABILITY POLICY**

In consideration of the premium charged for the Policy, it is hereby understood and agreed that:

1.      Clause **II. DEFINITIONS** D. **"Corporate Takeover"** is amended by the addition of:

   3.      The consummation of an "Initial Business Combination" as that term is defined in the
   **Parent Company's** Prospectus dated 17-Dec-2013 and filed with the Securities and
   Exchange Commission.

2.      Clause **II. DEFINITIONS** W. is deleted in its entirety and replaced with the following:

   W. **"Subsidiary"** means:

      1.  any entity while more than fifty percent (50%) of the outstanding voting securities
      representing the present right to vote for the election of such entity's directors are owned
      by the **Parent Company** directly or indirectly,

      2.  any limited liability corporation while the right to elect or otherwise appoint or designate
      more than fifty percent (50%) of such limited liability corporation's **Managers** is owned or
      controlled by the **Parent Company**, directly or indirectly, or

      3.  any joint venture, which is a corporate entity, while the **Parent Company** has managerial
      control, or while the right to elect or otherwise appoint more than fifty percent (50%) of
      such entity's directors, trustees or other equivalent executive is owned or controlled by
      the **Parent Company** directly or indirectly,

      if such entity or corporation:

      1.  was so owned prior to the inception date of this Policy and was insured under a policy
      issued by the Underwriters of which this Policy is a renewal; or

      2.  was so owned or controlled on the inception date of this Policy.

3.      In the event of a **Corporate Takeover**, the **Parent Company** shall have the option, upon written
notice to the Underwriters prior to the effective date of the **Corporate Takeover**, to either:

   A.      extend the **Policy Period** exactly 6 years from the effective date of the **Corporate
   Takeover** (the "Run-off Period"), with the following terms:

      i.      the Underwriters will offer the Run-off Period for 125% of the full premium,

      ii.     the unearned premium calculated as of the effective date of the **Corporate
      Takeover** will be credited against the additional premium for such Run-off
      Period, and

          iii.     the additional premium for this Run-off Period will be deemed fully earned upon the effective date of the **Corporate Takeover**; or

B.     cancel this Policy without penalty prior to the effective date of the **Corporate Takeover** by providing notice in accordance with Clause VII.D. Cancellation/Nonrenewal paragraph 1. with the following terms:

          i.      Clause **XIX. SHORT RATE TABLE AND PROCEDURES** will be deemed deleted in its entirety, and

          ii.     Clause VII.D. Cancellation/Nonrenewal paragraph 3. will be deemed deleted in its entirety and replaced with the following:

                3.     If this Policy is cancelled by the **Parent Company**, the Underwriters shall retain the pro rata proportion of the premium hereon.  If this Policy is cancelled by the Underwriters, the Underwriters shall retain the pro rata proportion of the premium hereon.  Payment or tender of any unearned premium by Underwriters shall not be a condition precedent to the effectiveness of cancellation.

All other terms and conditions of this Policy remain unchanged.

Authorized Representative



**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**

## FLORIDA AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

### DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

1. Clause **II. DEFINITIONS** K. 1. is deleted and replaced by the following:

   1. punitive or exemplary damages,

      (a) except to the extent such damages are assessed for vicarious liability of the **Insureds**, but only to the extent that this Policy is construed by a court of competent jurisdiction, or an arbitration panel, pursuant to Florida law; or

      (b) except with respect to the extent (1) such damages are insurable under the law of any jurisdiction other than Florida that has a substantial relationship to the **Insureds**, the **Claim**, the Insurer, or this Policy and is most favorable to the insurability of such damages, and (2) that this Policy is construed by a court of competent jurisdiction, or an arbitration panel, pursuant to the laws of any jurisdiction other than Florida;

2. Clause **II. DEFINITIONS** S. is deleted and replaced with the following:

   S. **"Pollutants"** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipality, or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, germs, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil product, infectious or medical waste, and noise.

3. Clause **III. EXCLUSIONS** D. is amended by the addition of the following:

   3. the actual, alleged or threatened discharge, release, escape, seepage, migration, dispersal or disposal of mold, spores, fungi, asbestos or asbestos product, and lead or lead products into or on real or personal property, water or the atmosphere; or

   4. any direction or request that the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize mold, spores, fungi, asbestos or asbestos product, and lead or lead products, or any voluntary decision to do so (such costs hereinafter "Clean Up Costs")

including, but not limited to, any **Claim** alleging damage to the **Company** or its securities holders, purchasers or sellers; provided, however, that this exclusion shall not apply to the extent such **Claim** is:

    (a)  otherwise covered under Insuring Clause I.A., other than Clean Up Costs, or

    (b)  brought by a past, present or future employee of the **Company** as a "whistleblower" employment practices claim;

4.  Clause **VII. GENERAL CONDITIONS** D. Cancellation/Nonrenewal 3. is amended by the addition of the following:

If this Policy is cancelled, the Insurer shall send the **Parent Company** any premium refund as soon as practicable.

5.  The second sentence of Clause **X. ACTION AGAINST THE INSURER** is amended by the addition of the words "under this Policy prior to the rendering of a verdict" after the word "right".

6.  The Policy is amended by the addition of the following:

If you need to contact someone about this Policy for any reason or to obtain information about coverage and receive assistance in resolving complaints, you may contact your insurance company at:

Beazley Insurance Company, Inc.
Telephone no.: (860) 677-3700

All other terms and conditions of this Policy remain unchanged.

Authorized Representative

Effective date of this Endorsement: 18-Dec-2013
This Endorsement is attached to and forms a part of Policy Number: V14969130101

## COUNTERSIGNATURE ENDORSEMENT

This endorsement modifies insurance provided under the following:

DIRECTORS OFFICERS AND COMPANY LIABILITY INSURANCE POLICY

The Directors Officers And Company Liability Insurance Policy Declarations is amended by the addition
of the following:

_____          ___12/20/13_____
Signature of Insurance Agent                         Date

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the "Underwriters"**

## SANCTION LIMITATION AND EXCLUSION CLAUSE- FLORIDA

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS, AND COMPANY LIABILITY INSURANCE POLICY

Beazley Insurance Company, Inc. shall not be deemed to provide coverage and shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose Beazley Insurance Company, Inc. to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, law or regulations of the European Union, United Kingdom or United States of America.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

E02804AFL                                                                                     Page 1 of 1
092011 ed.

**Effective date of this Endorsement: 18-Dec-2013**
**This Endorsement is attached to and forms a part of Policy Number: V14969130101**
**Beazley Insurance Company, Inc. Referred to in this endorsement as either the "Insurer" or the**
**"Underwriters"**

## WAR AND CIVIL WAR EXCLUSION

This endorsement modifies insurance provided under the following:

## DIRECTORS, OFFICERS, AND COMPANY LIABILITY INSURANCE POLICY

In consideration of the premium charged for the Policy, it is hereby understood and agreed that notwithstanding anything to the contrary contained herein this Policy does not cover loss or damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative



**DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY**


In consideration of the payment of the premium, in reliance on all statements made in the **Application** and subject to all of the provisions of this Policy, the Insurer and the **Parent Company,** on behalf of all **Insureds,** agree as follows:

## I.    INSURING CLAUSES

   A. The Insurer shall pay on behalf of the **Directors and Officers** all **Loss** which is not indemnified by the **Company** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for a **Wrongful Act** provided such **Claim** is reported in writing to the Insurer as soon as practicable but in no event later than sixty (60) days after the expiration of the **Policy Period** or the last day of the **Optional Extension Period,** if purchased.

