**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 9:18-cv-80871-DMM**

BEAZLEY INSURANCE COMPANY,
INC.,

       *Plaintiff/Counter-Defendant,*

v.

BENJAMIN GORDON,

       *Defendant/Counter-Plaintiff/Third-Party Plaintiff,*

v.

XL INSURANCE COMPANY SE (XL CATLIN),
AND ABILITY INC.,

       *Third-Party Defendant.*

_____/

**DEFENDANT'S ANSWER AND AFFIRMATIVE**
**DEFENSES TO COMPLAINT FOR DECLARATORY**
**RELIEF AND COUNTERCLAIM AND THIRD-PARTY CLAIMS**

Defendant, Benjamin Gordon, files his Answer and Affirmative Defenses to Beazley

Insurance Company's Complaint for Declaratory Judgment [D.E. 1] and his Counterclaim and

Third-Party Claims, as follows:

**JURISDICTION AND VENUE**

1.      Gordon admits that the Complaint purports to set forth an action for declaratory

relief. Denied as to any and all remaining allegations.

2.      Admitted for jurisdictional purposes only.

3.      Admitted that amount in controversy is in excess of $75,000 and that Gordon

seeks those amounts, at minimum, from Beazley. Denied as to any remaining allegations

4.      Admitted.

5.      Admitted.

6.      Denied.

7.      Admitted.

## PARTIES

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted.

## FACTUAL ALLEGATIONS

12.     The Complaint referenced in paragraph 12 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Complaint are denied.

13.     The First Amended Complaint referenced in paragraph 13 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the First Amended Complaint are denied.

14.     The Second and Third Amended Complaints referenced in paragraph 14 are legal documents that speak for themselves. All allegations of fact inconsistent with a fair reading or construction of the Second and Third Amended Complaints are denied.

15.     The Complaint referenced in paragraph 15 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Complaint are denied.

16.     The Complaints referenced in paragraph 16 are legal documents that speak for themselves. All allegations of fact inconsistent with a fair reading or construction of these Complaints are denied.

17.     The Complaint referenced in paragraph 17 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Complaint are denied.

18.     The Complaint referenced in paragraph 18 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Complaint are denied.

19.     The Complaints referenced in paragraph 19 are legal documents that speak for themselves. All allegations of fact inconsistent with a fair reading or construction of the Complaints are denied.

20.     The Complaint referenced in paragraph 20 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Complaint are denied.

21.     The Complaint referenced in paragraph 21 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Complaint are denied.

22.     The "Gordon Subpoena" referenced in paragraph 22 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the "Gordon Subpoena" are denied.

23.     Admitted.

24.     Admitted Beazley agreed to provide coverage for the "Cambridge Matter," under reservation of rights, pursuant to Insuring Clause B. The Beazley Policy referenced in paragraph 24 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Policy are denied.

25.     Without knowledge and therefore denied.

26.     Admitted Beazley acknowledged coverage for Gordon for the "Cambridge Matter." Without knowledge and therefore denied as to the remaining allegations.

27.      The Beazley Policy referenced in paragraph 27 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Policy are denied. Admitted counsel was retained to represent Gordon in the "Cambridge Matters." Denied as to any and all remaining allegations.

28.     Denied.

29.     Denied.

A. Admitted that DLA Piper was retained as counsel. Without knowledge and therefore denied as to all remaining allegations.

B. Admitted that Stroock Stroock & Lavan was retained as counsel. Without knowledge and therefore denied as to all remaining allegations.

C. Admitted that McDermott Will & Emery was retained as counsel. Without knowledge and therefore denied as to all remaining allegations.

D. Admitted that Latham & Watkins was retained as counsel. Without knowledge and therefore denied as to all remaining allegations.

E. Without knowledge and therefore denied as to all remaining allegations.

30.     Denied.

31.     Denied.

32.     Admitted that, among other wrongs, Beazley paid defense costs for uninsured parties and thereby improperly exhausted the Policy's limits. It also made no effort to resolve any of the "Cambridge Matters" and paid its limits for matters that were not covered under the Beazley Policy. This permitted Beazley to extinguish any further exposure in the "Cambridge Matters," to the detriment of its Insured, who was faced with an eight-figure exposure. Denied as to any and all remaining allegations.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Admitted that Beazley's attempt to exhaust the Policy limits was for purposes of protecting its own interest and was to the detriment of Gordon. Denied as to any and all remaining allegations.

38.     Without knowledge as to the reasoning behind Beazley's actions, therefore denied. Denied as to any and all remaining allegations.

39.     Denied.

40.     Denied.

41.     Denied.

## **THE POLICY**

42.     The Beazley Policy referenced in paragraph 42 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Policy are denied.

43.     The Beazley Policy referenced in paragraph 43 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Policy are denied.

44.     The Beazley Policy referenced in paragraph 44 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Policy are denied. Admitted that Beazley did not undertake the defense of the Insureds.

45.     The Beazley Policy referenced in paragraph 45 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Policy are denied.

46.     Denied.

47.     The Beazley Policy referenced in paragraph 47 is a legal document that speaks for itself. All allegations of fact inconsistent with a fair reading or construction of the Policy are denied. Any and all remaining allegations are denied.

48.     Admitted Gordon sent two letters on April 17, 2018 and June 14, 2018 asserting Beazley acted in bad faith.  Denied as to any and all remaining allegations.

