COMPOSITE EXHIBIT D

**Composite Exhibit D**



200 SUMMIT LAKE DRIVE, VALHALLA, NY 10595
TEL: 914.449.1000   FAX: 914.449.1100   WWW.KBRLAW.COM

June 19, 2017

WAYNE E. BORGEEST
DIRECT: 914.449.1002
WBORGEEST@KBRLAW.COM

PATRICK DOWDLE
DIRECT: 914.449.1123
PDOWDLE@KBRLAW.COM

BY EMAIL

CONFIDENTIAL

Avi Levin
Chief Financial Officer
Ability Inc.
Yad Harutzim 14
Tel Aviv, 6770007
Israel
avi@ability.co.il

| Re: | Insured | : | Cambridge Capital Acquisition Corporation |
|---|---|---|---|
| | Matters | : | *Brian Levy v. Benjamin Gordon, et al.* (the "Levy Action"); *Carter A. Pottash v. Benjamin Gordon, et al.* (the "Pottash Action") |
| | Policy No. | : | V14969130101 (the "Policy") |
| | Policy Period | : | December 18, 2013 – December 18, 2021 |
| | Beazley File No. | : | BEAZL100002840666 |
| | Our File No. | : | 638.159 |

Dear Mr. Levin:

As you know, our firm has been retained by Beazley Insurance Company, Inc. ("Beazley"), which issued the captioned Policy to Cambridge Capital Acquisition Corporation ("Cambridge" or the "**Company**").[1] This letter supplements Beazley's prior communications concerning the above-referenced "Levy Action," and addresses the above-referenced matter recently filed by Carter A. Pottash ("Pottash"), which was noticed to Beazley for coverage by email from your broker at Howden Broking Group on January 8, 2017 (the "Pottash Action").

This letter is directed to your attention as the authorized representative of Cambridge and all **Insureds** for insurance coverage purposes. If you are not acting on behalf of Cambridge and all other

---

[1] Bold and capitalized terms are defined in the captioned Policy.

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 2

affected **Insureds** with respect to insurance matters, we request that you direct a copy of this letter to the appropriate representative and advise us accordingly. Please direct all future correspondence intended for Beazley in this matter to the undersigned.

The purpose of this letter is to discuss the question of coverage for the second amended complaint filed in the above-referenced Levy Action on October 22, 2016 (the "SAC"), and the complaint filed in the above-reference Pottash Action on December 13, 2016 (the "Pottash Complaint"). Having reviewed these complaints, and as set forth in detail below, both the SAC and the Pottash Complaint appear to be potentially covered under the Policy, subject to a reservation of rights. Should further pertinent information come to light, Beazley may revise its coverage position accordingly, and reserves the right to do so.

Please be aware that Beazley does not attribute any merit to the allegations asserted in the Levy Action or the Pottash Action. We reference those allegations herein only for purposes of discussing the question of coverage.

<u>Background</u>

*The Parakou Complaint*

The Levy Action was commenced on March 24, 2015, when Brian Levy ("Levy") filed a class action and derivative complaint in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida, in the matter styled *Brian Levy, on behalf of Himself and All Others Similar Situated v. Benjamin Gordon, Mitchell I. Gordon, Michael Durham, Nathan Gantcher, Scott Laurans, and Parakou Tankers, Inc., Defendants, and Cambridge Capital Acquisition Corp., Nominal Defendant*, Case No. 2015CA003339 (the "Parakou Complaint").

Cambridge, a special purpose acquisition company ("SPAC"), was formed in December 2013 for the purpose of effectuating a business combination with a target company by the June 23, 2015 merger deadline included in its Certificate of Incorporation ("Charter"). On December 1, 2014, Cambridge executed a preliminary merger agreement with Parakou Tankers, Inc. ("Parakou"). Levy filed the Parakou Complaint on March 24, 2015, challenging the proposed merger between Cambridge and Parakou for the following reasons: (1) the merger allegedly did not properly value Cambridge and was not in the best interests of its shareholders; (2) the proxy statement filed with the SEC in connection with the proposed merger allegedly misrepresented and/or omitted material information; and (3) the individual defendants named in the Parakou Complaint (Benjamin Gordon, former CEO of Cambridge; Mitchell Gordon, former CFO of Cambridge; Michael Durham, former director of Cambridge; Nathan Gantcher, former director of Cambridge; and Scott Laurans, former director of Cambridge) (collectively, the "Individual Defendants") only agreed to the merger with Parakou because they allegedly stood to lose more than $7.4 million in initial shares and private units granted to them as part of the IPO if Cambridge did not enter into a business combination.

The Parakou class and derivative Complaint asserted the following six (6) causes of action against the defendants:

1) Class allegation for breach of fiduciary duties (good faith, loyalty, fair dealing and due care) – against the Individual Defendants;

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 3

2) Class allegation for failure to disclose – against the Individual Defendants;

3) Class allegation for aiding and abetting – against Parakou;

4) Derivative allegation for breach of fiduciary duties (good faith, loyalty, fair dealing and due care) – against the Individual Defendants;

5) Derivative allegation for failure to disclose – against the Individual Defendants; and

6) Derivative allegation for aiding and abetting – against Parakou.

The Parakou Complaint sought to enjoin the proposed merger between Cambridge and Parakou, and compensatory/rescissory damages and attorneys' fees.

On April 16, 2015, the parties to the Parakou Complaint tentatively agreed to a settlement and entered into a memorandum of understanding ("MOU").  However, on May 8, 2015, it was announced that the merger between Cambridge and Parakou had been terminated. Pursuant to the MOU, consummation of the settlement was subject to, among other things, effectuation of the merger. As a result, the failed merger rendered the settlement moot, and the Levy Action stood dormant for several months.

Beazley issued a coverage letter dated May 27, 2015 in response to the Parakou Complaint, which is incorporated by reference as though set forth in full herein.

> *First Amended Complaint*

On October 15, 2015, Levy filed a first amended complaint in the matter now styled *Brian Levy, on behalf of Himself and All Others Similar Situated v. Benjamin Gordon, Mitchell I. Gordon, Michael Durham, Nathan Gantcher, Scott Laurans, Cambridge Holdco Corp., and Ability Computer & Software Industries Ltd., Defendants, and Cambridge Capital Acquisition Corp., Nominal Defendant*, Case No. 2015CA003339 (the "FAC"), in which he challenged a proposed merger between Cambridge and Ability Computer & Software Industries, Ltd. ("Ability"). The FAC named the same Individual Defendants included in the Parakou Complaint, and added Cambridge Holdco Corp. ("Holdco") and Ability as defendants, and removed Parakou from the action.

According to the FAC, Cambridge was required by its Charter to either consummate a business combination by the June 23, 2015 merger deadline, or liquidate and distribute its proceeds to shareholders. As a result, Cambridge quickly began looking for a new merger partner after the proposed transaction with Parakou fell through. After the deadline passed, on June 29, 2015, the Individual Defendants allegedly caused Cambridge to enter into a term sheet with Ability. Thereafter, a definitive agreement to consummate a business transaction with Ability was executed on September 6, 2015 (the "Ability Agreement").

Levy filed the FAC to challenge the Ability Agreement, arguing that it allegedly did not fairly value Cambridge and was not in the best interests of Cambridge's shareholders. Further, the FAC alleged that the Individual Defendants only agreed to the Ability Agreement because they had substantial pecuniary self-interest in causing Cambridge to enter into a business combination, and that the Individual Defendants' actions were *ultra vires* because Cambridge

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 4

was required to liquidate its proceeds once the June 23, 2015 deadline to enter into a business combination had passed.

In addition to the Individual Defendants and Ability, Levy named Cambridge Holdco Corp. ("Holdco"), Cambridge's wholly-owned subsidiary formed solely for the purpose of effectuating the Ability Agreement, as a defendant in the FAC. However, there were no causes of action brought against Holdco. There also were no causes of action against Cambridge, which was named solely as a nominal defendant.

The FAC asserted the following eight (8) causes of action against the Individual Defendants and Ability:

1) Class allegation for breach of fiduciary duties (good faith, loyalty, fair dealing and due care) – against the Individual Defendants;

2) Class allegation for failure to disclose – against the Individual Defendants;

3) Class allegation for aiding and abetting – against Ability;

4) Derivative allegation for breach of fiduciary duties (good faith, loyalty, fair dealing and due care) – against the Individual Defendants;

5) Derivative allegation for failure to disclose – against the Individual Defendants;

6) Derivative claim for aiding and abetting – against Ability;

7) Class and derivative allegations for *ultra vires* acts in violation of Cambridge's Certificate of Incorporation – against the Individual Defendants; and

8) An award of attorneys' fees – against the Individual Defendants.

In the FAC, Levy sought a declaration voiding the Ability Agreement because of its *ultra vires* nature; an order enjoining the Cambridge/Ability merger; compensatory and/or rescissory damages and attorneys' fees and costs.

By Order dated September 15, 2016, the Court granted both Ability's and the Individual Defendants' motions to dismiss the FAC, and provided Levy with 45 days to file a second amended complaint.

Beazley issued a coverage letter dated November 20, 2015 in response to Cambridge's submission of the FAC, which we incorporate by reference herein.

The Matters Submitted

*The Second Amended Complaint*

By email dated October 28, 2016, Dan Sarrantonio of ARC Excess & Surplus, LLC tendered notice to Beazley of the SAC, which was filed on October 22, 2016 in the matter styled *Brian Levy, on behalf of Himself and All Others Similar Situated v. Benjamin Gordon, Mitchell I.*

KAUFMAN BORGEEST & RYAN LLP

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 5

*Gordon, Michael Durham, Nathan Gantcher, Scott Laurans, Cambridge Holdco Corp., and Ability Computer & Software Industries Ltd., Defendants, and Cambridge Capital Acquisition Corp., Nominal Defendant*, Case No. 2015CA003339 (the "SAC"). The SAC asserts allegations akin to those set forth in the FAC, with additional and updated detail concerning the finalization of the merger entered into by Cambridge and Ability on December 23, 2015 (the "Cambridge-Ability merger"),[2] and purported consequences stemming therefrom.

According to the SAC, Cambridge agreed to an *ultra vires* business combination with Ability, a small entity with only two shareholders (Anatoly Hurgin and Alexander Aurovsky), and agreed to transfer majority control of the surviving company (Ability) to Hurgin and Aurovsky for the primary purpose of enriching the Individual Defendants. Levy asserts that that the Cambridge-Ability merger was not in the best interests of Cambridge's shareholders, and was consummated because the Individual Defendants potentially would have lost $20 million had Cambridge instead been liquidated.

