

**EXHIBIT H**

Cambridge Capital Acquisition Corp; Form 8-K; EX-3.1: AMENDED AND RESTATED CERTIFICATE OF INCORPORATION.

**Exhibit 3.1**

### AMENDED AND RESTATED
### CERTIFICATE OF INCORPORATION
### OF
### CAMBRIDGE CAPITAL ACQUISITION CORPORATION
- - - - - - - - - - - - - - - - - - - - - - - - - -
#### Pursuant to Section 245 of the
#### Delaware General Corporation Law
- - - - - - - - - - - - - - - - - - - - - - - - - -

CAMBRIDGE CAPITAL ACQUISITION CORPORATION, a corporation existing under the laws of the State of Delaware (the "Corporation"), by its Chief Executive Officer, hereby certifies as follows:

1.      The name of the Corporation is "Cambridge Capital Acquisition Corporation."

2.      The Corporation's Certificate of Incorporation was filed in the office of the Secretary of State of the State of Delaware on October 1, 2013.

3.      This Amended Restated Certificate of Incorporation restates, integrates and amends the Certificate of Incorporation of the Corporation.

4.      This Amended and Restated Certificate of Incorporation was duly adopted by joint written consent of the directors and stockholders of the Corporation in accordance with the applicable provisions of Sections 141(f), 228, 242 and 245 of the General Corporation Law of the State of Delaware ("GCL").

5.      The text of the Certificate of Incorporation of the Corporation is hereby amended and restated to read in full as follows:

FIRST: The name of the corporation is Cambridge Capital Acquisition Corporation (hereinafter sometimes referred to as the "Corporation").

SECOND: The registered office of the Corporation is to be located at 615 S. DuPont Hwy., Kent County, Dover, Delaware 19901.  The name of its registered agent at that address is National Corporate Research, Ltd.

THIRD: The purpose of the Corporation shall be to engage in any lawful act or activity for which corporations may be organized under the GCL.  In addition to the powers and privileges conferred upon the Corporation by law and those incidental thereto, the Corporation shall possess and may exercise all the powers and privileges that are necessary or convenient to the conduct, promotion or attainment of the business or purposes of the Corporation including, but not limited to, a Business Combination (as defined below).

© 2015 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

**Bloomberg Law®**

Cambridge Capital Acquisition Corp; Form 8-K; EX-3.1: AMENDED AND RESTATED CERTIFICATE OF INCORPORATION.

---

FOURTH: The total number of shares of all classes of capital stock which the Corporation shall have authority to issue is 41,000,000 of which 40,000,000 shares shall be Common Stock of the par value of $.0001 per share ("Common Stock") and 1,000,000 shares shall be Preferred Stock of the par value of $.0001 per share ("Preferred Stock").

A.	Preferred Stock.  The Board of Directors is expressly granted authority to issue shares of the Preferred Stock, in one or more series, and to fix for each such series such voting powers, full or limited, and such designations, preferences and relative, participating, optional or other special rights and such qualifications, limitations or restrictions thereof as shall be stated and expressed in the resolution or resolutions adopted by the Board of Directors providing for the issue of such series (a "Preferred Stock Designation") and as may be permitted by the GCL.  The number of authorized shares of Preferred Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of a majority of the voting power of all of the then outstanding shares of the capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, without a separate vote of the holders of the Preferred Stock, or any series thereof, unless a vote of any such holders is required pursuant to any Preferred Stock Designation.

B.	Common Stock.  Except as otherwise required by law or as otherwise provided in any Preferred Stock Designation, the holders of the Common Stock shall exclusively possess all voting power and each share of Common Stock shall have one vote.

FIFTH:  The name and mailing address of the sole incorporator of the Corporation are as follows:

| Name | Address |
|------|---------|
| Jeffrey M. Gallant | Graubard Miller |
| | The Chrysler Building |
| | 405 Lexington Avenue |
| | New York, New York 10174 |

SIXTH: The introduction and the following provisions (A) through (H) of this Article Sixth shall apply during the period commencing upon the filing of this Certificate of Incorporation and terminating upon the consummation of any "Business Combination," and may not be amended during the "Target Business Acquisition Period."  Notwithstanding the foregoing, if the Corporation seeks to amend any of the foregoing provisions other than in connection with a Business Combination, the Corporation will provide dissenting holders of IPO Shares (defined below) with the opportunity to convert their IPO Shares in connection with any such vote as described below.

2

© 2015 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service
// PAGE 2

A "Business Combination" shall mean any merger, capital stock exchange, asset, stock purchase, reorganization or other similar business combination involving the Corporation and one or more businesses or entities ("Target Business"). The "Target Business Acquisition Period" shall mean the period from the effectiveness of the registration statement on Form S-1 ("Registration Statement") filed with the Securities and Exchange Commission ("Commission") in connection with the Corporation's initial public offering ("IPO") up to and including the first to occur of (a) a Business Combination or (b) the Termination Date (defined below).

