E
X
H
I
B
I
T

K

**EXHIBIT K**



# Guest Krieger Limited
### *Lloyd's Broker*

68 Cornhill London EC3V 3QX

Telephone: 020 7283 6644   Fax: 020 7623 7548

E-Mail: info@guestkrieger.com

Ability Inc
14 Yad Haruzim
Tel Aviv 6770007
Israel

Date:     15th January 2016

**Original Insured:**   **Ability Inc**
**Type:**   **Directors & Officers Liability & Company Reimbursement Insurance**
**Policy No.**   **IN0001600891**

Please find enclosed our Broker Insurance Document detailing the insurance we have arranged for you in accordance with your instructions, together with the Debit Note for the premium due.

This document has been prepared by Guest Krieger Limited and is intended for use as evidence that the insurance as described herein has been effected with underwriters as specified and shall be subject to all terms, conditions and exclusions contained within this document. Please examine this documentation carefully and advise us immediately if there are any errors or if any amendments are required.

As your insurance broker we must draw your attention in particular to the following points.

## WARRANTIES

Warranties are important provisions contained in your policy and must be exactly complied with at all times. Breach of a warranty will cause (re)insurers to be automatically off risk from the date of that breach, and in some instances may mean that (re)insurers do not come on risk at all. This is the position regardless of whether there is any connection between the warranty breached and any loss which leads to that breach becoming evident. A warranty may exist in the policy using other terminology and without reference to the word 'warranty'. You may be deemed to have warranted the accuracy of information provided in a proposal form (for example by virtue of a "basis of the contract clause"), such that any inaccuracy will constitute a breach of warranty.

Nonetheless, it is very important that you read the full policy wording carefully and, if you are unsure or are unable to comply, please contact us immediately.

## CONDITIONS PRECEDENT

Please also take particular note of any conditions precedent that appear in the policy. If a condition precedent to the validity of this policy or the commencement of the risk is not complied with, the insurer will not come on risk. If a condition precedent to the Insurer's liability under this policy is not complied with, the insurer will not be liable for the loss in question. A condition precedent may exist in the policy using other terminology and without reference to the words 'conditions precedent'.

Nonetheless, it is very important that you read the full policy wording carefully and, if you are unsure or are unable to comply, please contact us immediately.

**CLAIMS NOTIFICATION**

The prompt notification of claims is a requirement of all insurance policies and failure to comply with this might prejudice the position should a claim occur.  It is therefore, essential that we are advised immediately of any claim made against you/the insured or of any occurrence which may give rise to a claim under this policy.

**PREMIUM PAYMENT**

The premium due on this policy is set out below:

| PREMIUM | In Full | USD | 120,000.00 |
|---------|---------|-----|------------|
| | | | =============== |

TERMS OF TRADE      To Comply with Underwriters terms of trade conditions hereon, the premium must be paid to Guest Krieger Limited prior to **21st March 2016**

Failure to pay the premium by the due date can result in the cancellation of the policy by underwriters.

**DUTY OF CARE**

You have been advised, (and we take the opportunity to remind you) of your duty of care not to misrepresent details of the risk to us and underwriters. You must ensure that all answers to questions relating to the insurance cover arranged on your behalf, whether verbal or written, are full, accurate and not misleading. If you do not do this, your insurer may be able to impose different terms on your cover, may charge you a higher premium or, in some circumstances, may be able to avoid your policy from inception and any claims under it would not be paid.

Yours sincerely

Lauren Morrissey



**Guest Krieger Limited**
B0771IN0001600891

UMR

GK   771
Page 1 of 40

| RISK DETAILS |
|---|

| | |
|---|---|
| **TYPE** | DIRECTORS/OFFICERS LIABILITY/COMPANY REIMBURSEMENT INSURANCE |
| **INSURED** (ITEM 1) | Ability Inc<br>Country of Registration: Cayman Islands<br>Commission File Number: 001-36229<br><br>Address of Head Office:<br>14 Yad Haruzim<br>Tel Aviv 6770007<br>Israel |
| **PERIOD** (ITEM 2) | From:   00.01 hours Local Time 1st January 2016<br>         at the address of the Insured<br>To:     00.01 hours Local Time 1st January 2017<br>         at the address of the Insured |
| **INTEREST** | As per policy form attached |
| **LIMIT OF LIABILITY** (ITEM 3) | Total aggregate for all loss, arising out of all claims made against all insured's under all insurance covers combined (including *defence costs* except as provided in 5.3 Limit of Liability): USD 10,000,000 |
| **RETENTION** (ITEM 4) | **Insurance Cover B and indemnifiable *loss*:**<br>USD   35,000 in respect of USA/Canada<br>USD 200,000 in respect of USA/Canada SEC *Claim*<br>USD    7,500 in respect of Rest of the World<br>USD   35,000 in respect of Rest of the World SEC *Claim*<br><br>As specified in provision 5.4 (Retention), only one retention shall be applied for *loss* arising from any *claim* or *claims* alleging a single *wrongful act*. |
| **CONTINUITY DATES** (ITEM 6) | Prior and Pending Litigation:  24th December 2015<br>Pollution Claims:              24th December 2015 |
| **RETROACTIVE DATE** | **24th December 2015**, however in respect of Ability Computer & Software Industries Ltd and in respect of Ability Security Systems Ltd the retroactive date is **unlimited.** |

Checked 

Authorised and regulated by the Financial Conduct Authority





**Guest Krieger Limited**
B0771IN0001600891

UMR

| | |
|---|---|
| CONDITIONS | Corporate Guard Israel 9/97 |
| | **It is hereby understood and agreed that Ability Security Systems Ltd and Ability Computer & Software Industries Ltd will be considered as a subsidiary according to the policy T&C.** |
| | **Endorsement No 1:** Prospectus Exclusion |
| | **Endorsement No 2:** Discovery Period – Bilateral |
| | **Endorsement No 3:** Investigation costs and defence costs for derivative demands |
| | **Endorsement No 4:** ERISA Exclusion |
| | **Endorsement No 5:** Representation at Investigation Clause |
| | **Endorsement No 6:** Peltours Wording Amendments |
| | **Endorsement No 7:** Entity Cover For Securities Claims |
| TERRITORIAL LIMIT AND JURISDICTION | Worldwide **including** USA/Canada, however policy interpretation according to Israeli Law. |
| CHOICE OF LAW AND JURISDICTION | This insurance shall be governed by and construed in accordance with the laws of Israel and each party agrees to submit to the exclusive jurisdiction of the Courts of Israel. |
| NEW SUBSIDIARY COVER (ITEM 7) | Asset size: 35% of gross consolidated assets of the Policyholder as per last financial statements (Section 5.2 New subsidiaries amended to include USA/Canada) |
| SERVICE OF SUIT | This insurance shall be governed by Israeli law and the Israeli Courts shall have exclusive jurisdiction in any dispute arising hereunder. |
| | In this event Adv. Sigal Schlimoff Rechtman, Gibor Sport Building – 26 Floor, 7 Menachem Begin Road, Ramat Gan 52521, Israel, Lloyd's Representative in Israel, is authorised to accept service of suit on behalf of Underwriters. |
| ANNUAL PREMIUM (ITEM 5) | USD 120,000 |
| PAYMENT TERMS | LSW 3000 Premium Payment Condition - 90 Days as attached |
| TAXES PAYABLE BY INSURED AND ADMINSTERED BY UNDERWRITERS | None |
| RECORDING TRANSMITTING AND STORING INFORMATION | Where Guest Krieger maintain risk and claim data / information / documents, these may be held electronically |
| INSURER CONTRACT DOCUMENTATION | This document details the contract terms entered into by the insurer(s), and constitutes the contract document |







**Guest Krieger Limited**
B0771IN0001600891

UMR

| INFORMATION |
|---|

The following information was provided to Insurer(s) to support the assessment of the risk at the time of underwriting.

1. NCD
2. Confirmation of expected market cap post merger
3. Confirmation of no new capital being raised on NASDAQ at point of merger.







**Guest Krieger Limited**

UMR    B0771IN0001600891

GK  771
Page 4 of 40

<u>**Endorsement No 1**</u>

**Prospectus Exclusion – Equity Securities Separate Thresholds**

It is hereby understood and agreed that the *insurer* shall not be liable to make any payment for *loss* in connection with any *claim* made against the *insured* based upon or attributable to the actual public offering via prospectus of any share capital of the *company* issued after inception of this policy that is for a **greater amount than USD 25,000,000**.

However, in the event of public offering via prospectus of any share capital of the company as stated above, the *insurer* may consider removal of this exclusion but consideration of such removal is subject to receipt from the *policyholder* of:

(i)      a written declaration signed and dated by the Chairman or Chief Executive Officer stating that the offering is not in contravention of the Articles of Association, Constitution, laws or bye-laws of the company and that after enquiry to the best of his knowledge and belief he is not aware of any circumstance which could give rise to a claim against any insured or the company; and

(ii)      a copy of all filings and/or documents which have been or are presented to any relevant authority and/or the existing and/or prospective shareholders or stockholders of the company; and

(iii)     such additional premium together with agreement to any revised terms, conditions and/or exclusions as may be required by the insurer.


Notwithstanding the above, in the event of public offering via prospectus of any share capital of the company as stated above, an automatic coverage of <u>**60**</u> days shall be provided for such offering, commencing from the date of the offering.

**In respect of this exclusion, clause 5.2 (ii) shall be deleted.**


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.



Authorised and regulated by the Financial Conduct Authority





**Guest Krieger Limited**
B0771IN0001600891

UMR

**GK  771**
Page 5 of 40

---

**Endorsement No 2:**
**Discovery Period -**

If the *insurer* refuses to offer any terms or conditions to renew this policy, or the *policyholder* refuses to renew this policy, then the *policyholder* shall have the right to a *discovery period* of:

(i)     12 months following the effective date of non-renewal upon payment of an additional premium of 75% of the *full annual* premium.

(ii)    36 months following the effective date of non-renewal upon payment of an additional premium of 150% of the *full annual* premium.

(iii)   84 months following the effective date of non-renewal upon payment of an additional premium of 250% of the *full annual* premium.

