UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-80871-CV-MIDDLEBROOKS

BEAZLEY INSURANCE COMPANY, INC.,

      Plaintiff/Counter-Defendant,

v.

BENJAMIN GORDON,

      Defendant/Counter-Plaintiff/Third-Party Plaintiff,

v.

XL INSURANCE COMPANY SE,

      Third-Party Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

THIS CAUSE comes before the Court upon Third-Party Defendant XL Insurance Company SE's ("XL Insurance") Motion to Dismiss Third-Party Complaint (DE 31), filed September 21, 2018. Defendant/Counter-Plaintiff/Third-Party Plaintiff Benjamin Gordon ("Gordon") responded to the Motion on October 19, 2018. (DE 48). XL Insurance filed its reply on October 30, 2018. (DE 55). For the reasons set forth below, XL Insurance's Motion is granted.

## I.     BACKGROUND

This action arises out of a series of insurance disputes. In 2013, Gordon co-founded Cambridge Capital Acquisition Corporation ("CCAC") as a special purpose acquisition company. (DE 4 at 17). A special purpose acquisition company is a publicly traded company that raises money in order to acquire a target private company. (*Id.*) Once the target company is

acquired, it too becomes a publicly traded company. (*Id.*) Defendant Gordon was chief executive officer and director of CCAC. (DE 1 ¶ 15).

After a first, failed merger, CCAC merged with non-party Ability Computer and Software Industries Ltd. ("ACSI") in December 2015.[1] (DE 1 ¶¶ 12–14). After the merger, CCAC ceased to exist as a corporate entity, and the surviving corporate entity was renamed Ability Inc. (DE 4 at 16). As a result of the failed merger and the CCAC-Ability merger, several lawsuits were brought against CCAC. (DE 1 ¶¶ 12–22). In his capacity as a director of CCAC, Gordon was named as a party in the lawsuits. (*Id.*)

CCAC had a Directors, Officers, and Company Liability Insurance Policy that was issued to it by Plaintiff Beazley Insurance Company, Inc. ("Beazley"). (DE 4 at 9). Ability, Inc. had a Directors and Officers Liability and Company Reimbursement insurance policy that was issued to it by Third-Party Defendant XL Insurance. (*Id.* at 25). Under the terms of both policies, Gordon was insured as a director of CCAC/Ability, Inc. (*Id.* 10 & 25). Both policies insured the relevant company from, among other things, claims made against directors in their capacity as directors of the company. (*Id.*) If such a claim was made, both policies provided that the insurer should advance or pay defense costs. (*Id.*)

Plaintiff Beazley initiated this suit on July 7, 2018, seeking a declaratory judgment that it had discharged its obligations under its policy to pay Gordon's defense costs and that it was not liable to Gordon for any amount exceeding the policy limits. (DE 1 at 14). Gordon thereafter filed an Answer, Counter Claim against Beazley, and Third-Party Claim against XL Insurance

---

[1] There appears to be a factual dispute about the timing of the CCAC-Ability merger. Gordon's Third-Party Complaint states that the merger was completed in December 2015 (DE 4 at 16), but Plaintiff Beazley Insurance Company, Inc.'s Complaint states that the CCAC-Ability merger was completed on October 22, 2016 (DE 1 ¶ 14). Because, as it regards XL Insurance's Motion to Dismiss, Gordon is operatively the plaintiff, I will here take the facts as Gordon states them.

and Ability, Inc. (DE 4). On November 30, 2018, Gordon voluntarily dismissed his third-party claims against Ability, Inc. (DE 65).

In its Motion to Dismiss Gordon's Third-Party Complaint, XL Insurance argues (1) that this Court cannot exercise personal jurisdiction over it, (2) that the forum selection clause in the contract dictates that any disputes arising under the contract be litigated in Israel and therefore the Third-Party Complaint should be dismissed on *forum non conveniens* grounds, and (3) that dismissal is required because Gordon's claims against XL are not proper third-party claims under Fed. R. Civ. P. 14 or properly joined claims under Fed. R. Civ. P. 20.

## II.    PERSONAL JURISDICTION

XL Insurance first moves the Court to dismiss this case on the grounds that this Court cannot exercise personal jurisdiction over it. XL Insurance is an insurer organized and existing under the laws of England and Wales. (DE 31 at 1). The policy that XL Insurance issued to Ability, Inc. was sold through an insurance broker in England. (*Id.*) Ability, Inc., to whom the policy was sold, is incorporated in Israel. (*Id.*) Moreover, the policy contains a forum selection clause and choice of law clause that, according to XL Insurance, dictate that any disputes arising under the contract should be brought in Israel. Based on these allegations, XL Insurance argues that it is not subject to the Court's jurisdiction under Florida's long-arm statute and, even if it were, it does not have minimum contacts with Florida to satisfy due process.