   B. The Insurer shall pay on behalf of the **Company** all **Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Directors and Officers** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for a **Wrongful Act** provided such **Claim** is reported in writing to the Insurer as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period,** if purchased.

   C. The Insurer shall pay on behalf of the **Company** all **Loss** resulting from any **Securities Claim** first made against the **Company** during the **Policy Period** for a **Wrongful Act** provided such **Securities Claim** is reported in writing to the Insurer as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period,** if purchased.

   D. The Insurer shall pay on behalf of the **Company** all **Costs of Investigation** resulting from any **Shareholder Derivative Demand** first made during the **Policy Period** for a **Wrongful Act** provided such **Shareholder Derivative Demand** is reported in writing to the Insurer as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period,** if purchased.

   E. The Insurer shall pay on behalf of the **Directors and Officers** all **Loss** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for a **Wrongful Act** committed while serving in an **Outside Executive Position** provided such **Claim** is reported in writing to the Insurer as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period,** if purchased.  The coverage afforded by this Insuring Clause shall be specifically excess of any indemnification and insurance available to such **Directors and Officers** from the **Outside Entity.**

## II. DEFINITIONS

The following terms whenever used in this Policy in boldface type shall have the meanings indicated.

A. **"Application"** means all signed applications, including all attachments and other materials submitted therewith or incorporated therein, and any other such documents submitted in connection with the underwriting of this Policy including any endorsement or other part thereof, or any other directors, officers or corporate liability policy of which this Policy is a renewal, replacement or which succeed it in time; and any publicly available documents that are filed by the **Company** prior to the inception date of this Policy with the Securities and Exchange Commission or for any similar federal, state local or foreign regulatory agency, including, but not limited to, the **Company's** quarterly, annual and other reports to owners of its securities, 10Ks, 10Qs, 8Ks, proxy statements and certifications relating to the accuracy of the foregoing.

B. **"Claim"** means:

    1.    a written demand for monetary damages or non-monetary relief against any of the **Insureds**;

    2.    a civil, administrative, investigative or regulatory proceeding initiated against any of the **Insureds**, including any proceeding before the Equal Employment Opportunity Commission or any similar federal, state or local governmental body and solely with respect to the coverage afforded pursuant to Clause I.C., any formal investigatory proceeding before the Securities and Exchange Commission or any similar federal, state or local governmental body, commenced by:

        a) the service of a complaint or similar pleading;

        b) the filing of a notice of charges, investigative order or similar document; or

        c) written notice or subpoena from an investigatory authority identifying such **Insured** as an entity or person against whom a formal proceeding may be commenced, or

    3.    a criminal investigation or proceeding initiated against any of the **Directors and Officers** commenced by:

        a) the return of an indictment or similar pleading; or

        b) written notice or subpoena from an investigatory authority identifying such **Directors and Officers** as individuals against whom a formal proceeding may be commenced;

    4.    solely for the purpose of coverage afforded under Insuring Clause I.D., a **Shareholder Derivative Demand**; or

5.    a written request received by any of the **Insureds** to toll or waive a statute of limitations.

C. **"Company"** means:

1. the **Parent Company** identified in Item 1. of the Declarations and its **Subsidiaries**, including any such organization as a debtor in possession within the meaning of the United States Bankruptcy Code or similar legal status under foreign law; and

2. any foundation, charitable trust or political action committee controlled by the **Parent Company** and/or its **Subsidiaries**.

D. **"Corporate Takeover"** means:

1. the acquisition by any person or entity of more than 50% of the outstanding securities or equity interest of the **Parent Company** representing the present right to vote for the election of directors; or

2. the merger of the **Parent Company** into another entity such that the **Parent Company** is not the surviving entity.

E. **"Costs, Charges and Expenses"** means reasonable and necessary legal fees and expenses to which the Insurer consents and which are incurred by or on behalf of the **Insureds** in defending, settling, appealing or investigating any **Claim** and the cost of appeal, attachment or similar bonds, but shall not include:

1. salaries, regular or overtime wages, fees or benefit expenses associated with directors, officers or employees of the **Company** or the **Company's** overhead expenses; or

2. any amounts incurred in defense of any **Claim** for which any other insurer has a duty to defend.

**Costs, Charges and Expenses** means only **"Costs of Investigation"** for the purpose of coverage afforded under Insuring Clause I.D.

Provided, however, the Insurer shall have no obligation to apply for or furnish any bond for appeal, attachment or any similar purpose.

F. **"Costs of Investigation"** means reasonable and necessary legal fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of the directors, officers or employees of the **Company** or the **Company's** overhead expenses) incurred by the **Company** (including its board of directors or any committee of its board of directors) in connection with the investigation or evaluation of any **Shareholder Derivative Demand**.

G. **"Directors and Officers"** means:

1. all persons who were, now are, or shall be duly elected or appointed directors, officers, trustees or **Managers** of the **Company** and all persons serving in a functionally equivalent role for the **Company** if serving in such a position outside the United States;

2. all persons who were, now are, or shall be employees of the **Company**:

   (a) to the extent such employees are named and maintained as defendants in a **Securities Claim**;

   (b) to the extent such employees are named and maintained as co-defendants in any **Claim** solely for the purpose of the coverage afforded by Insuring Clauses I.A. and I.B. of this Policy; and

3. the lawful spouse, including any natural person qualifying as a domestic partner under the provisions of any applicable federal, state, or local law in the United States, of any of the persons set forth in subparagraph 1. and 2. of this definition, but solely by reason of such spousal status or such spouse's ownership interest in property or assets that are sought as recovery for **Wrongful Acts**,

including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

Provided, however, coverage afforded under this Policy to a spouse as provided for under subparagraph 3 of this definition does not apply to any **Claim** alleging any act, error or omission by such spouse.

H. **"Financial Impairment"** means the appointment by any state or federal official, agency or court of any receiver, trustee, examiner, conservator, liquidator, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Company.**

I. **"Insureds"** means the **Directors and Officers** and the **Company**.

J. **"Interrelated Wrongful Acts"** means any and all **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

K. **"Loss"** means the amounts which the **Insureds** become legally obligated to pay on account of a **Claim**, including damages, judgments, any award of pre-judgment or post-judgment interest, costs and fees awarded pursuant to judgments, settlement amounts and **Costs, Charges and Expenses** incurred by any of the **Insureds**, but shall not include:

1. punitive or exemplary damages, except with respect to a **Claim** where the law in the applicable jurisdiction allows coverage for punitive or exemplary damages;

2. that portion of any multiplied damages award which exceeds the amount multiplied;

3. matters deemed uninsurable under the law pursuant to which this Policy shall be construed;

4. any reimbursement required pursuant to Section 304 of the Sarbanes-Oxley Act of 2002, including any amendments thereto;

5. any investigative costs other than **Costs of Investigation** or **Costs, Charges and Expenses** in connection with a **Claim**;

6. taxes or the loss of tax benefits, or fines or penalties imposed by law; or

7. any amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by the **Company** in connection with its purchase of any securities or assets.