## COUNT I- DECLARATORY RELEIF

49.     Gordon re-alleges his responses to paragraphs 1 through 48 as if fully stated herein.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Without knowledge as to the declaration that Beazley seeks and therefore denied. Denied as to any and all remaining allegations.

57.     Paragraph 57 asserts a legal conclusion for which no response is required; otherwise denied.

58.     Paragraph 58 asserts a legal conclusion for which no response is required; otherwise denied.

59.     Paragraph 59 asserts a legal conclusion for which no response is required; otherwise denied.

60.     Paragraph 60 asserts a legal conclusion for which no response is required; otherwise denied.

61.     Without knowledge as to Beazley's purpose and therefore denied.

62.     Gordon denies the allegations and/or relief sought in the WHEREFORE clause following paragraph 61 of the Complaint.

Any allegations that have not been expressly admitted are hereby denied.

Gordon reserves the right to amend his Answer to Beazley's Complaint as facts are revealed in discovery.

## AFFIRMATIVE DEFENSES

Defendant, Benjamin Gordon, files his Affirmative Defenses to Plaintiff, Beazley Insurance Company's, Complaint for Declaratory Judgment [D.E. 1], as follows:

### First Affirmative Defense:
### Breach of Contract and/or Breach of Good Faith Duties

As its First Affirmative Defense, Gordon states that Beazley is not entitled to the relief sought in its Complaint for Declaratory Judgment because, by its actions and/or omissions,

Beazley materially breached the terms of the subject insurance policies and/or its contractual and good faith duties associated therewith.

### Second Affirmative Defense:
### Ambiguity

As its Second Affirmative Defense, Gordon states that the terms of the subject insurance policies are subject to more than one reasonable interpretation and that the policies are therefore ambiguous.

### Third Affirmative Defense:
### Estoppel

As its Third Affirmative Defense, Gordon states that it has been prejudiced by Beazley's investigation, handling and litigation of the underlying claims and/or lawsuits and, that as a result, Beazley is estopped from raising the defense of non-coverage.

WHEREFORE, having answered the Complaint for Declaratory Judgment [D.E. 1] filed by Beazley Insurance Company, Inc. and having asserted Affirmative Defenses thereto, Defendant, Benjamin Gordon, respectfully requests that this Court render judgment in Gordon's favor, award Gordon fees and costs incurred in defending this action pursuant to Fla. Stat. §627.428 and/or § 626.9373, and for any other relief that this Court finds equitable, just and proper.

### COUNTERCLAIM

Benjamin Gordon sues Beazley Insurance Company, Inc., as follows:

### NATURE OF THE ACTION

1.     This action for breach of contract arises out of Beazley's breach of a Director and Officer's liability policy issued to Cambridge Capital Acquisition Corporation, which also insures Gordon.

## JURISDICTION AND PARTIES

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 based upon the complete diversity of citizenship of the parties.

3.     The amount in controversy exceeds the sum of $75,000, exclusive of attorney's fees and costs.

4.     Venue is proper in the Southern District of Florida because the present claim for breach of contract arose in this district. Additionally, three of the underlying actions giving rise to the present declaratory judgment action were filed and are pending in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida.

5.      Benjamin Gordon is an individual over the age of 18 residing in Palm Beach County, Florida, is a citizen of and domiciled in the State of Florida, and is otherwise *sui juris*.

6.     Beazley Insurance Company, Inc. is a Connecticut corporation with its principal place of business in Farmington, Connecticut.

## GENERAL ALLEGATIONS

7.     The Policy: Beazley issued and delivered a Directors, Officers and Company Liability Insurance Policy, Policy No. V14969130101, to Cambridge Capital Acquisition Corporation with a Policy Period from December 18, 2013 through December 18, 2021 (the "Policy") [D.E. 1-5].

8.     The Policy has a $2 million aggregate Limit of Liability, which is eroded by the payment of defense fees and costs.

9.     Insuring Clause I(A) provides:

The Insurer shall pay on behalf of the **Directors and Officers** all **Loss** which is not indemnified by the **Company** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for a **Wrongful Act** provided such **Claim** is reported in writing to the Insurer as soon as practicable but in no

9

event later than sixty (60) days after the expiration of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

[D.E. 1-5] at §I(A).

10.      Directions and Officers under the Policy include "all persons who were, now are, or shall be duly elected or appointed directors, officers, trustees or **Managers** of the **Company**…" [D.E. 1-5] at §II(G).

11.      To implicate coverage, a Claim must be made against a Director or Officer for a Wrongful Act. A Claim includes, in relevant part:

> any written demand for damages or other relief against any of the **Insureds**, or any civil, criminal, administrative, regulatory, arbitration, mediation, or other alternative dispute resolution proceeding initiated against any of the **Insureds**…

[D.E. 1-5] at §II(B).

12.      A wrongful Act includes "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, act or omission by any of the **Directors and Officers** in their capacity as such." [D.E. 1-5] at §II(X).

13.      When a Claim is asserted against Directors and Officers for a Wrongful Act, the Policy will pay the resulting Loss.  Loss encompasses:

> the amounts which the **Insureds** become legally obligated to pay on account of a **Claim**, including…damages, judgments, including pre and post-judgment interest, settlements and **Costs, Charges and Expenses**…

[D.E. 1-5] at §II(K).