In particular, Levy alleges in the SAC that the Cambridge-Ability merger was consummated after the June 23, 2015 merger deadline, in violation of Cambridge's Charter. Cambridge's Charter required Cambridge to consummate a merger by June 23, 2015, or liquidate and distribute its proceeds to shareholders. Levy asserts that the Individual Defendants did not want to liquidate the SPAC because they had invested more than $1.4 million in Cambridge, and their stock in Cambridge, which was valued at more than $20 million, would become worthless upon liquidation. Also, Levy alleges that $350,000 worth of personal loans made by Defendant Benjamin Gordon to Cambridge would have become uncollectible and expenses incurred by Benjamin Gordon and his affiliates in the amount of $298,169 would not have been reimbursed if Cambridge had been liquidated. The SAC also asserts that the two Ability shareholders promised Defendants Benjamin Gordon and Mitchell Gordon directorships in the surviving entity.

Levy alleges further that the Cambridge-Ability merger was detrimental to Cambridge shareholders because:

➢ the public shareholders of Cambridge now own less than 25% of the surviving entity, even though prior to the merger, Cambridge had market capitalization of $100 million, or seven times the amount of Ability's shareholder's purported equity of $13.5 million;

➢ the surviving entity was organized under the laws of the Cayman Islands, which provide only limited protections for shareholders, in order to insulate the directors of Ability from liability;

➢ the Individual Defendants caused Cambridge to grossly overpay for Ability (approximately $191 million in cash to an entity that "lost money in 2013 and that earned only a tiny profit ($3.1 million) in 2014, the year before the Merger");

---

[2] Specifically, it is alleged that with approval by shareholder vote, Cambridge merged into Holdco, its wholly owned subsidiary, and Holdco then acquired 100% of Ability's outstanding shares in exchange for a combination of stock and cash. The surviving entity then was renamed Ability, Inc. (hereinafter, "Ability") and was incorporated in the Cayman Islands, with its principle place of business in Tel Aviv, Israel.

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 6

> ➢ the Individual Defendants caused Cambridge to agree to pay an additional $900,000 to associates of Ability; and

> ➢ the Individual Defendants permitted Ability's shareholders, post-merger, to dividend out to themselves $11 million in cash.

It is further alleged in the SAC that the Individual Defendants induced Cambridge shareholders to vote for the Cambridge-Ability merger by misrepresenting Ability's historical financial results, materially overstating its revenues and net income, misrepresenting the deadline for completing the merger, and concealing the conflicts of interest of those promoting the merger. Levy contends that the Individual Defendants included misrepresented or concealed material information regarding Ability's financial condition in the Definitive Proxy Statement that was filed with the SEC on December 2, 2015 and was distributed to Cambridge shareholders with the recommendation that they vote in favor of the merger. In particular, Levy asserts that the Definitive Proxy Statement filed with the SEC was deficient and misleading, in that it stated that Ability's revenues for the nine months ended September 30, 2015 were more than $51 million, when they actually were materially less than $51 million, and it significantly undervalued Ability's net losses for the same time period. As such, Levy alleges that the shareholder vote was coerced and was not based on full information.

Additionally, it is asserted in the SAC that the price of stock of the surviving entity has plummeted since the Cambridge-Ability merger from $10.10 per share to as low as $2.70 per share, resulting in shareholder losses of more than $40 million.

Levy purports to bring the SAC to hold the Individual Defendants accountable for their breaches of fiduciary duties and *ultra vires* actions, and seeks "disgorgement of over $20 million of ill-gotten gains that have unjustly accrued to the Individual Defendants and/or their affiliates." In addition to the Individual Defendants and Ability, Holdco is named as a defendant in the SAC. However, there are no causes of action brought against Holdco. There also are no causes of action against Cambridge, which is named solely as a nominal defendant.

The SAC alleges the following nine (9) causes of action against the Individual Defendants and Ability:

1) Class allegation for breach of fiduciary duty of loyalty – against the Individual Defendants;

2) Class allegation for breach of fiduciary duty of due care – against the Individual Defendants;

3) Class allegation for failure to disclose – against the Individual Defendants;

4) Class allegation for aiding and abetting – against Ability;

5) Derivative allegation for breach of fiduciary duty of loyalty – against the Individual Defendants;

6) Derivative allegation for breach of fiduciary duty of due care – against the Individual Defendants;

KAUFMAN BORGEEST & RYAN LLP

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 7

7) Derivative allegation for failure to disclose – against the Individual Defendants;

8) Derivative allegation for aiding and abetting – against Ability;

9) Class allegation for *ultra vires* acts in violation of Cambridge's Certificate of Incorporation – against the Individual Defendants; and

10) Derivative allegation for *ultra vires* acts in violation of Cambridge's Certificate of Incorporation – against the Individual Defendants.

The SAC seeks a declaration voiding the Ability Agreement because of its *ultra vires* nature; rescission of the Cambridge-Ability merger; compensatory and/or rescissory damages; disgorgement of the amounts by which the Individual Defendants were unjustly enriched; and attorneys' fees and costs.

> *The Pottash Complaint*

By email dated January 8, 2017, your broker Roy Biber at Howden Broking Group tendered notice to Beazley of a complaint filed on December 13, 2016 in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida, styled *Carter A. Pottash v. Benjamin Gordon; Cambridge Capital Acquisition, LLC; BG Strategic Advisors, LLC; Jonathan Morris, in his capacity as trustee of the Gordon Family 2007 Trust; and Ability, Inc.*, Case No. 2016-CA-013823 (the "Pottash Complaint"). Plaintiff Carter A. Pottash ("Pottash") alleges that he was induced through a series of misrepresentations and omissions "to invest in the stock of a publicly traded company, first known as Cambridge Capital Acquisition Corporation, then known as Cambridge Holdco Corp., and finally known as Ability, Inc." He alleges that he lost more than $1.1 million due to his reliance on the defendants' misrepresentations and omissions.

Pottash alleges that beginning in September 2013, Benjamin Gordon ("Gordon"), the former CEO of Cambridge and current director of Ability, solicited Pottash to invest $1 million in the "soon-to-be-formed" SPAC, through a series of misrepresentations, including, that Cambridge intended to focus on companies in the supply chain industry related to transportation and logistics, and that Gordon himself had extensive experience in the areas of transportation and logistics. Pottash also asserts that after his initial $1 million investment, Cambridge executed a preliminary merger agreement with Parakou, which resulted in the above-referenced Parakou Complaint, and that Cambridge abandoned the Parakou deal in light of failed investor support.

Subsequent to the failed Parakou merger, Pottash contends that Gordon "frantically" searched for another company to acquire, because if Cambridge had to be liquidated, Gordon would stand to lose more than $16 million in connection with his investments in Cambridge. Pottash alleges that Gordon failed to comply with Cambridge's Charter under which Cambridge should have been liquidated since it did not enter into a "definitive agreement" for a merger by the June 23, 2015 deadline. Pottash also alleges that Gordon effected a *de facto* change to the terms and conditions of the SPAC, without Pottash's knowledge or approval, by extending the merger deadline to December 23, 2015. He alleges further that had he known of the true state of affairs, Pottash would have demanded the return of his $1 million investment prior to the Cambridge-Ability merger.

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 8

In or around August 2015, Gordon notified Pottash that he had located a target company named Ability Computer & Software Industries, Ltd., which was founded by two former Israeli military intelligence officers and was involved in telephone interception technology. It is alleged that Gordon then made a series of misrepresentations designed to induce Pottash to "keep his money in the deal," including, providing Pottash with false and misleading representations concerning Ability's revenues between 2013 and 2016. Based on the misrepresentations allegedly made by Gordon, Pottash decided on December 11, 2015 not to exercise his right to convert his Cambridge shares into cash and instead voted online in favor of the Cambridge-Ability merger.

Moreover, it is alleged that in mid-December 2015, after Pottash had voted in favor of the Cambridge-Ability merger, Gordon asked Pottash to invest an additional $5 million in Cambridge because Cambridge did not have enough capital to close the Ability transaction. With the December 23, 2015 deadline approaching, Pottash asserts that he relied on Gordon's misrepresentations relating to Ability's financial status and world-wide presence, and invested an additional $5 million in Cambridge. After the Cambridge-Ability merger was completed, Gordon contacted Pottash to advise that he had raised enough capital to close the transaction, and issued Pottash a partial refund of $4 million of the additional $5 million that Pottash had invested. As such, Pottash ultimately invested $2 million in the transaction.

With approval by shareholder vote, Cambridge merged into Holdco, its wholly owned subsidiary, and Holdco then acquired 100% of Ability's outstanding shares in exchange for a combination of stock and cash. The surviving entity was renamed Ability, Inc. and was incorporated in the Cayman Islands, with its principle place of business in Tel Aviv, Israel.

After the Cambridge-Ability merger, it is alleged that the true condition of Ability's financial conditions came to light, including that it had materially overstated its income and operating results, and had material weaknesses in its internal controls over financial reporting, such that Ability's financial statements were not prepared in accordance with Generally Accepted Accounting Principles. Pottash alleges that the defendants named in the Pottash Complaint (Benjamin Gordon; Cambridge Capital, LLC;[3] BG Strategic Advisors, LLC;[4] Jonathan Morris, in his capacity as trustee of the Gordon Family 2007 Trust; and Ability) knew or recklessly disregarded these adverse facts so that they could execute the Cambridge-Ability merger and preserve their investments in Cambridge.

The Pottash Complaint asserts the following five (5) causes of action against the defendants:

1) Violation of Florida Securities & Investor Protection Act – Against Gordon, Ability, Inc., and BG Strategic Advisors, LLC;

2) Common Law Fraud – Against Gordon, Ability, Inc., and BG Strategic Advisors, LLC;

---

[3] Please note that Cambridge Capital, LLC is different than Cambridge Capital Acquisition Corporation, the nominal defendant named in the Parakou Complaint, the FAC and the SAC. The **Company** named in the Declarations of the Policy is Cambridge Capital Acquisition Corporation, and not Cambridge Capital, LLC. We understand that Cambridge Capital, LLC has not yet been served with the Pottash Complaint.