A.        Prior to the consummation of any Business Combination, the Corporation shall submit such Business Combination to its holders of Common Stock for approval ("Proxy Solicitation") pursuant to the proxy rules promulgated under the Securities Exchange Act of 1934, as amended ("Exchange Act").

B.        The Corporation will consummate a Business Combination only if a majority of the then outstanding shares of Common Stock present and entitled to vote at the meeting to approve the Business Combination are voted for the approval of such Business Combination.

C.        In the event that a Business Combination is approved in accordance with the above paragraph (B) and is consummated by the Corporation, or the Certificate of Incorporation is amended, other than in connection with a Business Combination, in accordance with the introduction of this Article Sixth, any holder of a share of common stock sold in the IPO ("IPO Shares") who voted on the proposal to approve such Business Combination, or who voted on the proposal to approve the amendment to the Certificate of Incorporation, as the case may be, whether such holder voted in favor or against such Business Combination or amendment, may, contemporaneously with such vote, demand that the Corporation convert his IPO Shares into cash. If so demanded, the Corporation shall, promptly after consummation of the Business Combination or approval of the amendment to the Certificate of Incorporation, convert such shares into cash at a per share price equal to the quotient determined by dividing (i) the amount then held in the Trust Fund (as defined below) less any income taxes owed on such funds but not yet paid, calculated as of two business days prior to the consummation of the Business Combination or the amendment to the Certificate of Incorporation, by (ii) the total number of IPO Shares then outstanding (such price being referred to as the "Conversion Price"). "Trust Fund" shall mean the trust account established by the Corporation at the consummation of its IPO and into which a certain amount of the net proceeds of the IPO is deposited. Notwithstanding the foregoing, a holder of IPO Shares, together with any affiliate of his or any other person with whom he is acting in concert or as a "group" (within the meaning of Section 13(d)(3) of the Exchange Act) ("Group") with, will be restricted from demanding conversion in connection with a proposed Business Combination with respect to 20.0% or more of the IPO Shares. Accordingly, all IPO Shares beneficially owned by such holder or any other person with whom such holder is acting in concert or as a Group with in excess of 20.0% or more of the IPO Shares will remain outstanding following consummation of such Business Combination in the name of the stockholder and not be converted.

3

© 2015 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

D.      The Corporation will not consummate any Business Combination unless it has net tangible assets of at least $5,000,001 upon consummation of such Business Combination.

E.      In the event that the Corporation does not consummate a Business Combination by (i) 18 months from the consummation of the IPO or (ii) 24 months from the consummation of the IPO in the event that a definitive agreement to complete a Business Combination was executed but was not consummated within such 18 month period (such date being referred to as the "Termination Date"), the Corporation shall (i) cease all operations except for the purposes of winding up, (ii) as promptly as reasonably possible but not more than ten business days thereafter redeem 100% of the IPO Shares for cash for a redemption price per share as described below (which redemption will completely extinguish such holders' rights as stockholders, including the right to receive further liquidation distributions, if any), and (iii) as promptly as reasonably possible following such redemption, subject to approval of the Corporation's then stockholders and subject to the requirements of the GCL, including the adoption of a resolution by the Board pursuant to Section 275(a) of the GCL finding the dissolution of the Corporation advisable and the provision of such notices as are required by said Section 275(a) of the GCL, dissolve and liquidate, subject (in the case of (ii) and (iii) above) to the Corporation's obligations under the GCL to provide for claims of creditors and other requirements of applicable law.  In such event, the per-share redemption price shall be equal to the amount then held in the Trust Fund, including any pro rata interest earned on the funds held in the Trust Account and not previously released to the Corporation for its working capital requirements or necessary to pay its taxes, plus any net assets remaining outside the Trust Fund, divided by the total number of IPO Shares then outstanding.

F.      A holder of IPO Shares shall be entitled only to receive distributions from the Trust Fund in the event (i) he demands conversion of his shares in accordance with paragraph C above in connection with any Proxy Solicitation or (ii) that the Corporation has not consummated a Business Combination by the Termination Date. In no other circumstances shall a holder of IPO Shares have any right or interest of any kind in or to the Trust Fund.

G.      Prior to the consummation of a Business Combination, the Board of Directors may not issue (i) any shares of Common Stock or any securities convertible into Common Stock; or (ii) any securities which participate in or are otherwise entitled in any manner to any of the proceeds in the Trust Fund or which vote as a class with the Common Stock on a Business Combination.