The *insured* shall be entitled to a 60-day *discovery period* at no additional premium if this policy is not renewed by the *insurer* or the *Policyholder*, if the *policyholder* elects to purchase a *discovery period*, this 60-day *discovery period* shall be part of and not in addition to the purchased *discovery period*.
To purchase the *discovery period*, the *policyholder* must request its purchase in writing within 60 days of the termination date of the policy and must tender the additional premium within 60 days of the termination date. The additional premium is not refundable and the discovery period is not cancelable.
If a *transaction* takes place, then the *policyholder* shall not have the right to purchase a *discovery period* as set out above. However, the *policyholder* shall have the right within 30 days of the end of the *policy period* to request an offer from the insurer of a *discovery period* of up to 84 months. The *insurer* shall offer a *discovery period* with terms, conditions and premium as the *insurer* may reasonably decide.
No *discovery period* of any length is available in the event of this policy being cancelled due to the non-payment of premium.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

---


Checked

Authorised and regulated by the Financial Conduct Authority




**UMR**

**Guest Krieger Limited**
B0771IN0001600891

**GK  771**
Page 6 of 40

**Endorsement No 3:**

**INVESTIGATION COSTS AND DEFENCE COSTS FOR *DERIVATIVE* DEMANDS**

This policy shall pay the ***Investigation Costs*** and ***Internal Defence costs*** of the **Company** arising from an in ***Internal Investigation*** in response to a ***Derivative Demand*** first made upon the **Company** during the ***Policy Period*** or the ***Discovery Period*** (if applicable) and reported to the Insurer pursuant to the terms of this policy.

There shall be no Retention amount applicable to ***Investigation Costs*** and ***Defence costs***, and the ***Insurer*** shall pay such ***Loss*** from the first dollar, subject to the other terms, conditions and limitations of this policy.

It shall be the duty of the **Company** and not the duty of the ***Insurer*** to conduct, investigate, and evaluate any **Investigation** or **Claim** or **Demand** against its own ***Directors and Officers*** , provided that the **Insurer** shall be entitled to effectively associate in the ***Internal* Investigation**, **Claim** or **Derivative  Demand** and in the evaluation and negotiation of any settlement of any such Investigation.

Nothing in this clause shall be construed to afford coverage under this policy for any **Claim** brought by the **Company** against one or more of its own **Insured person** other than **Investigation Costs** and **Defence costs** incurred in a covered Investigation or Claim. Payment of any **Investigation Costs** and **Defence costs** under this policy shall not waive any of the **Insurer's** rights under this policy or at law.

The **Company** shall be entitled to payment of its covered **Investigation Costs** and **Defence costs** 30 days after:  (i)  it has made its decision not to bring a civil proceeding in a court of law against any of its **Insured person**, and  (ii)  such decision has been communicated to the complaining shareholders.  Such payment shall be subject to an undertaking by the **Company**, in a form acceptable to the **Insurer**, that the **Company** shall return to the **Insurer** such payment in the event any **Company** or complaining shareholders being a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Claim**. Nothing in this clause shall be construed to restrict or derogating coverage under this policy for any **Claim** brought against any **Insured**

Solely for the coverage extended by this endorsement the following shall apply:

"***Claim***" shall also mean any ***Derivative Demand***.

"***Complaining Shareholder***" means any shareholder or shareholders, other than any **Insured**, that makes a **Derivative Demand**.

"***Derivative Demand***" means a written demand by shareholders upon  the board of directors (or equivalent management body) of any **Organization** asking it to bring, on behalf of the **Organization**, a civil proceeding in a court of law against any **Executive** of the **Organization** for a **Wrongful Act** of such **Executive** in order to obtain relief from damages arising out of such **Wrongful Acts**.


Checked





**Guest Krieger Limited**
UMR   B0771IN0001600891

GK 771
Page 7 of 40

"**Investigation**" means the investigation by the **Organization** or, on behalf of the **Organization** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body) as to whether or not the **Organization** should bring the civil proceeding demanded in the **Derivative Demand**.

"***Investigation   Costs***"   means reasonable and necessary costs, charges, fees and expenses  (including but not limited to attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any regular or overtime wages, salaries or fees of the **Executives** or **Employees** of the **Organization**) incurred by the **Organization** or its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), incurred solely in connection with an **Investigation**.

"***Loss***" shall mean **Investigation costs.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**Endorsement No 4:**

**ERISA EXCLUSION –**

It is understood and agreed that section 3, EXCLUSIONS, shall be amended by adding the following:

The *insured* shall not be liable to make any payment for *loss* in connection with any *claim* made against the *insured* for the Employee Retirement Income Security Act of 1974 or amendments thereto or any regulations promulgated thereunder, or similar provisions of any Federal, State or Local Statutory law or common law.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED



Authorised and regulated by the Financial Conduct Authority





**Guest Krieger Limited**

UMR

B0771IN0001600891

GK  771
Page 8 of 40

<u>Endorsement No 5:</u>

**4.1 Representations At Investigations – Amended Worldwide**

It is hereby understood and agreed that:

1. With respect to any:
   a. administrative or regulatory proceeding; or
   b. official or non official investigation, examination, inquiry or other similar proceeding into the affairs of the *company* or other attendance required of an
   c. insured by virtue of his position as a *director, officer* or employee of the *company*.

   Which is initiated and/or pursued and/or required in respect of <u>Worldwide</u>, Extension 4.1 is deleted in its entirety, and Definition 2.2 (iv) is deleted in its entirety and replaced by the following:

   2.2 (iv) any civil, criminal, administrative or regulatory investigation of an insured:
       (a)    once such insured Is identified in writing by such investigating authority as a person against whom a: civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges may be commenced; or
       (b)    in the case of an investigation by the SEC or a similar state government authority, after the service of a subpoena upon such *insured*.

   With respect to any other official or non official investigation, examination, inquiry or other similar proceeding into the affairs of the *company* or other attendance required of an *insured* by virtue of his position as a *director, officer* or employee of the *company*, Worldwide, Extension 4.1 is deleted in its entirety and replaced by the following:

   Subject to all of the terms, Definitions, Exclusions, General Provisions and Endorsements of this policy, cover is extended as outlined in 4,1 below, For the avoidance of doubt, the *insurer* shall pay for that amount of reasonable fees, costs and expenses which is in excess of the Retention specified In Item 4 of the Schedule. Item 4 of the Schedule and any reference to Retention in this policy (including but not limited to General provision 5,4) is deemed to apply also to fees, costs and expenses which are the subject of this endorsement.

   4.1    **Representation at Investigations and Examinations**

   This policy shall provide cover for any reasonable and necessary fees, costs and expenses incurred with the prior written consent of the *insurer* which shall not be unreasonably withheld or unduly delayed (but not including wages, salaries or other remuneration of any *director, officer* or employee) attributable to any required attendance by any *director, officer* or employee of the *company* at any official or non official investigation, examination, inquiry or other similar proceeding in relation to the affairs of the *company* or any other attendance required of the *director, officer* or employee by virtue of his position as *director, officer* or employee of the *company* which does not qualify as a claim under definition 2.2 (iv) of this policy, provided that the notice requiring the *director, officer* or employee's attendance at any such official or non official investigation, examination or inquiry is received by the *director, officer* or employee during the policy period.



Checked



**Guest Krieger Limited**
UMR     B0771IN0001600891

GK 771
Page 9 of 40

Notwithstanding, the cover provided by virtue of this Extension 4,1 shall not include fees, costs or expenses attributable to any official or non official investigation, examination, inquiry or other similar proceeding arising from an event that affects the industry in which the *policyholder* conducts its business activities, as opposed to affecting primarily the *policyholder* Itself.

If the *director, officer* or employee of the *company* believes that as a result of any such official or non official investigation, examination, inquiry or other similar proceeding, circumstances exist which may reasonably be expected to give rise to a *claim*, notice must be given to the *insurer* of the circumstances and the reasons for anticipating a *claim*, with full particulars as to dates and persons involved in accordance with General Provision 5.5.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.






**Guest Krieger Limited**

UMR     B0771IN0001600891

Endorsement No 6:

**Peltours Wording Amendments to Corporate Guard Israel 9/97 –**

It is hereby understood and agreed that the policy is subject to the following amendments:

1.  Preamble – the paragraph, "in consideration of the payment of the premium" is deleted, and replaced by following: "In consideration of the payment of the premium or the undertaking of policyholder to pay".

2.  Insurance Cover –
    2.1.   Clause A&B – The words: "and notified to the *insurer* during the *policy period*" in section A and B are replaced by the following "and notified to the *insurer* pursuing to the terms of the policy.
    2.2.   Clause B – The words "The *Company* is permitted or required by the law, to indemnify" will be replaced with the words "the *Company* has indemnified"

3.  Definitions

    3.1.   Definition 2.1 - **_Associated Company_** shall read:
           any entity of which the Company owned before, on or after the inception of the policy ownership interest of the entity's issued and outstanding voting shares either directly or indirectly through one or more of its Subsidiaries; provided that such Organization is not a Subsidiary as defined in the policy, or a "new subsidiary" as described in the Extensions Section of the policy (whether or not such "new subsidiary" exceeds the total gross assets listed in such new subsidiary extension).

    3.2.   Definition 2.2 - **_Claim_** – Sub clauses (i) – (iv) are amended to read as follows:

           (i)     any suit or proceeding including but not limited to any civil proceeding, third party proceeding, counter claim, arbitration or mediation proceeding brought by any person or organization against an *insured* for monetary damages or other relief, including non- pecuniary relief;
           (ii)    any written demand or statement from any person organization that according to the insured's judgment, it is the intention of the person or organization to hold an insured responsible for the results of any wrongful act.
           (iii)   any criminal proceeding or any criminal prosecution brought against an *insured;*
           (iv)    any administrative or regulatory proceeding or official investigation regarding any *wrongful act* of an *insured,*

           For the avoidance of doubt it is agreed that the term *"claim"* shall also include any *securities claim* and any *employment practice claim* arising from a *wrongful act.*






**Guest Krieger Limited**
UMR        B0771IN0001600891

3.3.   Definition 2.3 - **_Company_** - The words: "and any Subsidiary of Subsidiary" shall be added after the word "Subsidiary".

The definition is amended by adding the following final paragraph:
The expression _company_ shall also include any partnership which the _policyholder_, either directly or indirectly through one or more of its _subsidiaries_ or partnerships:

(i)  controls the management of the partnership; or
(ii) controls half or more of the voting power of the partnership.

3.4.   Definition 2.5 - **_Defense Cost_** – Definition amended as follows:
_Defence costs_ means reasonable and necessary fees, costs, and expenses incurred with the written consent of the _insurer_, which shall not be unreasonably withheld or unduly delayed, (including premiums for any appeal bond, attachment bond or similar bond, but without obligation to apply for or furnish any bond) resulting solely from the investigation, adjustment, defence and appeal of any _claim_ but shall not include the salary of any _insured_,

For the avoidance of doubt it is agreed that should a conflict of interest exist between any of the _insured_* then at their request and always subject to the written consent of the _insurer_, which shall not be unreasonably withheld or unduly delayed, separate counsel may be appointed to protect their respective interests.