A plaintiff seeking to establish the court's jurisdiction over a nonresident defendant must make a prima facie case of personal jurisdiction over the defendant. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). To establish a prima facie case of personal jurisdiction, a plaintiff must present evidence sufficient to withstand a motion for directed verdict. *Meier ex rel. Meier Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269

(11th Cir. 2002).  If the defendant submits affidavits contradicting the plaintiff's allegations, the burden shifts back to the plaintiff to produce evidence proving jurisdiction.  *Id.*  To the extent that the allegations in the plaintiff's complaint conflict with those in the defendant's affidavits, "the court must construe all reasonable inferences in favor of the plaintiff." *Id.*

"A federal court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed by the Constitution." *Stubbs*, 447 F.3d at 1360.  To determine whether a court can exercise personal jurisdiction over a nonresident defendant, courts undertake a two-part analysis.  *See Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 919 (11th Cir. 1989).  First, courts determine whether the state's long-arm statute is satisfied.  *Id.*  Because the reach of a state's long-arm statute is a question of state law, federal district courts construe state long-arm statutes as would the courts of the state. *See United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  Second, courts must analyze whether sufficient minimum contacts exist between the defendant and the state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### A. Florida's Long-Arm Statute

Florida's long-arm statute confers jurisdiction over any person "whether or not a citizen or resident of this state, who personally or through an agent . . . [c]ontract[s] to insure a person, property, or risk located within this state at the time of contracting." Fla. Stat. §  48.193(1)(a)(4). With respect to the exercise of jurisdiction over a nonresident insurer under § 48.193(1)(a)(4), the relevant consideration is whether when the insurance policy went into effect, the person or risk being insured was located in Florida.   In *Glovegold Shipping Ltd. v. Sveriges Angfartygs*

*Assurans Forening*, 791 So.2d 4 (Fla. Dist. Ct. App. 2000), for example, the First District Court of Appeals found that a Swedish insurer was subject to Florida's jurisdiction because the ship being insured—which was owned by a Maltese company and managed by a Scottish company—was docked in a Florida port when the contract was executed. *Id.* at 10.  Florida had jurisdiction over the insurer because the property it insured was physically located in Florida when the contract went into effect. *Id.*

> The insurance policy that XL Insurance issued to Ability provided that:
>
> The insurer shall pay the loss of each insured resulting from any claim first made against the insured during the policy period and notified to the insurer during the policy period for any wrongful act in the insured's capacity as a director or officer of the company except for and to the extent that the company has indemnified the insured.

(DE 4-11 at 29).  The policy defined "insured" as "any natural person who was, is, or shall become a director or officer of the company." (*Id.* at 30).  XL Insurance's policy was issued to Ability, Inc.  (DE 4 at 25).  After CCAC merged with ASCI, the merged companies became Ability, Inc. (*Id.* at 18).  Gordon was a director of Ability, Inc.  (DE 1 ¶ 21).  It is uncontroverted that Gordon was an "insured" within the meaning of the policy and that Gordon was a resident of Florida for the entirety of the relevant time period.  (DE 48 at 6).  It thus does not matter that, as XL Insurance insists, Gordon was not a named party to the insurance contract.  The contract explicitly insured the directors and officers of Ability, Inc.  At the time the contract was formed, Gordon was one such director or officer.  Consequently, Florida's long-arm statute confers jurisdiction over XL Insurance in Florida courts, subject to constitutional due process limitations.

## B. Due Process

In order for a state to subject a person to its jurisdiction, due process requires that the person must "have certain minimum contacts with it such that the maintenance of the suit does

not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at

316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The due process analysis is a two-

step inquiry: first, courts consider whether a nonresident defendant had sufficient minimum

contacts with the forum state, and second, courts determine whether the exercise of jurisdiction

over the defendant would offend "traditional notions of fair play and substantial justice." *Cronin*

*v. Washington Nat. Ins. Co.*, 980 F.2d 663, 670 (11th Cir. 1993).