L. **"Managers"** means all persons who were, now are, or shall be managers, managing members, members of the board of managers or equivalent executives of a company that is a limited liability corporation.

M. **"Non-Profit Entity"** means any non-profit corporation, community chest, fund or foundation that is not included in the definition of the **Company** and that is exempt from federal income tax as an organization described in section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

N. **"Optional Extension Period"** means the period described in Clause VIII.

O. **"Outside Entity"** means:

1. any **Non-Profit Entity**; or

2. any other entity, if specified in Item 9. of the Declarations.

P. **"Outside Executive Position"** means the position of director, officer, trustee or other equivalent executive position held by any of the **Directors and Officers** in an **Outside Entity** if service in such position is at the specific request of the **Company.**

Q. **"Parent Company"** means the company designated in Item 1. of the Declarations.

R. **"Policy Period"** means the period from the effective date and hour of this Policy to the Policy expiration date and hour as set forth in Item 2. of the Declarations, or its earlier termination, if any, or the end of the **Optional Extension Period**, if purchased.

S. **"Pollutants"** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, mold, spores, fungi, germs, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil product, infectious or medical waste, asbestos or asbestos product, lead or lead product, noise, and electric, magnetic or electromagnetic field.

T. **"Securities"** means:

1. common or preferred stock, options, rights or warrants in such stock, representing an ownership interest in the **Company** or a right to acquire or dispose of such interest; or

2. notes, bonds or debentures representing a debt owed by the **Company** to the extent such instruments are considered securities under the federal or state laws of the United States or the laws of any other country.

Provided, however, that **Securities** does not include options or rights at issue in a **Claim** that is solely employment -related.

U. **"Securities Claim"** means the portion of any **Claim** alleging a violation of the Securities Act of 1933, the Securities Exchange Act of 1934, rules or regulations of the Securities and Exchange Commission under either or both Acts, similar securities laws or regulations of any state, or any common law relating to any transaction arising out of, involving, or relating to the purchase or sale of or offer to purchase or sell any **Securities**, whether on the open market or through a public or private offering.

V. **"Shareholder Derivative Demand"** means a written demand by one or more owners of **Securities** upon the board of directors of the **Company** to bring a civil proceeding in a court of law against any of the **Directors and Officers** for a **Wrongful Act**.

W. **"Subsidiary"** means:

1. any entity while more than 50% of the outstanding voting securities representing the present right to vote for the election of such entity's directors are owned by the **Parent Company** directly or indirectly,

2. any limited liability corporation while the right to elect or otherwise appoint or designate more than 50% of such limited liability corporation's **Managers** is owned or controlled by the **Parent Company**, directly or indirectly, or

3. any joint venture, which is a corporate entity, while the **Parent Company** has managerial control, or while the right to elect or otherwise appoint more than 50% of such entity's

directors, trustees or other equivalent executive is owned or controlled by the **Parent Company** directly or indirectly,

if such entity or corporation:

1. was so owned prior to the inception date of this Policy and was insured under a policy issued by the Insurer of which this Policy is a renewal;

2. was so owned or controlled on the inception date of this Policy;

3. becomes so owned or controlled after the inception date of this Policy provided the assets of the entity do not exceed 25% of the consolidated assets of the **Company** as set forth in the **Company's** most recent audited financial statement; or

4. becomes so owned or controlled after the inception date of this Policy provided that if the assets of the entity exceed 25% of the consolidated assets of the **Company** as set forth in the **Company's** most recent audited financial statement, the provisions of Clause VII.B. must be fulfilled.

X. **"Wrongful Act"** means:

1. any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, act or omission by:

    a) any of the **Directors and Officers** solely in their capacity as such;

    b) any of the **Directors and Officers** while serving in an **Outside Executive Position** solely with respect to the coverage afforded under Insuring Clause I.E.;

    c) the **Company** solely with respect to the coverage afforded under Insuring Clause I.C. or

2. any matter claimed against any of the **Directors and Officers** solely by reason of their serving in such capacity or in an **Outside Executive Position** solely with respect to the coverage afforded under Insuring Clause I.E.

## III. EXCLUSIONS

The Insurer shall not be liable to make any payment for **Loss** in connection with or resulting from any **Claim**:

A. for actual or alleged sickness, disease, death, false arrest, false imprisonment, damage to or destruction of tangible property (including loss of use thereof) or, except to the extent the **Claim** is for an employment-related **Wrongful Act** brought by a past, present or future

employee or any applicant for employment with the **Company**, for bodily injury, assault, battery, invasion of privacy, mental anguish, emotional distress, libel, slander or defamation;

B. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1. any **Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given prior to the **Policy Period** under any other policy, or

2. any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**, or

3. any demand, suit or other proceeding pending, or order, decree or judgment entered, against any **Insured** on or prior to the applicable Pending or Prior Litigation Date set forth in Item 7. of the Declarations, or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein;

C. to the extent it is insured under any other existing valid policy, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, and regardless of whether or not any **Loss** in connection with such **Claim** is collectible or recoverable under such other policy; provided, however, this exclusion shall not apply to the amount of **Loss** which is in excess of the amount of any deductible and the Limit of Liability of such other policy where such **Claim** is otherwise covered by this Policy;

D. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

1. the actual, alleged or threatened discharge, release, escape, seepage, migration, dispersal or disposal of **Pollutants** into or on real or personal property, water or the atmosphere; or

2. any direction or request that the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so (such costs hereinafter "Clean Up Costs") including, but not limited to, any **Claim** alleging damage to the **Company** or its securities holders, purchasers or sellers; provided, however, this exclusion shall not apply to the extent such **Claim** is:

   (a) otherwise covered under Insuring Clause I.A., other than Clean Up Costs, or

   (b) brought by a past, present or future employee of the **Company** as a "whistleblower" employment practices claim;

E. for any actual or alleged violations of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety

and Health Act, or any violation of any federal, state, local or foreign statutory law or common law that governs the same topic or subject and any rules, regulations and amendments thereto;

F.  by, on behalf of, or at the direction of any of the **Insureds**, except and to the extent such **Claim**:

1.  is a derivative action brought or maintained by or on behalf of a **Securities** holder who, when such **Claim** is first made, is acting independently of and without the solicitation, assistance, participation or intervention of any **Insured**, or

2.  is brought by any of the **Insureds** in the form of a crossclaim, third party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** not otherwise excluded by the terms of this Policy, or

3.  is employment-related and brought by or on behalf of any of the **Directors and Officers**, or

4.  is a **Shareholder Derivative Demand**; or

5.  is brought by any former **Directors and Officers** who have not served in such capacity or as a consultant to the **Company** for at least four (4) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without any active assistance or participation of, or solicitation by, the **Company** or any other **Directors and Officers** or consultants to the **Company** who are serving or have served in such capacity within such four (4) year period.