14.      Costs, Charges and Expenses are:

> the reasonable and necessary legal fees and expenses to which the Insurer consents and which are incurred by or on behalf of the **Insureds** in defending, settling, appealing or investigating any **Claim** and the cost of appeal, attachment or similar bonds…"

[D.E. 1-5] at §II(E).

15.     It is undisputed that Gordon is an insured under the Policy, and that the Gordon Actions constitute a Claim under the Policy for an alleged Wrongful Act.

16.     From 2015 until 2018, Gordon was named as a defendant in several lawsuits and subpoenaed in an SEC investigation arising out of Cambridge Capital Acquisition Corporation's ("CCAC") merger with Ability Inc. These included: (1) *Levy, et al. v. Gordon, et al.*, pending in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida (the "Levy Action"); (2) *Pottash v. Ability, Inc., et al*., pending in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida (the "Pottash Action"); (3) an SEC investigation entitled *In the Matter of Ability Inc*. (the "SEC Subpoena"); (4) *In re Ability Inc., Securities Litigation*, pending in the U.S. District Court for the Southern District of New York (the "NY Securities Litigation"); and (5) *Hammel v. Ability, Inc. et al.,* pending in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida (the "Hammel Action")(collectively, the "Gordon Actions").

17.     Counsel was retained in connection with the Gordon Actions. Beazley does not dispute that Gordon is an insured under the Policy.

18.     The First Amended Complaint in the Levy Action was filed in Florida state court on October 15, 2015 regarding CCAC's forthcoming merger with Ability (Ex. A). In December 2015, Beazley advanced a defense cost payment of $140,053.17 to DLA Piper. Defense costs were incurred in connection with this matter for over a year before the Pottash Action was filed in Florida state court in December 2016. Subsequently, on February 9, 2017, Gordon received a subpoena from the SEC in connection with the Cambridge-Ability Merger. On April 28, 2017, Gordon was added as a defendant in the NY Securities Litigation, a class action pending in the Southern District of New York (Ex. B). And on January 19, 2018, Robert Hammel filed a lawsuit

against Gordon based on the Ability merger (Ex. C). Beazley articulated its coverage position in connection with these matters in letters dated June 19, 2017 and July 17, 2017 (Comp. Ex. D).

19.     Beazley's final and comprehensive coverage letter dated July 17, 2017 identified specific issues with the defense counsel arrangement in each of the Gordon Actions. Beazley specifically identified defense costs that were not covered by the Policy.

20.     Beazley's next letter on November 13, 2017 advised Gordon that the Policy was exhausted and provided an accounting for how the remaining limits were paid.  According to Beazley, all of the engaged law firms submitted invoices reflecting outstanding amounts in excess of the Policy limits. Beazley advised that in October 2017 – without notice to Gordon – it paid the entire remaining limits of $1,859,946.83 for defense costs. Beazley ignored all of the issues with defense costs that it had raised and voluntarily exhausted the policy.

21.     Beazley failed to review the attorney invoices for reasonableness or challenge whether they were in compliance with billing guidelines and coverage under the Policy. It also failed to ensure that Policy proceeds were not paid for the benefit of uncovered parties.

22.     Once the Levy Action was filed, it should have been apparent to Beazley that Gordon's potential exposure far exceeded the available limits. But Beazley failed to explore a resolution and allowed the matter to progress over a year without any participation or oversight until the Pottash Action, SEC Subpoena, NY Securities Litigation, and the Hammel Action exponentially increased both Gordon's exposure and the necessary defense costs.

23.     Beazley does not dispute that it never made an effort to resolve any of the Gordon Actions despite its obligation to do so.

24.     Beazley's agreement to pay its remaining policy limits on October 31, 2017 left Gordon without insurance coverage for the ongoing Gordon Actions. The ongoing defense costs

would have been unnecessary if Beazley had protected its Insured either through settlement or by careful monitoring of the defense.

25.     Gordon incurred substantial defense fees and costs, for which he is personally responsible (though the Insurers and Ability Inc. are obligated to pay these amounts). Most significantly, Gordon continues to face exposure to significant judgments.

26.     Beazley has taken contradictory positions regarding Gordon's defense costs. In its July 17, 2017 coverage letter, the insurer refused to pay attorneys' fees incurred by Gordon's counsel on behalf of uninsured parties. Now that the Policy is exhausted, Beazley claims that "all proceeds of the Policy went toward reimbursement of Cambridge for the defense of Benjamin Gordon and other insureds."  Beazley's current self-serving position is incorrect.

## COUNT I
## BREACH OF CONTRACT

27.     Gordon re-asserts the allegations in Paragraphs 1 through 26.

28.      The Contract: At all material times, Gordon was an insured under the Policy.

29.      Beazley admits that coverage exists for the Gordon Actions.

30.      The Policy obligated Beazley to pay the resulting Loss from the Gordon Actions, which includes reasonable and necessary legal fees and expenses that are incurred by or on behalf of Gordon in defending the Gordon Actions and any damages, judgments, or settlements.

31.     Breach: Beazley breached the Policy by: (1) paying the Policy limits for amounts which do not equate to "Loss" under the Policy; (2) paying "Loss" for non-insureds under the Policy; (3) paying unreasonable and unnecessary legal fees; and (4) improperly exhausting its Policy limits to avoid its duty to indemnify.