[4] BG Strategic Advisors, LLC is a broker-dealer entity that is owned and operated by Benjamin Gordon. We understand that BG Strategic Advisors, LLC has not yet been served with the Pottash Complaint.

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 9

3)   Negligent Misrepresentation – Against Gordon, Ability, Inc., and BG Strategic Advisors, LLC;

4)   Breach of Fiduciary Duty – Against Gordon and BG Strategic Advisors, LLC; and

5)   Conspiracy – Against All Defendants.

Pottash alleges that he sold the majority of his shares of Ability in May and June 2016 for between $3 and $4 per share, resulting in losses of more than $1.1 million. He seeks compensatory damages, as well as interest and costs.

Policy

Beazley issued Directors, Officers and Company Liability Policy No. V14969130101 to Cambridge, effective for the **Policy Period** of December 18, 2013 to December 18, 2021. While the Policy reflects several different coverage parts, only the Policy's Insuring Clause B. appears to apply to this matter. The Policy has a $2 million aggregate Limit of Liability, and is subject to a $350,000 per **Claim** Retention, as amended by Endorsement. Under no circumstances will Beazley pay more than the $2 million aggregate Limit of Liability. The **Insureds**, and not Beazley, have the duty to defend all **Claims**.

The **Policy Period** was extended from December 18, 2015 to December 18, 2021, pursuant to the Policy's Convert Policy to Run-Off Endorsement No. BICDO05531106. Under this Endorsement, Beazley "shall not be liable to make any payment for **Loss** in connection with or resulting from any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in away involving any **Wrongful Act** committed or allegedly committed after 18-Dec-2015."

Coverage Position

Having reviewed the SAC and the Pottash Complaint in conjunction with the terms and conditions of the Policy, it appears that there is coverage potentially available for the Individual Defendants named in the SAC, Benjamin Gordon, Mitchell Gordon, Michael Durham, Nathan Gantcher, and Scott Laurans, and for Benjamin Gordon for the Pottash Complaint, pursuant to Insuring Clause B.

The Policy's Insuring Clause B. provides as follows:

B.   The Insurer shall pay on behalf of the **Company** all **Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Directors and Officers** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for a **Wrongful Act** provided such **Claim** is reported in writing to the Insurer as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

The Policy defines **Insureds** at Section II.I. to include "the **Directors and Officers** and the **Company**." The **Company** is defined at Section II.C. as the **Parent Company** identified in Item

KAUFMAN BORGEEST & RYAN LLP

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 10

1. of the Declarations, which is Cambridge, and its **Subsidiaries**. **Directors and Officers** are defined at Section II.G.1. of the Policy as "all persons who were, now are, or shall be duly elected or appointed directors, officers, trustees, or **Managers** of the **Company** . . . including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy."

In addition, the Policy provides at Section VII.B.3. that "[i]n the event of a **Corporate Takeover** after the inception date of this Policy or of any policy issued by the Insurer of which this Policy is a renewal or replacement, this Policy, subject to its terms, shall continue to apply to the **Directors and Officers** and to the **Company** but only with respect to any **Wrongful Act** committed or allegedly committed prior to the **Corporate Takeover**." The Policy defines **Corporate Takeover** at Section II.D., in part as "the merger of a **Parent Company** into another entity such that the **Parent Company** is not the surviving entity." Because the Cambridge-Ability merger qualifies as a **Corporate Takeover**, pursuant to Section III.J., coverage potentially is available for Cambridge and its former **Directors and Officers** for **Wrongful Acts** allegedly committed prior to December 18, 2015. There is no coverage available for any **Claim** involving any **Wrongful Act** allegedly committed after December 18, 2015.

*Coverage Available to the Individual Defendants for the SAC*

The Individual Defendants named in the SAC (Benjamin Gordon, Mitchell Gordon, Michael Durham, Nathan Gantcher, and Scott Laurans) as former directors and/or officers of Cambridge, appear to be **Directors and Officers** as defined at Section II.G. of the Policy, and therefore are **Insureds** under the Policy. Please confirm the positions held by each of the Individual Defendants named in the SAC and the dates such positions were held. In addition, pursuant to the Policy's Merger and Acquisition Increased Retention Endorsement, it appears that the SAC is a **Merger or Acquisition Claim**, which is defined to include "any **Claim** in whole or in part based upon, arising out of, or in consequence of any proposed or actual merger, acquisition or consolidation of the **Company**." The SAC alleges **Wrongful Acts** against the Individual Defendants, which are defined at Section II.X to include any alleged breach of duty or act by **Directors and Officers** in their capacity as such.

Pursuant to the foregoing, Beazley has determined that the Individual Defendants potentially are covered for the SAC under Insuring Clause I.B. of the Policy, subject to all other applicable terms and conditions, as detailed below.

Concerning the other defendants named in the SAC, it appears that Ability is not an **Insured** under the Policy, as Ability appears to be unaffiliated with Cambridge, other than being Cambridge's merger partner. Therefore, Ability is not afforded coverage for the SAC under the Policy. In addition, it does not appear that Cambridge, as the nominal defendant, or Holdco are covered under the Policy for the SAC because there are no causes of action brought against Cambridge or Holdco in the SAC. As such, coverage available for the SAC is limited to the Individual Defendants in their capacities as **Directors and Officers** of Cambridge.

*Coverage Available to Benjamin Gordon for the Pottash Complaint*

Benjamin Gordon, as the former CEO of Cambridge, appears to qualify as a **Director and Officer** as defined at Section II.G. of the Policy, and therefore is an **Insured** under the Policy for

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 11

the Pottash Complaint. Also, the Pottash Complaint appears to be a **Merger or Acquisition Claim** and alleges **Wrongful Acts** against the Benjamin Gordon in his capacity as Cambridge's former CEO, such that he potentially is covered for the Pottash Complaint under Insuring Clause I.B. of the Policy, subject to all other applicable terms and conditions.

There does not appear to be coverage available for any of the other defendants named in the Pottash Complaint. In particular, Cambridge Capital, LLC, which is distinct from the **Company** listed in the Policy's Declarations and named as a defendant in the SAC (Cambridge Acquisition Capital Corporation), does not appear to qualify as an **Insured** under the Policy. Cambridge Capital, LLC was formed in 2009 and apparently remains in existence today, while the **Insured** SPAC was formed in 2013 and ceased to exist after the Cambridge-Ability merger. Ability is not an **Insured** under the Policy because Ability is unaffiliated with Cambridge, other than being Cambridge's merger partner. BG Strategic Advisors, LLC, which is Benjamin Gordon's broker-dealer entity, and Jonathan Morris, in his capacity as trustee of the Gordon Family 2007 Trust, also do not appear to qualify as **Insureds** under the Policy. Pursuant to the foregoing, coverage for the Pottash Complaint appears to be limited to Benjamin Gordon.

### *Relatedness of Claims/Applicable Retentions*

We next direct you to Section IV.A.4. of the Policy, which provides:

> More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following times:
>
> (a)    the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made;

Because the SAC involves the same alleged **Wrongful Acts** or **Interrelated Wrongful Acts** as those included in the FAC, namely, Cambridge's purported *ultra vires* business combination with Ability and the alleged resulting detriment to Cambridge's shareholders, the SAC and the FAC shall be deemed a single **Claim** first made at the time of the FAC, on October 15, 2015. Therefore, the SAC appears to be a **Claim** timely made and reported under the Policy.

The Pottash Complaint appears to involve the same **Wrongful Acts** or **Interrelated Wrongful Acts** as those included in both the Parakou Complaint (concerning the failed Parakou transaction) and the FAC/SAC (concerning the Cambridge-Ability merger). In particular, Pottash alleges that he was induced through a series of misrepresentations and omissions by Benjamin Gordon, to invest in Cambridge prior to the failed Parakou transaction. Pottash alleges further that he was induced to invest additional monies in Cambridge prior to the Cambridge-Ability merger and that due to his reliance on Gordon's misrepresentations and omissions, his total investments in the two proposed mergers resulted in losses of more than $1.1 million. Therefore, the Pottash Complaint appears to relate separately to the two **Merger or Acquisition Claims** – the Parakou Complaint and the FAC/SAC – and is a **Claim** timely made and reported under the Policy.

Pursuant to the Policy's Merger and Acquisition Increased Retention Endorsement, a $350,000 Retention applies to "each **Merger or Acquisition Claim** under Insuring Clause I.B. and I.C."

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 12

As noted above, **Merger or Acquisition Claim** is defined as "any **Claim** in whole or in part based upon, arising out of, or in consequence of any proposed or actual merger, acquisition or consolidation of the **Company**." The instant matters arise from two separate and distinct proposed mergers—the proposed merger with Parakou at issue in the Parakou Complaint, and the subsequent merger with Ability at issue in the FAC/SAC. As a result, two $350,000 Retentions apply to these matters. The first Retention applies to the Parakou Complaint (the "First $350,000 Retention"), and the second Retention applies to the FAC/SAC (the "Second $350,000 Retention").

Specifically, any amounts incurred in the defense of the Parakou Complaint, which arose from the failed proposed merger between Cambridge and Parakou, will be credited toward the First $350,000 Retention. Therefore, any **Costs, Charges and Expenses**[5] incurred in the defense of the Levy Action solely for the Parakou Complaint, up until October 15, 2015 when the FAC was filed to challenge the proposed Cambridge-Ability merger, will be credited toward the First $350,000 Retention. Any **Loss**, including **Costs, Charges and Expenses**, incurred in the defense of the FAC and the SAC, which involve the second **Merger or Acquisition Claim** regarding the Cambridge-Ability merger, is attributable to the Second $350,000 Retention.

Because the Pottash Complaint appears to relate both to the Parakou Complaint and to the FAC/SAC, covered amounts incurred in connection with the Pottash Complaint may be applied to erode either the First 350,000 Retention or the Second $350,000 Retention. Once either of the two applicable Retentions is exhausted by covered **Loss** in connection with the SAC or the Pottash Complaint, Beazley's going-forward payment obligations for these two actions will be triggered under the Policy, subject to the reservations of rights included in this letter.