4

© 2015 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

H.      The Board of Directors shall be divided into three classes:  Class A, Class B and Class C.  The number of directors  in each class shall be as nearly equal as possible.  At the first election of directors by the incorporator, the incorporator shall elect a Class C director for a term expiring at the Corporation's third Annual Meeting of Stockholders.  The Class C director  shall then appoint additional Class A, Class B and Class C directors, as necessary.  The directors in Class A shall be elected for a term expiring at the first Annual Meeting of Stockholders, the directors in Class B shall be elected for a term expiring at  the second Annual Meeting of Stockholders and the directors in Class C shall be elected for a term expiring at the third  Annual Meeting of Stockholders.  Commencing at the first Annual Meeting of Stockholders, and at each annual meeting  thereafter, directors elected to succeed those directors whose terms expire shall be elected for a term of office to expire at the third succeeding annual meeting of stockholders after their election. Except as the GCL may otherwise require, in the  interim between annual meetings of stockholders or special  meetings of stockholders called for the election of directors and/or  the removal of one or more directors and the filling of any  vacancy in that connection, newly created directorships and  any vacancies in the Board of Directors, including unfilled vacancies resulting from the removal of directors for cause, may be filled by the vote of a majority of the remaining directors then in office, although less than a quorum (as defined in the Corporation's Bylaws), or by the sole remaining director. All directors shall hold office until the expiration of their respective terms of  office and until their successors shall have been elected and qualified.  A director elected to fill a vacancy resulting from the death, resignation or removal of a director shall serve for the remainder of the full term of the director whose death, resignation or removal shall have created such vacancy and until his successor shall have been elected and qualified.

SEVENTH:  The following provisions are inserted for the management of the business and for the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation and of its directors and stockholders:

A.      Election of directors need not be by ballot unless the by-laws of the Corporation so provide.

B.      The Board of Directors shall have the power, without the assent or vote of the stockholders, to make, alter, amend, change, add to or repeal the by-laws of the Corporation as provided in the by-laws of the Corporation.

C.      The directors in their discretion may submit any contract or act for approval or ratification at any annual meeting of the stockholders or at any meeting of the stockholders called for the purpose of considering any such act or contract, and  any contract or act that shall be approved or be ratified by the vote of the holders of a majority of the stock of the Corporation which is represented in person or by proxy at such meeting and entitled to vote thereat (provided that a lawful quorum of stockholders be there represented in person or by proxy) shall be as valid and binding upon the Corporation and upon all  the stockholders as though it had been approved or ratified by every stockholder of the Corporation, whether or not the contract or act would otherwise be open to legal attack because of directors' interests, or for any other reason.

5

© 2015 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

D.      In addition to the powers and authorities hereinbefore or by statute expressly conferred upon them, the directors are hereby empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation; subject, nevertheless, to the provisions of the statutes of Delaware, of this Certificate of Incorporation, and to any by-laws from time to time made by the stockholders; provided, however, that no by-law so made shall invalidate any prior act of the directors which would have been valid if such by-law had not been made.

EIGHTH:      A.      A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the GCL, or (iv) for any transaction from which the director derived an improper personal benefit. If the GCL is amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the GCL, as so amended. Any repeal or modification of this paragraph A by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation with respect to events occurring prior to the time of such repeal or modification.

B.      The Corporation, to the full extent permitted by Section 145 of the GCL, as amended from time to time, shall indemnify all persons whom it may indemnify pursuant thereto. Expenses (including attorneys' fees) incurred by an officer or director in defending any civil, criminal, administrative, or investigative action, suit or proceeding for which such officer or director may be entitled to indemnification hereunder shall be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized hereby.

NINTH:  Whenever a compromise or arrangement is proposed between this Corporation and its creditors or any class of them and/or between this Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of this Corporation or of any creditor or stockholder thereof or on the application of any receiver or receivers appointed for this Corporation under Section 291 of Title 8 of the Delaware Code or on the application of trustees in dissolution or of any receiver or receivers appointed for this Corporation under Section 279 of Title 8 of the Delaware Code order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, to be summoned in such manner as the said court directs. If a majority in number representing three fourths in value of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of this Corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of this Corporation, as the case may be, and also on this Corporation.

6

© 2015 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service
// PAGE 6

Cambridge Capital Acquisition Corp; Form 8-K; EX-3.1: AMENDED AND RESTATED CERTIFICATE OF INCORPORATION.

IN WITNESS WHEREOF, the Corporation has caused this Amended and Restated Certificate of Incorporation to be  signed by Benjamin Gordon, its Chief Executive Officer, as of the 17th day of December, 2013.

/s/ Benjamin Gordon
Benjamin Gordon, Chief Executive Officer

7

**Bloomberg Law**®     © 2015 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service
// PAGE 7