3.5.   Definition 2.6 - **_Directors or officers_**
_Director and officer_ is amended by addition the following: "_Director or officer_ shall also mean all persons who were, now are, or shall be duly elected or appointed _directors and/or officers_ of the _company_, and ; all persons who were, now are, or shall be construed to be _directors and/or officers_ of the _company_, within the meaning of any applicable statutes, bylaws, memorandum and articles of association or other law or regulation governing such matters within the jurisdiction of the domicile of the _company_; as well as internal auditors, including but not limited to: president, general manager, chief executive officer, deputy general manager, vice general manager, legal adviser, observer, controller, comptroller, treasurer, secretary of the _company_, and any other manager directly subordinate to the president, general manager or chief executive officer, or any person who fulfils one of the said positions in the _company_ even if his title is different.
_Director or Officer_ shall mean any member of the Safety Committee who has a managerial or supervisory role.
_Director or officer_ shall also mean any employees of the _Company_, but only for a claim or claims alleging wrongful act (s) committed by the employee in a managerial capacity or supervisory role.

3.6.   Definition 2.8 - **_Employment practice claim_** –The definition is amended to read as follows: _Employment Practice Claim_ means a claim alleging an _employment practice violation_.

3.7.   Definition 2.9 – **_Full annual premium_** – Will be replaced with the following: "Full annual premium means the amount specified in item 5 of the schedule, under full annual premium clause".


Checked



**Guest Krieger Limited**
B0771IN0001600891

UMR

---

3.8.   Definition 2.10 - *Insured* – For the purpose of EPL claims and any Securities Claim the definition of *Insured* shall be extended to include any past, **present of** future employee of the *Company*.

It is hereby understood and agreed that the definition of *insured* is amended to include any entity acting as a director of the *company*.

In addition, *Insured* shall also mean any natural person in his capacity as a non salaried *director* or *officer* of the *Company*, in accordance with management agreement between the *Company* and any entity on behalf of the natural person that receives the payment for the services of the natural person under an Invoice. The insurer agrees to wave the right of subrogation against that entity and its employees.

3.9.   Definition 2.12 - *Loss* – Definition is amended as follows:

(i)    The words: "or matters which may be considered uninsurable" are deleted and replaced by: "or matters which are uninsurable".

(ii)   The following is added: *"Loss* also means punitive and exemplary damages where insurable by law only. It is understood and agreed that the applicable law that most favors such cover shall govern the application of cover for punitive and exemplary damages".

(iii)  The following is added to this clause: "For the avoidance of doubt, *loss* includes *defence costs* incurred by an *insured* in the defence of a criminal prosecution of an offence which does not require criminal intent, even if convicted."

(iv)   *Loss* shall also include financial obligations imposed on the *insured* in favor of a "third party", in respect of any act committed by them in their capacity as *directors* or *officers* of the *company*.

(v)    For the avoidance of any doubt and without derogation from the generality of the above financial obligation imposed upon an *insured* in favor of a third party, will include those imposed on him due to the Efficiency of Enforcement Procedures in the Securities Authority Act (legislation amendments) 5571-2001.

3.10.  Definition 2.14 **– Not-for-profit Entity-** The definition is deleted and replaced by the following:
*Not-for-profit entity* means an entity registered in the Not for Profit Registrar according to the Israeli Not For Profit Law, 1980 ,or any organization existing for any educational, research, promotional, training or any similar entity organized under the laws of any other jurisdiction, or a trade association which for the purpose of this policy shall mean a body of persons whether incorporated or not, which is formed for the purpose of furthering the trade interests of its members, or of persons represented by its members.

3.11.  Definition 2.15 **– Outside entity** – The definition is deleted and replaced by the following: *Outside Entity* means any *associated company*, any *non-for profit entity* and any other corporation, partnership, joint venture or entity in which the *company* nominates any person on its behalf.
*Outside entity* also means any other corporation, partnership, joint venture or entity which has been listed by endorsement to this policy.

 



**Guest Krieger Limited**
B0771IN0001600891

**UMR**

GK  771
Page 13 of 40

3.12. <u>Definition 2.20 – **_Single wrongful act_**</u> - The definition is amended to read as follows:
*Single wrongful act* means a *wrongful act* and *wrongful act(s)* which are the same, related or continuous, or *wrongful act(s)* which arise from a common nucleus of facts. *Claims* can allege *single wrongful acts* regardless of whether such *claims* involve the same or different claimants, *insureds* or legal causes of action.

3.13. <u>Definition 2.21 - **_Subsidiary_**</u> – *Subsidiary* is amended to read as follows: "*Subsidiary* means companies in which the *policyholder*, either directly or indirectly through one or more of its *subsidiaries*:

(i)     Controls the composition of half or more of the board of directors, or
(ii)    Controls 50% or more of the voting power, or
(iii)   Holds 50% or more of the issued share capital.
(iv)    The right to appoint or fire the General Managing Director of the company.

*Subsidiary* shall also mean any registered partnership where the *policyholder* or any of its *subsidiaries* own half or more of the rights prescribed in the subsections above and any partnership listed heron.
Cover for any *claim* against any of the *directors, officers* and employees of any *subsidiary* shall apply only for *wrongful act(s)* committed while such company is or was a *subsidiary* of the *policyholder*. However, upon written request by the *policyholder*, the *insurer* shall consider, after assessment and evaluation of the increased exposure, granting cover for *wrongful act(s)* committed prior to the acquisition of the *subsidiary* by the *policyholder*."

3.14. <u>Definition 2.23 - **_Wrongful Act_**</u> shall read: "***Wrongful act*** means any actual or alleged breach of duty, breach of trust, neglect, error, misstatement, misrepresentation, misleading statement, act, omission, neglect, breach of warranty of authority or misuse of authority, breach of contract, libel, slander, defamation, or other act of the *insured* in their respective capacities as a *director or officer* of the *company* or as a *director or officer* of any *outside entity*, or any matter claimed against them solely because of their status as a *director or officer* of the *company* or an *outside entity.*"

For the avoidance of any doubt and without derogation from the generality of the above, in respect of claims made in Israel, *wrongful act* shall also include the following:
I.      A breach of duty of care towards the *company* or any other person;
II.     A breach of fiduciary duty towards the *company* provided that the insured acted in good faith and had reasonable grounds to believe that such an act should not have prejudice the interests of the company;


Checked





**Guest Krieger Limited**

UMR · B0771IN0001600891

GK 771
Page 14 of 40

<u>The following definitions are added to the policy:</u>

3.15.   <u>Definition 2.24 – *Employment practice violation*</u> means any actual or alleged unfair or wrongful dismissal, discharge or termination, either actual or constructive, of employment, including breach of an implied contract; employment-related misrepresentation; wrongful failure to employ or promote, wrongful deprivation of career opportunities, wrongful discipline, failure to furnish accurate job references, failure to grant tenure or negligent employee evaluation; sexual or workplace or racial or disability harassment of any kind (including the alleged creation of a harassing workplace environment); unlawful discrimination, whether direct, indirect, intentional or unintentional; failure to provide adequate employee policies and procedures; *retaliation* (including lockouts); and for the avoidance of doubt, any other *claim* pursuant to the Employment Rights Act 1996 (or equivalent under the laws of any jurisdiction) relating to any past, present, or prospective employee.

3.16.   <u>Definition 2.25 - **Retaliation**</u> means a *wrongful act* of an *insured* relating to or alleged to be in response to any of the following activities:
   (i)      The disclosure or threat of disclosure by an employee to a superior or to any governmental agency or authority of any act by an *insured* which act is alleged to be a violation of the law, common or statutory, of any state, territory, jurisdiction or political subdivision thereof;
   (ii)     The actual or attempted exercise by an employee of any right that such employee has under law, including rights under any law relating to employee rights; or
   (iii)    Any employee strike, work to rule or other similar action.

4.   Exclusions
   4.1.   For avoidance of any doubt, the following paragraph will apply to all exclusions as detailed in Item 3 Exclusions of the policy:
   **Severability of Exclusions:**
   For the purpose of determining the applicability of these exclusions, the *wrongful act* of any *insured* shall not be imputed to any other *insured*.
   These exclusions shall apply only if it established through a judgment or final adjudication adverse to the *insured* or admission by an *insured*, which the relevant conduct, did in fact occur.

   4.2.   <u>Exclusion 3.1 –</u>
   Sub-clause (i) is amended to read as follows:

   (i)      The gaining in fact of any personal profit or advantage to which the *insured* was not legally entitled, except settlement of *claims* involving violations of Section 11 and 12 of the Securities Act of 1933 shall not constitute personal profit or advantage unless a final judgement, final adjudication, or final administrative determination determines otherwise;

   Sub-clause (iii) is amended to read as follows:

   (iii)    The committing in fact of any deliberate dishonest or fraudulent act.



Authorised and regulated by the Financial Conduct Authority





**Guest Krieger Limited**

UMR    B0771IN0001600891

**GK 771**
Page 15 of 40

The following sub-clause (iv) is added:

(iv)     Any act or omission actually committed by any *insured* if such act or omission be deemed to be un-insurable in accordance with article 96(44) of the Companies Ordinance (New Version) 5743 - 1983 or in accordance with article 263 of the Companies Law 5759 - 1 9 9 9 , however this exclusion shall be limited solely to entities registered in Israel and being subject to such laws.

However, it is expressly agreed that in the event of a *securities claim* in connection with the violation of the Securities Act of 1933 as amended, the Securities Act 1934 as amended or regulations promulgated thereunder or any other similar federal or state law enacted within the United States of America or Canada (whether statutory, regulatory or common law), the *insurer* shall be estopped [both under the policy and under the Entity Cover Endorsement (Securities Claim - Worldwide)] from alleging that the *claim* is un-insurable in accordance with article 96(44) or article 263 noted above.

It is further agreed that the *insurer* undertakes that it shall not contend that a *wrongful act* was committed recklessly by any *insured* unless it can be proven that such recklessness attained a level equivalent to that of an act committed with actual deliberate intent.

The last paragraph of Exclusion 3.1 is amended to read as follows:

For the purpose of determining the applicability of these exclusions, the *wrongful act* of any *insured* shall not be imputed to any other *insured*. These exclusions shall only apply if it is established through a judgment, or any other final adjudication adverse to the *insured* that the relevant conduct did in fact occur;

4.3.   Exclusion 3.4 – It is hereby understood and agreed that 3. Exclusions 3.4 is deleted in its entirety and replaced by the following:
Which are brought by or on behalf of the *company*; provided, however, that this exclusion shall not apply to:

(i)     any derivative action brought or maintained on behalf of the *Company* without the solicitation, assistance or participation of any *Insured* or the *Company*;

(ii)    any claim brought or maintained by a liquidator, receiver or administrative receiver, trustee or any other manager appointed by a state or public authority either directly or derivatively on behalf of the company without the solicitation, assistance or participation of any insured or the company; any Claim brought or maintained by any former Director, Officer of the *Company*.