Courts assess whether a defendant had sufficient minimum contacts with a state by

assessing the defendant's actions in or directed at the state. "[I]t is essential in each case that

there be some act by which the defendant purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its law." *Hanson*

*v. Denckla*, 357 U.S. 235, 253 (1958). Such purposeful availment ensures that the defendant will

not be subjected to a state's jurisdiction based only on random or attenuated contacts. *Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "The nonresident defendant's contacts with

the forum state must be such that he has 'fair warning' that a particular activity may subject him

to the jurisdiction of a foreign sovereign." *Ruiz de Molina v. Merritt & Furman Ins. Agency,*

*Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 472 (1985)).

XL Insurance has sufficient minimum contacts to subject it to personal jurisdiction in

Florida. The Eleventh Circuit has held that "a company with insurance obligations in a state in

which it has no other business has submitted to the jurisdiction of the state's courts." *Olivier v.*

*Merritt Dredging Co., Inc.*, 979 F.2d 827, 833 (11th Cir. 1992); *see also Mut. Serv. Ins. Co. v.*

*Frit Indus., Inc.*, 358 F.3d 1312, 1319–20 (11th Cir. 2004) (quoting *Olivier*). A defendant who

has contracted to insure a person or risk in Florida has, by its own actions, created a substantial

connection with Florida and has purposefully availed itself of the benefits and protections of

Florida's laws. *See Cronin*, 980 F.2d at 670 (finding that nonresident insurer who contracted to

insure a Florida resident had "purposefully availed himself of the benefits of Florida law, so that

he could reasonably expect to be sued there"); *see also Frost v. N. Am. Capacity Ins. Co.*, 2018

WL 2210439 (M.D. Ala. Apr. 20, 2018) (finding that nonresident insurer was subject to

Alabama's jurisdiction because the insured was an Alabama resident).

XL Insurance entered into an insurance contract with Ability, Inc. in which XL Insurance

promised to "advance to the insured or the company on a current basis defence [sic] costs under

all insurance covers under this policy before the final disposition of the claim." (DE 4 at 27). It

is uncontroverted that, when the insurance contract was entered into, Gordon was both a resident

of Florida and a director of Ability, Inc. who was an "insured" under the policy. Taking the facts

in the light most favorable to Gordon, XL Insurance knew that, in insuring Ability, Inc.'s

directors, they were insuring Gordon, a Florida resident. In fact, when the policy was entered

into, there was already ongoing litigation against Gordon in the state of Florida, which stemmed

from the CCAC-ASCI merger that created Ability, Inc. (DE 4 at 18). XL Insurance therefore

had fair warning that it might be haled into Florida courts as part of a dispute arising from its

obligations to insure Gordon.

I must next consider whether Florida's jurisdiction over XL Insurance Company violates

"traditional notions of fair play and substantial justice." In doing so, I must consider "the burden

on the defendant, [Florida's] interest in adjudicating the dispute, and the plaintiff's interest in

obtaining convenient and effective relief." *Frit Indus., Inc.*, 358 F.3d at 1320. Because I have

already determined that Third-Party Defendant XL Insurance has a least minimum contacts with

Florida, the burden is on XL Insurance to show that jurisdiction here is unreasonable. *Ruiz de Molina*, 207 F.3d at 1358.

The imposition of jurisdiction in Florida over XL Insurance would undoubtedly impose a burden on XL Insurance. XL Insurance submits the affadavit of its general counsel, Arabella Ramage, stating that XL insurance does not transact business in the United States, does not maintain an office in the United States, has no employees in the United States, and has never been licensed or registered to do business in the United States, including the state of Florida. (DE 31-1 ¶¶ 5–6, 8). I do not think, however, that this burden is sufficient to defeat jurisdiction in this case. Despite XL Insurance's assertions that it "does not contract to provide, and does not provide, services in the United States," (*id.* ¶ 6), XL Insurance knew, when it entered into the contract, that there was a possibility that it would need to advance defense costs for litigation occurring in the United States. The insurance policy *expressly* stated that its territorial limit was "[w]orldwide **including** USA/Canada." (DE 4-11 at 5) (emphasis in original). The policy also appears to provide different monetary limitations on coverage depending on whether that loss arises in the United States/Canada or in the rest of the world.[2] By the terms of the policy itself, it appears that XL Insurance contemplated and prepared for the possibility of providing coverage stemming from disputes arising in the United States. *See Frit Indus.*, 368 F.3d at 1320 (finding that the burden to foreign insurers did not defeat Alabama's jurisdiction over them because

---

[2] The XL Insurance policy is not the model of clarity, and the Parties did not themselves define this provision, but, in the portion of the policy titled "Risk Details," the policy states:

| | |
|---|---|
| RETENION (ITEM 4) | **Insurance Cover B and indemnifiable *loss*:** |
| | USD 35,000 in respect of USA/Canada |
| | USD 200,000 in respect of USA/Canada SEC *Claim* |
| | USD 7,500 in respect of Rest of the World |
| | USD 35,000 in respect of Rest of the World SEC *Claim* |

(DE 4-11 at 4).