G.  based upon, arising out of, directly or indirectly resulting from or in consequence of or in any way involving:

1.  any deliberately dishonest, fraudulent or criminal act or omission by any of the **Insureds**, or

2.  any personal profit or advantage gained by any of the **Directors and Officers** to which they were not legally entitled,

as determined by a plea agreement, an alternative dispute resolution proceeding, a judgment or a final adjudication in the underlying action or in a separate action or proceeding;

H. for the return by any of the **Directors and Officers** of any remuneration paid to them without the previous approval of the appropriate governing body of the **Company**, which payment without such previous approval shall be determined to be in violation of the law by an alternative dispute resolution proceeding, a judgment or a final adjudication in the underlying action or in a separate action or proceeding;

I. against any of the **Directors and Officers** of any **Subsidiary** or against any **Subsidiary** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

 1. any **Wrongful Act** occurring prior to the date such entity became a **Subsidiary** or subsequent to the date such entity ceased to be a **Subsidiary**, or

 2. any **Wrongful Act** occurring while such entity was a **Subsidiary** which together with a **Wrongful Act** occurring prior to the date such entity became a **Subsidiary**, would constitute **Interrelated Wrongful Acts**;

J. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving, any **Wrongful Act** actually or allegedly committed subsequent to a **Corporate Takeover**;

K. with respect to any of the **Directors and Officers** serving in an **Outside Executive Position**, based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** occurring prior to the date such **Directors and Officers** began serving in an **Outside Executive Position** if any of the **Directors and Officers**, as of such date, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this Policy;

L. with respect to any of the **Directors and Officers** serving in an **Outside Executive Position**, by, on behalf of, or for the benefit of the **Outside Entity**, or one or more of the **Outside Entity's** directors, officers, trustees or equivalent executives; or

M. based upon arising out of, directly or indirectly resulting from or in consequence of, or in any way involving:

 1. the actual, alleged or threatened discharge, release, escape, seepage, migration, dispersal or disposal of nuclear materials or nuclear waste; or

 2. any direction or request that the Insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize nuclear materials or nuclear waste.

No **Wrongful Acts** shall be imputed to any other natural person for the purpose of determining the applicability of Exclusions G. and H. above. The **Wrongful Acts** by any past, present or future chairman of the board, president, chief executive officer, chief operating officer or chief financial

officer of the **Company** shall be imputed to the **Company** for the purpose of determining the applicability of Exclusions G. and H. above.

## IV.   LIMIT OF LIABILITY, RETENTIONS, ORDER OF PAYMENTS AND COINSURANCE

A. Limit of Liability

1. The amount shown in Item 3.a. of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under the Policy. The amount shown in 3.b. of the Declarations shall be the maximum aggregate Sub-Limit of Liability of the Insurer under the Policy for all **Costs of Investigation** under Insuring Clause I.D., which amount shall be part of and not in addition to the amount shown in Item 3.a. of the Declarations.

2. **Costs, Charges and Expenses** are part of, and not in addition to, the Limit of Liability set forth in Item 3.a. of the Declarations.   The payment of **Costs, Charges and Expenses** by the Insurer reduces and may totally exhaust the Limit of Liability.

3. If the Limit of Liability set forth in Item 3.a. of the Declarations is exhausted by the payment of **Loss**, the Insurer's obligations under this Policy shall be completely fulfilled and extinguished.   If the Sub-Limit of Liability set forth in Item 3.b. of the Declarations is exhausted by the payment of **Costs of Investigation**, the Insurer's obligations under Insuring Clause I.D. shall be completely fulfilled and extinguished.

4. More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following times:

   (a) the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or

   (b) the time at which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Clause VI.B.

B. Retentions

1. No Retention shall apply to Insuring Clause I.A. The applicable Retention set forth in Item 4. of the Declarations shall apply with respect to **Loss** arising from each **Claim** under Insuring Clauses B., C., D. and E.

2. The Insurer shall be liable for only that part of **Loss** arising from a **Claim** which is excess of the applicable Retention set forth in Item 4. of the Declarations, and such Retention shall be borne by the **Insureds** uninsured and at their own risk.   With respect to any **Securities Claim**, the applicable Retention shall be paid by the **Insureds** first, before the application of any Coinsurance Percentage, and shall not be part of the percentage of **Loss** borne by the **Insureds** pursuant to Clause IV.D. of this Policy.   Any payments made to satisfy the

**Beazley Insurance Company, Inc.**

retention or deductible under another policy of insurance shall not satisfy or apply towards the applicable Retention, or any portion thereof, under this Policy of insurance.

3. In the event more than one of the Insuring Clauses set forth in Clause I. are applicable to a **Claim**, the Retentions set forth in Item 4. of the Declarations shall be applied separately to that part of the **Loss** resulting from such **Claim** covered by each Insuring Clause. The sum of the Retentions so applied shall constitute the Retention applicable to such **Claim**. The total Retention as finally determined shall in no event exceed the largest of the Retentions applicable to Insuring Clauses that are applicable to such **Claim.**

4. With respect to Insuring Clause I.B., if the **Company** is permitted or required by law or pursuant to the by-laws or other organizational documents of the **Company** to indemnify the **Directors and Officers** for any **Loss**, or to advance **Costs, Charges and Expenses** on their behalf, and does not in fact do so other than for reasons of **Financial Impairment**, the Insurer shall pay **Loss**, or advance **Costs, Charges and Expenses**, on behalf of the **Directors and Officers** without regard to the Retention, but the **Company** shall reimburse the Insurer for such amounts up to the Retention applicable to Insuring Clause I.B. as set forth in Item 4. of the Declarations.

C. Order of Payments

Payment of **Loss** by the Insurer shall reduce the Limit of Liability. The Insurer shall pay **Loss** in the order in which **Loss** is incurred. If **Loss** payable under Insuring Clause I.A. and one or more of the other Insuring Clauses is incurred contemporaneously, the Insurer first shall pay **Loss** payable under Insuring Clause I.A. The **Parent Company** may elect through its chief executive officer to decline or defer payment under the other Insuring Clauses. The Insurer shall have no obligation to pay **Loss** after exhaustion of the Limit of Liability regardless of whether the **Parent Company** has declined or deferred payment.

D. Coinsurance

To the extent that **Loss** resulting from a **Securities Claim** is covered under Insuring Clause I.A. I.B. or I.C. and is in excess of the applicable Retention, the **Insureds** shall bear uninsured and at their own risk that percentage of such **Loss** specified as the Coinsurance Percentage in Item 8. of the Declarations, and the Insurer's liability shall apply only to the remaining percentage of such **Loss**.