32.     Causation & Damages: As a direct, foreseeable, and proximate result of Beazley's breach of the Policy, Gordon suffered and continues to suffer damages.

WHEREFORE, Benjamin Gordon demands judgment against Beazley Insurance Company, Inc. for compensatory and/or consequential damages; pre- and post-judgment interest; attorney's fees and costs pursuant to Fla. Stat. § 627.428 and/or § 626.9373; and any further relief that this Court deems equitable, just and proper.

## THIRD-PARTY COMPLAINT

Third-Party Plaintiff/Defendant, Benjamin Gordon, sues Third-Party Defendants, XL Insurance Company SE (XL Catlin) and Ability Inc., as follows:

### JURSIDICTION AND VENUE

1.     This is a third-party action seeking damages for breach of contract arising out of XL Insurance Company SE (XL Catlin) and Ability Inc.'s refusal to defend and indemnify Gordon with respect to underlying actions against Gordon arising out of Cambridge Capital Acquisition Corporation's ("CCAC") merger with Ability Computer & Software Industries, Ltd. ("ACSI").

2.     This Court has jurisdiction pursuant to 28 U.S.C §§ 1332 and 1367 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of costs, interest and attorney's fees.

3.     This Court has supplemental jurisdiction over this Third-Party Complaint pursuant to 28 U.S.C. § 1367 because all claims alleged herein form part of the same case or controversy under Article III of the United States Constitution, including without limitation that Beazley Insurance, XL Catlin and Ability Inc. were required to defend and indemnify Gordon against the underlying actions which are the subject of the *Beazley Ins. Co. Inc. v. Gordon* matter and which actions took place or were to take place in Palm Beach County, Florida.

4.      The Court has personal jurisdiction over XL Catlin because: (1) it is an established commercial entity which contracted to insure Gordon, who resides in Florida; (2) the events and omissions giving rise to this claim took place in Florida, including without limitation XL Catlin's breach of the Policy by failing to defend and/or indemnify Gordon for lawsuits filed in Florida and currently pending in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the Pottash Action, the Levy Action, and the Hammel Action); (3) XL Catlin entered into an agreement with Ability (without Gordon's consent) discharging its obligations for lawsuits filed in Florida – the Pottash Action and the Levy Action – in exchange for payment to Ability; (4) XL Catlin had sufficient minimum contacts with Florida by its written communications to counsel on behalf of the Insured, who resides in Florida; and (5) XL Catlin created a substantial connection with the state of Florida by insuring a Florida resident and agreeing to defend and indemnify certain claims against Gordon all over the world, including the United States.

5.      The Court has personal jurisdiction over Ability Inc. as the events and omissions giving rise to this claim took place in Florida, its principal executive office was previously located in Florida, and many of its actions challenged in this Complaint occurred in substantial part in, were directed at, and/or intended to have their primary effect in Florida.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to this claim occurred in this district. Additionally, three of the underlying actions giving rise to the present declaratory judgment action were filed and are pending in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida.

## PARTIES

7.      Third-party Defendant, XL Insurance Company SE, is domiciled in and has its principal place of business in the United Kingdom but upon information and belief insures Florida residents and has substantial contacts in Florida.

8.      Third-party, Defendant, Ability Inc., was incorporated under the laws of the Cayman Islands and is headquartered in Israel. Ability's[1] principal executive office was at all material times located at 525 South Flagler Drive, Suite 201, West Palm Beach, Florida 33401.

9.      Defendant, Benjamin Gordon, is an individual residing in and domiciled in Palm Beach County, Florida. Gordon is a citizen of the state of Florida.

## GENERAL ALLEGATIONS

### A.      The Underlying Actions

10.      In September 2015, CCAC announced that it would merge with ACSI by the end of 2015. Following stockholder approval, the transaction was completed in December 2015. As part of the transaction, CCAC merged with and into Holdco, its wholly owned subsidiary, and then Holdco acquired 100% of Ability Computer & Software Industries, Ltd.'s outstanding shares in exchange for a combination of stock and cash. Thereafter, CCAC ceased to exist as a company and the surviving entity was renamed Ability Inc. The underlying actions arose as a result of the merger which triggered the defense and/or indemnity obligations of Gordon's primary insurer, Beazley Insurance Company, in addition to XL Catlin and Ability Inc. These actions, collectively referred to as the "Gordon Actions," are described below.

---

[1] Ability Inc. is f/k/a Cambridge Holdco Corp. ("Holdco"), which had its principal executive office at 525 South Flagler Drive, Suite 201, West Palm Beach, Florida 33401.

### i. The Pottash Action

11.     Carter Pottash commenced a lawsuit in Florida state court in December 2016 against Benjamin Gordon and others.  The action is styled *Pottash v. Ability, Inc., et al.*, Case No. 502016CA013823XXXXMBAB and is currently pending in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida (the "Pottash Action").  The operative Second Amended Complaint (Ex. E) brings claims against Gordon in his capacities as the former CEO of Cambridge (now Ability) and as a former Director of Ability.

12.     In 2013, Gordon and others formed Cambridge as a special purpose acquisition company ("SPAC").  A SPAC is a publicly-traded buyout company that raises money to acquire a target private company.  Once the target is acquired, it becomes a publicly-traded company.