  *Loss and Allocation*

We note that Beazley is only responsible for amounts incurred by the **Insureds** in the defense of the SAC and Pottash Complaint, if at all, to the extent they constitute covered **Loss** under the Policy. **Loss** is defined at Section II.K. of the Policy, as amended by Endorsement No. E04712 052013 ed., in relevant part as:

  "**Loss**" means the amounts which the **Insureds** become legally obligated to pay on account of a **Claim**, including:

  1.    damages, judgments, including pre and post-judgment interest, settlements and **Costs, Charges and Expenses**, punitive, exemplary and multiplied damages where the applicable law allows coverage for punitive, exemplary or multiplies damages, incurred by any of the **Insureds**, but **Loss** (other than **Costs, Charges and Expenses**) shall not include:

  \*          \*          \*

---

[5] The Policy defines **Costs, Charges and Expenses** at Section II.E., as amended by Endorsement No. E04516 032013 ed., to include "reasonable and necessary legal fees and expenses to which the Insurer consents and which are incurred by or on behalf of the **Insureds** in defending, settling, appealing or investigating any **Claim** and the cost of the appeal, attachment or similar bonds…"

4173118

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 13

    (b)   criminal or civil fines or penalties imposed by law . . .

    (c)   matters deemed uninsurable under the law pursuant to which this Policy shall be construed;

*     *     *

Please note that fines and penalties and other amounts that are uninsurable under applicable law, including the disgorgement of ill-gotten gains, are not covered **Loss** and will not be covered by the Policy. Beazley's rights are reserved to the extent that any relief sought in the SAC and the Pottash Complaint is not **Loss** as defined.

In addition, Beazley reserves its rights under the Policy's Allocation provision, at Section VII.C., to the extent that any loss uncovered by the Policy, including, but not limited to, loss attributable to Ability, Cambridge Capital, LLC, BG Strategic Advisors, LLC, and Jonathan Morris, in his capacity as trustee of the Gordon Family 2007 Trust, which are not **Insureds** under the Policy, is incurred in connection with the SAC and Pottash Complaint. Any amounts incurred that are attributable to Cambridge and Holdco also will be allocated to uncovered loss, as there are no causes of action directed against either entity in the SAC. Beazley reserves its right to allocate to uncovered loss any amounts that are attributable to uninsured defendants or otherwise does not qualify as **Loss** as defined above.

    *Additional Exclusions*

The Policy provides at Sections III.G. and III.J., that Beazley shall not be liable to make any payment for **Loss** in connection with or resulting from any **Claim**:

    G.    based upon, arising out of, directly or indirectly resulting from or in consequence of or in any way involving:

        1.    any deliberately dishonest, fraudulent or criminal act or omission by any of the **Insureds**, or

        2.    any personal profit or advantage gained by any of the **Directors and Officers** to which they were not legally entitled,

        as determined by a plea agreement, an alternative dispute resolution proceeding, a judgment or a final adjudication in the underlying action or in a separate action or proceeding.

    J.    based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving, any **Wrongful Act** actually or allegedly committed subsequent to a **Corporate Takeover**.

In light of the allegations of fraud and ill-gotten gains asserted in the SAC and the Pottash Complaint, Beazley reserves its rights pursuant to the foregoing exclusions at Section III.G. Also, because the Cambridge-Ability merger qualifies as a **Corporate Takeover**, pursuant to Section III.J., there is no coverage for any **Claim** involving any **Wrongful Act** allegedly committed after the Cambridge-Ability merger. We also remind you that pursuant to the Policy's

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 14

Convert Policy to Run-Off Endorsement No. BICDO05531106, Beazley "shall not be liable to make any payment for **Loss** in connection with or resulting from any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in away involving any **Wrongful Act** committed or allegedly committed after 18-Dec-2015." Beazley's rights are reserved accordingly.

<u>Defense, Settlement and Consent</u>

The Policy provides at Sections V.A. and V.B., as follows:

    A.  It shall be the duty of the **Insureds** and not the duty of the Insurer to defend **Claims**, including the investigation and evaluation of any **Shareholder Derivative Demand**. The Insurer shall have the right and shall be given the opportunity to effectively associate with the **Insureds** in the investigation, defense and settlement of any **Claim** that appears reasonably likely to be covered in whole or in part hereunder.

    B.  The **Insureds** shall not settle any **Claim**, select any defense counsel, incur any **Costs, Charges and Expenses**, admit or assume any liability, stipulate to any judgment or otherwise assume any contractual obligation without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation, admission or stipulated judgment to which it has not consented or for which the **Insureds** are not legally obligated. The **Insureds** shall not knowingly take any action which increases the Insurer's exposure for **Loss** under this Policy. Notwithstanding any of the foregoing, if all **Insureds** are able to fully and finally dispose of, with prejudice, all **Claims** that are subject to one Retention for an amount not exceeding any applicable Retention, including **Costs, Charges and Expenses**, then the Insurer's consent shall not be required for such disposition.

    *Defense of the Levy Action*

Beazley has approved the appointment of John Reed of DLA Piper as defense counsel for the Individual Defendants in the Levy Action, subject to Mr. Reed's compliance with Beazley's billing guidelines, which were provided to DLA Piper under separate cover. In addition, per prior agreement, a 25% fee discount will be applied to all DLA Piper defense invoices. Beazley's rights are reserved accordingly.

We understand that DLA Piper also is representing Ability in the Levy Action. Please note that because Ability is not an **Insured** under the Policy, any amounts incurred by DLA Piper in the defense of Ability will not be covered under the Policy. Beazley's rights are so reserved.

Based on recent correspondence from your broker at Howden Broking Group, we understand that DLA Piper has incurred approximately $569,000 in defense fees in the defense of the Individual Defendants for the Levy Action. <u>Please confirm that the same is true, and provide us with any and all invoices issued by DLA Piper in connection with the Levy Action.</u>

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 15

As discussed above, please note that any **Costs, Charges and Expenses** incurred in the defense of the Parakou Complaint will be credited toward the Policy's First $350,000 Retention, and any amounts incurred in connection with the FAC and SAC will be credited toward the Second $350,000 Retention. Also, any amounts incurred by DLA Piper in the defense of Ability, Cambridge, or Holdco will not be credited toward either of the Policy's two Retentions, as Ability is not an **Insured** under the Policy and there are no causes of action brought against Cambridge or Holdco. Beazley reserves its right to review all DLA Piper defense invoices for compliance with Beazley's billing guidelines, and to determine whether billed amounts constitute **Costs, Charges and Expenses**, as defined in the Policy.

Additionally, in December 2015, Beazley agreed to advance $140,053.17 in **Costs, Charges and Expenses** incurred in the defense of the Levy Action, pursuant to Section IV.B.4. of the Policy, as amended by the Policy's 60 Day Advancement Endorsement No. E03445 122011 ed., which provides:

> With respect to Insuring Clause I.B., if the **Company** is permitted or required by law or pursuant to the by-laws or other organizational documents of the **Company** to indemnify the **Directors and Officers** for any **Loss**, or to advance **Costs, Charges and Expenses** on their behalf, and does not in fact do so within 60 days of **Loss** or **Costs, Charges and Expenses** becoming due and payable other than for reasons of **Financial Impairment**, the Insurer shall pay **Loss**, or advance **Costs, Charges and Expenses**, on behalf of the **Directors and Officers** without regard to the Retention, but the **Company** shall reimburse the Insurer for such amounts up to the Retention applicable to Insuring Clause I.B. as set forth in Item 4. of the Declarations.

Please note that to the extent the $140,053.17 relates to the defense of the Parakou Complaint, it falls within the Policy's First $350,000 Retention and must be paid by the **Insured**. We request that these amounts be reimbursed to Beazley at this time. To the extent that Beazley does not receive reimbursement for the $140,053.17 advanced in December 2015, such amounts will be withheld from reimbursement for **Costs, Charges and Expenses** incurred in connection with the second **Merger and Acquisition Claim** involving the Cambridge-Ability Merger, and therefore will be the sole responsibility of the **Insureds** in addition to the Second $350,000 Retention that applies to the FAC, the SAC and the Pottash Complaint. Beazley's rights are so reserved.

*Defense of the Pottash Action*

We learned from speaking with defense counsel Michael Austin at DLA Piper that for the Pottash Action, DLA Piper is defending Ability, Latham & Watkins LLP is defending Benjamin Gordon, and Stroock & Stroock & Lavan LLP is defending BG Strategic Advisors, LLC. We understand that the remaining defendants, Cambridge Capital, LLC and Jonathan Morris, in his capacity as trustee of the Gordon Family 2007 Trust, have not been served with the Pottash Complaint. Please confirm that our understanding of these defense arrangements is accurate.

Any amounts incurred by DLA Piper in the defense of Ability for the Pottash Action are not covered under the Policy because Ability does not qualify as an **Insured**. Likewise, any amounts incurred by Stroock & Stroock & Lavan LLP in the defense of BG Strategic Advisors,

KAUFMAN BORGEEST & RYAN LLP

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 16

LLC for the Pottash Complaint will not be covered under the Policy because BG Strategic Advisors, LLC does not qualify as an **Insured**. Also, although Cambridge Capital, LLC, and Jonathan Morris, in his capacity as trustee of the Gordon Family 2007 Trust, have not yet been served with the Pottash Complaint, any amounts incurred in the defense of these two defendants will not be covered under the Policy, as they too do not qualify as **Insureds**. As noted above, coverage for the Pottash Complaint is limited to Benjamin Gordon.

By email dated March 2, 2017, your broker provided us with invoices from Latham & Watkins LLP that appear to involve services rendered in the defense of Benjamin Gordon for the Pottash Action. Please note that Beazley did not consent to the retention of Latham & Watkins as defense counsel. As noted above, Section V.B. provides in part that "[t]he **Insureds** shall not settle any **Claim**, <u>select any defense counsel, incur any **Costs, Charges and Expenses**</u>, admit or assume any liability, stipulate to any judgment or otherwise assume any contractual obligation without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation, admission or stipulated judgment to which it has not consented or for which the **Insureds** are not legally obligated." [Underlining added]. Since Beazley never consented to the retention of Latham & Watkins LLP as defense counsel for Benjamin Gordon for the Pottash Action, pursuant to the Policy's Consent provision at Section V.B., Beazley reserves its right to deny coverage for amounts incurred by Latham & Watkins in connection with the Pottash Action.

<u>Please provide us with all defense invoices issued in connection with the Pottash Action.</u> Beazley reserves its right to review all defense invoices for compliance with Beazley's billing guidelines, and to determine whether any billed amounts constitute **Costs, Charges and Expenses**, as defined in the Policy. We remind you that the **Insured** is responsible for all **Loss** incurred within the two applicable Retentions. Any amounts incurred that are not covered **Costs, Charges and Expenses** will not erode the two applicable $350,000 Retentions. Beazley's rights are so reserved.