(iii)   any claim brought or maintained by the *company* against former *Director and/or Officer* for contribution or indemnity, if the claim directly results from another claim otherwise covered under this policy;

(iv)    *Claims* that are initiated as a result of orders of public authorities or public supervisory bodies.

Authorised and regulated by the Financial Conduct Authority



Checked



**Guest Krieger Limited**
UMR      B0771IN0001600891

(v)    *Claims* that are the result of a 'Third Party Complaint' issued by the *company* following an action initiated by a 'Third Party' against any of the above, for which the *director or officer* would have been legally liable had the said 'Third Party' initiated the action against the said *director or officer*.

(vi)    any claim brought by or with the assistance of any employee of the Company, protected as a Whistleblower under applicable law.

(vii)    *defence costs* of any *insured*.

The exclusion shall only apply to a claim brought or maintained within the jurisdiction of, or based upon any laws of the United States of America and/or Canada, their states, localities, territories or possessions.

4.4.    Exclusion 3.5 - It is hereby understood and agreed that 3. Exclusions 3.5 is deleted in its entirety.

4.5.    Exclusion 3.6 – It is hereby understood and agreed that exclusion 3.6 is deleted in its entirety.

4.6.    Exclusion 3.8 – The following will be added to the end of this exclusion: "or any *claim* for liable or slander".

5.    Extensions:
5.1.    Extension 4.1 - *Representation at investigations and examinations* after the words: "incurred with prior written consent of the insurer", the words "which shall not be unreasonably withheld or unduly delayed" are added.

5.2.    Extension 4.2, New Subsidiary shall be replaced with the following:
4.2    New Subsidiaries:
Cover under this policy is extended to any *subsidiary* and/or to any *Subsidiary* of *Subsidiary* which the *policyholder* acquires or creates after the inception date of this policy provided that the *subsidiary*:
i.    Has total gross consolidated assets which are less than **35%**; and / or

ii.    Does not have a listing of any of its securities on any exchange or market in the United States of America or Canada.

If a newly acquired or created subsidiary fails to meet any one of the conditions (i), or (ii) above the *policyholder* may request an extension of this policy for such *subsidiary* provided that the *policyholder* shall give the *insurer* sufficient details to permit the insurer to assess and evaluate the *insurer's* potential increase in exposure. The insurer shall be entitled to amend the policy terms and conditions, during the *policy period*, including by the charging of a reasonable additional premium to reflect the increase in exposure. Notwithstanding the above, if a newly acquired or created subsidiary fails to meet conditions (i) (ii), an automatic coverage of **90** days shall be provided for such subsidiary, commencing from the date of the acquisition or creation. Unless otherwise agreed, cover as is afforded to the *directors, officers* or employees of any *subsidiary* by virtue of this extension shall only apply for *wrongful act(s)* committed while such *company* is or was a *subsidiary* of the *policyholder*.







**Guest Krieger Limited**
UMR    B0771IN0001600891

GK  771
Page 17 of 40

5.3.   Extension 4.3 - Outside Directorship -Outside Directorship shall be replaced with the following:

Cover includes *loss* arising from any *claim* made against any *person* who was, is or may become, at the specific request of the company, a *Director or Officer*, trustee, governor or equivalent position, in any outside entity for any *wrongful act* in such insured's capacity as a *Director or Officer*, trustee, governor or equivalent position, in the outside entity.

This cover shall be specifically excess of any insurance in force in respect of the *Outside Entity* as well as any indemnification provided by the *Outside Entity*.

The cover provided by this clause shall not apply in connection with any *Claim* made against any *Insured* by the *Outside Entity*; **provided, however, that this exclusion shall not apply to:**

i.     any derivative action brought or maintained on behalf of the *Company* without the solicitation, assistance or participation of any *Insured* or the *Company*;

ii.    any claim brought or maintained by a liquidator, receiver or administrative receiver, trustee or any other manager appointed by a state or public authority either directly or derivatively on behalf of the company without the solicitation, assistance or participation of any insured or the company; any Claim brought or maintained by any former Director, Officer of the *Company*.

iii.   any claim brought or maintained by the *company* against former *Director and/or Officer* for contribution or indemnity, if the claim directly results from another claim otherwise covered under this policy;

iv.    *Claims* that are initiated as a result of orders of public authorities or public supervisory bodies.

v.     *Claims* that are the result of a 'Third Party Complaint' issued by the *company* following an action initiated by a 'Third Party' against any of the above, for which the *director or officer* would have been legally liable had the said 'Third Party' initiated the action against the said *director or officer*.

vi.    any claim brought by or with the assistance of any employee of the Company, protected as a Whistleblower under applicable law.

vii.   *defence costs* of any *insured*.

The exclusion shall only apply to a claim brought or maintained within the jurisdiction of, or based upon any laws of the United States of America and/or Canada, their states, localities, territories or possessions.

5.4.   ***Corporate manslaughter* Extension:**
The following extension of cover shall be added to **Extensions** of the policy:

Cover under this policy is extended to *loss* arising from *a claim* for *corporate manslaughter*.

In respect of this extension the following Definition is added to the policy:
**Corporate Manslaughter** - *the* prosecution of an *insured* for involuntary manslaughter including constructive manslaughter or gross negligence manslaughter in relation to the business of the *company* or any similar prosecution in any jurisdiction.


Checked



**Guest Krieger Limited**
B0771IN0001600891

UMR

GK 771
Page 18 of 40

5.5.     ***Retired Directors, Officers and Employees*** – the following will be added: If the *policyholder* does not renew or replace this policy with any other policy affording *directors and officers* liability cover and a *discovery period* is not elected under extension 4.4, a discovery period of **84 months** after the date of such non renewal will be provided under this policy during which time written notice may be given to the insured of any claim first made against any director, officer or employee of the company who left before the date of non renewal and which claim is otherwise covered by this policy. **This extension is not available regarding director, officer of the company that retired during the event of a transaction.**

5.6.     The following extension is added to the policy
**Run-Off Cover for External Directors:**
"In the event that this policy is renewed with a material change in terms, then this policy is extended to cover *claims* made against external directors, whose term of office has ended during the course of the present *policy period*, in respect of *wrongful act* committed during the *policy period* and which the *claim* in respect of the *wrongful act* was made and notified to the insurer during the 365 days following the termination of the *policy period* and where there is no cover under any other policy. This extension is not subject to the renewal and/or non-renewal of the policy by any *insurer*. This extension shall not apply in respect of External Directors who retired during the event of a transaction.

5.7.     The following extension is added to the policy
**Emergency Costs:**
If, due to an emergency, the *insurer's* written consent cannot reasonably be obtained before defence costs are incurred with respect to any claim, the insurer will give retrospective approval for such defence costs of up to, in the aggregate, 10 per cent of the limit of liability.

5.8.     The following extension is added to the policy
**Crisis Communication Extension:**
"If the company reasonably considers that urgent action is needed in order to avert or mitigate a loss for which coverage would apply, the company shall be entitled to employ the services of a Public Relations Consultancy to be approved by the insurer for that purpose provided that notification has been given to the Insurer and that Insurer have given their written agreement that coverage applies and this shall be deemed to be sufficient notice to insurer provided that written notice of the claim or circumstances which may give rise to a claim together with details of any action taken or to be taken by or in conjunction with the Public Relations Consultancy is given to the insurers as soon as is reasonably practicable and in any event within 30 days of the Company first becoming aware of the matter. Any fees or costs reasonably incurred by the company for the employment of the Public Relations Consultancy will be reimbursed by insurers subject to a maximum limit     liability of **US$250,000** any one claim and in the aggregate for all claims". It is agreed that no retention shall apply to this extension.



Authorised and regulated by the Financial Conduct Authority





**Guest Krieger Limited**
UMR       B0771IN0001600891

GK  771
Page 19 of 40

5.9.    the    following    extension    shall    be    added:
**Risk Management Extension**
The DIRECTORS and OFFICERS shall be entitled to request advice from the
INSURERS upon giving notice of any circumstances which in their opinion might
subsequently give rise to a CLAIM for which coverage would apply, as to their
legal position and any steps which may be appropriate to avert or minimize the
risk of such a CLAIM.  The INSURERS agree to bear the cost of obtaining
advice in relation to any such circumstances up to a limit of **USD25,000** per
DIRECTOR or OFFICER any one request and in the aggregate and
**USD250,000** in the aggregate for all requests made under this provision. Any
costs borne by INSURERS under this provision will be paid separately from any
payment which may become due hereunder upon a CLAIM being made in
respect of such circumstances and INSURERS retain the right to appoint or
approve any lawyers or other advisors from whom advice is to be taken. It is
agreed that no retention shall apply to this extension.

6.    General provisions

6.1. General provisions 5.1 - *Representation*.

It is hereby understood and agreed that General provision 5.1 is deleted in its
entirety and replaced by the following:
In granting cover to any one *insured*, the *insurer* has relied upon the material
statements and particulars in the proposal together with its attachments    and
other information supplied. These statements, attachments and information are
the basis of cover and shall be considered incorporated and constituting part of
this policy.
The proposal and any information provided to the *insurer* shall be considered
as submitted separately by each *insured*. With respect to statements and
particulars in the proposal, no statements made or knowledge possessed by any
*insured* shall be imputed to any other *insured* to determine whether    cover    is
available for any *claim* made against such other *insured*.

6.2.    General provisions 5.3 - *Limit of Liability*: the following additional paragraph is
added to general provision 5.3:
Notwithstanding the above, It is agreed that in the event the amount of a loss,
including *defence costs* ,exceeding the total aggregate limit of liability for *loss*,
then this policy shall in addition cover *defence costs* up to an amount in
accordance with article 66 of the Insurance Contract Law .1981 - 5741

6.3.    General provisions 5.4 – *Retention*: The following shall be added: "This
provision – 5.4 – shall not apply to any *claim* against any *Director or Officer*" who
has not been granted indemnity by the *company*".

6.4.    General provisions 5.5 - *How to give notice and Report a Claim*:
Paragraph (ii) the following words will be deleted: "as a condition precedent
to the obligations of the *insurer* under this policy".
In respect of paragraph (ii)(b) "30" will be replaced by "60".





Case 9:18-cv-80871-DMM   Document 4-11   Entered on FLSD Docket 07/31/2018   Page 23 of 45


6.5. General provisions 5.6 - **Advancement of Costs** – is amended to read as follows:

"The *insurer* shall advance to the *insured* or the *company* on a current basis *defence costs* under all insurance covers under this policy before the final disposition of the *claim*. Payments of *defence costs* shall not be unreasonably withheld or unduly delayed.