"[e]ach insurer freely agreed as part of its insurance arrangement to defend its insureds against litigation, including litigation that arose in the United States.").

As to the second factor, Florida has a strong interest in the litigation because the suit involves the failure of a foreign insurer to pay claims under policies covering a risk located in Florida and allegedly due to a Florida resident. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1221 (11th Cir. 1999) ("Florida . . . [has] a strong interest in seeing this matter resolved in Florida, as the dispute involves the alleged failure to pay claims under insurance policies issued by a foreign company to cover Florida property owned by a Florida resident."). Similarly, as to the third factor, Gordon's interest in obtaining convenient efficient relief weighs heavily toward keeping this litigation in Florida, where the related lawsuit to which Gordon joined this claim is already pending. Moreover, given the sheer volume of litigation in which Gordon is currently involved—most of which is in Florida—it would be especially inconvenient for him to be forced to go litigate another case in another country. Accordingly, I find that the state of Florida can exercise personal jurisdiction over XL Insurance.

## III.   FORUM SELECTION CLAUSE

Having determined that XL Insurance is subject to personal jurisdiction in this Court, I turn to XL Insurance's second argument in favor of dismissal: that venue is improper in this Court because the insurance policy contains a forum-selection clause that designates Israel as the exclusive forum for the resolution of any disputes arising under the contract. The insurance policy states both that "[e]ach party agrees to submit to the exclusive jurisdiction of the Courts of Israel" and that "the Israeli Courts shall have exclusive jurisdiction in any dispute arising hereunder." (DE 4-11 at 5).

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."[3] *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 571 U.S. 49, 60 (2013). "To obtain dismissal for *forum non conveniens*, the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (quotations omitted). In *Atlantic Marine Construction Company*, the U.S. Supreme Court held that:

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. . . . As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.

*Atl. Marine Constr. Co.*, 571 U.S. at 64. As a result, the Eleventh Circuit has stated that "an enforceable forum-selection clause carries near-determinative weight in this analysis." *GDG Acquisitions*, 749 F.3d at 1028. The starting point of my analysis must therefore be whether the forum-selection clause is enforceable.

---

[3] In *Atlantic Marine Construction Company*, the U.S. Supreme Court held that a Rule 12(b)(3) motion to dismiss for improper venue is not the proper mechanism to enforce a forum-selection clause. *Atl. Marine Constr. Co.*, 571 U.S. at 52, 60. Rather, the Court held that forum-selection clauses that designate another federal district as the chosen forum should be enforced through a motion to transfer under 28 U.S.C. § 1404(a) and that forum-selection clauses that designate a jurisdiction outside the federal system should be enforced through the doctrine of *forum non conveniens*. *Id.* at 60. Though XL Insurance incorrectly brought this Motion under Rule 12(b)(3)—a mistake that XL Insurance acknowledges, (DE 55 at 6)—I am here construing it as a motion to dismiss on the basis of *forum non conveniens*. *See Azzia v. Royal Caribbena Cruises, Ltd.*, 2016 WL 11395237 (S.D. Fla. Aug. 31, 2016) (treating a Rule 12(b)(3) motion to dismiss for improper venue as a motion for *forum non conveniens*). The Parties have briefed the issues as though it were a properly pled motion to dismiss for *forum non conveniens*.

Forum-selection clauses are presumptively valid and enforceable unless the [party opposing enforcement] makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). Choice of law clauses are found unreasonable when: (1) their formation was induced by fraud or overreaching; (2) the plaintiff would be effectively deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy. *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998).

Here, Gordon argues only that the forum-selection clause is unreasonable, and therefore unenforceable, under the second factor. (DE 48 at 14–16). Gordon's primary argument is that it would be inconvenient for him to litigate this matter in Israel because, in addition to the obvious inconvenience and expense of traveling to another country, it would require him to translate the relevant documents into Hebrew and hire Israeli counsel in addition to his existing counsel. (*Id.* at 15–16). Additionally, Gordon alleges that the witnesses are not located in Israel and do not speak Hebrew. (*Id.* at 15). While I acknowledge the strain and inconvenience that international travel can impose, the inconveniences that Gordon alleges do not meet the standard for refusing to enforce an otherwise valid forum-selection clause. Gordon's allegations essentially amount to an argument about the financial difficulty of litigating this case in Israel—he will have to hire a translator to translate the documents, hire Israeli counsel, and hire a translator in court to help his English-speaking witnesses. But "[t]he financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause." *P&S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir.