## V.    SETTLEMENT AND DEFENSE

A. It shall be the duty of the **Insureds** and not the duty of the Insurer to defend **Claims**, including the investigation and evaluation of any **Shareholder Derivative Demand**. The Insurer shall have the right and shall be given the opportunity to effectively associate with the **Insureds** in the investigation, defense and settlement of any **Claim** that appears reasonably likely to be covered in whole or in part hereunder.

B. The **Insureds** shall not settle any **Claim**, select any defense counsel, incur any **Costs, Charges and Expenses**, admit or assume any liability, stipulate to any judgment or otherwise assume any contractual obligation without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation, admission or stipulated judgment to which it has not consented or for which the **Insureds** are not legally obligated. The **Insureds** shall not knowingly take any action which increases the Insurer's exposure for **Loss** under this Policy. Notwithstanding any of the foregoing, if all **Insureds** are able to fully and finally dispose of, with prejudice, all **Claims** that are subject to one Retention for an amount not exceeding any applicable Retention, including **Costs, Charges and Expenses**, then the Insurer's consent shall not be required for such disposition.

C. Subject to Clauses IV.C. and VII.C., the Insurer shall advance on behalf of the **Insureds, Costs, Charges and Expenses** which the **Insureds** have incurred in connection with a **Claim** made against them, prior to the final disposition of such **Claim**, provided that to the extent it is finally established that any such **Costs, Charges and Expenses** are not covered under this Policy, the **Insureds**, severally according to their interests, shall repay such **Costs, Charges and Expenses** to the Insurer. The Insurer shall pay **Costs, Charges and Expenses** no more than once every 90 days.

## VI.   NOTIFICATION

A. The **Insureds** shall, as a condition precedent to their rights to payment under this Policy, give to the Insurer notice in writing of any **Claim** as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

B. If during the **Policy Period**, except for the **Optional Extension Period**, the **Insureds** first become aware of a specific **Wrongful Act**, and if the **Insureds** during the **Policy Period**, except for the **Optional Extension Period**, give written notice to the Insurer as soon as practicable of:

1. the specific **Wrongful Act**;

2. the consequences which have resulted or may result therefrom; and

3. the circumstances by which the **Insureds** first became aware thereof,

then any **Claim** made subsequently arising out of such **Wrongful Act** shall be deemed for the purposes of this Policy to have been made at the time such notice was first given.

No coverage shall be afforded under this Policy for fees and expenses incurred prior to the time such circumstances result in a **Claim**.

C. Notice to the Insurer provided in Clause VI.A. and B shall be given to the firm shown in Item 6.a. of the Declarations. All other notices to the Insurer under this Policy shall be given to the firm shown in Item 6.b. of the Declarations. Except with respect to notices provided for in Clause VII.D., all notices under any provision of this Policy must be made in writing and delivered by prepaid express courier, certified mail or fax. Notices given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee.

## VII. GENERAL CONDITIONS

A. Representation Clause

By acceptance of this Policy, the **Insureds** agree:

1. that the statements in the **Application** are their representations, and that this Policy is issued in reliance upon the truth of such representations;

2. that in the event that the **Application** contains misrepresentations made with the actual intent to deceive, or contains misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Insurer under this Policy, this Policy shall not afford any coverage with respect to those **Insureds** who made or had knowledge of such misrepresentations;

3. that solely with respect to the coverage afforded under Insuring Clause I.A., the Insurer shall not be entitled to rescind the Policy;

4. that this Policy shall not afford any coverage under Insuring Clause I.B. to the extent the **Company** indemnifies any of the **Insureds** who made or had knowledge of the misrepresentations set forth in Clause VII.A.2.; and

5. that this Policy shall not afford any coverage under Insuring Clause I.C. if the chief chairman of the board, president, chief executive officer, chief operating officer or chief financial officer of the **Company** made or had knowledge of the misrepresentations set forth in Clause VII.A.2.

None of the foregoing provisions in this Clause VII.A., with exception of Clause VII.A.3., shall in any way limit or void the Insurer's rights to rescind this Policy.

B. Adjustment Clause

1. This Policy is issued and the premium computed on the basis of the information submitted to the Insurer as part of the **Application**. In the event the **Parent Company**, after the inception of this Policy, acquires any other entity or acquires substantially all of the assets of another entity, or merges with another entity such that the **Parent Company** is the surviving entity, or creates or acquires a **Subsidiary** whose assets exceed 25% of the

consolidated assets of the **Company** as set forth in the **Company's** most recent audited financial statement, coverage shall be afforded for a period of ninety (90) days for any **Loss** in any way involving the assets acquired or the assets, liabilities, directors, officers or employees of the entity acquired or merged with, or such **Subsidiary**. Coverage beyond such ninety (90) day period shall only be available if:

(a) written notice of such transaction or event is given to the Insurer by the **Parent Company**;

(b) the **Parent Company** provides the Insurer with such information in connection therewith as the Insurer may deem necessary;

(c) the **Insureds** accept any special terms, conditions, exclusions or additional premium charge as may be required by the Insurer; and

(d) the Insurer, at its sole discretion, agrees to provide such coverage.

2. In the event any entity ceases to be a **Subsidiary** as defined herein after the inception date of this Policy, or of any policy issued by the Insurer of which this Policy is a renewal or replacement, this Policy, subject to its terms, shall continue to apply to any of the **Directors and Officers** who were covered under this Policy because of their service with such entity and to such **Subsidiary** but only with respect to any **Wrongful Act** committed or allegedly committed prior to the time such entity ceased to be a **Subsidiary**.

3. In the event of a **Corporate Takeover** after the inception date of this Policy or of any policy issued by the Insurer of which this Policy is a renewal or replacement, this Policy, subject to its terms, shall continue to apply to the **Directors and Officers** and to the **Company** but only with respect to any **Wrongful Act** committed or allegedly committed prior to the **Corporate Takeover**.

C. Allocation

If both **Loss** covered by this Policy and loss uncovered by this Policy are incurred, either because the **Claim** includes both covered and uncovered claims or because it includes both insured and uninsured parties, then the **Insureds** and the Insurer agree to fairly and reasonably allocate such amount between covered **Loss** and uncovered loss.

In the event that a method of allocation cannot be agreed upon by the Insurer and the **Insureds**, then:

1. in any arbitration, suit or other proceeding, no presumption shall exist concerning what is a fair and reasonable allocation;

2. the Insurer shall advance the amount of **Costs, Charges and Expenses** which they deem fair and proper until a different amount is negotiated by the parties, determined pursuant to the arbitration process set forth in subparagraph 3. below, or determined judicially;

3. the Insurer, solely if requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Insurer, and a third independent arbitrator selected by the first two arbitrators.

Any negotiated, arbitrated or judicially determined allocation of **Costs, Charges and Expenses** on account of a **Claim** shall be applied retroactively to all **Costs, Charges and Expenses** on account of such **Claim**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Costs, Charges and Expenses** on account of a **Claim** shall not apply to or create any presumption with respect to the allocation of other **Loss** on account of such **Claim**.