13.     Among its key provisions, the SPAC had an initial deadline of June 23, 2015 to accomplish a merger transaction with a target company.  If a definitive agreement was signed by that date, the closing deadline would be extended until December 23, 2015.  If no merger transaction took place by the target deadlines, the SPAC would be liquidated and all investor monies returned.  Once a target company was identified, the investors had the option to receive a full refund of their investment.

14.     CCAC identified Ability as a target company in June 2015. It spent three months on due diligence and signed a merger agreement in September 2015 (Ex. F). ACSI was founded and owned by two former military intelligence officers, and the company was allegedly involved in telephone interception technology.

15.     Pottash had made an initial investment in Cambridge and allegedly felt "uneasy" about keeping that investment in an area where he claimed Gordon lacked expertise.  Despite purported issues with the target company and the timing of the proposed merger, Pottash (1)

17

declined a refund of his money, (2) voted to approve the transaction, and (3) invested additional money into the deal to ensure that it closed.

16.     After the SPAC investors approved the transaction with ACSI, the deal closed on December 23, 2015. Cambridge merged into one of its wholly-owned subsidiaries, Holdco, which survived the merger as a new entity. Holdco then acquired 100% of ACSI's outstanding shares and changed its name to Ability Inc.

17.     Pottash asserts that he would have redeemed his money from the SPAC and would not have invested additional funds but for alleged misrepresentations by Gordon in his official capacities with Cambridge/Ability. The Second Amended Complaint (Ex. E) accordingly asserts, in relevant part, two counts for Violation of the Florida Securities & Investor Protection Act and two counts for Negligent Misrepresentation. Gordon denies these allegations.

### ii.     The Levy Action

18.     Brian Levy commenced a lawsuit in Florida state court on March 24, 2015 against Gordon and others. The action is styled *Levy, et al. v. Gordon, et al.*, Case No. 2015CA003339 and is currently pending in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida (the "Levy Action"). The action was filed regarding CCAC's forthcoming merger, initially with a company named Parakou Tankers, Inc., and ultimately with Ability, arguing, *inter alia,* that the business transaction agreement did not fairly value Cambridge and was not in the best interests of Cambridge's shareholders.

### iii.     The SEC Subpoena

19.     On February 9, 2017, Gordon received a subpoena from the SEC (the "SEC Subpoena"). The government expressed interest in both pre- and post-merger documents and communications, and required Gordon to produce those materials by February 23, 2017. It

also demanded sworn testimony before officers of the SEC at a date and time to be determined.

### iv.    The NY Securities Litigation

20.    After the SEC Subpoena, Gordon was added as a defendant in a class action styled *In re Ability Inc. Securities Litigation,* filed in the U.S. District Court for the Southern District of New York on April 28, 2017 (the "NY Securities Litigation") (Ex. B). The first amended complaint was asserted on behalf of all individuals and entities who purchased or acquired Ability or Cambridge securities between September 8, 2015 and April 29, 2016 – both before and after the Ability transaction. Gordon was named in his insured capacity as a director of Ability from the time of the merger through December 20, 2016. The Amended Complaint alleged causes of action against him for violations of: (1) Section 1O(b) of the Exchange Act and Rule 1Ob-5, (2) Section 20(a) of the Exchange Act, (3) Section 11 of the Securities Act, and (4) Section 15 of the Securities Act.  Gordon denies those allegations.

### v.    The Hammel Action

21.    Robert Hammel commenced a lawsuit in Florida state court on January 19, 2018 against Benjamin Gordon and others.  The action is styled *Hammel v. Ability, Inc., et al*., Case No. 2018CA000762 and is currently pending in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida (the "Hammel Action") (Ex. C).

### B.    XL Catlin's Positions

22.    XL Catlin denied coverage for the Gordon Actions and refused to honor its contractual obligation to defend him.  The coverage determination finds no support in the operative Complaint or the Policy, which control the duty to defend.

23.     In the Pottash Action, XL Catlin first maintains that "the activities alleged against Gordon were not executed in his capacity as director or officer of Ability, but rather in his private personal capacity or capacity of stock dealer."   The operative Complaint, however, repeatedly alleges that Gordon was acting as an agent of Cambridge, which later changed its name to Ability Inc. *See, e.g.*, Ex. E at ¶¶ 157, 158, 165, 166, 189, 196.  The stockbroker allegation was later withdrawn thus Gordon was sued in his capacity as a Director and Officer.

24.     XL Catlin next asserts that the allegations in the Pottash Action overlap with those in the Levy Action.  Because the Levy Action was filed before December 24, 2015, coverage is purportedly barred by the Policy's Prior and Pending Litigation date.

25.     The argument that the Pottash Action arises out of or is based upon the Levy Action ignores critical differences between the lawsuits.  These distinctions include, but are not limited to: (1) the initial Levy Complaint was filed to block a merger with another target company and had nothing to do with the ACSI transaction; (2) the first amended Levy Complaint was filed before the merger with ACSI and had nothing to do with damages allegedly suffered as a result of the transaction; and (3) the Levy Action is a putative class action, while Pottash asserts direct claims against Gordon for specific alleged misrepresentations to an individual investor.