Additionally, the Policy provides at Section IX., that "[t]he **Insureds** agree to provide the Insurer with such information, assistance and cooperation as the Insurer or their counsel may reasonably request, and they further agree that they shall not take any action which in any way increases the Insurer's exposure under this Policy." Beazley reserves its rights accordingly under Section IX.

Pursuant to the foregoing, we expect to be kept closely apprised of all developments and to be provided with timely information as to the Levy Action and the Pottash Action. No settlement or admission of liability shall be made without Beazley's prior written consent. Beazley also has the right to associate in the defense and settlement of this matter and expects defense counsel to advise of all material developments in accordance with Beazley's billing guidelines.

<u>Other Insurance</u>

We next direct your attention to Section III.C., of the Policy, as amended by Endorsement No. E01843 022010 ed., which provides that Beazley shall not be liable to make any payment for **Loss** in connection with or resulting from any **Claim**:

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 17

to the extent it is insured under any other existing valid and collectible policy for directors and officers or employment practices liability policy, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise; provided, however, this exclusion shall not apply to the amount of **Loss** which is in excess of the amount of any deductible and the Limit of Liability of such other policy where such **Claim** is otherwise covered by this Policy.

Pursuant to the foregoing, please note that to the extent there is other valid and collectible insurance available to the Individual Defendants for the SAC and to Benjamin Gordon for the Pottash Complaint, the Policy will be excess of any other insurance for covered **Loss**. In particular, we note that Ability was issued a Directors, Officers and Company Reimbursement Policy by XL Insurance Company SE c/o Guest Krieger Limited, with a $10 million aggregate limit of liability. In addition, we assume that Cambridge Capital, LLC has its own insurance policy distinct from the Policy issued to Cambridge Capital Acquisition Corporation that might respond to the instant matters. Beazley reserves its rights to take a position excess of any coverage available under these and/or any other valid and collectible insurance policies.

<u>In this light, please notify us immediately of any other insurance that may respond to the Levy Action and the Pottash Action and please send along any correlating coverage correspondence issued by the other insurers.</u>

<u>Summary</u>

In closing, please know that Beazley values its relationship with Cambridge, and welcomes any additional information you believe should be considered in evaluating coverage for the SAC and the Pottash Complaint.  Beazley looks forward to working with you to resolve these matters.

Nothing in this letter is intended to, or does, waive any of Beazley's rights, privileges, or defenses under the Policy, at law, or in equity, all of which are expressly reserved. Beazley also expressly reserves the right to alter, supplement and modify its coverage position as other and additional information may become available.

Please feel free to contact us if you have any questions regarding this correspondence.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

Wayne E. Borgeest
Patrick Dowdle

cc:      (via email)


         William Clarke
         Beazley Insurance Company
         william.clarke@beazley.com

Cambridge Capital Acquisition Corporation
*Brian Levy v. Benjamin Gordon et al.;*
*Carter A. Pottash v. Benjamin Gordon et al.*
Beazley File No. BEAZL100002840666; KBR File No. 638.159
Page 18

        John R. Semeraro
        Dan Sarrantonio
        ARC Excess & Surplus
        jsemeraro@arcxs.com
        dsarrantonio@arcxs.com

        Roy Biber
        Jennifer Estrougo
        Howden Broking Group
        royb@howden.co.il
        jennifere@howden.co.il

KAUFMAN BORGEEST & RYAN LLP



200 SUMMIT LAKE DRIVE, VALHALLA, NY 10595
TEL: 914.449.1000   FAX: 914.449.1100   WWW.KBRLAW.COM

July 17, 2017

WAYNE E. BORGEEST
DIRECT: 914.449.1002
WBORGEEST@KBRLAW.COM

PATRICK DOWDLE
DIRECT: 914.449.1123
PDOWDLE@KBRLAW.COM

BY EMAIL

CONFIDENTIAL

Avi Levin
Chief Financial Officer
Ability Inc.
Yad Harutzim 14
Tel Aviv, 6770007
Israel
avi@ability.co.il

| Re: | Insured | : | Cambridge Capital Acquisition Corporation |
| | Matters | : | *Levy v. Benjamin Gordon, et al.* (the "Levy Action"); |
| | | | *Pottash v. Benjamin Gordon, et al.* (the "Pottash Action"); |
| | | | *In re Ability Inc.* (the "Ability Action"); and |
| | | | *In the Matter of Ability Inc.* (the "SEC Investigation"). |
| | Policy No. | : | V14969130101 (the "Policy") |
| | Policy Period | : | December 18, 2013 – December 18, 2021 |
| | Beazley File No. | : | BEAZL100002840666 |
| | Our File No. | : | 638.159 |

Dear Mr. Levin:

As you know, our firm has been retained by Beazley Insurance Company, Inc. ("Beazley"), which issued the captioned Policy to Cambridge Capital Acquisition Corporation ("Cambridge" or the "**Company**").[1] This letter supplements Beazley's prior communications concerning the above-referenced "Levy Action" and "Pottash Action," and addresses the above-referenced securities class action pending in New York's Southern District Court in the matter styled *In re Ability Inc.*, Case No. 16-cv-03893 (the "Ability Action"), and the United States Securities and Exchange Commission ("SEC") Subpoena issued to Benjamin Gordon (the "Gordon Subpoena") in connection with the SEC Investigation styled *In the Matter of Ability Inc. (LA-4673)* (the "SEC Investigation").

---

[1] Bold and capitalized terms are defined in the captioned Policy.

NEW YORK CITY       LOS ANGELES       NEW JERSEY       STAMFORD       WESTCHESTER       LONG ISLAND

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 2

This letter is directed to your attention as the authorized representative of Cambridge and all **Insureds** for insurance coverage purposes. If you are not acting on behalf of Cambridge and all other affected **Insureds** with respect to insurance matters, we request that you direct a copy of this letter to the appropriate representative and advise us accordingly. Please direct all future correspondence intended for Beazley in this matter to the undersigned.

Having reviewed the Ability Action and the Gordon Subpoena under the terms and conditions of the above-captioned Policy, the Ability Action and the Gordon Subpoena appear to trigger coverage under the Policy for Benjamin Gordon subject to a reservation of rights as detailed below. Should further pertinent information come to light, Beazley may revise its coverage position accordingly, and reserves the right to do so.

Please be aware that Beazley does not attribute any merit to the allegations asserted in the Ability Action or the Gordon Subpoena. We reference those allegations herein only for purposes of discussing the question of coverage. This letter supplements our prior correspondence concerning the above-captioned matters, including our letters of June 19, 2017, which are incorporated by reference as though set forth in full herein.

Background[2]

*Levy Action – Parakou Complaint*

The Levy Action was commenced on March 24, 2015 when Brian Levy ("Levy") filed a class action and derivative complaint in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida, in the matter styled *Brian Levy, on behalf of Himself and All Others Similar Situated v. Benjamin Gordon, Mitchell I. Gordon, Michael Durham, Nathan Gantcher, Scott Laurans, and Parakou Tankers, Inc., Defendants, and Cambridge Capital Acquisition Corp., Nominal Defendant*, Case No. 2015CA003339 (the "Parakou Complaint").

Levy filed the Parakou Complaint to challenge the proposed merger between Cambridge and Parakou Tankers, Inc. for the following reasons: (1) the merger allegedly did not properly value Cambridge and was not in the best interests of its shareholders; (2) the proxy statement filed with the SEC in connection with the proposed merger allegedly misrepresented and/or omitted material information; and (3) the individual defendants named in the Parakou Complaint (Benjamin Gordon, former CEO of Cambridge; Mitchell Gordon, former CFO of Cambridge; Michael Durham, former director of Cambridge; Nathan Gantcher, former director of Cambridge; and Scott Laurans, former director of Cambridge) (collectively, the "Individual Defendants") only agreed to the merger with Parakou because they allegedly stood to lose more than $7.4 million in initial shares and private units granted to them as part of the IPO if Cambridge did not enter into a business combination. On May 8, 2015, it was announced that the merger between Cambridge and Parakou had been terminated.

---

[2] For purposes of brevity, we do not recite all of the details concerning the matters previously tendered to Beazley for coverage in connection with this matter. For additional details regarding the matters previously submitted, we direct you to our prior correspondence dated June 19, 2017, which is incorporated by reference as though set forth in full herein.

KAUFMAN BORGEEST & RYAN LLP

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 3

Beazley issued a coverage letter dated May 27, 2015 in response to the Parakou Complaint, which is incorporated by reference as though set forth in full herein.

### *Levy Action - First Amended Complaint*

On October 15, 2015, Levy filed a first amended complaint in the matter now styled *Brian Levy, on behalf of Himself and All Others Similar Situated v. Benjamin Gordon, Mitchell I. Gordon, Michael Durham, Nathan Gantcher, Scott Laurans, Cambridge Holdco Corp., and Ability Computer & Software Industries Ltd., Defendants, and Cambridge Capital Acquisition Corp., Nominal Defendant*, Case No. 2015CA003339 (the "FAC"), in which he challenged a proposed merger between Cambridge and Ability Computer & Software Industries, Ltd. ("Ability"). The FAC named the same Individual Defendants included in the Parakou Complaint, and added Cambridge Holdco Corp. ("Holdco") and Ability as defendants.

According to the FAC, Cambridge was required by its Charter to either consummate a business combination by the June 23, 2015 merger deadline, or liquidate and distribute its proceeds to shareholders. As a result, Cambridge quickly began looking for a new merger partner after the proposed transaction with Parakou fell through. After the deadline passed, on June 29, 2015, the Individual Defendants allegedly caused Cambridge to enter into a term sheet with Ability. Thereafter, a definitive agreement to consummate a business transaction with Ability was executed on September 6, 2015 (the "Ability Agreement"). Levy filed the FAC to challenge the Ability Agreement, arguing that it allegedly did not fairly value Cambridge and was not in the best interests of Cambridge's shareholders. Further, the FAC alleged that the Individual Defendants only agreed to the Ability Agreement because they had substantial pecuniary self-interest in causing Cambridge to enter into a business combination, and that the Individual Defendants' actions were *ultra vires* because Cambridge was required to liquidate its proceeds once the June 23, 2015 deadline to enter into a business combination had passed.