The advance payments by the *insurer* shall be repaid to the *insurer* by the *company* or the *insured*, severally according to their respective interests, in the event and to extent that the *company* or the *insured* shall not be entitled to payment of the loss under the terms and conditions of this policy.

In the event and to the extent that the *company* is permitted or required to indemnify the insured but for whatever reason fails to do so, the *insurer* will advance all *defence costs* to the *insured* on behalf of the *company*. In this case, however, the retention amount specified in Item 4 of the Schedule shall be repaid by the *company* to the *insurer*, unless the *company* is insolvent."

Notwithstanding Exclusion 3.1 (iii), in the event of any allegation, of dishonesty or fraud or criminal act is made against the *insured*, the cost, charges and expenses reasonably incurred, by the *insured* and advanced by the *insurer*, will be repayable in the event that the *insured*, plead guilty or found guilty or liable of any dishonesty, fraud, or criminal act.

In the event that the issue of coverage has not been determined yet, then the advanced payment by the *insurer*, shall be repaid to the *insurer* by the *company* or the *insured*, severally according to their respective interests, in the event and to the extent that the *company* or the *insured* shall not be entitled to payment of the loss under the terms of this policy.

6.6. General provisions 5.7 - **How Defense Will Be Conducted** – the following shall be added: "Should a conflict of interest exists between any of the *insured*, at their request and subject to a written consent of the *insurer*, not to be unreasonably withheld, separate counsel may be appointed to protect their respective interests".

The following shall be added:

It is understood and agreed that the appointment of law firm, which will represent the *insured*, in all procedures of a *claim*, will be mutually agreed upon, between the *insured* and the *insurer*.

6.7. General provisions 5.8 - **Allocation** – After the last sentence at paragraph iii, the following sentence shall be added; "in the absence of agreement, such allocation is determined by a member of the Bar Council or local equivalent to be mutually agreed upon by the *Insurer* and the *directors and officers* or in default of such agreement to be nominated by the then Chairman of the Bar Council or local equivalent

6.8. General provisions 5.9 - **Cancellation Clause** – notwithstanding the cancellation clause, Insurer will not cancel the policy for any reason, other than non-payment of premium. However this clause should be construed to erode the insurers rights under articles 6(c) and **17**(b)3 of the Insurance Contract law 5741-1981.

6.9. General provisions 5.10 - **Subrogation** – the insurer waives rights of subrogation in respect of directors and/or officer and/or employee of the company, unless fraudulent or malicious conduct on their part is established.





6.10. General provisions 5.14 – **_Jurisdiction and governing Law_**- the following provision shall be added:
However, for the avoidance of doubt it is agreed that the liability of the insured shall be determined in accordance with the applicable law of the jurisdiction wherein the *claim* arises or is filed.

6.11. General provisions 5.16 – **_Inconsistency:_**- the following provision shall be added:
It is understood and agreed that in the event that there is an inconsistency between a state amendatory endorsement attached to this policy and any term or condition of this policy modified by another endorsement attached to this policy, then where permitted by law, the *Insurer* shall apply those terms and conditions of the endorsement which are more favorable to the *Insured*.

6.12. General provisions 5.17 - **_Recklessness_**- the following provision shall be added to this policy:
The insurer shall not contend that a Wrongful act was committed recklessly by an insured unless it has been determined that the act was indeed recklessly.  This provision shall only apply in respect of Jurisdiction in which Recklessness is uninsurable by law.

7. Entity Coverage:
The following shall be added:
**Order of Payments**

In the event of *loss* arising from a covered *claim* for which payment is due under the provisions of this policy, then the *insurer* shall in all events:

a) first, pay *loss* for which coverage is provided under Coverage A of this policy; then

b) only after payment of *loss* has been made pursuant to section (a) above, with respect to whatever remaining amount of the *limit* of *liability* is available after such payment, at the written request of the chief executive officer of the *policyholder*, either pay or withhold payment of such other *loss* for which coverage is provided under Coverage B of this policy; and then

(c) only after payment of *loss* has been made pursuant to section (a) and section (b) above, with respect to whatever remaining amount of the *limit* of *liability* is available after such payment, at the written request of the chief executive officer of the *policyholder*, either pay or withhold payment of such other *loss* for which coverage is provided under Coverage C: company securities claims coverage (if applicable) of this policy.

In the event the *insurer* withholds payment pursuant to section (b) and/or section (c) above, then the *insurer* shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the *policyholder* remit such payment to an *company* or directly to or on behalf of a natural person *insured*.

The bankruptcy or insolvency of any *company* or any natural person *insured* shall not relieve the *insurer* of any of its obligations to prioritize payment of covered *loss* under this policy pursuant to this Clause.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.





**Guest Krieger Limited**
B0771IN0001600891

UMR

GK  771
Page 22 of 40

<u>Endorsement No 7:</u>

**ENTITY COVER FOR SECURITIES CLAIMS (Worldwide)**

In consideration of the premium charged, it is hereby understood and agreed that the policy is hereby amended as follows:

## 1. Extension of Cover

The Insuring Agreements are hereby amended to include the following additional Coverage

Section – **COVERAGE C:**

**COMPANY INSURANCE FOR SECURITIES CLAIMS**
The cover provided under the policy is extended to pay the *loss* of the *company* arising from a *securities claim* first made against the *company* during the *policy period* for a *wrongful act* of the *company*.

## 2. Definitions

For the purposes of Coverage C only, definitions 2.4, 2.10 and 2.22 of the policy are supplemented by the following:

2.4 **Continuity date for securities claims** means the date indicated in Item 6 of the Schedule for Coverage C, but solely for Coverage C.

2.10 **Insured** shall also include the *company*, but solely for *Securities Claims* under Coverage C.

2.23 **Wrongful Act(S)** also means

with respect to the *company*, any actual or alleged breach of duty, breach of trust, neglect, error, misstatement, misleading statement, omission, breach of warranty of authority or other act by the *company*, but solely as respects a *securities claim*.

The following definition is hereby added to the policy:

**Securities Claim** means any *claim* (including a civil suit or criminal proceeding brought by the Financial Services Authority or any self regulatory organization authorized by the Financial Services Authority or the Department of Trade and Industry or the equivalent in any other jurisdiction including the Securities & Exchange Commission in the United States of America) made against an *insured* anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

(i) brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or offer or solicitation of an offer to purchase or sell any *securities* issued by the *company*; or





**Guest Krieger Limited**
B0771IN0001600891

UMR

GK 771
Page 23 of 40

 (ii) brought by a *securities* holder of the *company* with respect to such security holder's interest in securities issued by such company; or

 (iii) brought derivatively on behalf of the *company* by a security holder of such *company*.

## 3. Exclusions

Section 3, Exclusions, is hereby amended as follows:

**(a) For the purposes of Coverage C only, the *insurer* shall not be liable to make any payment for *loss* in connection with any *claim* made against an *insured*:**

 **(i) alleging, arising out of, based upon or attributable to any written demand made, or any suit or other pending proceeding, order, decree or judgment entered, against any *insured* on or prior to the *continuity date* defined herein, or alleging or derived from the same or essentially the same facts, circumstances or situation underlying or alleged therein;**

**(b) For the purposes of Coverage C only Exclusion 3.1(i) is deleted in its entirety and replaced by the following:**

 **(i) the gaining in fact of any profit or advantage to which the *insured* was not legally entitled.**

## 4. General Provisions

The General Provisions section of the policy is hereby amended as follows:

(1) The Limit of Liability and Retention provisions of the policy are hereby amended as follows:

 (i) **Limit of Liability**:
  General Provision 5.3, Limit of Liability, is amended by deleting the first sentence of such clause in its entirety and replacing it with the following:
  The limit of liability specified in Item 3 of the Schedule is the total aggregate limit of the *insurer's* liability for all *loss*, arising out of all *claims* made against all *insureds* under all insurance covers under this policy and the Company Insurance for *securities claims* provided herein combined.

 (ii) **Retention:**

  General Provision 5.4 is deleted in its entirety and replaced by the following:

  RETENTION
  The *insurer* shall only be liable for the amount of *loss* arising from a *claim* which is in excess of the *retention* amount specified in Item 4 of the Schedule with regard to: (i) all *loss* of the *company*; and (ii) all *loss* for which the *company* has indemnified the *insureds*.







**Guest Krieger Limited**
B0771IN0001600891

UMR

The retention amount is to be borne by the *company* and shall remain uninsured.

A single retention amount shall apply to *loss* arising from all *claims* alleging a *single wrongful act*. It is agreed that the *company* will be conclusively deemed to have indemnified a *director or officer* to the maximum extent that the *company* is permitted or required to grant such indemnification pursuant to law, common or statutory, or contract, or by the charter of by-laws of the *company*, which are hereby deemed to incorporate, for purposes of this policy, the broadest provisions of the law which determines of defines such rights of indemnity.

### Schedule

The schedule is hereby amended as follows:

Item 4 of the schedule is hereby amended to include the following additional retention for *securities claims* under Coverage A, B and C:

| | |
|---|---|
| *Securities Claim*(s): | **USD 200,000** in respect of USA/Canada SEC *Claim* |
| | **USD 35,000** in respect of Rest of the World SEC *Claim* |
| *Judgments, Settlements And Defence Costs* (Coverage C and all loss of the *insureds* for which the company is permitted or required to indemnify | As specified in the Retention clause **of the** policy, only one retention shall be applied for *loss* arising from any *claim* or *claims* alleging a *single wrongful act*. |

Item 6 is hereby amended to include the following additional Continuity Date for Coverage C:

CONTINUITY DATE :                    **24th December 2015**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.







**Guest Krieger Limited**
B0771IN0001600891

UMR

GK  771
Page 25 of 40

## PREMIUM PAYMENT CLAUSE

The Insured undertakes that premium will be paid in full to Underwriters within ninety (90) days of inception of this policy (or, in respect of instalment premiums, when due).

If the premium due under this policy has not been so paid to Underwriters by the ninetieth day from the inception of this policy (and, in respect of instalment premiums, by the date they are due) Underwriters shall have the right to cancel this policy by notifying the Insured via the broker in writing.  In the event of cancellation, premium is due to Underwriters on a pro rata basis for the period that Underwriters are on risk but the full policy premium shall be payable to Underwriters in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this policy.

It is agreed that Underwriters shall give not less than 15 days prior notice of cancellation to the (Re)Insured via the broker.  If premium due is paid in full to Underwriters before the notice period expires, notice of cancellation shall automatically be revoked.  If not, the policy shall automatically terminate at the end of the notice period.

Unless otherwise agreed, the Leading Underwriter (and Agreement Parties if appropriate) are authorised to exercise rights under this clause on their own behalf and on behalf of all Underwriters participating in this contract.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

Where the premium is to be paid through a London Market Bureau, payment to Underwriters will be deemed to occur on the day of delivery of a premium advice note to the Bureau.