2003).  Gordon's allegations simply do not show that he would be effectively deprived of his day in court if forced to litigate his claim in Israel.

Additionally, Gordon argues that he cannot be bound by the forum-selection clause because he was not a party to the insurance contract issued to Ability, Inc. by XL Insurance. (DE 48 at 12–14).  Ordinarily, a person cannot be bound by a forum-selection clause in a contract to which he was not a party.  *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").  A nonparty can only be bound to a forum-selection clause when the nonparty is so closely related to the dispute that it becomes foreseeable that he will be bound by the forum-selection clause.  *Lipcon*, 148 F.3d at 1299 (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).  Where the interests of a nonparty are "completely derivative of those of" a party to the contract, the nonparty's interests are "directly related to, if not predicated upon" the interests of the party, and the nonparty is therefore bound by the forum-selection clause.  *Id.* (quotation omitted).

As a director of Ability, Inc., Gordon is closely enough related as to be bound by the forum-selection clause.  *See FirstMerit Corp. v. Craves*, 2015 WL 151318, at *3 (N.D. Ohio Jan. 12, 2015) ("There may be an exception if the party is so closely related to the dispute that it is foreseeable that it would be bound, such as a third-party beneficiary of the contract or the directors and officers of a contracting corporation.").  If, as Gordon argued in regards to XL Insurance's personal jurisdiction claims, Gordon was so closely related as to have been known to XL Insurance at the time it issued the policy to Ability, Inc., Gordon cannot now argue that he was not closely enough related to the contract to be bound by the forum selection clause. Gordon ought not be permitted to affiliate himself with the insurance contract when it suits him and distance himself from it when it does not.

Having found that the forum-selection clause is binding and enforceable upon Gordon, I turn to the second portion of the *forum non conveniens* analysis. Given the enforceable forum-selection clause, the private factors necessarily favor the selected forum of Israel. *GDG Acquisitions*, 749 F.3d at 1029 ("A binding forum-selection clause requires the court to find that the *forum non conveniens* private factors entirely favor the selected forum."). All that is left to determine, then, is whether the alternative forum—here, Israel—is adequate and whether the public interest factors weigh in favor of dismissal. *See Essex Global Capital, LLC v. Purchasing Sols. Int'l, Inc.*, 2017 WL 4868801, at *3 (S.D. Fla. Oct. 27, 2017). Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

Because I found that the forum-selection clause is enforceable, the burden rests with Gordon to show that dismissal of the Third-Party Complaint for refiling in Israel is unwarranted. *See Aviation One of Fla. Inc. v. Airborne Ins. Consultants (PTY), Ltd.*, 722 Fed. Appx. 870, 885 (11th Cir. 2018). Gordon fails to meet this burden, in that he does not argue that Isreal would be inadequate as a forum, rather he focuses on the inconvenience involved in litigating there, and this is a private factor, not a public one. Moreover, Gordon has not shown that a balancing of the

public interest considerations identified above weigh against dismissal of his claims against XL

Insurance in accordance with the forum-selection clause.[4]

## IV.   CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that:

1.  Third-Party Defendant XL Insurance Company SE's Motion to Dismiss Third-Party Complaint (DE 31) is **GRANTED.**

2.  All claims made by Defendant/Counter-Plaintiff Benjamin Gordon in his Third-Party Complaint against Counter-Defendant XL Insurance Company SE (DE 4 at p.14 ¶¶ 1-53) are **DISMISSED WITH PREJUDICE**.

3.  The Clerk of Court shall **TERMNATE** Third-Party Defendant XL Insurance Company SE as a Defendant in this case.

4.  XL Insurance Company SE's Motion to Stay (DE 62) and Motion for Protective Order (DE 71), and Ability Inc.'s Motion to Stay (DE 60), are **DENIED AS MOOT.**

**SIGNED** in Chambers at West Palm Beach, Florida, this ⟨18⟩ day of January, 2019.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record

---

[4] Having determined that dismissal is appropriate based upon *forum non conveniens*, I need not address XL Insurance's remaining argument that it was improperly joined under Fed. R. Civ. P. 20, and/or that it is not a proper third-party defendant under Fed. R. Civ. P. 14.