D. Cancellation/Nonrenewal

1. By acceptance of this Policy, the **Insureds** hereby confer the exclusive power and authority to cancel this Policy on their behalf to the **Parent Company**. Such entity may cancel this Policy by surrender thereof to the Insurer, or by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice shall be equivalent to mailing.

2. The Insurer may cancel this Policy only for nonpayment of premium by mailing to the **Parent Company** written notice stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The notice of cancellation shall state the reason for cancellation. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice by the Insurer shall be equivalent to mailing.

3. If this Policy is cancelled pursuant to 1. hereinabove, the Insurer shall retain the customary short rate proportion of the premium hereon. If this Policy is cancelled pursuant to 2. hereinabove, the Insurer shall retain the pro rata proportion of the premium hereon. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation.

4. If the Insurer decides not to renew this Policy, the Insurer shall provide written notice to the **Parent Company** at least sixty (60) days before the end of the **Policy Period**. The notice of nonrenewal shall state the reason for nonrenewal.

**VIII.   OPTIONAL EXTENSION PERIOD**

A. If this Policy is cancelled by the **Parent Company** or if the Insurer nonrenews this Policy, then the **Parent Company** shall have the right, upon payment of an additional premium calculated at that percentage shown in Item 5.a. of the Declarations of the total premium for this Policy, to an extension of the coverage granted by this Policy with respect to any **Claim** first made during the period of time set forth in Item 5.b. of the Declarations after the end of the **Policy Period**, but only with respect to any **Wrongful Act** committed before the effective date of cancellation or nonrenewal.

B. As a condition precedent to the right to purchase the **Optional Extension Period**, the total premium for this Policy must have been paid.  The right to purchase the **Optional Extension Period** shall terminate unless written notice together with full payment of the premium for the **Optional Extension Period** is given to the Insurer within thirty (30) days after the effective date of cancellation or nonrenewal.  If such notice and premium payment is not so given to the Insurer, there shall be no right to purchase the **Optional Extension Period**.

C. In the event of the purchase of the **Optional Extension Period**, the entire premium for the **Optional Extension Period** shall be deemed earned at its commencement.

D. In the event the **Optional Extension Period** is purchased, it shall terminate immediately on the effective date of any contract of insurance or indemnity which replaces the coverage afforded by this Policy through the **Optional Extension Period** either in whole or in part.

E. The purchase of the **Optional Extension Period** shall not in any way increase the Limit of Liability of the Insurer.

F. The offer of renewal terms, conditions or premiums different from those in effect prior to renewal shall not constitute a refusal to renew for purposes of this Clause VIII.

**IX.   ASSISTANCE, COOPERATION AND SUBROGATION**

The **Insureds** agree to provide the Insurer with such information, assistance and cooperation as the Insurer or their counsel may reasonably request, and they further agree that they shall not take any action which in any way increases the Insurer's exposure under this Policy.

In the event of any payment under this Policy, the Insurer shall be subrogated to the **Insureds'** rights of recovery against any person or entity.  The **Insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights including the execution of such documents as are necessary to enable the Insurer effectively to bring suit in their name, and shall provide all other assistance and cooperation which the Insurer may reasonably require.

## X.    ACTION AGAINST THE INSURER

No action shall lie against the Insurer unless, as a condition precedent thereto, the **Insureds** shall have fully complied with all of the terms of this Policy, nor until the amount of the **Insureds'** obligation to pay shall have been fully and finally determined either by judgment against them or by written agreement between them, the claimant and the Insurer. Nothing contained herein shall give any person or organization any right to join the Insurer as a party to any **Claim** against the **Insureds** to determine their liability, nor shall the Insurer be impleaded by the **Insureds** or their legal representative in any **Claim**.

## XI.    ENTIRE AGREEMENT

By acceptance of this Policy, the **Insureds** agree that this Policy embodies all agreements existing between them and the Insurer or any of their agents relating to this Insurance.  Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer shall not effect a waiver or a change in any part of this Policy or estop the Insurer from asserting any right under the terms of this Policy, nor shall the terms be waived or changed except by written endorsement or rider issued by the Insurer to form a part of this Policy.

## XII.    TERRITORY

This Policy shall apply to **Claims** made against the **Insureds** anywhere in the world.

## XIII.    VALUATION AND CURRENCY

All premiums, limits, Retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States.  If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in the *Wall Street Journal* on the date the judgment becomes final or payment of the settlement or other element of **Loss** is due.

## XIV.    BANKRUPTCY

Bankruptcy or insolvency of the **Company** or of any of the **Directors and Officers** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy.

## XV.    AUTHORIZATION

By acceptance of this Policy, the **Parent Company** agrees to act on behalf of the **Insureds** with respect to the giving and receiving of any notice provided for in this Policy, the payment of premiums and the receipt of any return premiums that may become due under this Policy, and the agreement to and acceptance of endorsements, and the **Insureds** agree that the **Parent Company** shall act on their behalf.

## XVI.  HEADINGS

The descriptions in the headings and subheadings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

beazley

# DIRECTORS, OFFICERS AND COMPANY LIABILITY INSURANCE POLICY APPLICATION

NOTICE:  THE POLICY FOR WHICH THIS APPLICATION IS MADE IS A CLAIMS MADE AND REPORTED POLICY SUBJECT TO ITS TERMS.  THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD PROVIDED SUCH CLAIM IS REPORTED IN WRITING TO THE INSURER AS SOON AS PRACTICABLE BUT IN NO EVENT LATER THAN 60 DAYS AFTER THE EXPIRATION OF THE POLICY PERIOD OR THE LAST DAY OF THE OPTIONAL EXTENSION PERIOD, IF PURCHASED. AMOUNTS INCURRED AS COSTS, CHARGES AND EXPENSES SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTIONS. PLEASE READ THIS POLICY CAREFULLY.

NOTICE TO NEW YORK APPLICANTS: THE POLICY FOR WHICH THIS APPLICATION IS MADE, IS A CLAIMS-MADE POLICY. UPON TERMINATION OF COVERAGE FOR ANY REASON, A 60-DAY AUTOMATIC EXTENSION PERIOD WILL APPLY.  FOR AN ADDITIONAL PREMIUM, AN OPTIONAL EXTENSION PERIOD CAN BE PURCHASED AS INDICATED IN ITEM 5. OF THE DECLARATIONS. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY ONLY APPLIES TO CLAIMS FIRST MADE DURING THE POLICY PERIOD, THE AUTOMATIC EXTENSION PERIOD OR, IF APPLICABLE, THE OPTIONAL EXTENSION PERIOD.  NO COVERAGE EXISTS FOR CLAIMS MADE AFTER THE END OF THE POLICY PERIOD AND THE AUTOMATIC EXTENSION PERIOD UNLESS, AND TO THE EXTENT, THE OPTIONAL EXTENSION PERIOD APPLIES. NO COVERAGE WILL EXIST AFTER THE EXPIRATION OF THE AUTOMATIC EXTENSION PERIOD OR, IF PURCHASED, THE OPTIONAL EXTENSION PERIOD, WHICH MAY RESULT IN A POTENTIAL COVERAGE GAP IF PRIOR ACTS COVERAGE IS NOT SUBSEQUENTLY PROVIDED BY ANOTHER INSURER.   THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY COSTS, CHARGES AND EXPENSES AND COSTS, CHARGES AND EXPENSES SHALL BE APPLIED TO THE RETENTION. DURING THE FIRST SEVERAL YEARS OF A CLAIMS-MADE RELATIONSHIP, CLAIMS-MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF OVERALL RATE INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY. THE INSURER IS NOT OBLIGATED TO PAY ANY LOSS AFTER THE LIMIT OF LIABILITY HAS BEEN EXHAUSTED BY PAYMENT OF LOSS. PLEASE READ THIS POLICY CAREFULLY.