26.     Finally, XL Catlin also concluded that Gordon's alleged wrongful acts are not covered by the Policy because they occurred before the Retroactive Date.  The Policy, however, does not define this date or how it applies.  The insurer omitted this provision from the insurance contract, but maintains that it bars coverage based on "common knowledge" of its meaning within the insurance industry.

27.     XL Catlin abandoned Gordon, forcing him to personally incur substantial defense costs in connection with the Pottash Action.  Compounding these damages, the carrier negotiated a unilateral deal with Ability that: (1) seeks to eliminate Gordon's rights to a defense and indemnity under the Policy; and (2) improperly favors the company over the individual insureds.

28.     In December 2017, XL Catlin negotiated a Discharge Agreement with Ability that would terminate any future obligations under the Policy for the Pottash Action and various other pending matters by paying Ability half of the Policy limits, with XL Catlin keeping the other half for itself.

29.     XL Catlin pursued this course even though the Policy contains an express Order of Payments provision requiring that individual insureds be paid before the company.  Policy, Endorsement 6, §7.  XL Catlin is contractually prohibited from favoring the company over the individual directors and officers, and must pay Gordon's covered loss (including defense costs) before making any payment to Ability.  XL Catlin disregarded this provision for the sole purpose of minimizing its own exposure under the Policy.

30.     XL Catlin's failure or refusal to defend Gordon or otherwise resolve the Pottash Action within the policy limits forced Gordon to incur substantial defense costs and exposed him to a seven-figure judgment.

31.     XL Catlin has similarly denied coverage to Gordon in connection with the Levy Action, the Hammel Action, the SEC Subpoena, and the NY Securities Litigation.

### C.     Ability's Indemnity Obligations

32.     Gordon is entitled to indemnification and advancement as a former officer and director of CCAC, a former director of Ability (as CCAC's surviving entity after the merger), and the designated Cambridge Representative in the Merger Agreement.

33.    CCAC's Bylaws (Ex. G) require CCAC to indemnify Gordon for expenses incurred relating to filed or threatened litigation:

> ARTICLE VII
> <u>INDEMNIFICATION OF DIRECTORS AND OFFICERS</u>
>
> 7.1    The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal,  administrative or investigative (other than an action by or in the right of the Corporation) by reason of the  fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the  request of the Corporation as a director, officer, employee or agent of another corporation, partnership,  joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and  amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or  proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the  best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable  cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment,   order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a  presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or  not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

34.    CCAC's Certificate of Incorporation (Ex. H) also required it to advance Gordon's expenses:

> EIGHTH.
> B.    The Corporation, to the full extent permitted by Section 145 of the GCL, as amended from time to  time, shall indemnify all persons whom it may indemnify pursuant thereto. Expenses (including attorneys'  fees) incurred by an officer or director in defending any civil, criminal, administrative, or investigative  action, suit or proceeding for which such officer or director may be entitled to indemnification hereunder  shall be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon   receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall  ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized hereby.

35.    The Merger  Agreement  (Ex. F) requires  Ability  to  provide  Mr.  Gordon  with the same indemnification and advancement protections CCAC provided Gordon:

5.18.    Liability Insurance.

(a)        For six (6) years after the Effective Time, Surviving Pubco agrees that it will (i) indemnify and hold  harmless, to the extent Cambridge is obligated to indemnify and hold harmless such Persons as of the date  of this Agreement to the fullest extent permitted by Applicable Law (and the Surviving Pubco shall also  advance expenses as incurred to the extent Cambridge is obligated to advance such expenses as of the date  of this Agreement, provided that the Person to whom expenses are advanced provides an undertaking to repay such advances if it is ultimately  determined that such Person is not entitled to indemnification), each  present and former director and officer of Cambridge (in each case, when acting in such capacity) (the  "Indemnified Parties"), against any costs or expenses (including reasonable attorneys' fees), judgments,  fines, settlements, losses, claims, damages or liabilities (collectively, "Costs") incurred in connection with  any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or  investigative, arising out of matters existing or occurring at or prior to the Effective Time, whether asserted  or claimed prior to, at or after the Effective Time, including the Transactions and (ii) include and cause to  be maintained in effect in the Surviving Pubco's (or any successor's) constitutional documents after the  Effective Time provisions regarding the elimination of liability of the Surviving Pubco's directors and officers and the indemnification of the Indemnified Parties that are no less advantageous to the intended  beneficiaries than the corresponding provisions contained in the current Charter Documents of Cambridge.  Notwithstanding anything to the contrary contained herein, the Surviving Pubco shall not be obligated  pursuant to this Section 5.18(a) to pay the fees and disbursements of more than one counsel for all  Indemnified Parties in any single action, suit or proceeding.

\*          \*          \*

(d)        The provisions of this Section 5.18 are intended to be for the benefit of, and shall be enforceable by,  each Person who will have been a director or officer of Cambridge for all periods ending on or before the  Closing Date and may not be changed without the consent of the Cambridge Representative.

(e)        The rights of the Indemnified Parties under this Section 5.18 shall be in addition to any rights such Indemnified Parties may have under the Charter Documents of  Cambridge, or  under any applicable  contracts or Applicable Law.

36.        The Articles of Association (Ex. I) also require Ability to advance Gordon's

attorneys' fees and other costs and expenses incurred in the defense of any litigation or

investigation:

45.2        The Company shall advance to each Indemnified Person reasonable attorneys' fees and other costs  and expenses incurred in connection with the

defense of any action, suit, proceeding or investigation involving such Indemnified Person for which indemnity will or could be sought.