Beazley issued a coverage letter dated November 20, 2015 in response to Cambridge's submission of the FAC, which we incorporate by reference herein.

### *Levy Action – Second Amended Complaint*

By email dated October 28, 2016, Dan Sarrantonio of ARC Excess & Surplus, LLC tendered notice to Beazley of the SAC, which was filed on October 22, 2016 in the matter styled *Brian Levy, on behalf of Himself and All Others Similar Situated v. Benjamin Gordon, Mitchell I. Gordon, Michael Durham, Nathan Gantcher, Scott Laurans, Cambridge Holdco Corp., and Ability Computer & Software Industries Ltd., Defendants, and Cambridge Capital Acquisition Corp., Nominal Defendant*, Case No. 2015CA003339 (the "SAC"). The SAC asserts allegations akin to those set forth in the FAC, with additional and updated detail concerning the finalization of the merger entered into by Cambridge and Ability on December 23, 2015 (the "Cambridge-Ability merger"),[3] and purported consequences stemming therefrom.

---

[3] Specifically, it is alleged that with approval by shareholder vote, Cambridge merged into Holdco, its wholly owned subsidiary, and Holdco then acquired 100% of Ability's outstanding shares in exchange for a combination of stock and cash. The surviving entity then was renamed Ability, Inc. (hereinafter, "Ability") and was incorporated in the Cayman Islands, with its principle place of business in Tel Aviv, Israel.

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 4

*Pottash Action*

By email dated January 8, 2017, your broker Roy Biber at Howden Broking Group tendered notice to Beazley of a complaint filed on December 13, 2016 in the Circuit Court for the 15th Judicial Circuit in and for Palm Beach County, Florida, styled *Carter A. Pottash v. Benjamin Gordon; Cambridge Capital, LLC; BG Strategic Advisors, LLC; Jonathan Morris, in his capacity as trustee of the Gordon Family 2007 Trust; and Ability, Inc.*, Case No. 2016-CA-013823 (the "Pottash Complaint"). Plaintiff Carter A. Pottash ("Pottash") alleged that he was induced through a series of misrepresentations and omissions "to invest in the stock of a publicly traded company, first known as Cambridge Capital Acquisition Corporation, then known as Cambridge Holdco Corp., and finally known as Ability, Inc." He alleged that he lost more than $1.1 million due to his reliance on the defendants' misrepresentations and omissions.

Pottash alleged that beginning in September 2013, Benjamin Gordon ("Gordon"), the former CEO of Cambridge and current director of Ability, solicited Pottash to invest $1 million in the "soon-to-be-formed" Cambridge, through a series of misrepresentations. Subsequent to the failed Parakou merger, Pottash contends that Gordon "frantically" searched for another company to acquire, because if Cambridge had to be liquidated, Gordon would stand to lose more than $16 million in connection with his investments in Cambridge. It is alleged that Gordon then made a series of misrepresentations designed to induce Pottash to "keep his money in the deal." After the Cambridge-Ability merger, it is alleged that the true condition of Ability's financial conditions came to light, including that it had materially overstated its income and operating results, and had material weaknesses in its internal controls over financial reporting, such that Ability's financial statements were not prepared in accordance with Generally Accepted Accounting Principles.

On January 23, 2017, Pottash filed an Amended Complaint in the Pottash Action against the same parties and asserting the same causes of action as the initial complaint. The Amended Complaint includes additional allegations regarding Gordon's purported misrepresentations concerning Ability's ownership of Unlimited Interception System ("ULIN") surveillance technology (technology that promises unlimited surveillance capabilities and allegedly was owned by an independent entity), Gordon's statements to investors that certain well-known investors would be investing in the Cambridge-Ability merger, and Gordon's alleged promise to transfer "bonuses" to investors' accounts from the Gordon Family Trust.

Beazley issued a coverage letter dated June 19, 2017 in response to Cambridge's submission of the Pottash Action, which we incorporate by reference herein.

*SEC Investigation – Ability Subpoena*

By email dated February 20, 2017, your broker Roy Biber at Howden Broking Group provided Beazley with notice of the Ability Subpoena, which was issued to Ability Inc. by the SEC on February 9, 2017 (the "Ability Subpoena"). The Ability Subpoena included a letter from the SEC's Los Angeles Regional Office, indicating that the SEC had commenced an investigation into Ability. The letter also mandated that Ability produce certain documentation related to the Cambridge-Ability merger, including documents provided to investors, and all documents related to the preparation of Ability's financial statements for fiscal years 2013, 2014, 2015 and 2016. The SEC also requested all communications exchanged between, among others, Anatoly Hurgin (Ability's CEO), Alexander

KAUFMAN BORGEEST & RYAN LLP

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 5

Aurovsky (Ability's CTO); Avi Levin (Ability's CFO); Benjamin Gordon (former CEO of Cambridge, current Ability director); Cambridge; and BG Strategic Advisors, LLC (broker-dealer owned by Benjamin Gordon).

By letter dated June 19, 2017, Beazley denied coverage for the Ability Subpoena as it did not constitute a **Claim** made against an **Insured** so as to trigger coverage under the Policy. The Ability Subpoena was addressed only to Ability, which is not an **Insured** under the Policy.

<u>Matters Submitted</u>

  *The Ability Action*

By email dated May 22, 2017, you tendered notice to Beazley of the above-referenced Ability Action, a securities class action complaint filed by various Ability shareholders in New York's Southern District Court. We understand that plaintiffs filed a first complaint in the Ability Action on May 25, 2016, styled *Firstfire Global Opportunities Fund LLC v. Ability Inc., Anatoly Hurgin and Avi Levin.* Subsequently, an Amended Complaint and Second Amended Complaint were filed in the matter now styled *In re Ability Inc. Securities Litigation*, on April 28, 2017 and June 15, 2017, respectively, against Anatoly Hurgin (Ability's CEO); Avi Levin (Ability's CFO); Benjamin Gordon (former CEO of Cambridge and former Ability director); and BDO Ziv Haft (Ability's independent registered accounting firm in 2013 and 2014). Ability, Holdco and Cambridge are named in the operative complaint as non-defendants.

The Ability Action is a federal securities class action brought on behalf of individuals who purchased or otherwise acquired Ability common stock between September 8, 2015 and May 2, 2016 (the "Class Period") and allegedly were damaged thereby. Plaintiffs seek remedies under the Securities Act of 1933 on behalf of those who purchased or otherwise acquired Ability common stock pursuant to Ability's November 25, 2015 Registration Statement (the "Registration Statement"), and under the Securities Exchange Act of 1934 for those who purchased or otherwise acquired Ability common stock during the Class Period.

It is alleged in the Ability Action that in preparation for securing approval for the Cambridge-Ability merger, and in the aftermath of its approval, the named defendants made statements – during investor presentations, in the Registration Statement, and in the December 2, 2015 proxy statement and prospectus for the merger – that were untrue and/or omitted facts that needed to be stated to render certain statements no misleading. In particular, it is alleged that these statements pertained to core financial information about Ability that informed the investing community's view of Ability and its prospectus for success. Plaintiffs contend that only after the Cambridge-Ability merger was approved, on May 2, 2016, did the defendants disclose the "truth" about Ability. Ability restated its consolidated financial statements "as of December 31, 2014, and for the two years in the period that ended, and as of June 30 and September 30 in 2015 and 2014, and for the six and nine month periods that ended." These restated financial statements purportedly revealed that Ability suffered from "material weaknesses" in its internal controls over financial reporting and that Ability's net income for the years 2013 and 2014 was significantly less than previously reported. The disclosures also indicated that Ability did not own or develop the ULIN technology. Ability also disclosed that the SEC had commenced an investigation into the Cambridge-Ability merger.

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 6

Plaintiffs allege in the Ability Action that the May 2016 disclosures by Ability caused the price of Ability's common stock to decline by approximately thirty-three percent (33%). The Ability Action asserts the following four (4) causes of action:

1) Violation of Section 11 of the Securities Act Against Defendants Ability, Hurgin, Gordon, and BDO Ziv Haft;

2) Violation of Section 15 of the Securities Act Against Defendants Hurgin, Gordon and Levin;

3) Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against Defendants Ability, Hurgin, Gordon, and Levin;

4) Violation of Section 20(a) of the Exchange Act Against Defendants Hurgin, Gordon, and Levin.

Plaintiffs seek class certification, compensatory damages, attorneys' fees and costs.

> *The Gordon Subpoena*

By email dated May 31, 2017, counsel purporting to represent Benjamin Gordon provided Beazley with notice of the Gordon Subpoena, which was issued to Benjamin Gordon by the SEC on February 9, 2017 in connection with the SEC Investigation into Ability. The Gordon Subpoena mandated that Gordon produce certain documentation and testimony by February 23, 2017.

Specifically, the Gordon Subpoena requested all documents and communication "related to Cambridge Capital Acquisition Corporation's acquisition of Ability or possible acquisition of Ability." The SEC also requested all of Ability's financial documentation for the years leading up to the Cambridge-Ability merger, along with all documents and communications related to ULIN, all communications with investors related to investor concerns about Ability, and all documents and communications concerning purchases and/or sales in Ability securities by Benjamin Gordon. The SEC also requested all communications exchanged between Benjamin Gordon and, among others, Anatoly Hurgin (Ability's CEO), Alexander Aurovsky (Ability's CTO); Avi Levin (Ability's CFO); and Ability's Board of Directors.

<u>Policy</u>

Beazley issued Directors, Officers and Company Liability Policy No. V14969130101 to Cambridge, effective for the **Policy Period** of December 18, 2013 to December 18, 2021. While the Policy reflects several different coverage parts, only the Policy's Insuring Clause B. appears to apply to this matter. The Policy has a $2 million aggregate Limit of Liability, and is subject to a $350,000 per **Claim** Retention, as amended by Endorsement. Under no circumstances will Beazley pay more than the $2 million aggregate Limit of Liability. The **Insureds**, and not Beazley, have the duty to defend all **Claims**.

The **Policy Period** was extended from December 18, 2015 to December 18, 2021, pursuant to the Policy's Convert Policy to Run-Off Endorsement No. BICDO05531106. Under this Endorsement, Beazley "shall not be liable to make any payment for **Loss** in connection with or

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 7

resulting from any **Claim** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in away involving any **Wrongful Act** committed or allegedly committed after 18-Dec-2015."