11/01
LSW3000





**UMR**

**Guest Krieger Limited**
B0771IN0001600891

**GK 771**
Page 26 of 40

# CorporateGuard - Directors & Officers Liability

In consideration of the payment of the premium, the *insurer* agrees as follows:

## 1. Insurance Cover

**A:   DIRECTORS AND OFFICERS LIABILITY**

The *insurer* shall pay the *loss* of each *insured* resulting from any *claim* first made against the *insured* during the *policy period* and notified to the *insurer* during the *policy period* for any *wrongful act* in the *insured's* capacity as a *director* or *officer* of the *company* except for and to the extent that the *company* has indemnified the *insured.*

**B:   CORPORATE REIMBURSEMENT**

The *insurer* shall pay the *loss* of the *company* resulting from any *claim* first made against the *insured* during the *policy period* and notified to the *insurer* during the *policy period* for any *wrongful act* in the *insured's* capacity as a *director* or *officer* of the *company* but only when and to the extent that the *company* is permitted or required by the law, to indemnify the *insured* for the *loss.*

Subject to the terms and conditions of this policy, the *insurer* shall advance *defence costs* resulting from any *claim* before its final resolution.

## 2. Definitions

2.1   ***Associated Company*** means any company of which the *policyholder* owns on or before the inception of the *policy period* more than 20 per cent but less than 50 per cent of the issued and outstanding voting shares either directly or indirectly through one or more of its *subsidiaries.*

2.2   ***Claim*** means:

(i)   any suit or proceeding brought by any person or organisation against an *insured* for monetary damages or other relief, including non-pecuniary relief;

(ii)   any written demand from any person or organisation that it is the intention of the person or organisation to hold an *insured* responsible for the results of any specified *wrongful act;*

(iii)   any criminal prosecution brought against an *insured;*

(iv)   any administrative or regulatory proceeding or official investigation regarding any specified *wrongful act* of an *insured;*

any *claim* or *claims* arising out of, based upon or attributable to a *single wrongful act* shall be considered to be a single *claim* for the purposes of this policy.




Checked



**Guest Krieger Limited**
B0771IN0001600891

UMR

**GK  771**
Page 27 of 40

2.3   **Company** means the *policyholder* specified in Item 1 of the Schedule and any *subsidiary,* division, sector, region, product group or other internal company structure or segment detailed in an organisation chart or similar document and which has been granted this status by the *policyholder* or any *subsidiary* before the date of the *wrongful act.*

2.4   **Continuity date(s)** means the date(s) specified in Item 6 of the Schedule. The pending and prior litigation *continuity date* shall be the date from which the *policyholder* has maintained uninterrupted cover with the *insurer*, or with any other insurer if the initial proposal form submitted to such insurer is provided to and accepted by the *insurer* at the inception of this policy, or such other date(s) as agreed with the *insurer*.

2.5   **Defence costs** means reasonable and necessary fees, costs and expenses incurred with the written consent of the *insurer* (including premiums for any appeal bond, attachment bond or similar bond, but without obligation to apply for or furnish any bond) resulting solely from the investigation, adjustment, defence and appeal of any *claim* but shall not include the salary of any *insured*.

2.6   **Director or officer** means any natural person duly appointed or elected as a director, general manager, managing director, deputy general manager, or vice general manager of the *company*, and any other manager who is directly subject to the authority of the general manager, and any other natural person who fulfils a function mentioned above, even if his title differs therefrom.

2.7   **Discovery period** means the period of time specified in Extension 4.4, immediately following the termination of this policy during which written notice may be given to the *insurer* of any *claim* first made against the *insured* during such period of time for any *wrongful act* occurring prior to the end of the *policy period* and otherwise covered by this policy.

2.8   **Employment practice claim** means any *claim* or series of related *claims* relating to a past present or prospective employee of the *company* and arising out of any actual or alleged unfair or wrongful dismissal, discharge or termination, either actual or constructive, of employment, employment-related misrepresentation, wrongful failure to employ or promote, wrongful deprivation of career opportunities, wrongful discipline; failure to furnish accurate job references; failure to grant tenure or negligent employee evaluation; or sexual or workplace or racial or disability harassment of any kind (including the alleged creation of a harassing workplace environment); or unlawful discrimination, whether direct, indirect, intentional or unintentional, or failure to provide adequate employee policies and procedures, provided that the cause of action stipulated in the *claim* does not arise under or derive from infringement of any specific Labour Law, or any stipulation in a group agreement which the *company* is subject to.

2.9   **Full annual premium** means the annual premium level in effect immediately prior to the end of the *policy period.*

2.10   **Insured** means any natural person who was, is, or shall become a *director* or *officer* of the *company*. Cover will automatically apply to any natural person who becomes a *director* or *officer* after the inception date of this policy.

2.11   **Insurer** means Liberty Mutual Insurance Europe Ltd.







**Guest Krieger Limited**
UMR          B0771IN0001600891

2.12 **Loss** means damages, judgments, settlements and *defence costs;* however, *loss* shall not include civil or criminal fines or penalties imposed by law, non-compensatory damages including punitive or exemplary damages (other than damages awarded for libel and slander), taxes, any amount for which the *insured* is not legally liable or matters which may be considered uninsurable under the law pursuant to which this policy shall be construed. Damages, judgments, settlements and *defence costs* incurred in more than one *claim* against the *insured* but resulting from a *single wrongful act* shall constitute a single *loss.*

2.13 **No liability** means:

   (i)   a final judgment of no liability obtained prior to trial in favour of all *insureds* by reason of a motion to dismiss or a motion for summary judgment after the exhaustion of all appeals; or

   (ii)  a final judgment of no liability obtained after trial in favour of all *insureds,* after the exhaustion of all appeals.

In no event shall the term *no liability* apply to a *claim* made against an *insured* for which a settlement has occurred.

2.14 **Not-for-profit entity** means an entity registered in the Not For Profit Registrar according to the Israeli Not For Profit Entity Law, 1980, or any similar entity organised under the laws of any other jurisdiction, or a trade association which for the purposes of this policy shall mean a body of persons, whether incorporated or not, which is formed for the purpose of furthering the trade interests of its members, or of persons represented by its members.

2.15 **Outside entity** means any *associated company,* any *not-for-profit entity* or any other corporation, partnership, joint venture or other organisation which has been listed by endorsement to this policy.

2.16 **Policyholder** means the organisation specified in Item 1 of the Schedule.

2.17 **Policy period** means the period of time from the inception date to the expiry date specified in Item 2 of the Schedule.

2.18 **Pollutants** include (but are not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapour, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) material to be recycled, reconditioned or reclaimed.

2.19 **Security** means any note, stock, bond, debenture, evidence of indebtedness, share or other equity or debt security of the *company,* and shall include any certificate of interest or participation in, receipt for, warrant or other right to subscribe to or purchase, voting trust certificate relating to, certificate of deposit for, or other interest in any of the foregoing.

2.20 **Single wrongful act** means a *wrongful act* or any related, continuous or repeated *wrongful acts,* whether committed by the *insured* individually or by more than one *insured* and whether directed to or affecting one or more than one person or legal entity.

2.21 **Subsidiary** means companies in which the *policyholder,* either directly or indirectly through one or more of its *subsidiaries;*

   (i)   controls the composition of the board of directors; or

   (ii)  controls 50% or more  of the voting power; or

   (iii) holds 50% or more of the issued share capital.







**Guest Krieger Limited**
UMR
B0771IN0001600891

GK  771
Page 29 of 40

Cover for any *claim* against any of the *directors, officers* and employees of any *subsidiary* shall apply only for *wrongful act(s)* committed while such company is a *subsidiary* of the *policyholder*.

However, upon written request by the *policyholder,* the *insurer* shall consider, after assessment and evaluation of the increased exposure, granting cover for *wrongful act(s)* committed prior to the acquisition of the *subsidiary* by the *policyholder*.

2.22 **Transaction** means any one of the following events:

(i) the *policyholder* consolidates with or merges into or sells all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or

(ii) any person or entity, whether individually or together with any other person or persons, entity or entities acquires an amount of the outstanding shares representing more than 50 per cent of the voting power for the election of *directors* of the *policyholder,* or acquires the voting rights for such an amount of the shares.

2.23 **Wrongful act** means any actual or alleged breach of duty, breach of trust, neglect, error, misstatement, misleading statement, omission, breach of warranty of authority or other act by the *insured* in their respective capacities as a *director* or *officer* of the *company* or as a director or officer of any *outside* *entity,* or any matter claimed against them solely because of their status as a *director* or *officer* of the *company*.

## 3.   Exclusions

The *insurer* shall not be liable to make any payment for *loss* in connection with any *claim* made against the *insured:*

3.1 arising out of, based upon or attributable to:

(i) the gaining in fact of any personal profit or advantage to which the *insured* was not legally entitled;

(ii) profits in fact made from the purchase or sale by the *insured* of *securities* of the *company* within the meaning of Section 16(b) of the Securities Exchange Act of 1934 (USA) and any amendments thereto or similar provisions of any state statutory law;

(iii) the committing in fact of any dishonest or fraudulent act.

For the purpose of determining the applicability of these exclusions, the *wrongful act* of any *insured* shall not be imputed to any other *insured.* These exclusions shall only apply if it is established through a judgment, or any other final adjudication adverse to the *insured,* or any admission by an *insured* that the relevant conduct did in fact occur;

3.2 arising out of, based upon or attributable to the facts alleged or to the same or related *wrongful act(s)* alleged or contained in any *claim* which has been reported or in any circumstances of which notice has been given under any policy of which this policy is a renewal or replacement or which it may succeed in time;

3.3 arising out of, based upon or attributable to any pending or prior litigation as of the pending and prior litigation *continuity date* specified in Item 6 (i) of the Schedule, or alleging or deriving from the same or essentially the same facts as alleged in the pending or prior litigation;







**Guest Krieger Limited**

UMR    B0771IN0001600891

3.4    which are brought by or on behalf of any *insured* or the *company*; provided, however, that this exclusion shall not apply to:

(i)    any *employment practice claim* brought by any *insured*;

(ii)   any *claim* brought or maintained by an *insured* for contribution or indemnity, if the *claim* directly results from another *claim* otherwise covered under this policy;

(iii)  any shareholder derivative action brought or maintained on behalf of the *company* without the solicitation, assistance or participation of any *insured* or the *company*;

(iv)   any *claim* brought or maintained by a liquidator, receiver or administrative receiver either directly or derivatively on behalf of the *company* without the solicitation, assistance or participation of any *insured* or the *company*;

(v)    any *claim* brought or maintained by any former *director* or *officer* of the *company*.