Please fully answer all questions and submit all requested information. Terms appearing in bold face in this Application are defined in the Policy and have the same meaning in this Application as in the Policy. If you do not have a copy of the Policy, please request it from your agent or broker. This Application, including all materials submitted herewith, shall be held in confidence.

1.  Applicant Name ____CAMBRIDGE CAPITAL ACQUISITION CORPORATION_____

   Address ____525 South Flagler Drive, Suite 201_____
              West Palm Beach, FL 33401

   State of Incorporation: ____Delaware_____

BICDO00030209                                                    Page 1 of 8

2. The Applicant has continuously been in business since:    12 / 2013
                                                                           (Month)        (Year)

3. Nature of business___Special Purpose Acquisition Corp._____

4. Are any classes of shares publicly traded?                    [x] Yes     ☐ No

5. Stock Symbol and Exchange___CAMBU; NASDAQ Capital Market_____

6. The following officer of the Applicant is designated to receive any and all notices from the Insurer or their authorized representative(s) concerning this insurance:

7. COVERAGE REQUESTED

   Limit Requested   $ 2,000,000

   Retention Requested     $ 0/ $75,000 / $250,000     $200,000

8. **POLICY PERIOD** REQUESTED

   From 12/18/2013 _____ to 12/18/2015 _____ both days at 12:01 a.m. at the principal address of the Applicant.

9. Has the Applicant at any time over the last three years been in breach of any debt covenants or loan agreements?          ☐ Yes     [x] No

   If Yes, give details: _____

   _____

10. Has the Applicant at any time over the last three years changed Its auditors, outside counsel or outside securities counsel?
                                         ☐ Yes    [x] No

    If Yes, give details including reasons for changes: _____

    _____

11. Has the Applicant in the past 12 months completed or agreed to, or does it contemplate within the next 12 months, any of the following, whether or not such transactions were or will be completed.

    (a) A merger, acquisition, consolidation or tender offer?          [x] Yes     ☐ No
                            As described in the S-1.

    (b) Sale, distribution or divestiture of any assets or stock other than in the ordinary course of business In an amount exceeding 25% of the Applicant's consolidated assets?          ☐ Yes    [x] No

BICDO00030209                                           Page 2 of 8

(c) Any registration for a public offering or **private placement**
of securities?  Please refer to the S-1                                    ☒ Yes          ☐ No

If Yes, please attach a copy of the Prospectus.

(d) Reorganization or arrangement with creditors under federal
or state law?                                                              ☐ Yes          ☒ No

If Yes to any of the questions in 11(a), (b), (c) or (d) above, attach details.

12.  Does the Applicant have:

   (a)  an insider trading policy?                                            ☒ Yes          ☐ No

       If Yes, attach a copy.

   (b)  a corporate communications policy?                                    ☐ Yes          ☐ No

       If Yes, attach a copy.

13.  (a)  Has the Applicant changed independent auditors in
      the past three years?                                                 ☒ Yes          ☐ No

   (b)  Has the Applicant had any changes in the board of
      directors or senior management within the past three years?          ☒ Yes          ☐ No
      Board was established.

   (c)  Has the Applicant or any director, officer or other proposed **Insured** been involved in any
      of the following:

      Anti-trust, copyright or patent litigation?                          ☐ Yes          ☒ No

      Civil or criminal action or administrative proceeding
      charging violation of a federal, state or foreign security
      law or regulation?                                                   ☐ Yes          ☒ No

      Any other criminal actions?                                          ☐ Yes          ☒ No

      Representative actions, class actions or derivative suits?           ☒ Yes          ☐ No

      Investigation by the Securities and Exchange Commission,
      or similar state or foreign agency?                                  ☐ Yes          ☒ No

      If Yes to any of the questions in 13 (a), (b) or (c) above, attach details.

14.  (a)  (i) Does the Applicant currently have directors and officers
      liability insurance?                                                 ☐ Yes          ☒ No

If Yes, please provide the following:

| **Insurer** | **Limits** | **Retention** | **Policy Period** |
|---|---|---|---|
| | $ | $ | |

(ii) Have any of the Applicant's current directors and officers liability insurers indicated an intent not to offer renewal terms?    N/A            ☐ Yes     ☐ No
If Yes, attach details.

NOTE: Applicants in Missouri are not required to answer question 14(a)(ii) above.

(b) Has the Applicant or any director, officer or other proposed **Insured** given written notice under the provisions of any prior or current directors and officers liability policy of specific facts or circumstances which might give rise to a **Claim** being made against any proposed **Insured**?     ☐ Yes     ☑ No
If Yes, attach details.

For Minnesota applicants only, please indicate if any director, officer or other proposed **Insured** has given written or oral notice under the provisions of any prior or current directors and officers liability policy of specific facts or circumstances that might give rise to a Claim being made against any proposed **Insured**?     ☐ Yes     ☑ No
If Yes, attach details.

(c) Have any **Loss** payments been made on behalf of any proposed Applicant under any directors and officers liability policy or similar insurance?     ☑ Yes     ☐ No
If Yes, attach details.

15. (a) There is no claim now pending nor has there been any claim against any director, officer or other proposed **Insured** in his or her capacity as director, officer or other **Insured** capacity except as follows _____

see AttAched _____

If no such claims, check here:     None ☑

(b) No Applicant, director, officer or other proposed **Insured** has knowledge or information of any fact, circumstance, situation, event or transaction which may give rise to a **Claim** under the proposed insurance except as follows_____

If no such knowledge or information, check here:     None ☑

It is agreed that any **Claim** based upon or arising out of any claim or fact, circumstance, situation, event or transaction which should have been disclosed above is excluded from coverage under the proposed insurance.

16. Attach the following materials regarding the Applicant:

    (a) the latest Annual Report to Stockholders and Form 10-K if applicable;

    (b) the latest interim financial statement and Forms 10-Q and/or 8-K if applicable;

    (c) a copy of the Notice to Stockholders and the Proxy Statement for either the last or the next annual meeting;

    (d) copies of any filings made pursuant to Section 13(d) of the Securities Exchange Act of 1934 for the last two years;

    (e) a copy of the indemnification provisions of the charter, by-laws or articles of incorporation;

    (f) Latest CPA management letter along with Applicant's responses to any recommendations made therein;

    (g) a complete list of all Directors and Officers of the Applicant by name and affiliation with other organizations; and

    (h) a complete list of all other proposed Applicant by name, title, responsibility and affiliation with other organizations.