37.     Separately, the Merger Agreement (Ex. F) requires Ability to indemnify and  advance  Gordon's expenses incurred as the Cambridge Representative:

> 7.7. Representative Capacities; Application of Escrow Shares. The parties acknowledge that the  Cambridge Representative's obligations under this Article VII are solely as a representative of the  stockholders of Cambridge immediately prior to the Effective Time in the manner set forth in the  Continental Escrow Agreement with respect to the obligations to indemnify the Surviving Pubco under this  Article [VII] and that the Cambridge Representative shall have no personal responsibility for any expenses  incurred by him in such capacity and that all payments to the Surviving Pubco as a result of such indemnification obligations shall be made solely from, and to the extent of, the Escrow Shares. Reasonable  and actual out-of-pocket expenses of the Cambridge Representative for attorneys' fees and other costs shall  be borne in the first instance by the Surviving Pubco, which may make a claim for reimbursement thereof  as part of the Indemnifiable Losses against the Escrow Shares upon the claim with respect to which such  expenses are incurred becoming an Established Claim (as defined in the Continental Escrow Agreement).  The Continental Escrow Agent, pursuant to the Continental Escrow Agreement after the Closing, may  apply all or a portion of the Escrow Shares to satisfy any claim for indemnification pursuant to this Article
>
> VII. The value of the Escrow Shares shall be determined in accordance with this Agreement and the Continental Escrow Agreement. The Continental Escrow Agent will hold the remaining portion of the Escrow Shares until final resolution of all claims for indemnification or disputes relating thereto.

38.     Ability concedes that "Mr. Gordon has certain advancement and indemnification rights." Ability Letter, Feb. 28, 2017, p. 3 (Ex. J). Yet the company has refused to reimburse Gordon for any defense costs since litigation incepted two years ago.

39.     Compounding its breaches to Gordon, Ability also sought to secure an insurance recovery for itself. Ability is aware that its D&O policy contains an Order of Payments Provision requiring the insurer to pay the covered loss of individual insureds (including Gordon) before making any payment to the company. Yet in December 2017, Ability negotiated a Discharge Agreement without Gordon's knowledge or approval that

would terminate all of XL Catlin's future obligations for the Pottash Action, the NY Securities Litigation, and the SEC Subpoena. Ability agreed to accept a $5 million payment directly to the company out of the $10 million in available coverage. Of that amount, $250,000 would be payable to the company if it secured Gordon's signature after the fact. That money (or some portion of it) need only be paid to Gordon at Ability's sole discretion. Ability thus has arranged to pocket half of the insurance proceeds by signing away its rights along with Gordon's.

## COUNT I
## XL CATLIN'S BREACH OF CONTRACT

40.     Gordon re-asserts the allegations in Paragraphs 1 through 39.

41.      The Contract: At all material times, Gordon was an insured under the XL Catlin Policy.

42.     XL Catlin issued a Directors and Officers Liability and Company Reimbursement policy to Ability Inc. with a policy period from January 1, 2016 through January 2017 (the "Policy") (Ex. K). It is a claims made policy with a $10 million limit of liability.

43.     Insuring agreement 1(A) is entitled Directors and Officers Liability and provides:

> The i*nsurer* shall pay the Loss of each *insured* resulting from *any claim* first made against the *insured* during the *policy period* and notified to the *insurer* during the *policy period* for *any wrongful act* in the *insured's* capacity as a *director or officer* of the *company* except for and to the extent that the c*ompany* has indemnified the *insured*.

> Subject to the terms and conditions of this policy, the *insurer* shall advance *defence costs* resulting from any *claim* before its final resolution.

Policy (Ex. K), §1(A).

44.     An Insured under the Policy includes "any natural person who was, is, or shall become a *director or officer* of the *company*."  Policy (Ex. K), §2.10.  A Director or Officer is "any natural person duly appointed or elected as a director, general manager, managing director,

deputy general manager, or vice general manager of the *company*, and any other manager who is directly subject to the authority of the general manager and any other natural person who fulfills a function mentioned above, even if his title differs therefrom." Policy (Ex. K), §2.6.

45.    To implicate coverage, a Claim must be made against an Insured for a Wrongful Act. A Claim includes, in relevant part:

(i)  any suit or proceeding including but not limited to any civil proceeding, third party proceeding, counter claim, arbitration or mediation proceeding brought by any person or organization against an Insured for monetary damages or other relief, including non-pecuniary relief;
(iv) any administrative or regulatory proceeding or official investigation regarding any *wrongful act* of an *insured.*

For the avoidance of doubt, it is agreed that the term "*claim*" shall also include any *securities claim*…arising from a *wrongful act.*

*See* Policy, (Ex. K) §3.2. Endorsement 6.

46.    **A Wrongful Act** is "any actual or alleged breach of duty, breach of trust, neglect, error, misstatement, misrepresentation, misleading statement, act, omission, neglect, breach of contract, libel, slander, defamation, or other act of the *insured* in the respective capacities as a *director* or *officer* of the *company* . . . or any matter claimed against them solely because of their status as a *director* or *officer* of the *company*."  Policy (Ex. K), §2.23, Endorsement 6.  Covered Loss resulting from a Claim encompasses, in relevant part, "damages, judgments, settlements and *defence costs*."  Policy (Ex. K), §2.12.