Coverage Position

Having reviewed the Ability Action and the Gordon Subpoena in conjunction with the terms and conditions of the Policy, it appears that there is coverage potentially available for Benjamin Gordon for the Ability Action and the Gordon Subpoena, pursuant to Insuring Clause I.B.

The Policy's Insuring Clause B. provides as follows:

> B.   The Insurer shall pay on behalf of the **Company** all **Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Directors and Officers** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for a **Wrongful Act** provided such **Claim** is reported in writing to the Insurer as soon as practicable but in no event later than sixty (60) days after the end of the **Policy Period** or the last day of the **Optional Extension Period**, if purchased.

> *Benjamin Gordon is an **Insured***

The Policy defines **Insureds** at Section II.I. to include "the **Directors and Officers** and the **Company**." The **Company** is defined at Section II.C. as the **Parent Company** identified in Item 1. of the Declarations, which is Cambridge, and its **Subsidiaries**. **Directors and Officers** are defined at Section II.G.1. of the Policy as "all persons who were, now are, or shall be duly elected or appointed directors, officers, trustees, or **Managers** of the **Company** . . . including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy."

In addition, the Policy provides at Section VII.B.3. that "[i]n the event of a **Corporate Takeover** after the inception date of this Policy or of any policy issued by the Insurer of which this Policy is a renewal or replacement, this Policy, subject to its terms, shall continue to apply to the **Directors and Officers** and to the **Company** but only with respect to any **Wrongful Act** committed or allegedly committed prior to the **Corporate Takeover**." The Policy defines **Corporate Takeover** at Section II.D., in part as "the merger of a **Parent Company** into another entity such that the **Parent Company** is not the surviving entity." Because the Cambridge-Ability merger qualifies as a **Corporate Takeover**, pursuant to Section III.J., coverage potentially is available for Cambridge and its former **Directors and Officers** for **Wrongful Acts** allegedly committed prior to December 18, 2015. There is no coverage available for any **Claim** involving any **Wrongful Act** allegedly committed after December 18, 2015.

Benjamin Gordon, as the former CEO of Cambridge, is a **Director and Officer** as defined at Section II.G. of the Policy, and therefore is an **Insured** under the Policy

.

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 8

*The Ability Action and the Gordon Subpoena are **Claims***

The Policy defines **Claim** at Section II.B., as amended by Endorsement E04516 032013 ed., in relevant part, as follows:

> 1.    any written demand for damages or other relief against any of the **Insureds**, or any civil, administrative, regulatory arbitration, mediation or other alternative dispute resolution proceeding initiated against any of the **Insureds** . . .

> \*        \*        \*

> 4.    a request by the **Company** or a **Regulatory Authority**[4] for any **Directors and Officers** to appear for an interview or meeting or to produce documents in connection with:

> (a)  an inquiry or investigation by a **Regulatory Authority**, or

> \*        \*        \*

Pursuant to the foregoing, the Ability Action, which is a civil proceeding initiated against an **Insured**, is a **Claim** under the Policy. In addition, pursuant to subsection 4., the Gordon Subpoena is a **Claim** made against Gordon. Therefore, both the Ability Action and the Gordon Subpoena appear to constitute **Claims** under the Policy.

*The Ability Action and Gordon Subpoena are **Merger or Acquisition Claims***

Pursuant to the Policy's Merger and Acquisition Increased Retention Endorsement, it appears that the Ability Action and the Gordon Subpoena are **Merger or Acquisition Claims**, which are defined by Endorsement to include "any **Claim** in whole or in part based upon, arising out of, or in consequence of any proposed or actual merger, acquisition or consolidation of the **Company**." The Ability Action and the Gordon Subpoena both appear to allege wrongdoing by Benjamin Gordon in connection with the Cambridge-Ability merger. As such, the Ability Action and Gordon Subpoena both appear to constitute **Merger or Acquisition Claims** under the Policy.

*No Coverage for Other Defendants Named in Ability Action*

Concerning the other defendants named in the Ability Action, it appears that Ability is not an **Insured** under the Policy, as Ability is unaffiliated with Cambridge, other than being Cambridge's merger partner. Therefore, Ability is not afforded coverage for the Ability Action under the Policy. Also, it appears that Anatoly Hurgin and Avi Levin are not **Insureds** under the Policy, as they are the CEO and CFO of Ability, and have no affiliation with Cambridge. BDO Ziv

---

[4] **Regulatory Authority** is defined at Section II.Y., as amended by Endorsement E04516 032013 ed., as "any federal state, local or foreign law enforcement or governmental authority (including the Department of Justice, the Securities and Exchange Commission and any attorney general) or the enforcement unit of any securities exchange or similar self-regulating body."

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 9

Haft also appears to have no affiliation with Cambridge and therefore is not covered under the Policy. Lastly, it does not appear that Cambridge or Holdco are covered under the Policy for the Ability Action because there are no causes of action brought against them.

As such, coverage available for the Ability Action is limited to Benjamin Gordon in his capacity as a **Director and Officer** of Cambridge. Any allegations against Gordon in his capacity as a director or officer of Ability will not be covered. Beazley's rights are reserved accordingly.

### No Coverage for Ability for SEC Investigation

Also, as noted in our correspondence of June 19, 2017, there is no coverage available for Ability for the SEC Investigation, as Ability is not an **Insured** under the Policy. Coverage for the SEC Investigation is limited to coverage for Benjamin Gordon for the Gordon Subpoena.

### Relatedness of the *Claims*

We next direct you to Section IV.A.4. of the Policy, which provides:

> More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following times:
>
> (a)     the time at which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made;

Because the Ability Action and the Gordon Subpoena involve the same alleged **Wrongful Acts** or **Interrelated Wrongful Acts** as those included in the FAC/SAC of the Levy Action and the Pottash Action, namely, Cambridge's purported *ultra vires* business combination with Ability and Gordon's alleged misrepresentations concerning Ability's financial condition, the Ability Action, the Gordon Subpoena, the FAC/SAC in the Levy Action, and the Pottash Action shall be deemed a single **Merger or Acquisition Claim** first made at the time of the FAC in the Levy Action, on October 15, 2015. Because the Ability Action and Gordon Subpoena relate back to the prior tendered matters, both appear to be timely made and reported under the Policy.

In sum, pursuant to the foregoing, it appears that coverage is available for Benjamin Gordon for the Ability Action and the Gordon Subpoena under Insuring Clause I.B. of the Policy, subject to all other applicable terms and conditions, as detailed below. Please note that there is no coverage available under the Policy for Gordon in his capacity as an Ability director or officer, and that coverage is limited to his capacity as the CEO of Cambridge, prior to the Cambridge-Ability merger. As detailed below, Beazley reserves its right to allocate to uncovered loss any amounts attributable to Benjamin Gordon in his capacity as an Ability director or officer.

### Applicable Retention Amounts

Pursuant to the Policy's Merger and Acquisition Increased Retention Endorsement, a $350,000 Retention applies to "each **Merger or Acquisition Claim** under Insuring Clause I.B. and I.C." As noted above, **Merger or Acquisition Claim** is defined as "any **Claim** in whole or in part based upon, arising out of, or in consequence of any proposed or actual merger, acquisition or consolidation of the **Company**." The above-captioned matters (the Levy Action, the Pottash

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 10

Action, the Ability Action, and the SEC Investigation) arise from two separate and distinct proposed mergers—the proposed merger with Parakou at issue in the Parakou Complaint and the Pottash Action, and the subsequent merger with Ability at issue in the FAC/SAC of the Levy Action, the Pottash Action, the Ability Action, and the Gordon Subpoena. As a result, two $350,000 Retentions apply to these matters. The first Retention applies to the Parakou Complaint and the Pottash Action (the "First $350,000 Retention"), and the second Retention applies to the FAC/SAC in the Levy Action, the Pottash Action, the Ability Action, and the Gordon Subpoena (the "Second $350,000 Retention").

Because the Ability Action and the Gordon Subpoena, like the FAC/SAC in the Levy Action and the Pottash Action, arise from the Cambridge-Ability merger, one $350,000 Retention applies to these four matters. Any **Loss**, including **Costs, Charges and Expenses**,[5] incurred in the defense of the Levy Action, Pottash Action, Ability Action, and Gordon Subpoena is attributable to the Second $350,000 Retention. The First $350,000 Retention applies to the Parakou Complaint and the Pottash Action and involves Cambridge's failed merger with Parakou. The Ability Action and Gordon Subpoena do not appear to be related to the failed Parakou merger. We direct you to our letter dated June 19, 2017 for more detail on the Parakou transaction and continue to reserve Beazley's rights concerning the same.

Please note that once the Second $350,000 Retention is exhausted by covered **Loss** in connection with the FAC/SAC in the Levy Action, the Pottash Action, the Ability Action, or the Gordon Subpoena, Beazley's going-forward payment obligations for these matters will be triggered under the Policy, subject to the reservations of rights included in this letter, and the Policy's $2 million aggregate Limit of Liability.

*Loss and Allocation*

We note that Beazley is only responsible for amounts incurred by the **Insureds** in the defense of the Ability Action and Gordon Subpoena, if at all, to the extent they constitute covered **Loss** under the Policy. **Loss** is defined at Section II.K. of the Policy, as amended by Endorsement No. E04712 052013 ed., in relevant part as:

> "**Loss**" means the amounts which the **Insureds** become legally obligated to pay on account of a **Claim**, including:
>
> 1.      damages, judgments, including pre and post-judgment interest, settlements and **Costs, Charges and Expenses**, punitive, exemplary and multiplied damages where the applicable law allows coverage for punitive, exemplary or multiplies damages, incurred by any of the **Insureds**, but **Loss** (other than **Costs, Charges and Expenses**) shall not include:
>
> *      *      *

---

[5] The Policy defines **Costs, Charges and Expenses** at Section II.E., as amended by Endorsement No. E04516 032013 ed., to include "reasonable and necessary legal fees and expenses to which the Insurer consents and which are incurred by or on behalf of the **Insureds** in defending, settling, appealing or investigating any **Claim** and the cost of the appeal, attachment or similar bonds…"

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 11

    (b)   criminal or civil fines or penalties imposed by law . . .

    (c)   matters deemed uninsurable under the law pursuant to which this Policy shall be construed;

             *       *       *

Please note that fines and penalties and other amounts that are uninsurable under applicable law, including the disgorgement of ill-gotten gains, are not covered **Loss** and will not be covered by the Policy. Beazley's rights are reserved to the extent that any amounts sought in the Ability Action or amounts incurred in connection with the Gordon Subpoena are not **Loss** as defined.