3.5    arising out of, based upon or attributable to or in any way involving, directly or indirectly, the actual, alleged or threatened discharge, dispersal, release or escape of *pollutants;* or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralise *pollutants,* nuclear material or nuclear waste.

Provided, however, that this exclusion shall not apply to any *claim* made against the *insured* by any shareholder of the *company* either directly or derivatively, alleging damage to the *company* or its shareholders, unless on or before the pollution *continuity date* specified in Item 6 (ii) of the Schedule, the *company,* the *insured* or any employee of the *company* with managerial responsibilities over environmental affairs, control or compliance, knew or could have reasonably foreseen that there existed any situation, circumstance or *wrongful act* which could have given rise to *a claim* against the *company, or* the *insured*.

3.6    in a capacity as trustee or fiduciary under law (statutory or non-statutory including common) or administrator of any pension, profit sharing or employee benefits programme, including but not limited to an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 (USA) or the Pensions Act 1995 (UK) and any amendments thereto or any similar provisions of the law, common or statutory, of any state, territory, jurisdiction, or political subdivision thereof;

3.7    arising out of, based upon or attributable to any act or omission in the *insured's* capacity as a director or officer of any entity other than the *company,* or by reason of the *insured's* status as a director or officer of the other entity, other than as provided in Extension 4.3;

3.8    for bodily injury, sickness, disease, death or emotional distress of any person, or damage to or destruction of any tangible property, including loss of use thereof; provided, however, that any *claim* for emotional distress shall not be excluded with respect to an *employment practice claim*.

## 4.    Extensions

Subject to all of the terms and conditions of this policy, cover is extended as follows:

4.1    *Representation at Investigations and Examinations*

This policy shall provide cover for any reasonable and necessary fees, costs and expenses incurred with the prior written consent of the *insurer* resulting from any legally required attendance by any *director* or *officer of* the *company* at any official investigation, examination, inquiry or other similar proceeding in relation to the affairs of the *company*.





**Guest Krieger Limited**
UMR          B0771IN0001600891

If the *director* or *officer* of the *company* believes that as a result of such official investigation, examination, inquiry or other similar proceeding, circumstances exist which may reasonably be expected to give rise to a *claim,* notice must be given to the *insurer* of the circumstances and the reasons for anticipating a *claim,* with full particulars as to dates and persons involved in accordance with General Provision 5.5.

**4.2    *New Subsidiaries***

Cover under this policy is extended to any *subsidiary* which the *policyholder* acquires or creates after the inception date of this policy provided that the *subsidiary:*

(i)    has total gross assets which are less than the amount specified in Item 7 of the Schedule either in the United States of America or Canada;

and

(ii)    does not have a listing of any of its *securities* on any exchange in the United States of America or Canada.

If a newly acquired or created *subsidiary* fails to meet conditions (i) and (ii) above the *policyholder* may request an extension of this policy for such *subsidiary* provided that the *policyholder* shall give the *insurer* sufficient details to permit the *insurer* to assess and evaluate the *insurer's* potential increase in exposure. The *insurer* shall be entitled to amend the policy terms and conditions, during the *policy period,* including by the charging of a reasonable additional premium.

Unless otherwise agreed, cover as is afforded to the *directors* or *officers* of any *subsidiary* by virtue of this extension shall only apply for *wrongful act(s)* committed while such company is or was a *subsidiary* of the *policyholder*.

**4.3    *Outside Directorships***

Cover includes *loss* arising from any *claim* made against any *insured* who was, is or may become, at the specific request of the *company,* a director or officer of any *outside entity* for any *wrongful* act in the *insured's* capacity as a director or officer of the *outside entity*.

This cover shall be specifically excess of any insurance in force in respect of the *outside entity* as well as any indemnification provided by the *outside entity*. If the other insurance is provided by the *insurer* or any Chartis company (or would be provided except for the application of the retention amount or the exhaustion of the limit of liability), then the total aggregate limit of liability for all *loss* covered by virtue of this extension shall be reduced by the limit of liability specified in the schedule of the other Chartis insurance provided to the *outside entity*.

The cover provided by this clause shall not apply in connection with any *claim* made against any *insured* by the *outside entity*, any of its directors or officers or any shareholder of the *outside entity* holding more than 20 per cent of the issued and outstanding voting share capital of the *outside entity*.

**4.4    *Discovery Period***

If the *policyholder* refuses to renew this policy, then the *policyholder* shall have the right, upon payment of an additional premium of 25 per cent of the *full annual premium* to a *discovery period* of 12 months following the effective date of non-renewal.

If the *insurer* refuses to offer any terms or conditions to renew this policy, then the *policyholder* shall have the right upon payment of an additional premium of 25 percent of the *full annual premium* to a *discovery period* of 12 months following the effective date of non-renewal.



 **Guest Krieger Limited**
UMR   B0771IN0001600891

The *insured* shall be entitled to a 30 day *discovery period* at no additional premium if this policy is not renewed by either the *policyholder* or the *insurer*. If the *policyholder* elects to purchase a *discovery period*, this 30-day *discovery period* shall be part of and not in addition to the purchased *discovery period*.

To purchase the *discovery period*, the *policyholder* must request its purchase in writing within 15 days of the termination date of the policy and must tender the additional premium within 30 days of the termination date.

The additional premium is not refundable and the *discovery period* is not cancellable.

If *a transaction* takes place, then the *policyholder* shall not have the right to purchase a *discovery period* as set out above.  However, the *policyholder* shall have the right within 30 days of the end of the *policy period* to request an offer from the *insurer* of a *discovery period* for up to 72 months. The *insurer* shall offer a *discovery period* with terms, conditions and premium as the *insurer* may reasonably decide.

4.5   ***Heirs, Estates and Legal Representatives***

If an *insured* dies, becomes incompetent, insolvent or bankrupt, this policy shall cover *loss* arising from any *claim* made against the estate, heirs, or legal representatives of the *insured* for any *wrongful act* of such *insured*.

4.6   ***Joint Property Liability***

This policy shall cover *loss* arising from any *claim* made against the lawful spouse (whether that status is derived by reason of the statutory law, common law or otherwise of any applicable jurisdiction in the world) of an *insured* for any *claim* arising out of his or her status as the spouse of an *insured* including any *claim* that seeks damages recoverable from marital community property or property jointly held by the *insured* and the spouse; provided, however, that this extension shall not afford cover for any *claim* for any *wrongful act* of the spouse and that this policy shall apply only to *wrongful act(s)* of an *insured*.

# 5.   General provisions

5.1   ***Representation***

In granting cover to any one *insured,* the *insurer* has relied upon the material statements and particulars in the proposal together with its attachments and other information supplied. These statements, attachments and information are the basis of cover and shall be considered incorporated and constituting part of this policy.

5.2   ***Changes in Risk During Policy Period***

(i)   If during the *policy period a transaction* takes place, then the cover provided under this policy is amended to apply only to *wrongful act(s)* committed prior to the effective date of the *transaction*.

(ii)   If during the *policy period*, the *company* decides to make an initial offering of its *securities* in any jurisdiction, whether its *securities* are already traded or not, by any means, public or private, then as soon as the information is publicly available, the *company* shall provide the *insurer* with any prospectus or offering statement for the *insurer's* evaluation and assessment of the increased exposure of the *insured* and the *insurer* shall be entitled to amend the terms and conditions of this policy and/or charge a reasonable additional premium reflecting the increase in exposure.

 



At the *policyholder's* request, prior to the public announcement of such *securities* offering, the *insurer* shall evaluate and assess the increased exposure and advise of all necessary amendments to the terms and conditions of this policy and additional premium.

In this event and at the request of the *policyholder*, the *insurer* will enter into a confidentiality agreement with the *policyholder* relating to any information provided regarding the proposed *securities* offering.

### 5.3 *Limit of Liability*

The limit of liability specified in Item 3 of the Schedule is the total aggregate limit of the *insurer's* liability for all *loss*, arising out of all *claims* made against all *insureds* under all insurance covers under this policy combined. The limit of liability for the *discovery period* shall be part of and not in addition to the total aggregate limit of liability for the *policy period*. *Loss* arising from any *claim* which is made subsequent to the *policy period* or *discovery period* which pursuant to General provision 5.5 is considered made during the *policy period* or *discovery period* shall also be subject to the same total aggregate limit of liability. *Defence costs* are not payable by the *insurer* in addition to the total aggregate limit of liability. *Defence costs* are part of *loss* and are subject to the total aggregate limit of liability for *loss*.

Notwithstanding the above, and solely in respect of a *claim* filed against an *insured* within the jurisdiction of the courts of Israel, it is agreed that in the event of a *loss*, including *defence costs*, exceeding the total aggregate limit of liability for *loss*, then this policy shall cover *defence costs* up to an amount not exceeding 10 per cent of the total aggregate limit of liability for *loss*, it being expressly agreed that this amount represents « reasonable legal costs » for the purpose of article 66 of the Insurance Contract Law, 5741-1981.

### 5.4 *Retention*

The *insurer* shall only be liable for the amount of *loss* arising from *a claim* which is in excess of the retention amount specified in Item 4 of the Schedule with regard to all *loss* under all insurance covers under this policy for which the *company* has indemnified or is permitted or required to indemnify the *insured*. The retention amount is to be borne by the *company* and shall remain uninsured. A single retention amount shall apply to *loss* arising from all *claims* alleging a *single wrongful act*.

Provided, however, that no retention shall apply and the *insurer* shall thereupon reimburse any *defence costs* paid by the *company*, in the event of:

(i)     a determination of *no liability* of all *insureds*, or

(ii)    a dismissal or a stipulation to dismiss the *claim* without prejudice and without the payment of any consideration by any *insured*.

Provided, however, that in the case of (ii) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as the *claim* is not re-brought (or any other *claim* which is subject to the same single retention by virtue of this General provision 5.4 is not brought) within that time, and further subject to an undertaking by the *company* in a form acceptable to the *insurer* that such reimbursement shall be paid back by the *company* to the *insurer* in the event the *claim* (or any other *claim* which is subject to the same single retention by virtue of this General provision 5.4) is brought after such 90 day period.







**Guest Krieger Limited**
UMR      B0771IN0001600891

5.5   *How to Give Notice and Report a Claim*

(i)   Notice of a *claim* or of circumstances which may result in a *claim* shall be given in writing to Guest Krieger Limited.  68 Cornhill, London EC3V 3QX. If posted the date of posting shall constitute the date that notice was given, and proof of posting shall be sufficient proof of notice.