THE UNDERSIGNED DECLARES THAT THE STATEMENTS SET FORTH HEREIN ARE TRUE. FOR NEW HAMPSHIRE APPLICANTS, THE FOREGOING STATEMENT IS LIMITED TO THE BEST OF THE UNDERSIGNED'S KNOWLEDGE, AFTER REASONABLE INQUIRY. THE SIGNING OF THIS APPLICATION DOES NOT BIND THE UNDERSIGNED TO COMPLETE THE INSURANCE. IT IS REPRESENTED THAT THE STATEMENTS CONTAINED IN THIS APPLICATION AND THE MATERIALS SUBMITTED HEREWITH ARE THE BASIS OF THE CONTRACT SHOULD A POLICY BE ISSUED AND HAVE BEEN RELIED UPON BY THE INSURER IN ISSUING ANY POLICY. THE INSURER IS AUTHORIZED TO MAKE ANY INVESTIGATION AND INQUIRY IN CONNECTION WITH THIS APPLICATION AS IT DEEMS NECESSARY.

THIS APPLICATION AND MATERIALS SUBMITTED WITH IT SHALL BE RETAINED ON FILE WITH THE INSURER AND SHALL BE DEEMED ATTACHED TO AND BECOME PART OF THE POLICY IF ISSUED. PROVIDED, HOWEVER, THIS PARAGRAPH DOES NOT APPLY IN THE STATES OF NORTH CAROLINA, UTAH AND WISCONSIN.

NOTE TO NORTH CAROLINA, UTAH AND WISCONSIN RESIDENTS: ALL WRITTEN STATEMENTS AND MATERIALS FURNISHED TO THE INSURER IN CONJUNCTION WITH THIS APPLICATION ARE MADE A PART HEREOF PROVIDED THIS APPLICATION AND SUCH MATERIALS ARE ATTACHED TO THE POLICY AT THE TIME OF ITS DELIVERY.

IT IS AGREED IN THE EVENT THERE IS ANY MATERIAL CHANGE IN THE ANSWERS TO THE QUESTIONS CONTAINED IN THIS APPLICATION PRIOR TO THE EFFECTIVE DATE OF THE POLICY, THE APPLICANT WILL IMMEDIATELY NOTIFY THE INSURER IN WRITING AND ANY OUTSTANDING QUOTATIONS MAY BE MODIFIED OR WITHDRAWN AT THE INSURER'S DISCRETION.

The Undersigned hereby acknowledges that:

1. this Policy applies to **Claims** first made or deemed made, during the **Policy Period** or **Optional Extension Period**, if purchased, and

2. the Limit of Liability available to pay damages or settlements will be reduced, and may be completely exhausted, by the payment of **Costs, Charges and Expenses** and in such event, the Insurer shall not be responsible for the continued **Costs, Charges and Expenses** or for the amount of any judgment or settlement to the extent that any of the foregoing exceed any applicable Limit of Liability.

## FRAUD WARNING

ANY PERSON WHO, WITH INTENT TO DEFRAUD OR KNOWING THAT (S)HE IS FACILITATING A FRAUD AGAINST THE INSURER, SUBMITS AN APPLICATION OR FILES A CLAIM CONTAINING A FALSE OR DECEPTIVE STATEMENT MAY BE GUILTY OF INSURANCE FRAUD.

**NOTICE TO COLORADO APPLICANTS:** IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES, DENIAL OF INSURANCE, AND CIVIL DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE, INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A POLICYHOLDER OR CLAIMANT FOR THE PURPOSE OF DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICYHOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN THE DEPARTMENT OF REGULATORY AGENCIES.

**NOTICE TO DISTRICT OF COLUMBIA APPLICANTS:** WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON. PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, AN INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

**NOTICE TO FLORIDA APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY INSURER FILES A STATEMENT OF CLAIM OR AN APPLICATION CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY IN THE THIRD DEGREE.

**NOTICE TO LOUISIANA AND MARYLAND APPLICANTS:** ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINMENT IN PRISON.

**NOTICE TO MAINE, TENNESSEE, VIRGINIA AND WASHINGTON APPLICANTS:** IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO AN INSURANCE COMPANY FOR THE PURPOSE OF DEFRAUDING THE COMPANY. PENALTIES MAY INCLUDE IMPRISONMENT, FINES OR A DENIAL OF INSURANCE BENEFITS.

**NOTICE TO OKLAHOMA APPLICANTS:** ANY PERSON WHO KNOWINGLY, AND WITH INTENT TO INJURY, DEFRAUD OR DECEIVE ANY INSURER, MAKES ANY CLAIM FOR THE PROCEEDS OF AN INSURANCE POLICY CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A FELONY.

**NOTICE TO PENNSYLVANIA APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

**NOTICE TO NEW YORK AND KENTUCKY APPLICANTS:** ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIMS CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME, AND NEW YORK APPLICANTS SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.

Signed:

Must be signed by
Chief Executive Officer or President
of Applicant

Date: 

| _19_ | _12_ | _2013_ |
|------|------|--------|
| (Day) | (Month) | (Year) |

BICDO00030209

If this Application is completed in Florida, please provide the Insurance Agent's name and Florida license number.

If this application is completed in Iowa or New Hampshire, please provide the Insurance Agent's name and signature only.

_____                          _____
Name of Insurance Agent                              License Identification No.


_____
Authorized Representative


*If this Application is completed in Wisconsin, please note the following:*

- *If you cancel, earned Premium shall be computed on a short rate basis. The Premium shall be deemed fully earned if any **Claim** under this policy is reported to us on or before the date of cancellation.*

- *The Optional Extension Period Endorsement will not be issued unless we receive a written request for it within thirty (30) days after this policy is cancelled or non-renewed, nor will it take effect unless the additional Premium is paid within thirty (30) days after this policy is cancelled or non-renewed. Once that Premium is paid the endorsement may not be cancelled and the additional Premium will be fully earned.*

- *If, during the Policy Period, any of the following changes occur:*

  *1. the acquisition of an Insured, or of all or substantially all of its assets, by another entity, or the merger or consolidation of an Insured into or with another entity such that the Insured is not the surviving entity; or*

  *2. the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate over fifty percent (50%) of the directors of an Insured;*

  *coverage under this policy will continue in full force and effect with respect to **Claims** for **Insured Events** or, if purchased, **Third Party Insured Events** committed before such change, but coverage will cease with respect to **Claims** for **Insured Events** or, if purchased, **Third Party Insured Events** committed after such change. After any such change, this policy may not be cancelled, regardless of **CONDITIONS** section **VIII.E** Cancellation, and the entire Premium for the policy will be deemed fully earned.*


BICDO00030209                                         Page 8 of 8