47.    When a Claim is asserted against an Insured for a Wrongful Act, the limit of liability includes the advancement of Defense Costs.  Defense Costs broadly include:

reasonable and necessary fees, costs, and expenses incurred with the written consent of the Insurer, which shall not be unreasonably withheld or unduly delayed . . . resulting solely from the investigation, adjustment, defense and appeal of any *claim* but shall not include the salary of any Insured.

> For the avoidance of doubt it is agreed that should a conflict of interest exist between any of the Insured[s], then at their request . . . separate counsel may be appointed to protect their respective interests.

Policy (Ex. K), § 2.5, Endorsement 6.

48.     Section 5.6 of the Policy, entitled Advancement of Costs, establishes XL Catlin's relevant obligations once a Claim is made:

> The *Insurer* shall advance to the *insured* or the *company* on a current basis *defence costs* under all insurance covers under this policy before the final disposition of the *claim*. Payments of *defence costs* shall not be unreasonably withheld or unduly delayed . . . In the event and to the extent that the *company* is permitted or required to indemnify the insured but for whatever reason fails to do so, the *insurer* will advance the *defence costs* to the *insured* on behalf of the *company* . . . In the event that the issue of coverage has not been determined yet, then the advanced payment by the *insurer*, shall be repaid to the *insurer* by the *company* or the *insured* . . . in the event and to the extent that the *company* or the *insured* shall not be entitled to payment of the loss under the terms of this policy.

Policy (Ex. K), § 5.6, Endorsement 6.

49.     The Policy contains an exclusion for claims "arising out of, based upon or attributable to any pending or prior litigation as of the pending and prior litigation *continuity date* specified in Item 6(i) of the Schedule, or alleging or deriving from the same or essentially the same facts as alleged in the pending or prior litigation."  Policy (Ex. K), § 3.3.  The Continuity Date in the Policy declarations for Prior and Pending Litigation is December 24, 2015.

50.     The policy declarations also contain a Retroactive Date of December 24, 2015. There is no Policy provision defining the Retroactive Date or explaining how it applies.

51.     Gordon is an insured under the Policy and coverage exists for the Gordon Actions.

52.     <u>Breach</u>: XL Catlin breached the Policy by failing to pay defense fees/costs and/or failing to indemnify Gordon for the Gordon Actions.

53.     <u>Causation & Damages</u>: As a direct, foreseeable, and proximate result of XL Catlin's breach of its duty to Gordon under the Policy, Gordon has suffered and continues to suffer damages.

WHEREFORE, Plaintiff, Benjamin Gordon, demands judgment for compensatory and/or consequential damages, pre- and post-judgment interest, attorney's fees pursuant to Fla. Stat. § 627.428 and/or § 626.9373, costs, and any further relief the Court deems equitable, just, and proper.

**COUNT II**
**ABILITY'S BREACH OF CONTRACT**

54.     Gordon re-asserts the allegations in Paragraphs 1 through 39.

55.      <u>The Contract</u>: At all material times, Gordon was an indemnitee and Ability was the indemnitor, pursuant to a Merger Agreement.

56.     <u>Breach</u>: Ability breached the Merger Agreement by failing to advance defense fees/costs and indemnify Gordon for the Gordon Actions.

57.     <u>Causation & Damages</u>: As a direct, foreseeable, and proximate result of Ability's breach of its duty to Gordon under the Merger Agreement, Gordon has suffered and continues to suffer damages.

WHEREFORE, Plaintiff, Benjamin Gordon, demands judgment for compensatory and/or consequential damages including advancement of defense costs; pre- and post-judgment interest; attorney's fees; costs; and any further relief the Court deems equitable, just, and proper.

**DEMAND FOR TRIAL BY JURY**

Defendant, Benjamin Gordon, demands a trial by jury on all issues so triable.

Case No.:  9:18-cv-80871-DMM

Respectfully Submitted,

VER PLOEG & LUMPKIN, P.A.
100 S.E. Second Street, 30th Floor
Miami, FL 33131
305-577-3996
305-577 3558 *facsimile*

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr.**
Florida Bar No. 79170
smarino@vpl-law.com
smcgee@vpl-law.com
**Arya Attari Li**
Florida Bar No. 58847
ali@vpl-law.com
*Counsel for Benjamin Gordon*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

July 31, 2018, on all counsel or parties of record on the Service List below.

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr.**

## SERVICE LIST

Stephen A. Marino, Jr., Esq.
Arya Attari Li, Esq.
Ver Ploeg & Lumpkin, P.A.
100 S.E. Second Street, 30th Floor
Miami, FL 33131
305-577-3996
305-577-3558 *facsimile*
smarino@vpl-law.com
smcgee@vpl-law.com
ali@vpl-law.com
*Counsel for Benjamin Gordon*

Rory E. Jurman, Esq.
Steven S. Cula, Esq.
Fowler White Burnett, P.A.
100 S.E. Third Avenue, Suite 2100
Ft. Lauderdale, FL 33394
954-377-8100
954-377-8101 fax
scula@fowler-white.com
rjurman@fowler-white.com
*Counsel for Beazley Ins. Co., Inc.*