In addition, Beazley reserves its rights under the Policy's Allocation provision, at Section VII.C., to the extent that any loss uncovered by the Policy, including, but not limited to, loss incurred in the Ability Action attributable to Ability, Avi Levin, Anatoly Hurgin, and BDO Ziv Haft, which are not **Insureds** under the Policy, is incurred in connection with the Ability Action. Any amounts attributable to Benjamin Gordon in his capacity as a director or officer of Ability, after the Cambridge-Ability Merger, also will not be covered loss and will be allocated accordingly.

Regarding the SEC Investigation, any amounts incurred beyond the scope of the Gordon Subpoena will not be covered under the Policy. Beazley reserves its right to allocate to uncovered loss any amounts that are attributable to uninsured defendants or otherwise do not qualify as **Loss** as defined above.  <u>Please let us know of a time when you may be available to discuss a proper allocation.</u>

Beazley directs you to our correspondence of June 19, 2017 for additional Policy provisions that might serve to limit or preclude coverage for the submitted matters. For the purposes of brevity, we do not repeat every potentially applicable provision. Beazley continues to reserve all of its rights as stated in our June 19, 2017 correspondence.

<u>Defense, Settlement and Consent</u>

The Policy provides at Sections V.A. and V.B., as follows:

    A.   It shall be the duty of the **Insureds** and not the duty of the Insurer to defend **Claims**, including the investigation and evaluation of any **Shareholder Derivative Demand**. The Insurer shall have the right and shall be given the opportunity to effectively associate with the **Insureds** in the investigation, defense and settlement of any **Claim** that appears reasonably likely to be covered in whole or in part hereunder.

    B.   The **Insureds** shall not settle any **Claim**, select any defense counsel, incur any **Costs, Charges and Expenses**, admit or assume any liability, stipulate to any judgment or otherwise assume any contractual obligation without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation, admission or stipulated judgment to which it has not consented or for which the **Insureds** are not legally obligated. The **Insureds** shall not knowingly take any action which increases the Insurer's

exposure for **Loss** under this Policy. Notwithstanding any of the foregoing, if all **Insureds** are able to fully and finally dispose of, with prejudice, all **Claims** that are subject to one Retention for an amount not exceeding any applicable Retention, including **Costs, Charges and Expenses**, then the Insurer's consent shall not be required for such disposition.

### *Defense of the Levy Action*

Beazley previously approved the appointment of Michael Austin, formerly of DLA Piper, as defense counsel for the Individual Defendants in the Levy Action, subject to Mr. Austin's compliance with Beazley's billing guidelines, which were provided to Mr. Austin under separate cover. In addition, per prior agreement, a 25% fee discount was to be applied to all DLA Piper defense invoices. We understand from your broker's June 7, 2017 email that Mr. Austin has left DLA Piper and joined McDermott Will & Emery LLP in Miami, Florida, and that you have requested that Mr. Austin be permitted to continue his defense of the Individual Defendants in the Levy Action. Please note that Beazley consents to the retention of McDermott Will & Emery as defense counsel for the Individual Defendants for the Levy Action at the following rates: $775/hour for Michael Austin; $395-$600/hour for associates, and subject to Beazley's billing guidelines.

We understand that DLA Piper also was representing Ability in the Levy Action. Please note that because Ability is not an **Insured** under the Policy, any amounts incurred by DLA Piper and/or McDermott Will & Emery in the defense of Ability in the Levy Acton will not be covered. Beazley's rights are so reserved.

<u>We also take this opportunity to again request that you provide us with any and all invoices issued by DLA Piper and McDermott Will & Emery in connection with the Levy Action</u>.

### *Defense of the Pottash Action*

It previously was our understanding that for the Pottash Action, Michael Austin of DLA Piper (now McDermott Will & Emery) was defending Ability, Latham & Watkins LLP was defending Benjamin Gordon, and Stroock & Stroock & Lavan LLP was defending BG Strategic Advisors, LLC. Pursuant to correspondence from Lewis Murphy of Stroock & Stroock dated June 21, 2017, it appears that Stroock & Stroock purports to serve as local counsel for Latham & Watkins in the defense of Benjamin Gordon in the Pottash Action. Beazley never consented to the retention of Latham & Watkins as defense counsel for Benjamin Gordon, or to the retention of Stroock & Stroock as local counsel for the defense of Gordon in the Pottash Action. As noted above, Section V.B. provides in part that "[t]he **Insureds** shall not settle any **Claim**, <u>select any defense counsel, incur any **Costs, Charges and Expenses**</u>, admit or assume any liability, stipulate to any judgment or otherwise assume any contractual obligation without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, **Costs, Charges and Expenses**, assumed obligation, admission or stipulated judgment to which it has not consented or for which the **Insureds** are not legally obligated." [Underlining added]. Since Beazley never consented to the retention of Latham & Watkins LLP as defense counsel for Benjamin Gordon for the Pottash Action, pursuant to the Policy's Consent provision at Section V.B., Beazley reserves its right to deny coverage for amounts incurred by Latham & Watkins in connection with the Pottash Action. Please also note

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 13

that Beazley will not be recognizing Stroock & Stroock as local counsel and any amounts incurred by Stroock & Stroock in the defense of Gordon in the Pottash Action will not be covered under the Policy. Beazley's rights are so reserved. We are available to discuss proposed defense arrangements for the Pottash Action at your earliest opportunity. In the interim, all of Beazley's rights are reserved in this regard.

Please also note that any amounts incurred by DLA Piper and McDermott Will & Emery in the defense of Ability for the Pottash Action are not covered under the Policy because Ability does not qualify as an **Insured**. Likewise, any amounts incurred by Stroock & Stroock & Lavan LLP in the defense of BG Strategic Advisors, LLC for the Pottash Complaint will not be covered under the Policy because BG Strategic Advisors, LLC does not qualify as an **Insured**. As noted above, coverage for the Pottash Complaint is limited to Benjamin Gordon.

We take this opportunity to request Latham & Watkins' proposed rates for defending Benjamin Gordon in the Pottash Action. We also again request that you provide us with all defense invoices issued in connection with the Pottash Action.

### Defense of the Ability Action

As discussed above, coverage appears to be available for Benjamin Gordon for the Ability Action, to the extent that any of the allegations are brought against Gordon in his capacity as the CEO of Cambridge, prior to the Cambridge-Ability merger. We ask that you please provide us with proposed defense counsel for Mr. Gordon, along with proposed rates. Beazley will not be providing a defense to any of the other defendants named in the Ability Action, as Gordon is the only **Insured** defendant. Beazley's rights are so reserved.

### Defense of the Gordon Subpoena

In addition, coverage appears to be available for Benjamin Gordon for the Gordon Subpoena. We ask that you please provide us with information concerning defense counsel retained on behalf of Mr. Gordon, along with proposed rates. Beazley will not be providing a defense to Ability in connection with the SEC Investigation. Beazley's rights are so reserved.

Please provide us with proposed defense arrangements, including staffing and rates, and all invoices incurred to date for all of the above-referenced matters. Beazley reserves its right to review all defense invoices for compliance with Beazley's billing guidelines, and to determine whether any billed amounts constitute **Costs, Charges and Expenses**, as defined in the Policy.

Additionally, the Policy provides at Section IX., that "[t]he **Insureds** agree to provide the Insurer with such information, assistance and cooperation as the Insurer or their counsel may reasonably request, and they further agree that they shall not take any action which in any way increases the Insurer's exposure under this Policy." Beazley reserves its rights accordingly.

Pursuant to the foregoing, we expect to be kept closely apprised of all developments and to be provided with timely information as to the Ability Action and SEC Investigation. No settlement or admission of liability shall be made without Beazley's prior written consent. Beazley also has the right to associate in the defense and settlement of this matter and expects defense counsel to advise of all material developments in accordance with Beazley's billing guidelines.

KAUFMAN BORGEEST & RYAN LLP

4295627

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 14

Other Insurance

We next direct your attention to Section III.C., of the Policy, as amended by Endorsement No. E01843 022010 ed., which provides that Beazley shall not be liable to make any payment for **Loss** in connection with or resulting from any **Claim**:

> to the extent it is insured under any other existing valid and collectible policy for directors and officers or employment practices liability policy, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise; provided, however, this exclusion shall not apply to the amount of **Loss** which is in excess of the amount of any deductible and the Limit of Liability of such other policy where such **Claim** is otherwise covered by this Policy.

Pursuant to the foregoing, please note that to the extent there is other valid and collectible insurance available to Benjamin Gordon for the Ability Action and the Gordon Subpoena, the Policy will be excess of any other insurance for covered **Loss**. In particular, we note that Ability was issued a Directors, Officers and Company Reimbursement Policy by XL Insurance Company SE c/o Guest Krieger Limited, with a $10 million aggregate limit of liability. Beazley reserves its rights to take a position excess of any coverage available under these and/or any other valid and collectible insurance policies.

In this light, please notify us immediately of any other insurance that may respond to the Ability Action and the SEC Investigation and please send along any correlating coverage correspondence issued by the other insurers.

At your earliest opportunity, please provide us with responses to all of the underlined requests included in this letter.

Summary

In closing, please know that Beazley values its relationship with Cambridge, and welcomes any additional information you believe should be considered in evaluating coverage for the Ability Action and the Gordon Subpoena.  Beazley looks forward to working with you to resolve these matters.  Nothing in this letter is intended to, or does, waive any of Beazley's rights, privileges, or defenses under the Policy, at law, or in equity, all of which are expressly reserved. Beazley also expressly reserves the right to alter, supplement and modify its coverage position as other and additional information may become available.

Please feel free to contact us if you have any questions regarding this correspondence.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

Wayne E. Borgeest
Patrick Dowdle

cc:      (via email)

4295627

Cambridge Capital Acquisition Corporation
*In re Ability Inc. - Securities Litigation*
*In the Matter of Ability Inc. – SEC Investigation*
KBR File No. 638.159
Page 15

William Clarke
Beazley Insurance Company
william.clarke@beazley.com

John R. Semeraro
Dan Sarrantonio
ARC Excess & Surplus
jsemeraro@arcxs.com
dsarrantonio@arcxs.com

Roy Biber
Jennifer Estrougo
Howden Broking Group
royb@howden.co.il
jennifere@howden.co.il