(ii)   The *company* or the *insured* shall, as a condition precedent to the obligations of the *insurer* under this policy, give written notice to the *insurer* of any *claim* made against an *insured* as soon as practicable and either:

(a)   any time during the *policy period* or during the *discovery period;*

   *or*

(b)   within 30 days after the end of the *policy period* or the *discovery period,* as long as such *claim(s)* is reported no later than 30 days after the date such *claim* was first made against an *insured*.

(iii)   If, during the *policy period* or during the *discovery period* written notice of a *claim* against an *insured* has been given to the *insurer* pursuant to the terms and conditions of this policy, then any *claim* arising out of, based upon or attributable to the facts alleged in the *claim* previously notified to the *insurer* or alleging a *single wrongful act* which is the same as or related to any *wrongful act* alleged in the previously notified *claim*, shall be considered made against the *insured* and reported to the *insurer* at the time the first notice was given.

(iv)   If during the *policy period* or during the *discovery period*, the *company* or the *insured* shall become aware of any circumstances which may reasonably be expected to give rise to a *claim* being made against an *insured* and shall give written notice to the *insurer* of the circumstances and the reasons for anticipating a *claim*, with full particulars as to dates and persons involved, then any *claim* which is subsequently made against an *insured* and reported to the *insurer* arising out of, based upon or attributable to the circumstances or alleging any *wrongful act* which is the same as or related to any *wrongful act* alleged or contained in those circumstances, shall be considered made against the *insured* and reported to the *insurer* at the time the notice of the circumstances was first given.

5.6   *Advancement of Costs*

The *insurer* shall advance to the *insured* or the *company defence costs* under all insurance covers under this policy before the final disposition of the *claim*.

The advance payments by the *insurer* shall be repaid to the *insurer* by the *company* or the *insured,* severally according to their respective interests, in the event and to the extent that the *company* or the *insured* shall not be entitled to payment of the *loss* under the terms and conditions of this policy.

In the event and to the extent that the *company* is permitted or required to indemnify the *insured* but for whatever reason fails to do so, the *insurer* will advance all *defence costs* to the *insured* on behalf of the *company*. In this case, however, the retention amount specified in Item 4 of the Schedule shall be repaid by the *company* to the *insurer,* unless the *company* is insolvent.







**Guest Krieger Limited**
B0771IN0001600891

UMR

5.7   ***How Defence Will Be Conducted***

The *insured* shall have the right and duty to defend and contest any *claim*. The *insurer* shall have the right to effectively associate with the *insured* and the *company* in the defence and settlement of any *claim* that appears reasonably likely to involve the *insurer*, including but not limited to effectively associating in the negotiation of any settlement.

The *insured* shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment or incur any *defence costs* without the prior written consent of the *insurer* as a condition precedent to the *insurer's* liability for *loss* arising out of the *claim*.

Only those settlements, stipulated judgments and *defence costs* which have been consented to by the *insurer* shall be recoverable as *loss* under the terms of this policy. The *insurer's* consent shall not be unreasonably withheld, provided that the *insurer* shall be entitled to effectively associate in the defence and the negotiation of any settlement of any *claim* in order to reach a decision as to reasonableness.

The *company* and the *insured* shall give the *insurer* full co-operation and all information as it may reasonably require as a condition precedent to the *insurer's* liability for *loss* arising out of the *claim*.  In the event that a dispute arises between the *insurer* and the *insured* regarding whether or not to contest any legal proceedings, neither the *insured* nor the *company* shall be required to contest any legal proceedings unless a Queen's Counsel or equivalent (to be mutually agreed by the *policyholder* and the *insurer*) shall advise that the proceedings should be contested.  The cost of the Queen's Counsel shall be borne by the *insurer*.

5.8   ***Allocation***

(i)     The *insurer* has no obligation under this policy for *defence costs* incurred by the *company*, or any judgments rendered against or settlements by the *company*, or any obligation to pay *loss* arising out of any legal liability that the *company* has to the third party claimant. Accordingly, with respect to:

(a)     *defence* costs jointly incurred by;

(b)     any joint settlement made by; and/or

(c)     any adjudicated judgment of joint and several liability rendered against

the *company* and any *insured*, the *company* and the *insured* and the *insurer* agree to use their best efforts to determine a fair and proper allocation of the amounts as between the *company* and the *insured* and the *insurer*, taking into account the relative legal and financial exposures of and the relative benefits obtained by the *insured* and the *company*.

(ii)    In the event that any *claim* involves both covered matters and matters not covered under this policy, a fair and proper allocation of any *defence costs*, judgments and/or settlements shall be made between the *company*, the *insured* and the *insurer* taking into account the relative legal and financial exposures attributable to covered matters and matters not covered under this policy.

(iii)   In the event that a determination as to the amount of *defence costs* to be advanced to the *insured* under this policy cannot be agreed to, then the *insurer* shall advance *defence costs which* the *insurer* states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

Checked



Authorised and regulated by the Financial Conduct Authority


**UMR**

**Guest Krieger Limited**
B0771IN0001600891

GK  771
Page 36 of 40

5.9  *Cancellation Clause*

This policy may be cancelled by the *policyholder* at any time only by mailing written prior notice to the *insurer* or by surrender of this policy to the *insurer* or to its authorised agent. This policy may also be cancelled by or on behalf of the *insurer* by delivering to the *policyholder,* or by mailing to the *policyholder,* by registered, certified, or other first class mail, at the *policyholder's* address as shown in Item 1 of the Schedule, written notice stating when, not less than sixty (60) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The *policy period* terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be cancelled by the *policyholder,* the *insurer* shall retain the customary short rate proportion of the premium hereon.

If this policy shall be cancelled by the *insurer,* the *insurer* shall retain the pro rata proportion of the premium hereon.

Payment or tender of any unearned premium by the *insurer* shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

5.10  *Subrogation*

In the event of any payment under this policy, the *insurer* shall be subrogated to the extent of such payment to all of the *company's* and the *insured's* rights of recovery in respect of the payment, and the *company* and the *insured* shall execute all papers required and shall do everything that may be necessary to secure any rights including the execution of any documents necessary to enable the *insurer* effectively to bring suit in the name of the *company* and/or the *insured.*

5.11  *Other Insurance*

Any insurance as is provided under this policy shall apply only as excess over any other valid and collectible insurance.

5.12  *Notice and Authority*

It is agreed that the *policyholder* shall act on behalf of its *subsidiaries* and all *insureds* with respect to the giving and receiving of notice under this policy, including the giving of notice of *claim,* the payment of premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right to a *discovery period.*

5.13  *Assignment*

This policy and any rights hereunder cannot be assigned without written consent of the *insurer.*

5.14  *Jurisdiction and Governing Law*

Any interpretation of this policy relating to its construction, validity or operation shall be made in accordance with the laws of the State of Israel.

The parties agree to submit to the exclusive jurisdiction of the courts in the State of Israel (Tel Aviv or Jerusalem).

5.15  *Plurals and Titles*

The titles of these paragraphs are for convenience only and do not lend any meaning to this contract. In this policy words in italics have special meaning and are defined.



Authorised and regulated by the Financial Conduct Authority



**Guest Krieger Limited**
B0771IN0001600891

**GK  771**
Page 37 of 40

## COMPLAINTS

Every effort is made to ensure you receive a high standard of service. If you are not satisfied with the service you have received, you should contact:-

Guest Krieger Limited

68 Cornhill

London EC3V 3QX

To help us to deal with your comments quickly, please quote your Policy/Claim Number and Policyholder/Insured Name

We will do our best to resolve any difficulty directly with you, but if we are unable to do this to your satisfaction you may be entitled to refer any dispute to the Financial Ombudsman Service who will review your case. The address is:

Financial Ombudsman Service

South Quay Plaza

183 Marsh Wall

London

E14 9SR



Authorised and regulated by the Financial Conduct Authority





**Guest Krieger Limited**
UMR          B0771IN0001600891

| SECURITY DETAILS |
|---|

INSURERS LIABILITY                    **(RE)INSURERS LIABILITY CLAUSE**

**(Re)insurer's liability several not joint**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten.  A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer.  Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp. This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).  The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed").  In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together).  A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line".  The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.    LMA3333

Authorised and regulated by the Financial Conduct Authority


Checked



**Guest Krieger Limited**
UMR    B0771IN0001600891

ORDER HEREON                100%


BASIS OF WRITTEN LINES    Percentage of Whole


SIGNING PROVISIONS

In the event that the written lines hereon exceed 100% of the order, any lines written "to stand" will be allocated in full and all other lines will be signed down in equal proportions so that the aggregate signed lines are equal to 100% of the order without further agreement of any the (re)insurers.

However:

(a)    in the event that the placement of the order is not completed by the commencement date of the period of insurance then all lines written by that date will be signed in full.

(b)    The signed lines resulting from the application of the above provisions can be varied, before or after the commencement date of the period of insurance, by the documented agreement of the re(insured) and all (re)insurers whose lines are to be varied. The variation to the contracts will take effect only when all such (re)insurers have agreed, with the resulting variation in signed lines commencing from the date set out in that agreement.



Checked



 **Guest Krieger Limited**
UMR   B0771IN0001600891

GK   771
Page 40 of 40

| Signed Lines % | Written Lines % |
|---|---|
| 100% | XL INSURANCE COMPANY SE  G B 0 0 0 6 0 S 6 9 D 0 1 6 A  LINE TO STAND  12/1/16 |

Checked 





**Guest Krieger Limited**
B0771IN0001600891

**UMR**

**GK  771**

SECURITY:        100.00%    XL Insurance Company Limited

              100.00%

EXAMINED

for and on behalf of
GUEST KRIEGER LTD
(DIRECTOR)

Authorised and regulated by the Financial Conduct Authority
Registered in England. 1203847



# Guest Krieger Limited

*Lloyd's Broker*

68 Cornhill London EC3V 3QX

Telephone: 020 7283 6644   Fax: 020 7623 7548

E-Mail:  info@guestkrieger.com

Ability Inc
14 Yad Haruzim
Tel Aviv 6770007
Israel

15th January 2016

## DEBIT NOTE

| | |
|---|---|
| Policy Ref | **IN0001600891   001** |
| Assured | **Ability Inc** |
| Class of Business | **Directors & Officers Liability & Company Reimbursement Insurance** |
| Period | **From:   00.01 hours Local Time 1st January 2016**<br>**To:       00.01 hours Local Time 1st January 2017** |
| Transaction Type | **Original Premium** |

| | | |
|---|---|---|
| Gross Premium | **USD** | **120,000.00** |
| Your share  100 % | **USD** | **120,000.00** |
| Nett Total | **USD** | **120,000.00** |
| Amount Due From You | **USD** | **120,000.00** |

Please quote Policy Reference in all correspondence.

Contact: **Lauren Morrissey**     Extension: **234**

Authorised and regulated by the Financial Conduct Authority
Registered in England. 1203847